# Exhibit 7

Case 1:12-md-02409-WGY  Document 678-5  Filed 12/16/13  Page 2 of 59
Case 1:12-cv-00250-JFM  Document 5  Filed 01/26/12  Page 1 of 58

Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 1 of 58

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. |
| | ) | |
| v. | ) | Civil Action No.:  JFM-12-250 |
| | ) | |
| RANBAXY LABORATORIES, LTD., | ) | |
| RANBAXY, INC., | ) | |
| | ) | |
| corporations, and | ) | |
| | ) | |
| DALE ADKISSON, ARUN SAWHNEY, | ) | |
| VENKATACHALAM KRISHNAN, | ) | |
| | ) | |
| individuals, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE OF PERMANENT INJUNCTION

The United States of America, plaintiff, by its undersigned attorneys, having filed its

complaint for injunctive relief against defendants, Ranbaxy Laboratories, Ltd. and Ranbaxy, Inc.,

corporations ("Corporate Defendants"), and Dale Adkisson (who was hired by Ranbaxy

Laboratories Ltd., and assumed the position of Senior Vice President, Head Global Quality in

January 2010, after all of the activities alleged in the complaint had occurred), Arun Sawhney

(who assumed the position of Managing Director of Ranbaxy Laboratories, Ltd. on August 20,

2010, after all the activities alleged in the complaint had occurred), and Venkatachalam

Krishnan, Regional Director Americas (collectively, "Defendants"), and Defendants having

appeared and having consented to the entry of this Consent Decree of Permanent Injunction (the

"Decree"), without contest and before any testimony has been taken and without admitting or

denying any allegation of the complaint and disclaiming any liability in connection therewith,

and the United States of America, having consented to this Decree;

Case 1:12-md-02409-WGY  Document 678-5  Filed 12/16/13  Page 3 of 59
Case 1:12-cv-00250-JFM  Document 5  Filed 01/26/12  Page 2 of 58

Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 2 of 58

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

I.      This Court has jurisdiction over the subject matter and over all parties to this action.

II.     The complaint states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "Act").

III.    The complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(a), by introducing and causing to be introduced, and delivering and causing to be delivered for introduction, into interstate commerce articles of drug, as defined by 21 U.S.C. § 321(g)(1), that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), in that the methods used in, and the facilities or controls used for, the manufacture and processing of the drugs do not comply with the current good manufacturing practice requirements to assure that they meet the requirements of the Act as to their safety and that they have the identity and strength, and meet the quality and purity characteristics, which they purport or are represented to possess.

IV.     The complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(k), by causing drugs to be adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B) while the drugs are held for sale after shipment of one or more of their components in interstate commerce.

V.      The complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(d), by introducing and causing to be introduced, and delivering and causing to be delivered for introduction, into interstate commerce new drugs in violation of 21 U.S.C. § 355.

VI.     The complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(e), by failing to make reports required under 21 U.S.C. § 355(k).

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 4 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 3 of 58
Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 3 of 58

## DEFINITIONS

VII.     For purposes of this Decree, the following definitions shall apply:

A.     "Application" means any application or other submission made by Defendants to the Food and Drug Administration ("FDA" or "Agency") in support of or in connection with an approved or pending new drug application ("NDA") or abbreviated new drug application ("ANDA"), including any post-marketing submissions with respect to such Application except field alerts required under 21 C.F.R. § 314.81(b)(1), adverse drug experience reports required under 21 C.F.R. § 314.80, and labeling supplements and amendments made solely to comply with the "same labeling requirement" found in 21 U.S.C. § 355(j)(2)(A)(v) and 21 C.F.R § 314.94(a)(8), when the reference listed drug has made labeling changes.

B.     "Drug(s)" refers to any product that meets the definition in 21 U.S.C. § 321(g), including, but not limited to, finished drugs, drug components, and active pharmaceutical ingredients ("APIs").

C.     "Interstate commerce" is defined as set forth in 21 U.S.C. § 321(b).

D.     The term "drugs that are the subject of an Application" includes drugs that may not be intended for introduction into interstate commerce, but are the subject of an Application and must be manufactured in conformity with such Application, such as drugs associated with the President's Emergency Plan for AIDS Relief ("PEPFAR") program.

E.     "Covered Facilities" means: (1) Ranbaxy Laboratories, Ltd., Sirmour District, Himanchal Pradesh, India (hereafter, "Paonta Sahib"); (2) Ranbaxy Laboratories, Ltd., Industrial Area-3, Dewas, India (hereafter, "Dewas"); and (3) any facility added to this Decree pursuant to paragraph XXIX. Defendant Ranbaxy Laboratories, Ltd. has represented to FDA and now

3

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 5 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 4 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 4 of 58
(Para. VII)

represents to this Court that: (1) the Ohm Laboratories, 34 West Fulton St., Gloversville, NY,

facility (hereafter, "Gloversville") was officially closed on Thursday, October 13, 2011; and (2)

they have withdrawn the FDA site registration for the Ranbaxy Laboratories, Ltd., Unit II, P.O.

Batamandi, Paonta Sahib, Dirst Sirmour, Batamandi, Himanchal Pradesh, India facility

(hereafter, "Batamandi"). Corporate Defendants shall withdraw all NDAs and ANDAs that

contain data or other information generated or developed at Batamandi, and shall never submit

another Application to FDA for any drug that is the subject of the withdrawn Batamandi NDAs

and ANDAs and shall never transfer such NDAs and ANDAs to a third party. If Corporate

Defendants submit notice under paragraph XVI.B that they intend to resume manufacturing

drugs at Gloversville and/or intend to resume manufacturing drugs that are the subject of an

Application and/or are intended for introduction into interstate commerce at Batamandi, such

facility shall thereafter be included in the definition of "Covered Facilities" and be fully subject

to the provisions of this Decree.

  F.  An Application "contain(s)" data or other information generated or developed at a

facility if such data or other information were submitted to or incorporated by reference into the

Application(s) at any time, regardless of whether such data or other information were

subsequently replaced by a supplement or amendment. However, if Corporate Defendants

believe that: (1) the amount of data or information generated or developed at a facility is de

minimis; or (2) that FDA's approval of an Application was not based on any data or information

generated or developed at a Covered Facility, and their Data Integrity Expert described in

paragraph XI certifies to FDA that the data is de minimis and/or irrelevant to FDA's approval,

they may petition FDA for a determination that the Application does not contain data or

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 6 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 5 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 5 of 58

(Para. VII)

information from such facility.

G.   "Affected Application" means: (1) any Application that, at the time of entry of this Decree, is pending or approved and contains any data or other information generated or developed at Paonta Sahib and/or Dewas; (2) all Applications that contain data or other information generated or developed at Paonta Sahib and were withdrawn between February 25, 2009 and the entry of this Decree; and (3) all Applications that contain data or other information generated or developed at Dewas and were withdrawn between August 1, 2003 and the entry of this Decree. For purposes of this Decree, ANDA 76-477 for Atorvastatin Calcium is not an Affected Application. Within ninety (90) days after entry of this Decree, Corporate Defendants may, in writing, withdraw from FDA's consideration for approval any pending Affected Application(s) and/or request that FDA withdraw approval of any approved Affected Application(s). If Corporate Defendants withdraw an Affected Application(s) in accordance with the preceding sentence, Corporate Defendants shall never submit another Application to FDA for the drug that is the subject of the withdrawn Application(s) and shall never transfer such Application(s) to a third party, and such withdrawn Affected Application(s) will be exempt from the requirements of this Decree. If Corporate Defendants submit or transfer an Application for a drug that is the subject of an Affected Application withdrawn under this provision, FDA will not review any resubmitted or transferred Application(s) and will have no obligation to do so. Within five (5) days after entry of this Decree, Corporate Defendants shall provide to FDA: (1) a complete list of all Applications that Corporate Defendants believe meet this paragraph's definition of Affected Application; and (2) a complete list of all pending or approved Applications that contain data or other information generated or developed at Batamandi;

5

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 7 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 8 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 6 of 58
(Para. VII)

however, such lists do not preclude FDA from determining that other Applications meet the

definition of Affected Application or contain data or other information generated or developed at

Batamandi.

     H.     Notwithstanding subparagraph G of this paragraph, the following Applications

will be referred to as "Excepted Applications" and will not be considered Affected Applications

under this Decree unless deemed to be such under paragraph XIV.A.2 of this Decree:  ANDA 1;

ANDA 2; ANDA 3; ANDA 4; and ANDA 5.

     I.     "CGMP" means the current good manufacturing practice requirements for drugs.

See 21 U.S.C. § 351(a)(2)(B); 21 C.F.R. Parts 210 and 211.

     J.     "CGMP Requirements" means both CGMP and the CGMP provisions of this

Decree.

     K.     "Corrective Action Operating Plan" ("CAOP") means Corporate Defendants'

written operating plan that describes their procedures, actions, and controls to ensure data

integrity in their Applications.  Corporate Defendants shall have one CAOP, which they shall

update as set forth in paragraphs XVII.G and XIX.

     L.     "Days" shall refer to calendar days unless otherwise stated.

     M.     "Untrue statement" means a Defendant's untrue statement of material fact in an

Application or a Defendant's material omission from an Application.  An untrue statement of

fact is material if it reasonably could be expected to affect FDA's decision with respect to the

matter for which the fact was submitted and it is:  (1) required under applicable law and

regulations; (2) requested by FDA to be included in the Application; or (3) submitted by

Defendants in support of an Application.  An omission is material if the omitted information

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 8 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 7 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 7 of 58
(Para. VII)

could reasonably be expected to affect FDA's decision with respect to the matter about which the fact was omitted.

N.     "Data irregularity" means data in one or more Applications, other than untrue statements, that raise a question as to whether the data are reliable. Data irregularities will be evaluated by Corporate Defendants' Chief Data Reliability Officer (see paragraph IX.B), Data Integrity Expert (see paragraphs XI, XIV.B, XVII.G.1.b, XIX), and Data Quality Auditor (see paragraph XXIV.A) as specified in the Decree to determine whether they occur with sufficient frequency and/or are sufficiently similar to constitute a pattern or practice of data irregularities that call into question the reliability of the data in an Application.  Upon receipt of such a determination, FDA will evaluate the data to determine whether, in the exercise of its discretion, such pattern or practice of data irregularities causes FDA to believe that it should not approve and/or should not have approved the Application under 21 U.S.C. § 355(b) (for NDAs) and/or 21 U.S.C. § 355(j) (for ANDAs) (hereafter, "pattern(s) or practice(s) of data irregularities affecting approval").  If FDA makes the determination that there is a pattern or practice of data irregularities affecting approval, it will advise Corporate Defendants of its decision and reasons therefore in writing, and the Application shall be withdrawn according to the procedures set forth in paragraphs XV, XVII.H and I, XIX, and XXIV.A.

O.     The terms "manufacture," "manufactured," and "manufacturing" refer to manufacturing, processing, packing, repacking, labeling, holding, and/or distributing drugs.

