## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409<br><br>Civil Action No. 1:12-md-02409 |
| This Document Relates To:<br><br>All Direct Purchaser Class Actions<br>All End-Payor Class Actions | |

**DIRECT PURCHASER AND END-PAYOR CLASS PLAINTIFFS'
OPPOSITION TO ASTRAZENECA AND RANBAXY DEFENDANTS' MOTION TO
EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT MARTHA BENNETT (DKT. 584)**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................................1

II. FACTS .........................................................................................................................................1

III. ARGUMENT ..............................................................................................................................5

    A.  Courts in the First Circuit acknowledge that unique circumstance of the death of an expert presents good cause for substitution of a new expert on the same issues opined upon by a prior expert under such circumstances. ..............5

    B.  Courts in other jurisdictions permit the substitution of a new expert on the same issues opined upon by a prior expert under circumstances such as the passing of an expert before a deposition or trial. ......................................................6

    C.  The Bennett report should not be stricken and class plaintiffs should be afforded a brief period of time to determine if they will substitute a new expert to adopt or otherwise opine on the issues addressed in the Bennett report and provide the expert for a deposition. ........................................................7

IV. CONCLUSION............................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

*Barkan v. Dunkin' Donuts, Inc.*,
    2009 U.S. Dist. LEXIS 84353 (D.R.I. May 26, 2009) ..........................................................5, 6

*Folks v. State Farm Mut. Auto. Ins. Co.*,
    2012 U.S. Dist. LEXIS 135264 (D. Colo. Sept. 21, 2012) ......................................................6

*Howard v. Securitas Sec. Servs.*,
    2011 U.S. Dist. LEXIS 67435 (N.D. Ill. June 23, 2011) .....................................................6, 7

*Morel v. Daimler-Chrysler Corp.*,
    259 F.R.D. 17 (D.P.R. 2009) ...............................................................................................5

*Whiteside v. State Farm Fire & Cas. Co.*,
    2011 U.S. Dist. LEXIS 123978 (E.D. Mich. Oct. 26, 2011) ...................................................6

**OTHER AUTHORITIES**

Rule 26 ........................................................................................................................................5

## I.   INTRODUCTION

There are few, if any, exigencies that are beyond prediction as the personal and professional loss of an expert due to her passing away.  After the close of discovery in this case, rebuttal expert for the direct purchaser and end-payor class plaintiffs, Martha Bennett ("Ms. Bennett"), passed away on December 7, 2013.  Given these circumstances, counsel for the direct purchaser and end-payor class (collectively "class plaintiffs") asked defendants to withdraw their motion seeking to strike the October 25, 2013 expert rebuttal report of Ms. Bennett ("Bennett report") on the grounds that she had not been made available for her deposition due to her ill health.  Defendants have not done so.

The class plaintiffs thus submit this opposition.  Further, the class plaintiffs hereby offer to determine by January 17, 2014 whether they will substitute an expert solely to address the rebuttal issues on which Ms. Bennett opined in her report by adopting the report and/or supplementing it.  Upon determining that they seek to do so, the class plaintiffs will serve a supplemental report by that date and provide the expert for a deposition.

## II.   FACTS

On August 23, 2013, the class plaintiffs served 13 expert reports addressing complex areas of applied microeconomics, pharmacoeconomics, pharmaceutical and antitrust market dynamics, patent practice, clinical science of esomeprazole (Nexium), FDA approval of generic products, and generic drug manufacturing.  The class plaintiffs' reports covered all aspects of their case-in-chief, and to some extent also anticipated matters on which the defendants have the burden.  On September 30, 2013, the defendants served 19 expert reports.  These reports, too, were extensive in breadth.

On October 25, 2013, the class plaintiffs served rebuttal reports, including two rebuttals from two new experts, one of which was the rebuttal report of Ms. Martha Bennett.  The class

1

plaintiffs subsequently proffered deposition dates for their experts; however, scheduling issues related to a Ms. Bennett's health initially delayed the provision of deposition dates for Ms. Bennett.  The defendants' position at first was that they would not agree to her deposition, preferring instead to press a motion to strike without it.[1]  The defendants later changed this position and requested dates for her depositions.  Subsequently, and by agreement, the parties scheduled Ms. Bennett's deposition for December 5, 2013.

On December 2, 2013, class plaintiffs' counsel learned from Ms. Bennett that she was too ill to attend her deposition on December 5, 2013.  Twice that day, counsel e-mailed her asking that she inform them when she feels better so that they can reschedule her deposition.  On that same day, class plaintiffs' counsel also promptly called and notified defendant Ranbaxy's counsel that Ms. Bennett's serious health issues made it impossible for her to attend her deposition on December 5 and said that he would get back to her and the other defendants.

