**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409 |
| | Civil Action No. 1:12-md-02409 |
| This Document Relates To:<br><br>All Direct Purchaser Class Actions<br>All Indirect Purchaser Class Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER AND END-PAYOR CLASS PLAINTIFFS' MOTION FOR LIVE TRIAL TESTIMONY VIA <u>CONTEMPORANEOUS TRANSMISSION</u>**

**I.      INTRODUCTION**

Pursuant to Rules 43 and 45 of the Federal Rules of Civil Procedure, the class plaintiffs

seek an order directing witnesses not appearing in person for trial before the jury in Boston to

appear at trial for the jury by contemporaneous transmission from a remote location.  A proposed

protocol and procedure for such contemporaneously transmitted live trial testimony is appended

to the Proposed Order.

**II.      FACTS**

This Court has provided the parties with a roadmap to how this case will be tried and

what will be of primary importance to the trier of fact:

> . . . as I view it, we're going to have two types of evidence here. . .
> [w]e're going to have primary evidence. And by primary evidence I
> mean the evidence of what people actually were doing and the
> typical type of evidence in trials, things that reveal what they
> thought they were doing, e-mails, agreements, memoranda,
> meeting minutes and the like. And then we have a body of
> secondary material, largely supplied to us by experts. . . .[W]e will
> hear the primary evidence about what was going on and why the
> parties thought it was going on. . . . Expert testimony [] will be
> cabined to the primary evidence of what these parties were doing

> or are doing or thought they were doing and why. . . . We're
> concerned with what the parties thought.

December 30, 2013 Hr'g Tr. (ECF 716), at 21, 22, 27, 28.

There were three sets of negotiations (AstraZeneca with Ranbaxy, Teva and DRL) that led to the three sets of agreements (which class plaintiffs also argue should be treated as one overall conspiracy). The primary facts of what the defendants were doing, or thought they were doing, and why, is almost exclusively within the knowledge of these current and former employees of the defendants.

For example, only a few people negotiated for AstraZeneca, including Terri Bowman (negotiation, evaluation and authorization of the reverse payment agreements) and Timothy Hester (an outside lawyer) and Jeffrey Pott (an inside one). Other AstraZeneca witnesses may be Linda Palczuk (marketing of Nexium), Steve Rothwein (sales of Nexium), and Gary Rowles (sales forecasting). These witnesses (and other potential AstraZeneca witnesses, we are not limiting ourselves here) do not live in Massachusetts.

As for Ranbaxy, there were also only a few negotiators, including Ahmad Aboelezz (a Ranbaxy employee who dealt mostly with AstraZeneca's Bowman), Jay Desmukh (who dealt mostly with AstraZeneca's Pott) and Lisa Jose Fales (Ranbaxy's outside counsel). None of these witnesses reside in Massachusetts. There are other likely Ranbaxy witnesses, including Venkatachalam Krishnan (current Senior Vice President and Regional Director of Americas) regarding Ranbaxy's ANDA for generic Nexium, Usha Sankaran (regulatory issues), P.P. Nath (Ranbaxy's performance under the agreements, a tech transfer with AstraZeneca and the management of the supply and distribution agreements with AstraZeneca), and Joseph Todisco (analysis of potential marketing of Ranbaxy's generic Nexium) -- all of whom do not reside in Massachusetts.

There are three likely Teva witnesses: Jennifer King (a current Teva employee with knowledge of Teva's forecasts and other market concerns), Stacie Julie (a current Teva employee who evaluated and negotiated the AstraZeneca-Teva reverse payment agreements and who was the 30(b)(6) corporate designee for Teva regarding its ANDAs and the Nexium patents at issue), and Patricia Jaworski (a Teva employee who addressed regulatory issues).  And another likely three for DRL.  None of these Teva or DRL witnesses reside in Massachusetts.

Case management limited depositions to 15 per side along with 30(b)(6) depositions. The limited number of depositions in this multi-party matter were conducted for discovery purposes.  Most witnesses have not been subjected to truth-telling cross-examination of the type used for trial purposes.  The class plaintiffs conducted depositions of defendants' 30(b)(6) corporate representatives and other fact witnesses who were either current or former employees of the defendants; these too for discovery purposes.

