UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEXIUM (ESOMEPRAZOLE MAGNESIUM) ANTITRUST LITIGATION<br><br>This Document Relates to All Actions | MDL No. 2409<br><br>Civil Action No. 1:12-md-02409-WGY |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION *IN LIMINE* TO PRECLUDE ARGUMENT OR EVIDENCE BASED UPON
<u>DEFENDANTS' INVOCATION OF ATTORNEY-CLIENT PRIVILEGE</u>**

Plaintiffs told the Court last month that Defendants withheld "communications that occurred between the parties." *See* Dkt. 716 (Tr. 12/30/13) at 12.  That is not accurate. Defendants have provided unrestricted discovery of communications between or among any of them, including communications involving counsel, concerning the settlements of the underlying Hatch-Waxman cases.  In addition, each Defendant has disclosed internal documents and communications concerning the settlements, and has provided considerable deposition testimony on reasons for the settlement.  Defendants did object when Plaintiffs pressed for discovery into communications between each Defendant and its own counsel.  Plaintiffs have not challenged the legitimacy of these privilege objections.

This motion *in limine* seeks an order precluding Plaintiffs from informing the jury that Defendants have invoked privilege on these subjects.  Plaintiffs have made it clear that they intend to examine defense witnesses at trial on these same subjects, and provoke the same objections.  The deposition designations Plaintiffs have served confirm this—they include extensive excerpts where witnesses were instructed not to answer on privilege grounds.  The only purpose of repeating this questioning at trial would be to encourage the jury to draw an inference that Defendants are withholding information that would substantiate Plaintiffs' case.

This issue is controlled by federal law, *see* Section I *infra*, and controlling federal law prohibits what Plaintiffs plan to do.  "The court cannot draw adverse inference from the proper assertion of an attorney-client privilege." *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 220 U.S.P.Q. 609, 612 (D. Mass.), *available at* 1983 WL 51933, at *4, *aff'd*, 718 F.2d 1201

(1st Cir. 1983); *see* additional authorities cited *infra* Section II.[1]  Federal courts not only uniformly preclude such an inference, but have also precluded questioning designed to draw the jury's attention to privilege objections, because doing so inherently and inappropriately suggests that party is invoking privilege to hide damaging information.  *See* authorities cited *infra* Section III.

I.   **FEDERAL LAW GOVERNS THIS ISSUE.**

Because this case involves federal claims under the Sherman Act, questions of privilege are governed by federal law.

Federal Rule of Evidence 501 provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

The joinder of state-law causes of action at trial does not affect the analysis.  "We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies."  *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001).

---

[1] Some states, apparently a minority but including Massachusetts, permit an adverse inference in certain circumstances based on assertion of the attorney-client privilege.  *See, e.g.*, Hon. William G. Young et al., 19 *Mass. Practice Evidence* § 519.1 (2d ed. 1998).  "Most of the case law analyzing the policy of the privilege, however, ends up forbidding the inference."  Deborah Stavile Bartel, *Drawing Negative Inferences upon a Claim of Attorney-Client Privilege*, 60 Brook. L. Rev. 1355, 1376 (Winter 1995).  But because federal law and not state law controls, the particulars of state law do not bear on the *in limine* relief Defendants seek.

"[C]ourts have repeatedly applied the federal approach to privilege to both federal and state claims where both are included in the litigation." *Gargiulo v. Baystate Health Inc.*, 279 F.R.D. 62, 64 (D. Mass. 2012).

> The complaint in the instant action alleges a federal claim based on RICO and state law claims based on pendent and diversity jurisdiction. The evidence sought from Reynolds is relevant to both the federal and state claims. *In such situations courts consistently have held that the asserted privileges are governed by the principles of federal law.*

*Von Bulow v. Von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) (emphasis added); *see also Krolikowski v. Univ. of Mass.*, 150 F. Supp. 2d 246, 248 (D. Mass. 2001) ("In a federal question case where the court is also hearing state law claims pursuant to supplemental jurisdiction, federal privilege law governs the claims in the action."); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226–27 (D. Mass. 1997); *Smith v. Alice Peck Day Mem'l Hosp.*, 148 F.R.D. 51, 53 (D.N.H. 1993) ("[I]n cases such as this one, where jurisdiction is based on both diversity of citizenship and the presence of federal claims, federal common law controls any claim of privilege."); *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (per curiam) (holding that "the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege").[2]