P.     "Quality assurance" ("QA") includes, but is not limited to, the systemic review and approval of procedures, review of records, auditing, and monitoring the performance of all operations to assure consistent product quality.

7

Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 8 of 58
(Para. VII)

Q.     "Quality control" ("QC") includes, but is not limited to, assessing the suitability

of incoming components, containers, closures, labeling, in-process materials, and finished

products; evaluating the performance of the manufacturing process and laboratory controls to

ensure adherence to proper specifications and limits; and determining the acceptability of each

batch for release.

R.     "Wrongful Act" includes both untrue statements and data irregularities.

S.     "Validity Assessment" means FDA's determination of the nature and extent of

Defendants' Wrongful Acts based on:  FDA's inspection of Defendants' Corporate facilities;

FDA's review of data or information in Applications, Defendants' internal review(s) and/or

audit(s); and/or any other information.

T.     The term "affiliates" does not include Daiichi Sankyo Co., Ltd., or its subsidiaries

not named as a defendant in this Decree nor previously owned by a named defendant in this

Decree.

<u>QUALITY ASSURANCE AND QUALITY CONTROL MANAGEMENT</u>

VIII.    Defendants shall establish and document management control over QA and QC at

the Covered Facilities for all drugs that are the subject of an Application and/or intended for

introduction in interstate commerce, to ensure continuous compliance with the Act, its

implementing regulations, and this Decree (hereafter, collectively, "the law and/or this Decree").

Corporate Defendants shall vest responsibility for QA and QC in an individual who shall be

authorized and responsible for all QA and QC functions at the Covered Facilities, including

establishing, implementing, and maintaining a comprehensive written QA and QC program

("QA/QC program") to ensure that all drugs that are the subject of an Application and/or

8

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 10 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 9 of 58

Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 9 of 58

(Para. VIII)

intended for introduction in interstate commerce manufactured by Corporate Defendants have

the safety, identity, strength, quality, purity, and potency that they purport or are represented to

possess, and are in compliance with the law and this Decree.

## DATA INTEGRITY MANAGEMENT

IX.     Within one-hundred twenty days (120) after entry of this Decree, Corporate

Defendants shall establish in the United States an Office of Data Reliability, which shall be

responsible for conducting pre-submission audits of all Applications from all facilities owned

and/or operated by Corporate Defendants and/or their subsidiaries and/or affiliates, including but

not limited to: the Covered Facilities; Ohm Laboratories, 14 Terminal Road, New Brunswick,

NJ; Ohm Laboratories, Van Dyke Ave., New Brunswick, NJ; Ohm Laboratories, 1385

Livingston Ave., North Brunswick, NJ; Ranbaxy, Inc., 600 College Road East, Princeton, NJ;

Ranbaxy Laboratories, Ltd., P.O. Rail Majra, Dist. Nawanshahar, Punjab, India (also known as

Toansa); Ranbaxy Laboratories, Ltd., Phase III Ind. Area, Sas Nagar and Unit III, A41, Phase

VIIIA, Mohali, Punjab, India; Ranbaxy Laboratories, Ltd., Sector 18 Udyog Vihar Ind Area,

Gurgaon, India; and/or any new facilities. Corporate Defendants shall not submit to FDA any

Applications until such Office of Data Reliability is established and operating in compliance

with this paragraph, except that Corporate Defendants may make submissions as required by law

for approved Applications, or submissions that are requested by FDA for pending Applications,

provided that such submission is accompanied by a certification: (1) from the Data Integrity

Expert described in paragraph XI that the data in the submission are accurate and complete in all

material respects to the best of his/her knowledge; or (2) from Corporate Defendants, certifying

that they were unable to secure the foregoing certification from the Data Integrity Expert in time

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 11 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 10 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 10 of 58
(Para. IX)

to meet its legal obligations and providing a time, not to exceed ninety (90) days, by which they

will provide to FDA the foregoing Data Integrity Expert's certification for such submission.

FDA will have no obligation to review any submissions made without a certification from the

Data Integrity Expert until after it has received the Data Integrity Expert's certification. The

Office of Data Reliability shall be headed by a Chief Data Reliability Officer who shall report

directly to the Managing Director of Ranbaxy Laboratories, Ltd., and shall have the authority to

recommend to the Managing Director of Ranbaxy Laboratories, Ltd., that individual employees

be disciplined or terminated and that any of Corporate Defendants' Applications be withdrawn

from FDA consideration for approval. The Chief Data Reliability Officer shall report to FDA all

such recommendations within five (5) days of making such recommendations to the Managing

Director. The Chief Data Reliability Officer shall have the authority to review, and to approve or

prohibit the submission to FDA of all of Corporate Defendants' Applications, and is responsible

for ensuring that:

A.      Pre-submission audits include an audit trail (i.e., a complete record within a

closed system that ensures the integrity, trustworthiness, and reliability of records and raw data

within the system) and certifications from all employees of Corporate Defendants and/or their

subsidiaries and/or affiliates involved in Application-related data generation or processing. The

audit trail and certifications shall be maintained in a form electronically available to FDA for as

long as the product covered in the Application is pending approval or approved in the United

States;

B.      Prior to submitting any Application to FDA, the Chief Data Reliability Officer or

his/her designee has reviewed the audit trails to determine whether one or more Wrongful Acts

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 12 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 11 of 58

Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 11 of 58
(Para. IX)

has occurred in the Application(s). Within fifteen (15) days after review of the audit trails is

complete, the Chief Data Reliability Officer shall identify all untrue statements and data

irregularities and determine whether the data irregularities occur with sufficient frequency and/or

are sufficiently similar to constitute a pattern or practice of data irregularities that call into

question the reliability of the data in the Application(s), and shall submit to FDA all audit trails

identifying untrue statements and/or data irregularities in or affecting the Application(s);

      C.     Each Application submitted to FDA includes a certification by the Chief Data

Reliability Officer that, after diligent investigation, the Chief Data Reliability Officer has, to the

best of his/her knowledge, determined that the data in the Application are accurate and complete

in all material respects; and

      D.     The Chief Data Reliability Officer reports in writing and in person to Ranbaxy

Laboratories, Ltd.'s Board of Directors at least annually, and also at the next scheduled Board

meeting following identification of an untrue statement and/or a pattern or practice of data

irregularities that call into question the reliability of the data in an Application(s).

      X.     Within seventy-five (75) days after entry of this Decree, Defendants shall

establish a disclosure program that includes both a worldwide toll-free compliance telephone line

and a system to receive and maintain written submissions from individuals who wish to disclose

to the Chief Data Reliability Officer any issues or questions associated with Defendants'

policies, conduct, practices, or procedures believed by the individual to be a potential violation

of the Act. Defendants shall publicize the existence of the disclosure program by sending, semi-

annually, e-mails to employees, posting the information prominently on the Corporate

Defendants' websites, and posting in employee common areas. The disclosure program shall

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 13 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 12 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 12 of 58
(Para. X)

emphasize a non-retribution, non-retaliation policy, and shall facilitate anonymous and

confidential communications for which appropriate confidentiality shall be maintained.  Upon

receipt of a disclosure, the Chief Data Reliability Officer or his/her designee shall gather all

relevant information from the disclosing individual.  The Chief Data Reliability Officer or

his/her designee shall make a diligent, good faith inquiry into the allegations set forth in every

disclosure to ensure that he/she has obtained all of the information necessary to determine

whether a further review should be conducted.  For any disclosure that is sufficiently specific to:

(a) permit a determination of the appropriateness of the alleged improper practice; and (b)

provide an opportunity for taking corrective action, Defendants shall conduct a review of the

allegations set forth in the disclosure and ensure that proper follow-up is conducted.  The Chief

Data Reliability Officer or his/her designee shall maintain a disclosure log, which shall include a

record and an accurate and complete summary of each disclosure received (whether anonymous

or not), the status of the respective reviews, and any corrective action taken in response to the

reviews.  All information gathered by the disclosure program shall (a) be maintained for at least

four years following closure of the review and corrective action, and (b) be provided to FDA

upon request.

XI.     Within thirty (30) days after entry of this Decree, Corporate Defendants shall

retain, at their expense, an independent person or persons (the "Data Integrity Expert(s)"), who

has no personal or financial ties (other than the consulting agreement between the parties) to

Defendants or their immediate families, and who, by reason of background, experience,

education, and training, is qualified to conduct complete reviews ("internal reviews") and audits

of the Excepted and Affected Applications to identify all instances of Wrongful Acts at

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 14 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 13 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 13 of 58
(Para. XI)

Corporate Defendants' facilities and to establish the reliability and integrity of the data contained

in the Excepted and Affected Applications.  Corporate Defendants shall notify FDA in writing of

the identity of the Data Integrity Expert(s) within fifteen (15) days after retaining such expert(s).

Corporate Defendants shall give the Data Integrity Expert(s) the freedom to conduct independent

and adequate internal reviews and audits, as set forth in paragraphs XIV.B and XVII.A-F of this

Decree, and to determine, in consultation with FDA and Corporate Defendants, the appropriate

scope of the audits.  Corporate Defendants' consulting agreement with the Data Integrity

Expert(s) shall require the Data Integrity Expert(s) to:  (1) notify FDA, within fifteen (15) days,

of any disputes he or she has with Defendants regarding the scope, conduct, findings, or any

other aspect of the internal reviews and audits; (2) upon FDA's request, meet directly with FDA

without Defendants present; and (3) meet with FDA without Defendants present any time the

Data Integrity Expert(s) deems it necessary, to discuss the Data Integrity Expert(s)'s internal

reviews of Corporate Defendants' facilities and audits of Corporate Defendants' Applications.

PENDING APPLICATIONS

XII.    Upon entry of this Decree, Defendants shall be deemed to have relinquished any

claim to 180-day exclusivity for the following Affected Applications, and shall not interpose any

objection in any forum to FDA's approval of any other ANDAs held by other sponsors for the

drugs subject to such Affected Applications:  ANDA 6; ANDA 7; and ANDA 8.

XIII.    If Corporate Defendants have not received final approval of ANDA 3 by March

25, 2013, Corporate Defendants shall, upon written notification from FDA, be deemed to have

relinquished any claim to 180-day exclusivity for such Application, and shall not interpose any

objection in any forum to FDA's approval of any other ANDAs held by other sponsors for such

13

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 15 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 14 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 14 of 58
(Para. XIII)

drug. If Corporate Defendants have not completed their substantial completeness submissions

pursuant to paragraph XIV.A, audit plans pursuant to paragraph XIV.B.1, and audits pursuant to

paragraph XIV.B.2, for each of the following Excepted Applications by the following dates,

Corporate Defendants shall, upon written notification from FDA, be deemed to have relinquished

any claim to 180-day exclusivity for such Excepted Application(s) and shall not interpose any

objection in any forum to FDA's approval of any other ANDAs held by other sponsors for the

drugs subject to such Excepted Application(s) after such date: ANDA 1, by December 31, 2012;

ANDA 2, by January 31, 2013; ANDA 5, by July 31, 2013; and ANDA 4, by September 30,

2014.