On December 3, 2013, counsel for defendants DRL and Ranbaxy inquired about Ms. Bennett's deposition, and class plaintiffs' counsel responded that he did not have additional information.

On December 4, 2013, Ranbaxy counsel again inquired by e-mail about Ms. Bennett's deposition, and class plaintiffs' counsel, having no additional information from Ms. Bennett, responded that "Plaintiffs will get back to you shortly."[2]

---

[1]  Indeed, defendants first moved to strike the Bennett rebuttal report (Dkt. 471) on the grounds that it was untimely and was not appropriate rebuttal and this Court denied that motion on November 8, 2013 (Dkt. 493).

[2]  *See* Declaration of Thomas M. Sobol ("Sobol Decl."), Exhibit 1 (December 4, 2013 e-mails between Chris Letter and Danielle R. Foley).

On December 5, 2013, Ranbaxy counsel again sought by e-mail information regarding Ms. Bennett, and class plaintiffs' counsel responded that they would get back to the defendants on Friday, December 6, 2013.[3]

On December 6, 2013, class plaintiffs' counsel received a letter from Ranbaxy's counsel again seeking information and suggesting that defendants' counsel would "need to address this issue with the Court in fairly short order."  Class plaintiffs' counsel immediately responded by e-mail to all defendants' counsel that "We are working on the issue of Ms. B[ennett]'s serious health issues.  The only thing you should assume is that we will, as we have indicated, get back to you soon (and hopefully by Monday).  I would hope you would understand that a person as seriously ill as she is cannot turn around a response as quickly as you may desire."[4]

During the following days, class plaintiffs' counsel diligently sought to address the circumstances and made numerous attempts, but was unable to reach Ms. Bennett.  Class plaintiff's counsel informed Ranbaxy's counsel of this in a letter on December 10, 2013.  In that letter, class plaintiffs' counsel explained, "[o]utside of our tremendous concern for the health and wellbeing of Ms. Bennett, we are cognizant of the upcoming deadlines in this case. We fully intend to make sure that [d]efendants' ability to depose Ms. Bennett prior to trial will be preserved."  Class plaintiffs' counsel also suggested that "[i]f it eventually becomes the case that Ms. Bennett's medical condition will prevent the [d]efendants from taking her deposition within a reasonable period of time, the parties will act accordingly.  In that event, and consistent with the current state of the law, [p]laintiffs will seek to have Cheryl Blume, Ph.D. adopt Ms. Bennett's rebuttal report for trial. As you know, Dr. Blume was cross-examined by the

---

[3]  *See id.* (December 5, 2013 e-mails between Chris Letter and Danielle R. Foley).

[4]  *See* Sobol Decl., Exhibit 2 (December 6, 2013 letter from Danielle R. Foley to Thomas M. Sobol); *id.*, Exhibit 3 (December 6, 2013 e-mail from Thomas M. Sobol to Danielle R. Foley and other counsel of record)

[d]efendants regarding Ms. Bennett's opinions." The letter concluded that "At this point, the [p]laintiffs are not in a position where we can make a projection about when Ms. Bennett's condition will improve such that she could be deposed. We will keep you informed when we hear back from Ms. Bennett."[5] Defendants' counsel filed the instant motion this same day.

The next day, December 11, 2013, Ms. Bennett's executor contacted class plaintiffs' counsel informing them that Ms Bennett had passed away on December 7, 2013. Class plaintiffs' counsel informed AstraZeneca counsel of this in person and asked if defendants would consider withdrawing their motion to strike her report so that the parties could confer and address the issue constructively. Class plaintiffs' counsel also promptly informed all defendants' counsel in an e-mail that day stating, "We are assessing the situation and will get back to you."[6]

On December 19, 2013, AstraZeneca's counsel wrote a letter to class plaintiffs' counsel stating that defendants would oppose Dr. Blume's adoption of Ms. Bennett's report and responding that "AstraZeneca and Ranbaxy will withdraw the motion to strike Ms. Bennett's report when Plaintiffs confirm in writing that they are withdrawing her report."[7] Plaintiffs' counsel responded in an e-mail seeking time to respond to this motion until January 9, 2013 and defendants' counsel agreed that January 9 was the due date for a response.[8]

---

[5] *See* Sobol Decl., Exhibit 4 (December 10, 2013 letter from Chris Letter to Danielle R. Foley).

[6] *See* Sobol Decl., Exhibit 5 (December 11, 2013 e-mail from Kristen Johnson Parker to counsel of record).

[7] *See* Sobol Decl., Exhibit 6 (December 19, 2013 letter from Andrew Lazerow to Chris Letter).