The parties will be discussing the list of witnesses prior to the pre-trial conference.  The class plaintiffs wish all witnesses to appear in person voluntarily.  However, given the number of witnesses required for a fair trial for all sides, it is likely that numerous witnesses will either be unwilling or unable to appear in person in Boston.  The class plaintiffs therefore seek to establish processes to address how trial testimony of current or former employees, or representatives of the defendants who are not able to appear at trial may be facilitated by contemporaneous transmission in an efficient, sound and fair manner.

### III.   ARGUMENT

**A.   MDL Courts Have the Authority to Order Witnesses to Provide Live Trial Testimony From a Remote Location.**

Rule 43 of the Federal Rule of Civil Procedure authorizes "testimony in open court by contemporaneous transmission from a different location" for "good cause in compelling circumstances and with appropriate safeguards."  Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a person subpoenaed pursuant to Rule 43, may be commanded to attend trial via contemporaneous transmission either:

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>
> (i) is a party or a party's officer; or
>
> (ii) is commended to attend a trial and would not incur substantial expense.[1]

The geographic restrictions imposed by Rule 45 are intended to "prevent undue inconvenience to witnesses *not* to confer advantages on parties."[2]  The logistical complications inherent in MDL proceedings (where the venue is often decided by factors beyond the parties' control or without consideration of the defendants' business locations) generally satisfy Rule 43's "good cause" requirement and MDL courts may order witnesses not appearing at trial in-person to appear at trial via contemporaneous transmission.[3]  In effect, "contemporaneous transmission is now

---

[1] Fed. R. Civ. P. 45(c)(1).

[2] *In re Washington Public Power Supply Sys. Sec. Litig.*, MDL No. 551, 1988 WL 525314, at *2 (W.D. Wash. Aug. 9, 1988).

[3] *See id.* (observing, in a MDL proceeding, that contemporaneous transmission is "properly invoked" in "complex, multi-party, multi-state litigation"); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424, 426 (D. Puerto Rico 1990) (adopting *Washington Public* and ordering, in a MDL proceeding, trial testimony by contemporaneous transmission); *In re Vioxx Products Liability Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (following *Washington Public* and *San Juan* and ordering, in a "bellwether" MDL trial, trial testimony by contemporaneous transmission); *see also In re Actos (Pioglitazone) Products Liability Litig.*, MDL No. 6:11-md-2299, 2014 WL 107153, at *2 (W.D. La. Jan. 8. 2014) ("Thus, the situation at hand creates circumstances which, outside the multidistrict litigation context, would likely not often arise, if at all, and would be highly unusual; however, within

equally incorporated as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past."[4]

## IV.   THE LAW FAVORS LIVE TRIAL TESTIMONY.

Live trial testimony, including by contemporaneous transmission, is favored because the "very ceremony of trial and the presence of the fact-finder may exert a powerful force for truthtelling" and "the importance of presenting live testimony in court" and the opportunity for the jury to "judge the demeanor of a witness face-to-face" cannot be understated.[5]  Forcing a trial by deposition, where live testimony could instead be presented, creates "a condition not satisfactory to court, jury, or most litigants."[6]  Indeed, the use of deposition testimony ought to be avoided wherever possible as it is "second-best"[7] and generally not well-received by the jury.[8] Even video-deposition testimony is second-rate compared to live testimony via contemporaneous transmission.[9]  "The trier of fact is entitled to the best and most complete basis to evaluate

---

the multi-district litigation context have become quite commonplace.").  Outside the MDL context, the good-cause standard may be satisfied by a showing that the witness is not within the trial venue's jurisdiction.  *See, e.g., F.T.C. v. Swedish Match North America, Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (citing *Beltran-Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000)).

[4] *Actos*, 2014 WL 107153 at *9.

[5] *See* Rule 43(a) advisory committee's notes.

[6] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947).

[7] *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (Learned Hand, J.).

[8] *See San Juan.*, 129 F.R.D. at 425 (observing problems inherent in trial testimony provided by deposition transcript).