---

[2] *Accord Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005); *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981); *Lykken v. Brady*, No. CIV. 07-4020-KES, 2008 WL 2077937, at *4 (D.S.D. May 14, 2008); *Crowe v. Cnty. of San Diego*, 242 F. Supp. 2d 740, 749–50 (S.D. Cal. 2003); *Robertson v. Neuromedical Ctr.*, 169 F.R.D. 80, 82–83 (M.D. La. 1996); *In re Combustion, Inc.*, 161 F.R.D. 51, 53–54 (W.D. La.), *aff'd*, 161 F.R.D. 54, 55 (W.D. La. 1995); *Puricelli v. Borough of Morrisville*, 136 F.R.D. 393, 397 & n.7 (E.D. Pa. 1991); *Wei v. Bodner*, 127 F.R.D. 91, 94 (D.N.J. 1989); *First Fed. Sav. & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 560 (S.D.N.Y. 1986); *Robinson v. Magovern*, 83 F.R.D. 79, 84–85 (W.D. Pa. 1979); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–59 (N.D. Cal. 1978).

Issues that arise in federal litigation concerning the work-product doctrine are likewise governed by federal law, regardless of the basis of federal jurisdiction. *See, e.g.*, *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988); *Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003).

II. **FEDERAL LAW PROHIBITS DRAWING ADVERSE INFERENCES FROM AN ASSERTION OF THE ATTORNEY-CLIENT PRIVILEGE OR THE WORK PRODUCT DOCTRINE.**

The attorney-client privilege reflects "the imperative need for confidence and trust" between lawyer and client. *Trammel v. United States*, 445 U.S. 40, 51 (1980). Its purposes include "encourag[ing] full and frank communication between attorneys and their clients and thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The confidentiality of attorney-client communications is "not only an interest long recognized by society but also one traditionally deemed worthy of maximum legal protection." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992).

In keeping with the important purposes served by the privilege, federal law adheres to the principle that "[a] negative inference should not be drawn from the proper invocation of the attorney-client privilege." *In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 120 (4th Cir. 1994). Judge Tauro applied this principle in *Astra Pharmaceutical Products, Inc.*, *supra*, refusing to permit an inference of "bad faith" against a Lanham Act defendant that "refused to turn over attorney-client documents relating to the trademark search." 220 U.S.P.Q. 609, 612, 1983 WL 51933, at *4. Judge Laplante applied the same principle late last year, stating that "'courts have declined to impose [such] adverse inferences on invocation of the attorney-client privilege,'" and holding that "the law would not permit a rational trier of fact to do what [plaintiff] urges, i.e., use

-4-

[defendant's] claim of attorney-client privilege" to draw an adverse inference. *Rowe v. Liberty Mut. Grp., Inc.*, No. 11-cv-366-JL, 2013 WL 6384805, at *13 (D.N.H. Dec. 6, 2013) (first alteration in original) (quoting *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (en banc)).

The line of decisions reaching the same conclusion stretches back at least eighty years. "We agree indeed that the contents of privileged communications cannot by inference be drawn out indirectly; one party may not ask a jury to find that they would have been prejudicial to the party having the privilege." *United States v. Cotter*, 60 F.2d 689, 691 (2d Cir. 1932) (L. Hand, J.). "[A] client asserting the [attorney-client] privilege should not face a negative inference about the substance of the information sought." *Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990). A party's "invocation of [the attorney-client] privilege could not be the subject of debate before the jury. It is an ancient and venerated right." *United States v. Foster*, 309 F.2d 8, 15 (4th Cir. 1962); s*ee also Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 479–80 n.25 (3d Cir. 2005) ("[I]t is improper to draw an inference of bad faith from the assertion of the attorney-client privilege."); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999) ("[T]he district court erred in drawing an adverse inference against Nabisco by reason of its invocation of the attorney-client privilege."), *abrogated on other grounds*, *Moseley v. V Secret Catalogue*, 537 U.S. 418 (2003); *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-CV-158, 2008 WL 7182476, at *3 (E.D. Tex. Apr. 25, 2008) ("It is inappropriate to draw an adverse inference with respect to willful infringement when a party seeks to invoke the attorney-client privilege."); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 246 (S.D.N.Y. 2006) ("An adverse inference may not be drawn against Mylan for its failure to present an opinion from counsel that could establish its *bona fides* in filing an ANDA and then