## EXCEPTED APPLICATIONS

XIV.   Within thirty (30) days after entry of this Decree:

A.   Defendants shall submit to FDA detailed written submissions, with all available

supporting data, to demonstrate whether the Excepted Applications were substantially complete,

within the meaning of 21 U.S.C. § 355(j)(5)(B)(iv)(II)(cc) and 21 C.F.R. § 314.101(b)(1), at the

time they were initially filed.

1.   Following FDA's review of such submissions, which will be completed

within sixty (60) days, the Agency will provide Corporate Defendants with written notice

whether each ANDA appears to have been substantially complete at the time it was filed. FDA's

substantial completeness determination may be based on any information, including, but not

limited to, the submissions required under this paragraph.

2.   If FDA determines that an ANDA does not appear to have been

substantially complete at the time of filing, Corporate Defendants shall be ineligible for

14

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 16 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 15 of 58
Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 15 of 58
(Para. XIV)

exclusivity for such ANDA, and such ANDA shall be deemed to be an Affected Application; and

      B.      The Data Integrity Expert shall develop plans to audit the Excepted Applications

(hereafter, "EA audit plan(s)"). The EA audit plans shall be designed to determine, based on all

information available to Defendants, whether any Excepted Application contains untrue

statements or data irregularities and whether data irregularities occur with sufficient frequency

and/or are sufficiently similar to constitute a pattern or practice of data irregularities that call into

question the reliability of the data in the Excepted Application, and to identify all such untrue

statements and/or data irregularities. With respect to data generated by third parties and included

in an Excepted Application, the Data Integrity Expert shall not be required to visit a third party's

facility as a part of his or her audit of the third party data; however, if the Data Integrity Expert

attempts to visit a third party's facility and is refused access by the third party, Corporate

Defendants shall promptly notify FDA of such refusal. The Data Integrity Expert shall audit:

(1) all data generated by third parties that are in the possession or control of Corporate

Defendants and/or their subsidiaries and/or affiliates, and (2) all records of Corporate Defendants

and/or their subsidiaries and/or affiliates related to such data. While auditing such information

related to data generated by third parties, the Data Integrity Expert shall verify that the

processing of such third-party data by Corporate Defendants and/or their subsidiaries and/or

affiliates (including, but not limited to, handling, analysis, and transmission of such data) was

done properly and in a manner that would not affect the reliability and integrity of data received

from the third party. The Data Integrity Expert shall not be required to audit data supporting the

Application that is no longer in the possession or control of Corporate Defendants and/or their

subsidiaries and/or affiliates on the date of entry of this Decree (hereafter, "third party data

15

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 17 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 16 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 16 of 58
(Para. XIV)

auditing requirements").

      1.     Defendants shall submit the EA audit plans to FDA, which shall have

thirty (30) days to provide written notification that it has accepted or identified deficiencies in

the EA audit plans. Any deficiencies identified by FDA will be provided to Defendants, together

with a rationale for FDA's conclusion. If deficiencies are identified, the Data Integrity Expert

and Defendants shall revise the EA audit plans and Defendants shall resubmit the revised EA

audit plans to FDA, which will have an additional twenty (20) days to accept or identify

deficiencies in the revised EA audit plans;

      2.     After Defendants receive written notification from FDA that the EA audit

plans are acceptable, the Data Integrity Expert shall begin auditing the Excepted Applications in

accordance with the FDA-approved EA audit plans. The Data Integrity Expert shall submit all

audit reports (whether interim or final), as well as individual reports regarding any Excepted

Application, simultaneously to FDA and Defendants.

      Nothing in this paragraph shall require FDA to review such audit reports for an Excepted

Application that FDA determines does not appear to have been substantially complete at the time

of its filing.

      XV.    For all Excepted Applications found by FDA under paragraph XIV.A.1 to have

been substantially complete at the time they were initially filed, FDA will, within sixty (60) days

after receipt of an audit report for an Excepted Application under paragraph XIV.B.2, evaluate

the data to determine whether such Excepted Application contains any untrue statements, and/or

whether, in the exercise of FDA's discretion, such Excepted Application contains a pattern or

practice of data irregularities affecting approval. If FDA determines that there is an untrue

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 18 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 17 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 17 of 58
(Para. XV)

statement and/or pattern or practice of data irregularities affecting approval, Corporate

Defendants shall, in writing, withdraw such Excepted Application, except that Corporate

Defendants shall not be required to withdraw any Excepted Application for which the Data

Integrity Expert certifies to FDA in writing that Corporate Defendants had replaced all untrue

statements and/or such patterns or practices of data irregularities in such Excepted Application

prior to February 25, 2009. If Defendants dispute FDA's determination, they shall submit, in

writing within twenty (20) days of receiving FDA's determination, their reasons why FDA's

determination is incorrect. FDA will provide Defendants with a final written determination

regarding any disputed Excepted Application within fifteen (15) days of receipt of Defendants'

dispute. Upon FDA's final determination that an Excepted Application contains an untrue

statement and/or patterns or practices of data irregularities affecting approval, Corporate

Defendants shall, in writing, withdraw such Excepted Application(s). If FDA does not determine

that an Excepted Application contains untrue statements and a pattern or practice of data

irregularities affecting approval, FDA will begin or resume reviewing that Excepted Application.

Nothing in this paragraph shall restrict FDA's ability to raise additional data integrity

concerns regarding the Excepted Applications during the review process.

## CGMP INJUNCTION PROVISIONS

XVI.   Upon entry of this Decree, Defendants and each and all of their directors, officers,

agents, employees, representatives, successors, assigns, attorneys, and any and all persons in

active concert or participation with any of them, who have received actual notice of this Decree

by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C.

§ 332(a) from directly or indirectly doing or causing the following: (1) manufacturing any drugs

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 19 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 18 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 18 of 58

(Para. XVI)

at or from Gloversville, unless and until Defendants have satisfied all of the requirements of

subparagraph B of this paragraph applicable to Gloversville; (2) manufacturing at Batamandi

drugs that are the subject of an Application that contains data or other information generated or

developed at Batamandi and introducing into interstate commerce any drugs manufactured at

Batamandi, unless and until Defendants have satisfied all of the requirements of subparagraph B

of this paragraph applicable to Batamandi; (3) manufacturing at Paonta Sahib drugs that are the

subject of an Application that contains data or other information generated or developed at

Paonta Sahib and introducing into interstate commerce any drugs manufactured at Paonta Sahib,

unless and until Defendants have satisfied all of the requirements in subparagraph A of this

paragraph applicable to Paonta Sahib and have received notification of CGMP compliance from

FDA under paragraph XVI.A.6 for Paonta Sahib; and (4) manufacturing at Dewas drugs that are

the subject of an Application that contains data or other information generated or developed at

Dewas and introducing into interstate commerce any drugs manufactured at Dewas, unless and

until Defendants have satisfied all of the requirements in subparagraph A of this paragraph

applicable to Dewas and have received notification of CGMP compliance from FDA under

paragraph XVI.A.6 for Dewas.

    A.    The following provisions apply to the Paonta Sahib and Dewas facilities and

relate solely to those facilities' manufacture of drugs that are the subject of an Application and/or

that are intended for introduction into interstate commerce:

    1.    Corporate Defendants' methods, facilities, and controls used to

manufacture drugs are established, operated, and administered in conformity with CGMP

Requirements;

18

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 20 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 19 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 19 of 58
(Para. XVI)

2.      Corporate Defendants retain, at their expense, an independent person or

persons (the "CGMP Expert"), who has no personal or financial ties (other than the consulting

agreement between the parties) to Defendants or their immediate families and who, by reason of

background, experience, education, and training, is qualified to inspect Corporate Defendants'

drug production facilities to determine whether their methods, facilities, and controls are

operated and administered in conformity with CGMP Requirements.  Corporate Defendants'

consulting agreement with the CGMP Expert shall require the CGMP Expert to:  (1) notify FDA,

within fifteen (15) days, of any disputes he or she has with Defendants regarding the scope,

conduct, findings, or any other aspect of the CGMP review; (2) upon FDA's request, meet

directly with FDA without Defendants present; and (3) meet with FDA without Defendants

present any time the CGMP Expert deems it necessary, to discuss the CGMP Expert's review of

Corporate Defendants' facilities.  Defendants shall notify FDA in writing of the identity of the

CGMP Expert within fifteen (15) days after retaining such expert.  The CGMP Expert shall:

a.      Perform a comprehensive inspection of the facilities, methods, and controls used

to manufacture drugs.  The CGMP Expert shall determine whether Corporate Defendants'

facilities, methods, and controls used to manufacture drugs are in compliance with CGMP

Requirements;

b.      Evaluate whether Defendants have established and implemented a comprehensive

written QA/QC program that is adequate to ensure continuous compliance with CGMP

Requirements.  The CGMP Expert, at a minimum, shall determine whether the QA/QC program:

i.      Addresses all elements of Corporate Defendants' quality system including,

but not limited to, compliance monitoring, trend analyses, internal audit procedures, and whether

19

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 21 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 20 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 20 of 58
(Para. XVI)

the personnel in Corporate Defendants' QA and QC units (hereafter, collectively "QA/QC Unit")

are adequately trained and staffed to evaluate Defendants' continuous compliance with CGMP

Requirements and to prevent and correct deviations from CGMP Requirements;

   ii.  Includes the QA and QC management controls and the disclosure program

described in paragraphs VIII and X of this Decree, and assures that Corporate Defendants'

organization infrastructure and policies are designed to support quality, including, but not limited

to, effective management monitoring and review systems and reporting structures;

   iii.  Includes procedures to ensure that Defendants:  (a) promptly and

thoroughly investigate product deviations, reports of complaints regarding Corporate

Defendants' products, and all unexplained discrepancies and failures of a batch of drug or any of

its components to meet all of the applicable specifications; the procedures shall include

extending such investigation to other batches of the same drug and other drugs and components

that may have been associated with or affected by the specific failure or discrepancy; (b) take

required and prompt corrective actions for all products and components that fail to meet their

specifications; and (c) determine whether a complaint represents a serious and unexpected

adverse drug experience that is required to be reported to FDA under 21 C.F.R. §§ 310.305 or