[8] *See* Sobol Decl., Exhibit 7 (December 19 and 20, 2013 e-mails between Andrew Lazerow and Thomas M. Sobol).

4

### III.     ARGUMENT

**A.     Courts in the First Circuit acknowledge that unique circumstance of the death of an expert presents good cause for substitution of a new expert on the same issues opined upon by a prior expert under such circumstances.**

In *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17 (D.P.R. 2009), defendant moved to substitute a new, previously unidentified expert for its original liability defense expert who required surgery for pancreatic cancer and subsequently died after submitting an expert report and being deposed by plaintiffs.  Plaintiffs challenged the motion, brought two years after the close of discovery, based on defendant's failure to timely disclose the identity of the new expert in accordance with Rule 26.[9]  Though the disclosure of the new expert was after the close of expert discovery, the court allowed the substitution, explaining that "[d]eath of an expert witness falls squarely within the category of circumstances that require a late disclosure."[10]  In so deciding, the court observed that because the new expert would testify only on the same topics as the deceased expert, and as long as there is was no "meaningful change in testimony," the opposing party would not be prejudiced.[11]

In another case from the First Circuit, *Barkan v. Dunkin' Donuts, Inc.*, 2009 U.S. Dist. LEXIS 84353 (D.R.I. May 26, 2009), plaintiffs moved to designate a substitute damages expert after the original damages expert died after submitting his expert report and being deposed by defendants.  Plaintiffs represented that the new, previously undisclosed, expert would rely on the original expert's report and would not introduce new theories or methodologies for calculating

---

[9]  *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 19-20 (D.P.R. 2009).

[10]  *Id.* at 20.

[11]  *Id.* at 21 (citation omitted).  The Court also rejected plaintiffs' request for a requirement that the substitute expert adopt the original expert's report and deposition testimony in their entirety.  The Court noted that no such requirement exists in the First Circuit and that the new expert was free to express his own opinions however he wished, so long as "he address[es] the same subject matter as [the original expert] without meaningful changes."  *Id.* at 22.

5

damages, while Defendants argued that the new expert was actually a veiled attempt by Plaintiffs to change the original expert's opinions.[12] The Court allowed the substitution, concluding that "the unique circumstance of the death of an expert presents good cause for substitution."[13] Plaintiffs were instructed to produce the new expert's report and to make the new expert available for deposition at later dates. Defendants were also granted the opportunity to file a motion for leave to designate a new rebuttal expert.[14]

**B.     Courts in other jurisdictions permit the substitution of a new expert on the same issues opined upon by a prior expert under circumstances such as the passing of an expert before a deposition or trial.**

Other courts have also dealt with the issue of an expert who becomes unavailable for deposition or trial due to illness or death in similar fashion.[15] In *Howard v. Securitas Sec. Servs.*, 2011 U.S. Dist. LEXIS 67435 (N.D. Ill. June 23, 2011), plaintiffs moved to substitute an expert after the original expert's report was submitted because the original expert had been diagnosed with leukemia and was receiving treatment for related health complications.[16] Over defendant's objection, the court found that the original expert's "on-going efforts to recover from a serious threat to his health provides substantial justification" for substitution.[17] As in cases from the

---

[12] *Barkan v. Dunkin' Donuts, Inc.*, 2009 U.S. Dist. LEXIS 84353 at *33-*34 (D.R.I. May 26, 2009).

[13] *Id.* at *34.

[14] *Id.*

[15] *See, e.g.*, *Folks v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist. LEXIS 135264 at *3 (D. Colo. Sept. 21, 2012) (substitution permitted where expert was unable to testify at trial due to hospitalization); *Whiteside v. State Farm Fire & Cas. Co.*, 2011 U.S. Dist. LEXIS 123978 at *4 (E.D. Mich. Oct. 26, 2011) (substitution permitted where expert was unavailable to testify at trial due to his suffering serious motorcycle accident injuries).

[16] *Howard v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 67435 at *2-3 (N.D. Ill. June 23, 2011).

[17] *Id.* at 3 (citing *Torres v. Mactac Trading Corp.*, 1998 U.S. Dist. LEXIS 14305 (N.D. Ill. Sept. 4, 1998) (allowing expert substitution where original expert diagnosed with leukemia)).