[9] *See Actos*, 2014 WL 107153 at *7, *8 (observing that contemporaneous transmissions are less costly than video deposition trial presentations and provide several other advantages including the "added advantage inherent in observing testimony in open court that is *truly contemporaneous* and part of the whole trial experience, thus better reflect[ing] the *fluid dynamic* of the trial [the jury is] experiencing, and better [servicing] the goal of 'truthtelling.'").

5

evidence and witness credibility."[10]  And the best, most complete basis to evaluate evidence and

witnesses is through live trial testimony, either in-person or via contemporaneous transmission.[11]

## V.      THE CIRCUMSTANCES PRESENTED HERE WARRANT AN ORDER DIRECTING WITNESSES NOT ATTENDING TRIAL IN PERSON TO ATTEND TRIAL VIA CONTEMPORANEOUS TRANSMISSION.

Courts presented with a motion for live trial testimony via contemporaneous transmission

usually consider the following five factors:  (1) the control exerted over the witness by

defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent

tactical advantage, as opposed to any real inconvenience to the witness, that defendant is seeking

by not producing the witnesses voluntarily; (4) the lack of any true prejudice to defendant; and

(5) the flexibility needed to manage a complex multi-district litigation.[12]  Here, all five factors

favor granting plaintiffs' motion.

*First*, the witnesses at issue here are employees (and former employees) of defendants,

including corporate officers and designees having information highly relevant to the class

plaintiffs' case-in-chief, and, to date, defendants have not identified which of their employee-

---

[10] *Washington Public*, 1988 WL 525314 at *2.

[11] *See Vioxx*, 439 F. Supp. 2d at 644 ("By allowing for contemporaneous transmission, the Court allows the jury to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration, and, thus, satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony.") (quotations and citation omitted); *see also San Juan*, 29 F.R.D. at 426 ("We can only conclude that the satellite telecasts will provide a myriad of benefits to the jury and this Court . . . .  Principles of fairness and efficiency weigh heavily on the side of plaintiffs' request."); *Swedish Match*, 197 F.R.D. at 2 ("there is no practical difference between live testimony and contemporaneous video transmission").  There are also practical considerations for favoring live testimony via contemporaneous transmission over previously recorded deposition testimony.  Trials take their own shape, including through contemporaneous rulings on evidence, and thereby contemporaneously shape the questioning of witnesses and the presentation of evidence.  As such, permitting live testimony via contemporaneous transmission will minimize the distractions associated with last-minute editing of (what would otherwise be) deposition testimony to ensure conformity with the court's trial rulings.

[12] *See Vioxx*, 439 F. Supp. 2d at 643 (adopting the factors identified in *Washington Public*, 1988 WL 525314 at *2-3, and *San Juan*, 129 F.R.D. at 426).  *But see Actos*, 2014 WL 107153 at *7 (finding, in MDL context, good cause for contemporaneous transmission established notwithstanding court's inability to determine three of the five *Washington Public* factors).

witnesses, if any, they will make available for trial in Boston.[13]  *Second*, as this Court is already

very well aware, this is a complex, multi-plaintiff, multi-defendant, and multi-state case.  *Third*,

the class plaintiffs would offer to pay any witness's reasonable travel expenses attendant to

appearing at trial by contemporaneous transmission, thus eliminating any "real" inconvenience to

such witness.  *Fourth*, defendants would not suffer any "true prejudice" since the witnesses are

all employees of defendants and have previously provided deposition testimony.  *And finally*,

given the multitude of parties in this case, there is no one venue that could compel live in-person

trial testimony from every witness in this case.  Thus, short of having every witness testify live

before the jury in Boston, the next best solution is to require witnesses not appearing in Boston to

appear before the jury through live contemporaneous transmission.

Specifically, testimony of the type described by this Court of – "what these parties were

doing or are doing or thought they were doing and why" – is central to the trial of this matter.

The live testimony, or contemporaneous testimony by transmission of the defendants' witnesses'

testimony will permit witness examination by all parties that allows the jury to make the types of

determinations that are best arrived at through seeing and hearing contemporaneous witness

testimony.