its Statement."), *aff'd*, 549 F.3d 1381 (Fed. Cir. 2008); *United States v. United Techs. Corp.*, No. 3:99-cv-093, 2005 WL 6199561, at *3 (S.D. Ohio Feb. 2, 2005) ("On the basis other circuits have rejected, the Government requests that a negative inference be drawn from [Defendant's] invocation of the [attorney-client] privilege. . . . This Court agrees [with *Nabisco* and *Tudor*] and therefore DENIES the Government motion to draw a negative inference."); *Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1365 (S.D. Fla. 2004) ("[N]o such negative inference can arise from the assertion of the [attorney-client] privilege . . . ."); *Beraha v. Baxter Healthcare Corp.*, No. 88 C 9898, 1994 WL 494654, at *3 (N.D. Ill. Sept. 6, 1994) ("[T]he only purpose for which [plaintiff] seeks to admit evidence of the fact that these communications occurred is to enable the jury to draw an adverse inference therefrom. This is exactly what is prohibited."); *Ardito v. Johnson & Johnson*, No. 4-81-922, 1985 WL 2461, at *5 (D. Minn. July 22, 1985) ("No adverse inference may be drawn as a matter of law from the legitimate assertion of the attorney-client privilege.").[3]

At one time, the Federal Circuit carved out an exception to the no-adverse-inference rule for certain advice pertaining to potential patent infringement, but in 2004 it overruled the decisions that had created that exception. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v.*

---

[3] *Accord United States v. Tomaiolo*, 249 F.2d 683, 690 (2d Cir. 1957) ("[T]he prosecutor attempted to elicit from the defendant what he had told his counsel and his wife . . . . These questions were pressed to the point of compelling the defendant's counsel several times to advise the defendant that these were privileged communications, thus making it appear to the jury that evidence which might be damaging was being kept from them. By repeatedly asking these questions before the jury and attempting to place the defendant in a false light by compelling him to claim the husband-wife and the attorney-client privileges, the prosecutor deliberately and improperly prejudiced the defendant's position. It was error for the District Court to permit such repeated questioning and colloquy before the jury."); *A. B. Dick Co. v. Marr*, 95 F. Supp. 83, 101 (S.D.N.Y. 1950) ("It is clear that the assertion of the claim of [attorney-client] privilege can give rise to no adverse inferences."), *appeal dismissed*, 197 F.2d 498 (2d Cir. 1952); *In re Gibson*, No. 04-11822, 2007 WL 505746, at *3 (Bankr. S.D. Ala. Feb 14, 2007).

*Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004) (en banc). In *Knorr-Bremse*, the Federal Circuit, noting that "the courts have declined to impose adverse inferences on invocation of the attorney-client privilege," held that "no adverse inference shall arise from invocation of the attorney-client and/or work product privilege." *Id.* at 1344–45.

The rationale for this rule is plain. "Disallowing adverse inferences is a logical extension of the attorney-client privilege since allowing a negative inference would in many cases oblige the client to produce the privileged materials." *THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 566–67 (N.D. Ill. 1996). The First Circuit has not had occasion to decide specifically whether an inference may be drawn from assertion of the attorney-client privilege, but in 1965 it relied in part on cases forbidding such an inference in holding that a criminal defendant was entitled to invoke the then-existing privilege against adverse testimony by a spouse outside the jury's presence. *Tallo v. United States*, 344 F.2d 467 (1st Cir. 1965). At the time *Tallo* was decided, federal law afforded a criminal defendant a privilege to prevent his or her spouse from testifying for the prosecution in a criminal case.[4] The First Circuit held that, to give effect to that privilege, a defendant should not be forced to assert it in front of the jury. In so ruling, the court relied in substantial part on cases involving the attorney-client privilege:

> [T]he proper handling of this claim of privilege would seem to be indicated by those decisions which have said it is improper to require a defendant to claim other privileges in the presence of a jury. United States v. Tomaiolo, 249 F.2d 683, 690 (2 Cir. 1957) (attorney-client and husband-wife confidential conversation privileges); McClanahan v. United States, 230 F.2d 919, 926 (5 Cir. 1956), cert. denied 352 U.S. 824 (attorney-client privilege); United States v. Cotter, 60 F.2d 689, 691 (2 Cir. 1932), cert. denied 287 U.S. 666. But see Bisno v. United States, 299 F.2d 711, 720–721 (9 Cir. 1961), cert. denied 370 U.S. 952. We believe that a correct view with regard to the exercise of this privilege is

---

[4] *Hawkins v. United States*, 358 U.S. 74 (1958), *overruled in part by Trammel v. United States*, 445 U.S. 40, 53 (1980).

expressed in the concurring opinion of Judge Hamley in the Bisno case (p. 723) where he observed:

> "Where such privilege has been exercised, the established principle which permits an inference that the excluded testimony would be unfavorable to the party who suppressed it ought to yield, as being inconsistent with the full exercise of the privilege. See Wigmore [on Evidence, McNaughton Revision, 1961], § 2243, page 259.
>
> \* \* \* \* \* \*
>
> "\* \* \* As long as the privilege is recognized it ought not to be substantially undermined by permitting, in connection with its exercise, the usual inference with respect to the failure to produce available evidence."