314.80;

   iv.  Establishes procedures to ensure that written standard operating

procedures ("SOPs") are periodically re-evaluated so that they remain in continuous compliance

with the law and this Decree, and that the SOPs address all aspects of CGMP Requirements and

are reviewed and controlled by the QA/QC Unit; and

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 21 of 58

(Para. XVI)

          v.      Includes written SOPs to ensure that: (a) QA personnel are promptly notified in writing of all deviations from CGMP Requirements (including, but not limited to, out-of-specification results, laboratory and/or manufacturing deviations, and/or problems that could affect the safety, identity, strength, quality, and purity of any drug); (b) Corporate Defendants' QA personnel participate in and/or closely monitor the implementation and verification of corrective actions to prevent future occurrences of such similar deviations and/or problems; and (c) there are systems to ensure that such written SOPs are continuously followed;

    c.      Evaluate whether Defendants have established and implemented an adequate stability program that accurately measures the stability characteristics of drug products using the following:

          i.      appropriate stability test methods;

          ii.      appropriate equipment appropriately maintained;

          iii.      appropriate laboratory control systems to track stability samples; and

          iv.      appropriate record control systems to ensure authenticity, reliability, and retention of all data;

    d.      Evaluate whether Defendants have established and implemented a comprehensive quality assurance system for both process validation and analytical method validation including, but not limited to, change management and timely revalidation of changes in packaging, formulation, equipment, and processes that may affect the drug product's effectiveness, quality, or purity attributes;

    e.      Evaluate whether Defendants have established and implemented a comprehensive written program to maintain the production, control, and other records and ensure the

Case 1:12-md-02409-WGY    Document 678-5    Filed 12/16/13    Page 23 of 59
Case 1:12-cv-00250-JFM    Document 5    Filed 01/26/12    Page 22 of 58
Case 1:12-cv-00250-JFM    Document 2    Filed 01/25/12    Page 22 of 58

(Para. XVI)

authenticity and reliability of all data reflected in those records; and

     f.     Evaluate whether Defendants have established and implemented the Office of

Data Reliability discussed in paragraph IX and the disclosure program discussed in paragraph X

of this Decree and a comprehensive written program to ensure the authenticity and reliability of

all Application data provided to FDA.

     3.     The CGMP Expert certifies to FDA that:

     a.     The CGMP Expert has inspected Corporate Defendants' facilities, methods, and

controls used to manufacture drugs;

     b.     All deviations from CGMP Requirements brought to Defendants' attention by

FDA, the CGMP Expert, and/or any other source since August 2003 have been corrected; and

     c.     Such facilities, methods, processes, and controls are adequate to ensure

continuous compliance with CGMP Requirements. As part of this certification, the CGMP

Expert shall include a detailed and complete report of the results of the CGMP Expert's

inspections;

     4.     Defendants report to FDA in writing the actions they have taken to:

     a.     Correct the CGMP deviations brought to their attention by FDA, the CGMP

Expert, and/or through any other means; and

     b.     Ensure that the methods used in, and the facilities and controls used for

manufacturing drugs are operated and will be continuously administered in compliance with

CGMP Requirements.

     5.     FDA representatives may begin an inspection of a facility within ninety

(90) days after receipt of the certification described in paragraph XVI.A.3 or the Defendants'

22

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 24 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 23 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 23 of 58
(Para. XVI)

report described in paragraph XVI.A.4 for that facility, whichever is later, or at any time under

paragraph XXXII of this Decree, to determine whether the requirements of this Decree have

been met, and whether that facility is otherwise operated in conformity with CGMP

Requirements.

        6.     FDA notifies Defendants in writing that they appear to be in compliance

with the requirements set forth in paragraphs XVI.A.1-4, which notification, if appropriate, will

be issued no later than one hundred twenty (120) days after conclusion of any inspection or, if

FDA does not inspect Defendants' facilities pursuant to paragraph XVI.A.5, within ninety (90)

days after receiving the certification described in paragraph XVI.A.3 or the Defendants' report

described in paragraph XVI.A.4, whichever is later. When a notification is issued under this

subparagraph, FDA will terminate any import alert associated with the facility that is the subject

of the notification and remove that facility from Official Action Indicated status, and Defendants

may introduce into interstate commerce any FDA-approved drugs manufactured at such facility

after the date of such notification.

        B.     If Corporate Defendants intend to resume manufacturing drugs at Gloversville,

they shall notify FDA in writing and paragraph XVI.A shall immediately apply to Gloversville.

FDA will not use Gloversville's past non-compliance with the CGMP requirements as the sole

basis for withholding approval of requests to transfer the manufacture of products from

Gloversville to a site other than Gloversville, including, but not limited to, any third party site. If

Corporate Defendants intend to resume the manufacture at Batamandi of drugs that are the

subject of an Application and/or are intended for introduction into interstate commerce, they

shall notify FDA in writing and paragraph XVI.A shall immediately apply to Batamandi.

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 24 of 58

## DATA INTEGRITY PROVISIONS FOR AFFECTED APPLICATIONS

XVII.  FDA has halted and will not resume or begin reviewing Affected Applications, unless and until:  (1) for Affected Applications that contain data generated or developed at Paonta Sahib, Defendants have fully and satisfactorily completed the requirements of paragraphs XVII.A-L, and FDA has issued written notification to Defendants in accordance with paragraph XVII.O that the Agency's concerns regarding the reliability of the data in all such Affected Applications appear to be resolved; and (2) for Affected Applications that contain data generated or developed at Dewas or at another facility (excluding Paonta Sahib), Defendants have fully and satisfactorily completed the requirements of paragraph XVII.A-E and have completed the audit under paragraph XVII.F for a specific Affected Application, and FDA has notified Defendants under paragraph XVII.N that the Agency's concerns regarding the reliability of the data in that specific Affected Application appear to be resolved.  If Corporate Defendants notify FDA under paragraph XVI.B that they intend to resume the manufacture at Batamandi of drugs that are the subject of an Application and/or intended for introduction into interstate commerce, the provisions of this paragraph and paragraph XXIV pertaining to Paonta Sahib shall be immediately applicable to Batamandi.

A.    The Data Integrity Expert shall develop, in consultation with the Defendants as necessary, internal review protocols for Paonta Sahib and Dewas, that shall include, but not be limited to:

1.    identifying an historical period (hereafter, "relevant period") during which Wrongful Acts occurred in the Affected Applications from such facility;

24

(Para. XVII)

        2.       identifying and interviewing current employees who were employed prior to, during, or immediately after the relevant period to identify activities, systems, procedures, and management behaviors that may have resulted in or contributed to Wrongful Acts;

        3.       identifying former employees who departed prior to, during, or after the relevant period and making diligent efforts to interview them to determine whether they possess any relevant information regarding any Wrongful Act;

        4.       based on the information identified from the foregoing interviews, collecting data and information that may be related to Wrongful Acts, determining whether other evidence supports the information gathered during the interviews, and determining whether additional facilities were involved in or affected by Wrongful Acts;

        5.       using organizational charts and SOPs to identify the specific managers in place when Wrongful Acts were occurring;

        6.       determining whether any individual managers identified in item (5) of this subparagraph are still in a position to influence data integrity with respect to CGMP Requirements or the submission of Applications; and

        7.       establishing procedures to expand the internal review to any other facilities determined to be involved in or affected by Wrongful Acts;

    B.      Defendants shall submit the internal review protocols to FDA, which shall have sixty (60) days to provide written notification that it has accepted or identified deficiencies in the protocols. Any deficiencies identified by FDA will be provided to Defendants, together with a written rationale for FDA's conclusion. If deficiencies are identified, the Data Integrity Expert shall revise the internal review protocols and Defendants will resubmit the revised internal

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 27 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 26 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 26 of 58

(Para. XVII)

review protocols to FDA, which shall have an additional thirty (30) days to accept or identify

deficiencies in the revised internal review protocols;

   C.  After Defendants receive written notification from FDA that the internal review

protocols are acceptable, the Data Integrity Expert shall begin the internal reviews in accordance

with the FDA-approved protocols.  In conducting the internal reviews, the Data Integrity Expert

may consider data and information generated by third party experts prior to the entry of this

Decree.  The Data Integrity Expert shall submit all internal review reports (whether interim or

final) simultaneously to FDA and Defendants;

   D.  Based upon the results of the internal reviews, the Data Integrity Expert and

Defendants shall develop plans for Paonta Sahib and Dewas, designed as set forth in paragraph

XIV.B of this Decree, to audit all Affected Applications that contain data generated or developed

at each facility (hereafter, "audit plan(s)").  The Data Integrity Expert's audit of data generated

by third parties and included in an Affected Application audited under this paragraph shall be

conducted pursuant to the third party data auditing requirements set forth in paragraph XIV.B.  If

the Data Integrity Expert's internal reviews determine that an untrue statement and/or a pattern

or practice of data irregularities occurred at one or more facilities other than Paonta Sahib and/or

Dewas, the Data Integrity Expert shall develop audit plan(s) to audit any additional Applications

identified by the internal reviews as being potentially affected by such untrue statement and/or a

pattern or practice of data irregularities, and such Applications shall be deemed to be Affected

Applications;

   E.  Defendants shall submit the audit plans to FDA for review and acceptance

according to the procedures set forth in paragraph XIV.B.1 of this Decree;

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 28 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 27 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 27 of 58
(Para. XVII)

F.     After Defendants receive written notification from FDA that the audit plans are

acceptable, the Data Integrity Expert shall begin the audit in accordance with the FDA-approved

audit plans.  The Data Integrity Expert shall submit all audit reports (whether interim or final and

including reports for withdrawn Applications), as well as individual reports regarding any

Affected Application, simultaneously to FDA and Defendants;

G.     Within ninety (90) days after the Data Integrity Expert has completed all of the

audits required at Paonta Sahib and/or Dewas, whichever is first, Defendants shall submit to

FDA an initial CAOP addressing the internal review findings from such facility and each

Affected Application from any facility audited at that time.  When the Data Integrity Expert

completes all audits required at a subsequent facility, Defendants shall update the CAOP

submitted previously to include information regarding each internal review completed and/or

each Affected Application audited from any facility since submission of the initial CAOP or

since the last update to the CAOP.  The CAOP shall ensure the integrity of data submitted to

FDA.  The CAOP, initially, and as supplemented by each of the CAOP updates, shall be based

on the completed internal review(s), and shall, at minimum, include the following:

1.     For each audited Affected Application:  (a) identification of all untrue

statements; (b) identification of all data irregularities, including a determination as to whether

such data irregularities occur with sufficient frequency and/or are sufficiently similar to

constitute a pattern or practice of data irregularities that call into question the reliability of the

data in the Application; (c) identification of all individuals who were involved in, aware of, or

responsible for untrue statements and/or patterns or practices of data irregularities; and (d)

identification of practices or procedures that contributed to any untrue statements and/or patterns

27

(Para. XVII)

or practices of data irregularities;

        2.      A detailed description of the disposition by Defendants of all recommendations made by the Data Integrity Expert;

        3.      A description of the actions taken and to be taken by Defendants, including time frames, to address and correct all untrue statements and/or patterns or practices of data irregularities identified by FDA and/or discovered by the internal reviews and/or audit;

        4.      Identification of the individuals responsible for addressing and correcting untrue statements and/or patterns or practices of data irregularities;

        5.      A description of a comprehensive ethics and data integrity program that describes standards for employees, procedures for training employees about the program, procedures for regularly evaluating the effectiveness of the training, and procedures to enforce the program; and

        6.      A description of the procedures to monitor the effectiveness of the CAOP and to ensure that Corporate Defendants will manufacture products in continuous compliance with the law and this Decree.