First Circiut described above, plaintiffs were granted permission to substitute a new expert, who had prepared a new report, and defendant was given the opportunity to depose the new expert.[18]

**C.     The Bennett report should not be stricken and class plaintiffs should be afforded a brief period of time to determine if they will substitute a new expert to adopt or otherwise opine on the issues addressed in the Bennett report and provide the expert for a deposition.**

The death of Ms. Bennett constitutes a substantial justification for the substitution of another expert regarding the issues about which she opined in her report.  The class plaintiffs have, at every turn, acted in good faith to keep the defendants informed of Ms. Bennett's health and, certainly, they could not predict the timing, effects or outcome of her health.  As courts in the First Circuit as well as other jurisdictions have noted repeatedly, the death of an expert prior to deposition or trial is a "substantial justification" for the substitution of a new expert regarding the issues about which the expert opined in her report.  As long as a new expert is limited to the issues set forth in the deceased expert's report, there is no prejudice to the opposing party.[19]  Here, defendants have had Ms. Bennett's report for two and a half months and with nearly two months until trial, if class plaintiffs shortly determine whether to substitute a new expert to opine on the same issues, defendants can depose the expert and prepare for cross examination at trial.

Under the circumstances and governing law set forth above, defendants will not be prejudiced by class plaintiffs determining by January 17, 2013 whether they will substitute a new expert.

---

[18] The court echoed the First Circuit's opinion that the substitute expert is "not normally required to simply adopt the prior expert's conclusions verbatim," but is instead limited to reporting and testifying on subject matter covered by the prior expert. *Id.* at *4 (quoting *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 103744, at *2-*3 (N.D. Ind. Sept. 30, 2010)).

[19] *See* cases discussed, *supra*, at pp. 5-7.

## IV.   CONCLUSION

For the reasons set forth above, the AstraZeneca and Ranbaxy defendants' motion should be denied.  The class plaintiffs offer to determine by January 17, 2014 whether they will substitute another expert for Ms. Bennett who may adopt the Bennett report and/or supplement the Bennett report, limited to the same issues that are set forth in the Bennett report.  If such as determination is made to do so, the class plaintiffs will serve a a supplemental report limited to the issues addressed by Ms. Bennett's report and make the expert available for a deposition.

Dated:  January 9, 2014                              Respectfully submitted,

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Donna M. Evans, BBO No. 554613
Kristen Johnson Parker, BBO No. 667261
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel:  (617) 482-3700
Fax:  (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
donnae@hbsslaw.com
kristenp@hbsslaw.com

*Liaison Counsel and Co-lead Counsel for the Direct Purchaser Class*

David F. Sorensen
Daniel Simons
Caitlin Coslett
Nicholas Urban
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
dsorensen@bm.net
dsimons@bm.net
ccoslett@bm.net

Bruce E. Gerstein
Joseph Opper
Elena Chan
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Tel:  (212) 398-0055
Fax:  (212) 764-6620
bgerstein@garvingerstein.com
jopper@garwingerstein.com
echan@garwingerstein.com
egerstein@garwingerstein.com

*Co-lead Counsel for the Direct Purchaser Class*

Glen DeValerio (BBO #122010)
BERMAN DeVALERIO
One Liberty Square
Boston, MA  02109
Tel: (617) 542-8300
Fax: (617) 542-1194
gdevalerio@bermandevalerio.com

Todd A. Seaver (BBO #645874)
BERMAN DeVALERIO
One California Street, Suite 900 San Francisco, CA  94111
Tel:  (415) 433-3200
Fax:  (415) 433-6382
tseaver@bermandevalerio.com

*Liaison Counsel for the End-Payor Class*

Steve D. Shadowen
HILLIARD & SHADOWEN LLC
39 West Main Street
Mechanicsburg, PA 17055
Tel: (855) 344-3298
steve@hilliardshadowenlaw.com

Anne Fornecker
Daniel Gonzales
HILLIARD & SHADOWEN LLC

9

919 Congress Ave., Suite 1325
Austin, TX 78701
Tel: (512) 851-8990
anne@hilliardshadowenlaw.com
daniel@hilliardshadowenlaw.com

Kenneth A. Wexler
Bethany R. Turke
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com
brt@wexlerwallace.com
jnb@wexlerwallace.com

J. Douglas Richards
George Farah
Sharon K. Robertson
Hiba Hafiz
COHEN MILSTEIN SELLERS & TOLL, PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
drichards@cohenmilstein.com
srobertson@cohenmilstein.com

Jayne A. Goldstein
POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
1792 Bell Tower Lane
Suite 203
Weston, FL 33326
Tel: 954-315-3454
Fax: 954-315-3455
jagoldstein@pomlaw.com

*Co-Lead Counsel for the End-Payor Class*

**CERTIFICATE OF SERVICE**

      I, Thomas M. Sobol, hereby certify that a copy of the foregoing document was served via e-mail on all counsel of record on January 9, 2014.

*/s/ Thomas M. Sobol*
Thomas M. Sobol