Mr. Aboelezz, for example, has the very type of factual knowledge regarding the

negotiations of the AstraZeneca-Ranbaxy reverse payment agreements that this Court has

identified as necessary for the factfinder to hear in detail.  If Mr. Aboelezz, who works and lives

outside Massachusetts, is either unwilling or unable to attend and testify at the trial of this matter,

inquiry at trial into his role and knowledge of the reverse payment agreements – the heart of this

---

[13] For purposes of this motion, presumably at least some witnesses within defendants' control will not "voluntarily" appear at trial in Boston and would otherwise be outside the reach of this Court to compel such witnesses' attendance at trial in Boston.  For any such witness, class plaintiffs would serve a subpoena from the location where their testimony would be transmitted.

case -- will be lost.  The plaintiffs' case will be severely prejudiced, and the jury will be deprived

of viewing and hearing from this and other percipient witnesses.

The same is true for witnesses who may testify to the "who, what, when, where and how"

of  sales forecasts and plans for, as well as any agreement to forego, an authorized generic.  This

testimony is best communicated to the fact finder through contemporaneous transmission, in the

event that a witness is not willing or able to testify in Boston.  Under these circumstances, live

testimony by contemporaneous transmission presents a fair and efficient means of witness

examination.

Accordingly, putting into place now a plan which allows for comparable

contemporaneous testimony, in the event that a witness will not, or cannot testify at the trial of

this case in Boston is needed.  The class plaintiffs thus submit herewith a Proposed Order  and

protocol.

## CONCLUSION

For the foregoing reasons, the class plaintiffs respectfully request the Court grant the

motion and direct witnesses not appearing for trial before the jury in Boston to appear at trial for

the jury by contemporaneous transmission.

Dated:  January 21, 2014

Respectfully Submitted,
**/s/Thomas M. Sobol**
Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Donna Evans, BBO No. 554613
Kristen Johnson Parker, BBO No. 667261
HAGENS BERMAN SOBOL AND SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Fax: (617) 482-3003

*Liaison Counsel and Co-lead Counsel for the
Direct Purchaser Class*

David F. Sorensen
Daniel C. Simons
Caitlin G. Coslett
Nicholas Urban
BERGER &MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

Bruce E. Gerstein
Joseph Opper
Elena Chan
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

*Co-lead Counsel for the Proposed Direct
Purchaser Class*

Glen DeValerio (BBO #122010)
BERMAN DeVALERIO
One Liberty Square
Boston, MA  02109
Tel: (617) 542-8300
Fax: (617) 542-1194
gdevalerio@bermandevalerio.com

Todd A. Seaver (BBO #645874)
BERMAN DeVALERIO
One California Street, Suite 900 San Francisco,
CA  94111
Tel:  (415) 433-3200
Fax:  (415) 433-6382
tseaver@bermandevalerio.com

*Liaison Counsel for the End-Payor Class*

Steve D. Shadowen
HILLIARD & SHADOWEN LLC
39 West Main Street

Mechanicsburg, PA 17055
Tel: (855) 344-3298
steve@hilliardshadowenlaw.com

Anne Fornecker
Daniel Gonzales
HILLIARD & SHADOWEN LLC
919 Congress Ave., Suite 1325
Austin, TX 78701
Tel: (512) 851-8990
anne@hilliardshadowenlaw.com
daniel@hilliardshadowenlaw.com

Kenneth A. Wexler
Bethany R. Turke
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com
brt@wexlerwallace.com
jnb@wexlerwallace.com

J. Douglas Richards
George Farah
Sharon K. Robertson
Hiba Hafiz
COHEN MILSTEIN SELLERS & TOLL,
PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
drichards@cohenmilstein.com
srobertson@cohenmilstein.com

Jayne A. Goldstein
POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
1792 Bell Tower Lane
Suite 203
Weston, FL 33326
Tel: 954-315-3454
Fax: 954-315-3455

jagoldstein@pomlaw.com

*Co-Lead Counsel for the End-Payor Class*

<u>**CERTIFICATE OF SERVICE**</u>

I, Thomas M. Sobol, hereby certify that a copy of the foregoing motion, supporting memorandum of law, and proposed order were served via email on all counsel of record on January 21, 2014.

<u>**/s/Thomas M. Sobol**</u>
Thomas M. Sobol