*Tallo*, 344 F.2d at 469–70 (ellipses and insertions in original) (parallel citations omitted).

The same rule against adverse inferences applies to assertions of the work product doctrine, a doctrine that is closely related to the attorney-client privilege. *See Knorr-Bremse*, 383 F.3d at 1344 ("[N]o adverse inference shall arise from invocation of the attorney-client and/or work product privilege."); *United States v. 266 Tonawanda Trail*, 95 F.3d 422, 428 (6th Cir. 1996) ("[A] court should not draw adverse inferences from the failure to respond to an admissions request if the work product privilege protects the information sought."); *see also In re Grand Jury Subpoena*, 478 F. Supp. 368, 377 (E.D. Wis. 1979) ("My granting of the motion to quash the subpoena as to documents privileged under the attorney-client or work-product doctrines precludes the government from questioning Miller's attorneys regarding the communications and analysis contained in such documents.").

Defendants are not aware of any case decided under federal law that permits a party to argue that the jury should draw an adverse inference from its opponent's invocation of the

attorney-client privilege or the work product doctrine.[5] The Court should enter an order prohibiting Plaintiffs from doing that here.

### III. PLAINTIFFS' COUNSEL SHOULD BE PROHIBITED FROM POSING QUESTIONS TO TRIAL WITNESSES THAT THEY REASONABLY EXPECT WILL PROVOKE PRIVILEGE OBJECTIONS.

The Court likewise should enter an order *in limine* precluding Plaintiffs from posing questions to defense witnesses that are reasonably expected to provoke an objection on the basis of the attorney-client privilege or attorney-work product doctrine.

When a party is required to reassert its privilege objection in the jury's presence, "even if neither the opponent nor the trial judge expressly comments, there is a significant risk that the jury will draw the inference on its own motion." E. Imwinkelried, *The New Wigmore: Evidentiary Privileges*, § 6.6.8, at 719 (2d ed. 2009). The First Circuit made the point plainly and explicitly: "it is improper to require a defendant to claim other privileges [including the attorney-client privilege] in the presence of a jury." *Tallo*, 344 F.2d at 469.

For this reason, federal courts have consistently precluded parties from conducting trial examinations aimed at eliciting privilege objections in front of the jury. In *Tallo*, for example, the First Circuit directed that, upon retrial, the defendant should be permitted to assert his spousal privilege outside the presence of the jury. 344 F.2d at 469–70. In *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 1816162 (N.D. Ill. Apr. 29, 2013), the court entered an *in limine* order prohibiting the plaintiff *both* from "ask[ing] any question she reasonably expects will cause Defendants to assert the attorney-client privilege" and from

---

[5] The *Bisno* case cited as adverse authority in *Tallo* involved comment on the failure of a criminal defendant to call his wife to testify, not comment on an assertion of the attorney-client privilege or the work product doctrine, and the court's reasoning turned on considerations not applicable beyond the context of that spousal privilege. *See Bisno*, 299 F.2d at 721–22.

mentioning at trial "that Defendants consulted with lawyers or previously invoked the attorney-client privilege." *Id.* at *7. In *Sharer v. Tandberg*, No. 1:06cv626 (JCC), 2007 WL 983849 (E.D. Va. Mar. 27, 2007), the court granted a motion *in limine* barring any reference at trial to the plaintiff's invocation of privilege over whether it was his idea to send e-mails to representatives of his former employer.

> The fact that [plaintiff] Law met with an attorney prior to the email exchange . . . is only relevant to the extent that an inference may be drawn as to the substance of legal communications between attorney and client. . . . [A]ny such inference would intrude upon the protected realm of the attorney-client privilege. Accordingly, Defendant may not refer to Plaintiff's legal consultation prior to the April emails to draw an inference about the substance of legal advice. . . . [B]ecause the fact of legal consultation is only relevant in order to draw this improper inference, the danger of unfair prejudice to the Plaintiff greatly outweighs any probative value under Rule 403 of the Federal Rules of Evidence.