        H.      After Defendants submit the CAOP and updates to the CAOP ("CAOPs") described in paragraph XVII.G, FDA will have sixty (60) days to provide written notification that it has accepted or identified deficiencies in the CAOPs. For each Affected Application identified in the CAOPs to contain data irregularities that occur with sufficient frequency and/or sufficient similarity to constitute a pattern or practice of data irregularities, FDA will evaluate the data to determine whether, in the exercise of its discretion, the Application contains a pattern or practice of data irregularities affecting approval. Any deficiencies identified in the CAOP and a

Case 1:12-md-02409-WGY  Document 678-5  Filed 12/16/13  Page 30 of 59
Case 1:12-cv-00250-JFM  Document 5  Filed 01/26/12  Page 29 of 58
Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 29 of 58
(Para. XVII)

list of any Affected Applications that FDA determines contain a pattern or practice of data

irregularities affecting approval will be provided to Defendants in writing by FDA, together with

a rationale for FDA's conclusions. If deficiencies are identified, the Defendants shall revise the

CAOPs and resubmit the revised CAOPs to FDA, which shall have an additional forty-five (45)

days to accept or identify deficiencies in the revised CAOPs. If Defendants disagree with FDA's

determination that an Affected Application contains a pattern or practice of data irregularities

affecting approval, they shall submit, in writing within twenty (20) days after receiving FDA's

determination, their reasons why FDA's determination is incorrect. FDA will provide

Defendants with a final written determination regarding any disputed Affected Application

within fifteen (15) days after receiving Defendants' statement of disagreement.

     I.     Within thirty (30) days after receiving FDA's final determination that an Affected

Application contains a pattern or practice of data irregularities affecting approval, Corporate

Defendants shall:

     1.     in writing, withdraw all pending Affected Applications that contain any

untrue statements and those Affected Applications that FDA determines contain a pattern or

practice of data irregularities affecting approval, except that Corporate Defendants shall not be

required to withdraw any pending Affected Applications that contain data or other information

generated or developed at Paonta Sahib for which the Data Integrity Expert certifies to FDA in

writing that Corporate Defendants had replaced all untrue statements and/or pattern or practice of

data irregularities in such Affected Application prior to February 25, 2009; and

     2.     request in writing that FDA withdraw approval of all approved Affected

Applications that contain any untrue statements and those Affected Applications that FDA

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 31 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 30 of 58
Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 30 of 58

(Para. XVII)

determines contain a pattern or practice of data irregularities affecting approval, except that

Corporate Defendants shall not be required to withdraw any approved Affected Applications that

contain data or other information generated or developed at Paonta Sahib for which the Data

Integrity Expert certifies to FDA in writing that Corporate Defendants had replaced all untrue

statements and/or pattern or practice of data irregularities in such Affected Application prior to

February 25, 2009.

J.      After Defendants receive written notification from FDA that the CAOP (as

updated, if applicable) is acceptable, Defendants shall implement the CAOP.

K.      Within thirty (30) days after Defendants identify an individual(s) who knowingly

directed or condoned Wrongful Acts, Corporate Defendants shall remove from positions of

authority on matters under FDA's jurisdiction such individual(s) and shall advise FDA, in

writing within fifteen (15) days after the removal, of the identity and position of the person(s)

removed, and the reasons for the removal.

L.      Upon completion of the obligations in paragraphs XVII.A-K, Defendants shall

provide FDA with a written report of the actions taken under this paragraph.

M.      At any time, FDA may begin a Validity Assessment of Corporate Defendants'

Application(s).

N.      With respect to Affected Applications that contain data or other information

generated or developed at Dewas, after FDA has determined that Defendants have fully and

satisfactorily completed all of the requirements in paragraphs XVII.A-E (relating to the Data

Integrity Expert's internal review and audit plans), and the Data Integrity Expert has audited a

specific Affected Application and submitted all audit reports regarding such Affected

30

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 32 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 31 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 31 of 58
(Para. XVII)

Application to FDA under paragraph XVII.F, FDA will determine whether such Affected

Application contains an untrue statement and/or a pattern or practice of data irregularities

affecting approval.  If FDA does not determine that such Affected Application contains an untrue

statement and/or pattern or practice of data irregularities affecting approval:

        1.     For a pending Affected Application, FDA will begin or resume review of

that Affected Application and notify Defendants in writing that the Agency's concerns regarding

the reliability of the data in that pending Affected Application appear to be resolved;

        2.     For an approved Affected Application, FDA will notify Defendants in

writing that the Agency's concerns regarding the reliability of the data in the approved Affected

Application appear to be resolved.

      FDA will provide notification of its determination within sixty (60) days after receiving

the Data Integrity Expert's final report with respect to such Application; however, if there are

more than five (5) final reports on Affected Applications under simultaneous FDA review, the

timeframe for the Agency's response under this paragraph shall increase in increments of ten

(10) days per such Affected Application.  Any determination that FDA's concerns regarding an

Affected Application are not resolved shall include in the notification a rationale for such

determination.  Nothing in this paragraph shall restrict FDA's ability to raise additional data

integrity concerns regarding an Affected Application during the review process.

      O.     With respect to Affected Applications that contain data or other information

generated or developed at Paonta Sahib, after FDA has, based upon its review of Corporate

Defendants' submissions, determined that Defendants appear to have fully and satisfactorily

completed all of the requirements in paragraphs XVII.A-L for all such Affected Applications,

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 33 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 32 of 58

Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 32 of 58
(Para. XVII)

FDA will promptly decide whether it needs to inspect Paonta Sahib to determine whether to

revoke the Application Integrity Policy at such facility. If no inspection is necessary, FDA will

promptly revoke the Application Integrity Policy at Paonta Sahib, notify Defendants in writing of

the revocation, and resume review of all such Affected Applications. If FDA decides an

inspection is necessary, it will notify Defendants of its decision in writing and begin such

inspection within ninety (90) days after making such decision. If FDA's inspection reveals that

Corporate Defendants have fully and satisfactorily implemented all of the requirements in

paragraphs XVII.A-L applicable to Paonta Sahib, FDA will, within ninety (90) days after the

inspection is complete, promptly revoke the Application Integrity Policy at Paonta Sahib, notify

Defendants in writing of the revocation, and resume review of all Affected Applications that

contain data or other information generated or developed at Paonta Sahib. Any determination

that Corporate Defendants have not fully and satisfactorily implemented all of the requirements

in paragraphs XVII.A-L applicable to Paonta Sahib shall include in the notification a rationale

for such determination. Nothing in this paragraph shall restrict FDA's ability to raise additional

data integrity concerns regarding any Affected Application during the review process.

## EXCLUSIONS

XVIII. Notwithstanding paragraphs XVI and XVII, Defendants may continue the

following activities as set forth below. None of the products manufactured under subparagraphs

A-C of this paragraph may be offered for sale or commercially distributed in the United States.

A.    Manufacturing investigational drugs for the sole purpose of conducting clinical

trials under investigational new drug applications or for bioavailability or bioequivalence testing,

provided Defendants comply with all applicable laws and regulations.

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 34 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 33 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 33 of 58
(Para. XVIII)

      B.     Manufacturing limited quantities of drugs that are necessary for the sole purpose

of preparing or supporting an Application.

      C.     Manufacturing products for the sole purpose of conducting non-clinical laboratory

studies or other research and testing that does not involve exposure to human research subjects.

      D.     Distributing in the United States any lawful drugs:  (1) that are manufactured

solely by a third party or parties; and (2) for which Defendants perform no manufacturing (other

than distributing) functions with respect to such drugs.

## ADDITIONAL REQUIREMENTS FOR DEWAS AFFECTED APPLICATIONS

      XIX.     If Defendants have not completed the internal review under paragraph XVII.C at

Dewas and/or audited all Affected Applications that contain data or other information generated

or developed at Dewas before they submit the CAOP and/or updates required under paragraph

XVII.G, Defendants shall, within thirty (30) days after completing the Dewas internal review

and/or auditing an Affected Application(s) that contains data or other information generated or

developed at Dewas, update the CAOP to include information regarding the internal review

and/or Affected Application(s) audited after submission of the initial CAOP or since the last

update to the CAOP.  For each Affected Application identified by the Data Integrity Expert to

contain data irregularities that occur with sufficient frequency and/or sufficient similarity to

constitute a pattern or practice of data irregularities, FDA will evaluate the data to determine

whether, in the exercise of its discretion, such Affected Application contains a pattern or practice

of data irregularities affecting approval.  If Defendants dispute FDA's determination that an

Affected Application contains a pattern or practice of data irregularities affecting approval, they

shall submit, in writing within twenty (20) days of receiving FDA's determination, their reasons

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 35 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 34 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 34 of 58
(Para. XIX)

why FDA's determination is incorrect. FDA will provide Defendants with a final written

determination regarding any disputed Affected Application within fifteen (15) days of receipt of

Defendants' dispute. Within thirty (30) days after receiving an audit showing that an

Application contains any untrue statement or receiving FDA's final determination that an

Application contains a pattern or practice of data irregularities affecting approval, Corporate

Defendants shall: (1) in writing, withdraw such pending Application(s); and/or (2) request in

writing that FDA withdraw approval of such approved Application(s).

Updates of the CAOP under this paragraph shall continue until all audits of Affected

Applications that contain data or other information generated or developed at Dewas are

complete or until all remaining unaudited Affected Applications are withdrawn under paragraph

XX.

### WITHDRAWAL OF UNAUDITED AFFECTED APPLICATIONS

XX.    If, within four (4) years after entry of this Decree, the Data Integrity Expert has

not completed auditing all Affected Applications that contain data or other information generated

or developed at Paonta Sahib and/or Dewas, Corporate Defendants shall withdraw, in writing,

any such unaudited pending Affected Applications, and any such unaudited approved Affected

Applications from such facilities will be deemed to be withdrawn. Corporate Defendants shall

not re-submit any Affected Applications withdrawn under this paragraph, except in full

accordance with paragraph XXVII.

### ADDITIONAL INJUNCTION PROVISION

XXI.    Defendants and each and all of their directors, officers, agents, employees,

representatives, successors, assigns, attorneys, and any and all persons in active concert or

34

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 36 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 35 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 35 of 58
(Para. XXI)

participation with any of them, who have received actual notice of this Decree by personal

service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a) from

directly or indirectly doing or causing to be done, at any Covered Facility or at any other facility

added to this decree through paragraph XXIX, any act that:

     A.    Violates 21 U.S.C. § 331(a) by introducing or delivering for introduction into

interstate commerce, any article of drug that is adulterated within the meaning of 21 U.S.C.