*Id.* at *2 (citation and internal quotation marks omitted); *see also McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006) (granting motion *in limine* and ordering that plaintiff "is precluded, in all respects, from introducing evidence or testimony pertaining to [defendant's] assertion of the attorney-client privilege over the opinion of counsel it received regarding the '716 patent"); *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1108 (D. Kan. 2006) (finding it inappropriate to force opponent "to either invoke the privilege in the jury's presence (creating the negative inference desired by plaintiffs) or waive the privilege by responding to the question").

> [T]he only purpose for which [plaintiff] seeks to admit evidence of the fact that these communications occurred is to enable the jury to draw an adverse inference therefrom. This is exactly what is prohibited.

*Beraha*, 1994 WL 494654, at *3.

Consistent with this authority and rationale, Plaintiffs should not be permitted to ask questions that they know or can reasonably anticipate will lead to privilege objections in the

mentioning at trial "that Defendants consulted with lawyers or previously invoked the attorney-client privilege." *Id.* at *7. In *Sharer v. Tandberg*, No. 1:06cv626 (JCC), 2007 WL 983849 (E.D. Va. Mar. 27, 2007), the court granted a motion *in limine* barring any reference at trial to the plaintiff's invocation of privilege over whether it was his idea to send e-mails to representatives of his former employer.

> The fact that [plaintiff] Law met with an attorney prior to the email exchange . . . is only relevant to the extent that an inference may be drawn as to the substance of legal communications between attorney and client. . . . [A]ny such inference would intrude upon the protected realm of the attorney-client privilege. Accordingly, Defendant may not refer to Plaintiff's legal consultation prior to the April emails to draw an inference about the substance of legal advice. . . . [B]ecause the fact of legal consultation is only relevant in order to draw this improper inference, the danger of unfair prejudice to the Plaintiff greatly outweighs any probative value under Rule 403 of the Federal Rules of Evidence.

*Id.* at *2 (citation and internal quotation marks omitted); *see also McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006) (granting motion *in limine* and ordering that plaintiff "is precluded, in all respects, from introducing evidence or testimony pertaining to [defendant's] assertion of the attorney-client privilege over the opinion of counsel it received regarding the '716 patent"); *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1108 (D. Kan. 2006) (finding it inappropriate to force opponent "to either invoke the privilege in the jury's presence (creating the negative inference desired by plaintiffs) or waive the privilege by responding to the question").

> [T]he only purpose for which [plaintiff] seeks to admit evidence of the fact that these communications occurred is to enable the jury to draw an adverse inference therefrom. This is exactly what is prohibited.

*Beraha*, 1994 WL 494654, at *3.

Consistent with this authority and rationale, Plaintiffs should not be permitted to ask questions that they know or can reasonably anticipate will lead to privilege objections in the

jury's presence. The discovery proceedings have already established that Defendants are invoking the attorney-client privilege for confidential legal advice concerning (a) the merits of the underlying patent cases and (b) the antitrust issues associated with the settlement of those cases. Plaintiffs have not contested Defendants' assertion of privilege as to these matters. Accordingly, Plaintiffs' counsel are aware that any questions to a defense witness at trial, to the effect of "What legal advice did you receive about whether you would win the patent case?" or "What was the legal advice you received concerning this settlement?," would provoke the assertion of privilege in the jury's presence and create by insinuation the negative inference that is not permitted as a matter of settled federal law.

Accordingly, the Court should enter an order *in limine* prohibiting Plaintiffs from questioning defense witnesses on the following subjects:

1. Legal advice concerning the underlying patent litigation;
2. Legal advice concerning the settlement agreements at issue; and
3. Legal advice on other subjects.

As with any *limine* order, Plaintiffs would be entitled to seek its modification, outside the jury's presence, if they believe a basis has arisen to do so.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order barring Plaintiffs' counsel from (1) asking any question in the presence of the jury that they reasonably expect will lead a defendant to assert the attorney-client privilege or the work product doctrine, (2) calling the jury's attention to any defendant's invocation of the attorney-client privilege or the work product doctrine during discovery, or (3) commenting upon or mentioning in argument to the jury any defendant's invocation of the attorney-client privilege or the work product doctrine.