§ 351(a)(2)(B);

     B.    Violates 21 U.S.C. § 331(k) by causing any drug to become adulterated within the

meaning of 21 U.S.C. § 351(a)(2)(B), while such drug is held for sale after shipment in interstate

commerce;

     C.    Violates 21 U.S.C. § 331(d) by introducing into interstate commerce any new

drug that does not comply with 21 U.S.C. § 355; and

     D.    Violates 21 U.S.C. § 331(e) by failing to make reports required under 21 U.S.C.

§ 355(k).

     If, and for as long as, an individual Defendant ceases to be employed by or act on behalf

of Corporate Defendants or any of their subsidiaries, franchises, affiliates and/or "doing business

as" entities, then that individual Defendant shall not be subject to the terms of this Decree except

as to such individual Defendant's act(s) or failure(s) to act under this Decree prior to the time

such individual ceased to be employed by or to act on behalf of Corporate Defendants or their

subsidiaries, franchises, affiliates, and/or "doing business as" entities.

     XXII.    Defendants shall not receive, hold, or distribute any Desquam X Wash products

that do not comply with the requirements and timelines set forth in "Classification of Benzoyl

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 37 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 36 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 36 of 58
(Para. XXII)

Peroxide as Safe and Effective and Revision of Labeling to Drug Facts Format; Topical Acne

Drug Products for Over-The-Counter Human Use" Final Rule ("Final Rule"), 76 Fed. Reg. 9767

(Mar. 4, 2010), and any subsequent amendments thereto.

POST FDA NOTICE CGMP AUDIT PROVISIONS

XXIII.   For the Covered Facilities, within thirty (30) days after Defendants have

received FDA's notice under paragraph XVI.A.6 for a facility, Corporate Defendants shall retain

an independent person (the "CGMP Auditor"), who meets the criteria set forth in, and may be the

same person identified in, paragraph XVI.A.2, and whose consulting agreement shall contain the

provisions identified in paragraph XVI.A.2, who shall inspect such facility no less frequently

than once every six (6) months for a period of no less than one (1) year and annually thereafter

for an additional period of not less than four (4) years.

A.   At the conclusion of each of the audit inspections described in this paragraph, the

CGMP Auditor shall prepare a written audit report ("CGMP audit report") certifying whether

Defendants are in compliance with CGMP Requirements for all drugs that are the subject of an

Application and/or intended to be introduced into interstate commerce and identifying all

deviations therefrom ("CGMP audit report observations"). Beginning with the second audit

report, the CGMP Auditor shall also assess the adequacy of all actions taken by Defendants to

correct all previous CGMP audit report observations, and include this information in the CGMP

audit report. The CGMP audit reports shall be delivered simultaneously to Defendants and FDA,

no later than thirty (30) days after the date each inspection is completed. Defendants shall

maintain the original CGMP audit reports in a separate file at the facility to which the report

pertains and a copy at a Ranbaxy, Inc., office located in the United States, and shall promptly

Case 1:12-md-02409-WGY  Document 678-5  Filed 12/16/13  Page 38 of 59
Case 1:12-cv-00250-JFM  Document 5  Filed 01/26/12  Page 37 of 58

Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 37 of 58
(Para. XXIII)

make the CGMP audit reports available to FDA upon request.

B.      If a CGMP audit report contains any CGMP audit report observations, Defendants

shall, within thirty (30) days after receipt of the CGMP audit report, correct those deviations at

the Covered Facilities, unless FDA notifies Defendants in writing that a shorter time period is

necessary. If, after receiving the CGMP audit report, Defendants believe that correction of the

deviations will take longer than thirty (30) days, Defendants shall, within ten (10) business days

after receipt of the CGMP audit report, propose a schedule for completing corrections.  FDA

will, within ten (10) days after receiving the proposed schedule, review and approve or

disapprove the proposed schedule in writing.  Defendants shall complete all corrections

according to the FDA-approved correction schedule.

C.      Within thirty (30) days after Defendants' receipt of any CGMP audit report,

unless FDA notifies Defendants that a shorter time period is necessary, or within the time period

provided in a correction schedule approved by FDA, the CGMP Auditor shall review the actions

taken by Defendants to correct the CGMP audit report observations.  Within ten (10) business

days after completing that review, the CGMP Auditor shall report in writing to FDA whether

each of the CGMP audit report observations has been fully corrected and, if not, which CGMP

audit report observations remain uncorrected.

<u>POST FDA NOTICE DATA AUDIT PROVISIONS</u>

XXIV.    For Paonta Sahib, within thirty (30) days after Defendants have received FDA's

notice under paragraph XVII.O, and for Dewas, within thirty (30) days after the first time

Defendants receive notice that FDA's concerns regarding the reliability of the data in either a

pending or approved Affected Application appear to be resolved pursuant to paragraph XVII.N.1

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 39 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 38 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 38 of 58
(Para. XXIV)

or 2, Corporate Defendants shall retain an independent person (the "Data Quality Auditor"), who

meets the criteria set forth and may be the same person identified in paragraph XI, and whose

consulting agreement shall contain the provisions identified in paragraph XI, who shall inspect

that facility no less frequently than once every six (6) months for a period of no less than two (2)

years and annually thereafter for an additional period of not less than three (3) years. For Dewas,

audits conducted under this paragraph may exclude Affected Applications that have not yet been

audited by the Data Integrity Expert under paragraph XVII.F. The Data Quality Auditor's audit

of data generated by third parties and included in an Application audited under this paragraph

shall be conducted pursuant to the third party data auditing requirements set forth in paragraph

XIV.B.

      A.     At the conclusion of each of the audit inspections described in this paragraph, the

Data Quality Auditor shall prepare a written audit report ("data quality audit report"): addressing

whether or not Defendants are continuing to ensure the validity of all data developed at the

facility; identifying all Wrongful Acts at the facility ("data quality audit report observations");

identifying all managers in a position to influence data integrity with respect to the submission of

Applications; identifying all Applications that contain untrue statements and/or data

irregularities; and, if data irregularities are found, determining whether they occur with sufficient

frequency and/or are sufficiently similar to constitute a pattern or practice of data irregularities

that call into question the reliability of the data in an Application or other Applications.

Beginning with the second audit report, the Data Quality Auditor shall also assess the adequacy

of all corrective actions taken by Defendants to correct all previous data quality audit report

observations, and shall include this information in the data quality audit report. The data quality

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 40 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 39 of 58

Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 39 of 58
(Para. XXIV)

audit reports shall be delivered simultaneously to Defendants and FDA, no later than thirty (30)

days after the date each inspection is completed. For each Application identified by the Data

Quality Auditor to contain a pattern or practice of data irregularities, FDA will evaluate the data

to determine whether, in the exercise of its discretion, the Application contains a pattern or

practice of data irregularities affecting approval. A list of any Application(s) that FDA

determines contains a pattern or practice of data irregularities affecting approval will be provided

to Defendants in writing by FDA, together with a rationale for FDA's conclusions. If

Defendants disagree with FDA's determination, they shall submit in writing, within twenty (20)

days of receiving FDA's determination, their reasons why FDA's determination is incorrect.

FDA will provide Defendants with a final written determination regarding any disputed

Application within fifteen (15) days of receipt of Defendants' statement of disagreement.

Defendants shall maintain the original data quality audit reports in a separate file at the facility to

which the report pertains and a copy at a Ranbaxy, Inc. office in the United States, and shall

promptly make the data quality audit reports available to FDA upon request.

    B.    Defendants shall, within thirty (30) days after receipt of the data quality audit

report, report to FDA the responsive actions that Defendants are taking to address all data quality

audit report observations. Corporate Defendants shall also, within thirty (30) days after

receiving an audit showing that an Application contains any untrue statement or receiving FDA's

final determination that an Application contains a pattern or practice of data irregularities

affecting approval: (1) in writing, withdraw such pending Application(s); and/or (2) request in

writing that FDA withdraw approval of such approved Application(s).

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 41 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 40 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 40 of 58
(Para. XXIV)

C.      If a data quality audit report contains any additional data quality audit report
observations, Defendants shall, within thirty (30) days after receipt of the data quality audit
report, correct those deviations at all implicated facilities, unless FDA notifies Defendants in
writing that a shorter time period is necessary. If, after receiving the data quality audit report,
Defendants believe that correction of the deviations will take longer than thirty (30) days,
Defendants shall, within ten (10) days after receipt of the data quality audit report, propose a
schedule for completing corrections. FDA will, as it deems appropriate, review and approve or
disapprove the proposed schedule in writing. Defendants shall complete all corrections
according to the approved correction schedule. Within sixty (60) days after Defendants' receipt
of any data quality audit report, unless FDA notifies Defendants that a shorter time period is
necessary, or within the time period provided in a correction schedule approved by FDA, the
Data Quality Auditor shall review the actions taken by Defendants to correct the data quality
audit report observations. Within ten (10) business days after completing that review, the Data
Quality Auditor shall report in writing to FDA whether each of the data quality audit report
observations has been fully corrected and, if not, which data quality audit report observations
remain uncorrected.

<u>GENERAL PROVISIONS</u>

XXV.    After entry of this Decree, Defendants shall retain, and make available for FDA
inspection upon request, all data existing at the time of entry of this Decree or created thereafter
in any pending, approved, or withdrawn Application as follows:

A.      If the Application is pending or has been approved, the data shall be retained and
be provided to FDA upon request for at least two (2) years after the drug product(s) covered by

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 42 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 41 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 41 of 58
(Para. XXV)

the Application ceases to be distributed in the United States, by Corporate Defendants or by

anyone else.

B.      If the Application has been withdrawn, the data shall be retained and be provided

to FDA upon request for at least two (2) years after the Application was withdrawn.

C.      Notwithstanding the provisions in paragraphs XXV.A, if the Application has been

transferred to a third party, Corporate Defendants shall retain a copy of the data only if the

Application is an Affected or Excepted Application.

XXVI.   After entry of this Decree, Defendants shall submit to FDA all adverse drug

experience and post-marketing reports in full compliance with 21 U.S.C. § 355(k) and 21 C.F.R.

§ 310.305 and Part 314.

XXVII.   After entry of this Decree, Defendants shall not submit a new Application for

any drug that was the subject of an Affected Application unless either: (A) the Affected

Application has been withdrawn; (B) for Affected Applications that contain data or other

information generated or developed at Paonta Sahib, FDA has notified Defendants under

paragraph XVII.O that the Agency's concerns regarding the reliability of the data appear to be

resolved; or (C) for Affected Applications that contain data or other information generated or

developed at Dewas, FDA has notified Defendants under paragraph XVII.N that the Agency's

concerns regarding the reliability of the data in the Affected Application for that drug appear to

be resolved. Any new Application for a drug that was the subject of a withdrawn Affected

Application, shall, in addition to undergoing the pre-submission audit and certification set forth

in paragraphs IX.A-C of this Decree, identify the parts of the original Application that remain in

the new Application and, if any, the parts that were found to contain or be affected by untrue

41

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 43 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 42 of 58
Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 42 of 58
(Para. XXVII)

statements and/or a pattern or practice of data irregularities, and include a certification from the

Chief Data Reliability Officer that the new Application does not contain any such data from the

original Application.