Dated: February 6, 2014

Respectfully submitted,

| | |
|---|---|
| /s/ J. Douglas Baldridge | /s/ Dane H. Butswinkas |
| J. Douglas Baldridge (*pro hac vice*) | Dane H. Butswinkas (*pro hac vice*) |
| Lisa Jose Fales (*pro hac vice*) | John E. Schmidtlein (*pro hac vice*) |
| Danielle R. Foley (*pro hac vice*) | Paul B. Gaffney (*pro hac vice*) |
| Sarah Choi (*pro hac vice*) | WILLIAMS & CONNOLLY LLP |
| VENABLE LLP | 725 Twelfth Street, N.W. |
| 575 7th Street, NW | Washington, DC 20005 |
| Washington, DC 20004 | Ph: (202) 434-5000 |
| Ph: (202) 344-4000 | Fax: (202) 434-5029 |
| Fax: (202) 344-8300 | DButswinkas@wc.com |
| jdbalridge@venable.com | JSchmidtlein@wc.com |
| ljfales@venable.com | PGaffney@wc.com |
| drfoley@venable.com | |
| schoi@venable.com | Timothy C. Hester (*pro hac vice*) |
| Leslie F. Su (BBO No. 641833) | COVINGTON & BURLING LLP |
| MINERVA LAW, P.C. | 1201 Pennsylvania Avenue, NW |
| 300 Brickstone Square, Suite 201 | Washington, DC 20004 |
| Andover, MA 01810 | Ph: (202) 662-6000 |
| Ph: (978) 494-4695 | Fax: (202) 662-6291 |
| leslie.su@minervalawpc.com | thester@cov.com |

*Counsel for Ranbaxy Pharmaceuticals, Inc., Ranbaxy Inc., and Ranbaxy Laboratories, Ltd.*

William A. Zucker, Esq., BBO # 541240
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
Ph: (617) 449-6500
Fax: (617) 607-9200
wzucker@mccarter.com

Michael P. Kelly (*pro hac vice*)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Ph: (302) 984-6301
Fax: (302) 984-2493
mkelly@mccarter.com

*Counsel for AstraZeneca LP, AstraZeneca AB, and Aktiebolaget Hassle*

| | |
|---|---|
| /s/ Laurence A. Schoen | /s/ Jonathan Berman |
| Laurence A. Schoen, BBO no. 633002<br>Adam L. Sisitsky, BBO no. 637532<br>MINTZ, LEVIN, COHN, FERRIS,<br>GLOVSKY AND POPEO, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Ph: (617) 542-6000<br>Fax: (617) 542-2241<br>LASchoen@mintz.com<br>ALSisitsky@mintz.com<br><br>Jay P. Lefkowitz, P.C. (*pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Ph: (212) 446-4800<br>Fax: (212) 446-4900<br>jay.lefkowitz@kirkland.com<br><br>Karen N. Walker, P.C. (*pro hac vice*)<br>Rebecca A. Koch (*pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, N.W., Suite 1200<br>Washington, D.C. 20005<br>Ph: (202) 879-5000<br>Fax: (202) 879-5200<br>karen.walker@kirkland.com<br>rebecca.koch@kirkland.com<br><br>*Attorneys for Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, LTD* | Kevin D. McDonald (*pro hac vice*)<br>Jonathan Berman (*pro hac vice*)<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>Ph:  (202) 879-3939<br>Fax:  (202) 626-1700<br>kdmcdonald@jonesday.com<br>jberman@jonesday.com<br><br>Andrew J. Miller (*pro hac vice*)<br>BUDD LARNER, PC<br>150 JFK Parkway<br>Short Hills, NJ 07078<br>Ph:  (973) 379-4800<br>Fax:  (973) 379-7734<br>amiller@buddlarner.com<br><br>Brian T. Moriarity, BBO No. 665995<br>HAMILTON BROOK SMITH &<br>REYNOLDS<br>530 Virginia Road<br>Concord, MA 01742<br>Ph:  (978) 341-0036<br>Fax:  (978) 341-0136<br>Brian.moriarity@hsbr.com<br><br>*Attorneys for Dr. Reddy's Laboratories, Inc. and Dr. Reddy's Laboratories, Ltd.* |

## **CERTIFICATE OF SERVICE**

I, James H. Weingarten, hereby certify that on this 6th day of February, 2014, this document was electronically filed via the Court's CM/ECF system and served on all counsel of record who will receive a notification of such filing by email.

/s/ James Weingarten
James Weingarten