XXVIII. If, at any time after entry of this Decree, FDA determines, based on the

results of an inspection, analyses of samples, a report or data prepared or submitted by

Defendants, the expert(s), or the auditor(s), or any other information, that Defendants have failed

to comply with the law or this Decree or that additional corrective actions are necessary to

achieve compliance with the law or this Decree with respect to any of Defendants' products

and/or Applications, and/or the Covered Facilities, and/or any new facilities, FDA may, as and

when it deems necessary, notify Defendants in writing of the noncompliance and order

Defendants to take appropriate corrective action including, but not limited to, ordering

Defendants to immediately take one or more of the following actions:

A. Cease manufacturing all drugs intended for introduction into interstate commerce

and/or importing into the United States any or all drug(s);

B. Recall specified drugs manufactured by Defendants. The recall(s) shall be

initiated within five (5) business days after receiving notice from FDA that a recall is necessary.

Upon written request by FDA, Defendants shall destroy all articles of drugs that are in

Defendants' possession, custody, or control, for which a recall was initiated. Corporate

Defendants shall bear the costs of such recall(s), including the costs of destruction and the cost of

FDA's supervision at the rates prevailing at the time of the recall. Defendants shall be

responsible for ensuring that the destruction is carried out in a manner that complies with all

applicable federal and state environmental laws, and any other applicable federal or state law;

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 43 of 58
(Para. XXVIII)

    C.     Submit additional reports or information to FDA;

    D.     Revise, modify, expand, and/or extend any report(s) or plan(s) prepared or audit

conducted under this Decree, regardless of whether previously accepted or approved by FDA;

    E.     Issue a safety alert; and/or

    F.     Take any other corrective action(s) as FDA, in its discretion, deems necessary to

bring Defendants into compliance with the law and this Decree or to protect the public health.

    XXIX.   If FDA inspects any facilities owned and/or operated by Corporate Defendants

and/or their subsidiaries and/or affiliates, other than the Covered Facilities, and finds a violation

of the Act and/or FDA's regulations, and/or finds that an untrue statement and/or pattern or

practice of data irregularities affecting approval originated at one or more facilities, FDA may

order that such facility or facilities shall thereafter be fully subject to the provisions of this

Decree as though it or they were listed as a Covered Facility in paragraph VII.E when the Decree

was entered, and FDA may order Defendants to take any or all of the actions described in

paragraph XXVIII.

    XXX.   The following process and procedures shall apply when FDA issues an order

under paragraphs XXVIII or XXIX, except as provided in subparagraph D below:

    A.     Unless a different time frame is specified by FDA in its order, within ten (10)

business days after receiving such order, Defendants shall notify FDA in writing either that: (1)

Defendants are undertaking or have undertaken corrective action, in which event Defendants also

shall describe the specific action taken or proposed to be taken and the proposed schedule for

completing the action; or (2) Defendants do not agree with FDA's order. If Defendants notify

FDA that they do not agree with FDA's order, Defendants shall explain in writing the complete

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 45 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 44 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 44 of 58
(Para. XXX)

basis for their disagreement; in so doing, Defendants also may propose specific alternative

actions and specific time frames for achieving FDA's objectives.

     B.    If Defendants notify FDA that they do not agree with FDA's order, FDA will

review Defendants' notification and thereafter, in writing, affirm, modify, or withdraw its order,

as the Agency deems appropriate. If FDA affirms or modifies its order, it shall explain the basis

for its decision in writing. The written notice of affirmation or modification shall constitute final

agency action.

     C.    If FDA affirms or modifies its order, Defendants shall, upon receipt of FDA's

order, immediately implement the order (as modified, if applicable), and if they so choose, bring

the matter before this Court on an expedited basis. Defendants shall continue to diligently

implement FDA's order while the matter is before the Court and unless and until the Court

reverses, vacates, or modifies FDA's order. Any review of FDA's decision under this paragraph

shall be made in accordance with the terms set forth in paragraph XLVI of this Decree.

     D.    The process and procedures set forth in subparagraphs A-C shall not apply to any

order issued pursuant to paragraph XXVIII or XXIX if such order states that, in FDA's

judgment, the matter raises significant public health concerns. In such case, Defendants shall,

upon receipt of such an order, immediately and fully comply with the terms of that order. Should

Defendants seek to challenge any such order, they may petition this Court for relief.

     XXXI.    Any cessation of operations described in paragraphs XXVIII, XXIX, and XXX,

shall continue until Defendants receive written notification from FDA that Defendants appear to

be in compliance with the law and this Decree. Upon Defendants' written request to resume

operations, FDA will promptly determine whether it needs to inspect any of Defendants'

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 46 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 45 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 45 of 58

(Para. XXXI)

facilities to determine Defendants' compliance with the law and this Decree. If FDA determines

that an inspection is necessary, it shall conduct the inspection within one hundred twenty (120)

days after such determination, and, within sixty (60) days following the close of the inspection,

determine whether Defendants appear to be in compliance with the law and this Decree and, if

so, FDA will issue to Defendants a written notification permitting resumption of operations. If

no inspection is necessary, FDA will decide within forty-five (45) days after receipt of the

request whether Defendants appear to be in compliance and, if so, issue to Defendants a written

notification permitting resumption of operations.

XXXII.    Representatives of FDA shall be permitted, without prior notice and as and

when FDA deems necessary, to make inspections of any of the Covered Facilities, collect

samples, and, without prior notice, take any other measures necessary to monitor and ensure

continuing compliance with the terms of this Decree. During such inspections, FDA

representatives shall be permitted: access to Defendants' facilities and other place(s) of business

including, but not limited to, all buildings, equipment, in-process or unfinished and finished

materials and products, containers, labeling, and other promotional material therein; to take

photographs and make video recordings; to take samples of Defendants' finished and unfinished

materials and products, containers, and labeling; to interview employees; and to examine and

copy all records relating to the receipt, development, and manufacturing of any and all drugs.

The inspections shall be permitted upon presentation of a copy of this Decree and appropriate

credentials. The inspection authority granted by this Decree is separate from, and in addition to,

the authority to conduct inspections under the Act, 21 U.S.C. § 374.

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 47 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 46 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 46 of 58

XXXIII.   Corporate Defendants shall reimburse FDA for the costs of all FDA

inspections, sampling, testing, travel, time spent traveling, reviewing documents, consulting with

Defendants' experts and/or auditors, supervising this Decree, and subsistence expenses that FDA

deems necessary to evaluate Defendants' compliance with this Decree.  The costs of such

inspections and other activities shall be borne by Corporate Defendants at the prevailing rates in

effect at the time the costs are incurred.  As of the date that this Decree is signed by the parties,

these rates are: $87.57 per hour and fraction thereof per representative for inspection work;

$104.96 per hour or fraction thereof per representative for analytical or review work; $.51 per

mile for travel expenses by automobile; government rate or the equivalent for travel by air or

other means; and the published government per diem rate or the equivalent for the areas in which

the inspections are performed per-day, per-representative for subsistence expenses, where

necessary.  In the event that the standard rates applicable to FDA supervision of court-ordered

compliance are modified, these rates shall be increased or decreased without further order of the

Court.

XXXIV.   Within twenty (20) days after entry of this Decree, Corporate Defendants

shall post a copy of this Decree on a bulletin board in the employee common areas at the

Covered Facilities.  Corporate Defendants shall ensure that the Decree remains posted for a

period of at least twelve (12) months at each Covered Facility.

XXXV.   Within fifteen (15) days after the entry of this Decree, Corporate Defendants

shall provide a copy of the Decree, by personal service, personal delivery via electronic mail

with acknowledgment of receipt, return receipt email, or certified mail (restricted delivery, return

receipt requested), to each of their officers, directors, agents, representatives, successors, assigns,

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 48 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 47 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 47 of 58
(Para. XXXV)

attorneys, and to those employees at the Covered Facilities and all other persons no matter where

they are located who participate with Corporate Defendants in the submission of Applications for

drugs from the Covered Facilities and/or their manufacture at the Covered Facilities of drugs that

are the subject of an Application and/or are intended to be introduced into interstate commerce

(collectively referred to as "Associated Persons").  Within thirty (30) days after the date of entry

of this Decree, Corporate Defendants shall provide to FDA an affidavit of compliance, signed by

a person with personal knowledge of the facts, stating the fact and manner of compliance with

the provisions of this paragraph and identifying the names, addresses, and positions of all

persons who have received a copy of this Decree.

XXXVI.    In the event that any of the Defendants becomes associated with any

additional Associated Person(s) with respect to Defendants' activities relating in any way to

Corporate Defendants' submission of Applications for drugs from the Covered Facilities and/or

their manufacture of drugs at the Covered Facilities that are the subject of an Application and/or

are intended to be introduced into interstate commerce at any time after entry of this Decree,

Corporate Defendants shall, within twenty (20) days after such association, provide a copy of

this Decree, by personal service, personal delivery via electronic mail with acknowledgment of

receipt, return receipt email, or certified mail (restricted delivery, return receipt requested), to

such Associated Person(s).  Corporate Defendants shall, on a quarterly basis, furnish FDA with

an affidavit of compliance identifying the names, addresses, and positions of all new Associated

Persons who receive a copy of the Decree.

XXXVII.    Corporate Defendants shall notify FDA in writing at least fifteen (15) days

before any:  change in ownership, character, or name of their businesses, including

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 49 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 48 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 48 of 58
(Para. XXXVII)

incorporation, reorganization, bankruptcy, assignment, or sale resulting in the emergence of a

successor business or corporation; creation or dissolution of subsidiaries or any other change in

the corporate structure or identity of any Corporate Defendant; sale, assignment, or any transfer

of ownership of an Application; purchase or sale of any new facilities; or sale or assignment of

any business assets, such as buildings, equipment, or inventory, that may affect obligations

arising out of this Decree.  Corporate Defendants shall provide a copy of this Decree to any

potential successor or assign at least ten (10) days before any sale, assignment, or transfer of any

kind.  Corporate Defendants shall furnish FDA with an affidavit of compliance with this

paragraph no later than ten (10) days prior to such assignment or change in ownership.

XXXVIII.   If Defendants fail to comply with any provision of the law or this Decree at

any Covered Facility and/or with respect to any Affected Application, then, on motion of the

United States in this proceeding, Corporate Defendants shall pay to the United States of

America:  fifteen thousand dollars ($15,000) in liquidated damages for each day such violation

continues and an additional sum of fifteen thousand dollars ($15,000) in liquidated damages for

each violation of the law and this Decree (e.g., if two violations occur for two business days, the

liquidated damages shall be $60,000).  In addition, should Defendants distribute from the

Covered Facilities any drug after entry of this Decree that violates the law or this Decree,

Corporate Defendants shall, in addition to the foregoing, also pay upon motion of the United

States as liquidated damages a sum equal to two times the retail value of such drug(s).  The

amount of liquidated damages imposed under this paragraph shall not exceed ten (10) million

dollars ($10,000,000.00) in any one calendar year.  The remedy in this paragraph shall be in

addition to any other remedies available  to the United States under law or this Decree.

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 50 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 49 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 49 of 58

XXXIX.    In addition, if, after entry of this Decree, Defendants submit an untrue statement in connection with any Application, then, on motion of the United States in this proceeding, Corporate Defendants shall pay to the United States of America up to three million dollars ($3,000,000) in liquidated damages for each such statement. The amount of liquidated damages imposed under this paragraph shall not exceed thirty million dollars ($30,000,000.00) in any one calendar year. The remedy in this paragraph shall be in addition to any other remedies available to the United States under law or this Decree.

XL.    If FDA determines that an untrue statement appears in any Application(s) submitted by Defendants after entry of this Decree and for which Corporate Defendants may be eligible for 180-day exclusivity under 21 U.S.C. § 355(j)(5)(B)(iv), Corporate Defendants shall, upon written notification from FDA, be deemed to have lost any claim to 180-day exclusivity for such Application(s), and Corporate Defendants shall waive all rights to sue FDA regarding any and all claims to 180-day exclusivity for such Application(s). FDA shall halt its review of any such Application(s) and Corporate Defendants shall, in writing, withdraw such Application(s) from FDA consideration for approval. Any new Application for a drug that was the subject of an Application withdrawn under this paragraph shall, in addition to undergoing the pre-submission audit and certification set forth in paragraphs IX.A-C of this Decree, identify the parts of the original Application that were found to contain or be affected by untrue statements and include a certification from the Chief Data Reliability Officer that the new Application does not contain any such data or information from the original Application. The remedy in this paragraph shall be in addition to any other remedies available to the United States under law or this Decree.

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 51 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 50 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 50 of 58

XLI.   If any deadline in this Decree falls on a weekend or federal holiday, the deadline shall be continued to the next business day.

XLII.   The parties may at any time petition each other in writing to modify any deadline provided herein, and if the parties mutually agree in writing to modify a deadline, such extension may be granted without seeking leave of Court.

XLIII.   Notwithstanding any other provision of this Decree, Corporate Defendants may submit and FDA may review and approve, if appropriate, the following submissions for drugs in commercial distribution in the United States:  (a) supplements for class labeling, or changes that enhance the labeling or are protective in nature; (b) supplements for changes for post-approval applications that do not require pre-approval, such as "changes being effected" supplements; (c) annual reports; and (d) adverse experience/event reports.

XLIV.   In the event Defendants replace any third party expert required under this Decree, Defendants shall notify FDA in writing of any such successor and Defendants' reasons for replacing the expert within ten (10) business days after such replacement.  In satisfying the requirements of this Decree, any third party expert may review the previous expert's work, and refer to such work to satisfy the requirements of the Decree; however, when such work is referenced by the new expert, he or she shall identify the specific prior work referenced.

XLV.   Corporate Defendants understand that FDA may need to postpone inspecting Corporate Defendants' facilities located in India if safety or security concerns warrant such postponement.  If such need arises, FDA will provide Corporate Defendants with written notice within five (5) days of making such postponement decision.

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 52 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 51 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 51 of 58

XLVI.   Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final.  All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, if contested, shall be reviewed by this Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A).  Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time of the decision. No discovery shall be taken by either party.

XLVII.   Should the United States of America bring, and prevail in, a contempt action to enforce the terms of this Decree, Corporate Defendants agree to pay all attorneys' fees (including overhead), travel expenses incurred by attorneys and witnesses, court costs, expert witness fees, and investigational and analytical expenses incurred in bringing such action.

XLVIII.   Unless otherwise specified, all notifications, certifications, reports, correspondence, and other communications to FDA required by the terms of this Decree shall be addressed to the Director, Office of Compliance, CDER, Building 51, Room 5270, 10903 New Hampshire Ave., Silver Spring, MD  20993.  Unless otherwise specified, all notifications, certifications, reports, correspondence, and other communications to Defendants required by the terms of this Decree shall be addressed to Mr. Arun Sawhney, CEO and Managing Director, Ranbaxy Laboratories Limited, Plot No. 90, Sector 32, Gurgaon – 122001, with copies to Mr. Dale Adkisson, Ranbaxy Laboratories Limited, 77B  IFFCO Road, Sector 18, Udyog Vihar Industrial Area, Gurgaon, 122015, India, and to Lavesh Samtani, Esq., Vice President, Legal-Americas and Venkatachalam Krishnan, Ranbaxy, Inc., 600 College Road East, Suite 2100, Princeton, NJ 08540.

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 53 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 52 of 58
Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 52 of 58

XLIX.   If Defendants have maintained at the Covered Facilities a state of continuous compliance with the law and this Decree for at least sixty (60) months after satisfying all of their obligations under paragraphs XVI and XVII, Defendants may petition this Court for relief from this Decree, and the United States will not oppose such petition.

L.   In all instances where FDA is required to provide written notification to Defendants under this Decree, FDA's silence shall not be construed as a substitute for written notification.

LI.   Notwithstanding FDA's February 25, 2009 letter placing Paonta Sahib and Batamandi on the Application Integrity Policy (AIP), the provisions of this Decree with respect to such facilities constitute the full requirements that Corporate Defendants must satisfy to address FDA's concerns set forth in its February 25, 2009 AIP letter.

LII.   This Court retains jurisdiction of this action and the parties thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

IT IS SO ORDERED, this _26th_ day of _Jan_____, 2011.

_____
UNITED STATES DISTRICT JUDGE

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 JAN 26  A 11: 51

CLERK'S OFFICE
AT BALTIMORE

BY____

52

Case 1:12-md-02409-WGY  Document 678-5  Filed 12/16/13  Page 54 of 59
Case 1:12-cv-00250-JFM  Document 5  Filed 01/26/12  Page 53 of 58

Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 53 of 58

The undersigned hereby consent to the entry of the foregoing Decree:

FOR DEFENDANTS:


CARMEN SHEPARD
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036-5802
Counsel for RANBAXY LABORATORIES, LTD. and
RANBAXY, INC.


KATE C. BEARDSLEY
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036-5802
Counsel for RANBAXY LABORATORIES, LTD. and
RANBAXY, INC.


DALE ADKISSON, individually, Senior Vice
President, Head Global Quality, Ranbaxy Laboratories,
Ltd.


PHILIP KATZ
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Counsel for DALE ADKISSON

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 55 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 54 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 54 of 58

The undersigned hereby consent to the entry of the foregoing Decree:

FOR DEFENDANTS:

_____

CARMEN SHEPARD
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036-5802
Counsel for RANBAXY LABORATORIES, LTD. and
RANBAXY, INC.

_____

KATE C. BEARDSLEY
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036-5802
Counsel for RANBAXY LABORATORIES, LTD. and
RANBAXY, INC.

_____

DALE ADKISSON, individually, Senior Vice
President, Head Global Quality, Ranbaxy Laboratories,
Ltd.

_____

PHILIP KATZ
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Counsel for DALE ADKISSON

53

Case 1:12-md-02409-WGY  Document 678-5  Filed 12/16/13  Page 56 of 59
Case 1:12-cv-00250-JFM  Document 5  Filed 01/26/12  Page 55 of 58

Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 55 of 58

_____

ARUN SAWHNEY, individually, Chief Executive
Officer and Managing Director, Ranbaxy Laboratories,
Ltd.

_____

ROBERT P. BRADY
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Counsel for ARUN SAWHNEY

_____

VENKATACHALAM KRISHNAN, individually,
Regional Director Americas

_____

DAVID L. ROSEN
Foley & Lardner LLP
3000 K Street, N.W.
Suite 600
Washington, DC 20007-5109
Counsel for VENKATACHALAM KRISHNAN

54

Case 1:12-md-02409-WGY  Document 678-5  Filed 12/16/13  Page 57 of 59
Case 1:12-cv-00250-JFM  Document 5  Filed 01/26/12  Page 56 of 58

Case 1:12-cv-00250-JFM  Document 2  Filed 01/25/12  Page 56 of 58

_____

ARUN SAWHNEY, individually, Chief Executive
Officer and Managing Director, Ranbaxy Laboratories,
Ltd.


_____

ROBERT P. BRADY
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Counsel for ARUN SAWHNEY


_____

VENKATACHALAM KRISHNAN, individually,
Regional Director Americas


_____

DAVID L. ROSEN
Foley & Lardner LLP
3000 K Street, N.W.
Suite 600
Washington, DC 20007-5109
Counsel for VENKATACHALAM KRISHNAN

54

Case 1:12-md-02409-WGY   Document 678-5   Filed 12/16/13   Page 58 of 59
Case 1:12-cv-00250-JFM   Document 5   Filed 01/26/12   Page 57 of 58

Case 1:12-cv-00250-JFM   Document 2   Filed 01/25/12   Page 57 of 58

_____

ARUN SAWHNEY, individually, Chief Executive
Officer and Managing Director, Ranbaxy Laboratories,
Ltd.


_____

ROBERT P. BRADY
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Counsel for ARUN SAWHNEY


_____

VENKATACHALAM KRISHNAN, individually,
Regional Director Americas


_____

DAVID L. ROSEN
Foley & Lardner LLP
3000 K Street, N.W.
Suite 600
Washington, DC 20007-5109
Counsel for VENKATACHALAM KRISHNAN


54                              Error! Unknown document property name.

Case 1:12-md-02409-WGY Document 678-5 Filed 12/16/13 Page 59 of 59
Case 1:12-cv-00250-JFM Document 5 Filed 01/26/12 Page 58 of 58

Case 1:12-cv-00250-JFM Document 2 Filed 01/25/12 Page 58 of 58

FOR PLAINTIFF:

OF COUNSEL:

DAVID J. HOROWITZ
Deputy General Counsel

ELIZABETH H. DICKINSON
Acting Chief Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

MARCI B. NORTON
Senior Counsel
U.S. Dept. of Health & Human
   Services
Office of the General Counsel
Food and Drug Division
White Oak 31 Room 4510
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Telephone: (301) 796-8580
Facsimile: (301) 847-8637
marci.norton@fda.hhs.gov

TONY WEST
Assistant Attorney General
Civil Division
United States Department of Justice

ROD J. ROSENSTEIN
United States Attorney
District of Maryland

By:

STUART A. BERMAN
Assistant U.S. Attorney
U.S. Courthouse, Suite 400
6500 Cherrywood Lane
Greenbelt, Maryland 20770
(301) 344-4433

MAAME EWUSI-MENSAH FRIMPONG
Acting Deputy Assistant Attorney General
Civil Division
United States Department of Justice

MICHAEL BLUME
Director
Consumer Protection Branch

ALLAN GORDUS
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044
(202) 307-1862

55