# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PROFESSIONAL DRUG COMPANY, INC.,
on behalf of itself and all others similarly situated,

        Plaintiff,

        v.

ASTRAZENECA AB, AKTIEBOLAGET
HÄSSLE, ASTRAZENECA LP, RANBAXY
PHARMACEUTICALS, INC., RANBAXY INC.,
RANBAXY LABORATORIES, LTD., TEVA
PHARMACEUTICAL INDUSTRIES, LTD.,
TEVA USA, INC., DR. REDDY'S
LABORATORIES LTD., and DR. REDDY'S
LABORATORIES, INC.,

        Defendants.

CIVIL ACTION
NO. 12-cv-11609-WGY

AMERICAN SALES COMPANY, LLC,
on behalf of itself and all others similarly situated,

        Plaintiff,

        v.

ASTRAZENECA AB, AKTIEBOLAGET
HÄSSLE, ASTRAZENECA LP, RANBAXY
PHARMACEUTICALS, INC., RANBAXY INC.,
RANBAXY LABORATORIES, LTD., TEVA
PHARMACEUTICAL INDUSTRIES, LTD.,
TEVA USA, INC., DR. REDDY'S
LABORATORIES LTD., and DR. REDDY'S
LABORATORIES, INC.,

        Defendants.

CIVIL ACTION
NO. 12-cv-11711-WGY

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## TO ALL DEFENDANTS

Pursuant to Fed. R. Civ. P. 34, plaintiffs now request that defendants provide written responses, including any objections and the bases therefor, to this Request for the Production of Documents within 30 days.

## INSTRUCTIONS

1.      Plaintiffs seek production of the documents set forth in the numbered requests below in defendants' possession, custody, and control, control being construed as including in the possession of defendants' attorneys, accountants, or other agents, and including all entities comprising the definitions of "defendants" below.

2.      The headings set forth within the numbered requests below are for convenience only and shall not be deemed to control or affect the meaning or construction of any request.

3.      Unless otherwise stated, these requests cover the period January 1, 2005 to the present.

4.      As used in these requests, the singular shall also be treated as plural and vice-versa.

5.      Documents are to be produced in full, together with any attachments, exhibits, or appendices.  Redacted documents will not constitute compliance with these requests.  If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld or redacted.

6.      If any part of a document is responsive to any request, the whole document is to be produced.

7.      Documents not otherwise responsive to this discovery request shall be produced if such documents relate to the documents which are called for by this discovery request, or if

2

such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, letters, comments, evaluations or similar materials.

8.      Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final document is a separate and distinct document and it must be produced.

9.      Documents shall be produced either: (a) as they are kept in the usual course of business; or (b) in a manner so that they are organized and labeled to correspond with the Requests.  If a document exists in electronic, digital or native form, then it should be produced in that form.

10.     Pursuant to Federal Rule of Civil Procedure 34(b), you are requested to produce any and all electronically stored information in native format (including all metadata) whenever possible.

11.     All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

12.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators or by your

attorneys or their agents, employees, representatives or investigators.

13.     If the information sought is not in your control, indicate the company and/or

individuals who have such control and/or knowledge.

14.     If you are unable to produce a document in response to any request, so state and

indicate whether the document ever existed, or whether the document once existed but cannot be

located.  To the extent any documents are lost or destroyed, produce any documents which

support your assertion that the document was lost or destroyed, and provide the date thereof.

15.     If you claim the attorney-client privilege, or any other privilege (including any

so-called "common defense" and/or "common interest" privilege) or work product

protection for any document, you shall provide the following information with respect to each

such document:

    a.   the type of privilege claimed;

    b.   the type of document;

    c.   general subject matter of the document;

    d.   date of the document;

    e.   such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other; and

    f.   any other information required to be furnished by the local rules of the United States District Court for the District of Massachusetts.

16.     Any privilege log or list shall be produced in an Excel spreadsheet or other

similar, searchable electronic format.

17.     These document requests are continuing and therefore require each defendant (or

any person acting on its behalf) to furnish supplemental responses whenever a defendant (or any

person acting on its behalf) obtains additional information called for by the request.  Each

4

supplemental response shall be served on plaintiffs no later than thirty (30) days after the discovery of the further information.

## <u>DEFINITIONS</u>

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

2.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3.      When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.      When referring to documents, "to identify" means to give, to the extent known, the:

    (a) type of document;

    (b) general subject matter;

    (c) date of the document; and

    (d) author(s), addressee(s), and recipient(s).

5.      The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

5

6. "AstraZeneca" means AstraZeneca AB, Aktiebolaget Hassle, and AstraZeneca LP, including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

7. "Ranbaxy" means Ranbaxy Pharmaceuticals, Inc., Ranbaxy Laboratories Limited, and Ranbaxy, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

8. "Teva" means Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

9. "Dr. Reddy's" means Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

10. "Defendants" means the persons, firms, and corporations encompassed by the preceding four (4) definitions.

11. The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

12. The term "concerning" means referring to, describing, evidencing, or constituting, in whole or part.

13. "ANDA" means an Abbreviated New Drug Application filed with the FDA, including any amendments or supplements thereto.

14.    "Generic Manufacturers" means any entity seeking to produce, market, sell or promote a generic version of Nexium, specifically including, but not limited to, Ranbaxy, Teva, and Dr. Reddy's.

15.    "Generic Nexium" means any product that is (or is sought to be) A-rated by the FDA to branded Nexium.

16.    "Nexium patent" means any patent that AstraZeneca has asserted or now asserts is or would be infringed by one or more versions of Generic Nexium.

17.    "Underlying actions" means any of the patent litigations involving any of the defendants and concerning Nexium or Generic Nexium.

18.    "Electronically stored information" means the broadest possible meaning of the term "electronically stored information" as used in Federal Rule of Civil Procedure 34.

19.    "Native format" means the file format in which a computer or other application or program reads and writes the electronically stored information.

20.    The words "and" and "or" shall be construed either in the disjunctive or the conjunctive, so as to bring within the scope of the discovery request the broadest range of documents.

21.    The words "any," "each," and "all" shall be construed as to be synonymous so as to bring within the scope of the discovery requests the broadest range of documents.

## DOCUMENT REQUESTS

**A.    Documents Concerning Settlement of the Underlying Actions**

1.    All documents concerning any potential or actual resolution, dismissal, and/or settlement of the underlying actions, or other patent infringement litigation concerning Nexium or Generic Nexium.

2.    All communications between AstraZeneca on the one hand, and Dr. Reddy's, Ranbaxy, or Teva on the other, concerning the resolution or settlement of any disputes, including but not limited to any of the underlying actions.

3.    All documents concerning the negotiation between AstraZeneca and any Generic Manufacturer concerning the settlement of the underlying actions.

4.    All documents concerning any defendant's decision to settle the underlying actions.

5.    All documents concerning the purpose and effect of any agreement to settle the underlying actions.

**B.    Documents Concerning Agreements Concerning Settlement of the Underlying Actions**

6.    Final, signed copies of all agreements to which one of more of the defendants is a party or intended third-party beneficiary, concerning Nexium or Generic Nexium, including without limitation, including without limitation the agreements between AstraZeneca and Ranbaxy dated on or about April 14, 2008 referenced in the complaints; the agreements between AstraZeneca and Teva dated on or about January 7, 2010 referenced in the complaints; and the agreements between AstraZeneca and Dr. Reddy's dated on or about January 28, 2011 referenced in the complaints.

7.    All drafts of all agreements, whether executed or not, to which, once executed, one of more of the defendants would have been a party or intended third-party beneficiary, concerning Nexium or Generic Nexium, including drafts of the agreements sought in Request No. 6.

8.   All documents concerning any agreements to which any two or more defendants were parties or intended third-party beneficiaries, whether or not concerning Nexium or Generic Nexium, executed within one month of any agreement sought in Request No. 6.

9.   All communications and analyses concerning any draft or executed agreements sought between or among any of the defendants, including concerning the decision whether to enter into such any such agreements, including drafts of the agreements sought in Request No. 6.

10.   All documents, from January 1, 2000 to the present, concerning agreements between AstraZeneca and Ranbaxy concerning manufacturing, supply and/or distribution, including agreements concerning supplies of active pharmaceutical ingredient ("API") and agreements concerning authorized generic versions of any branded drug.

11.   All presentations, whether formal or informal, to any defendant's Board of Directors concerning any actual or proposed agreements to which any defendant was (or, if not executed, would have been) a party or intended third-party beneficiary, concerning Nexium or Generic Nexium.

12.   All communications between AstraZeneca and Ranbaxy concerning any 180-day exclusivity period Dr. Reddy's is, was, or may have been entitled to with respect to any or all of the Nexium patents.

13.   All documents concerning the value of any consideration given by AstraZeneca to Dr. Reddy's, Ranbaxy, or Teva in connection with the agreements sought in Request No. 6 concerning Nexium or Generic Nexium.

14.   All documents concerning the bases and valuations of any disputed or undisputed debts or liabilities, whether or not liquidated, including contingent liabilities, compromised by

9

AstraZeneca, in whole or part, as part of any agreement sought in Request No. 6 concerning Nexium or Generic Nexium.

15.   All documents concerning communications between and/or among any of AstraZeneca, Dr. Reddy's, Ranbaxy, and Teva concerning the source and/or valuation of any disputed or undisputed debts or liabilities, whether or not liquidated, including contingent liabilities, compromised by AstraZeneca, in whole or part, as part of any agreement sought in Request No. 26 concerning Nexium or Generic Nexium .

16.   All documents concerning Teva's or Impax Laboratories Inc.'s ("Impax") liability or potential liability to AstraZeneca for sales of generic Prilosec.

17.   Documents sufficient to show the amount that Teva or Impax paid to AstraZeneca for Impax's alleged infringing sales of generic Prilosec.

18.   All documents concerning Dr. Reddy's liability or potential liability to AstraZeneca for sales of generic Accolate.

19.    Documents sufficient to show the amount that Dr. Reddy's paid to AstraZeneca for the alleged infringing sales of generic Accolate.

20.   To the extent not covered in Request Nos. 1-19, all documents concerning any agreements to which any of the defendants is a party concerning Nexium or Generic Nexium.

**C.     Documents Concerning Government Inquiry and/or Review Concerning the Agreements**

21.   All documents concerning any communication with United States Department of Justice, the Federal Trade Commission, or any other government body or agency, concerning any agreement between or among any of the defendants concerning Nexium or Generic Nexium.

22.   All documents concerning any inquiry, evaluation, or review by United States Department of Justice, the Federal Trade Commission, or any other government body or agency, concerning any agreement between or among any of the defendants concerning Nexium or Generic Nexium.

23.   All documents concerning requests for production, civil investigative demands, subpoenas, or other investigative requests concerning any agreement between or among any of the defendants concerning Nexium or Generic Nexium issued by the United States Department of Justice, the Federal Trade Commission, or any other government body or agency, including the government's requests.

24.   All documents produced to the United States Department of Justice, the Federal Trade Commission, or any other government body or agency concerning any agreement between or among any of the defendants concerning Nexium or Generic Nexium.

**D.     Documents concerning AstraZeneca's market power over Nexium and Generic Nexium**

25.   All documents concerning actual or potential competition between Nexium and all other drugs used to treat the same conditions as Nexium.

26.   All documents concerning the relative features, benefits, comparisons, and market share of Nexium and all other drugs used to treat the same conditions as Nexium.

27.   All documents concerning the functional and economic substitutability between Nexium and all other drugs used to treat the same conditions as Nexium.

28.   All documents concerning the cross-elasticity of demand, including but not limited to any documents concerning the responsiveness of demand to changes in price, among Nexium and all other drugs used to treat the same conditions as Nexium.

29.   All documents relating to actual, potential, desired, and/or forecasted switching among Nexium and other products used to treat the same conditions as Nexium, including but not limited to, (a) the costs incurred by customers in switching products; (b) the time that it takes for customers to switch products; (c) customers' sensitivity to price changes in switching products; and/or (d) any studies, surveys, and analyses of actual or potential decisions by customers, physicians, pharmacists, and third-party payers regarding switching among products.

30.   All pricing comparisons, studies, price elasticity studies, and/or optimal pricing studies relating to Nexium and/or other drugs used to treat the same conditions as Nexium.

31.   All documents concerning the potential or forecasted impact of the market entry, or absence thereof, of one or more generic versions of Nexium on sales (measured by units or dollars), profits, and unit prices for Nexium, generic Nexium, and all other drugs used to treat the same conditions as Nexium.

32.   All documents concerning the potential or forecasted impact of the market entry, or absence thereof, of any product used to treat the same conditions as Nexium on sales (measured by units or dollars), profits, and unit prices for Nexium, generic Nexium, and all other drugs used to treat the same conditions as Nexium.

33.   All documents concerning your strategies for increasing the sales and market share of Nexium relative to all other drugs used to treat the same conditions as Nexium.

34.   All documents concerning any relationship between the costs of producing, distributing, marketing, promoting, and selling Nexium, and the price or prices at which Nexium is sold.

35.   Pricing manuals, matrices, guidelines, policies, and/or formulas, for each customer, class of customer, and/or class of trade or subgroup thereof, concerning Nexium.

36. All documents concerning any process, method, manner, policy, practice, strategy, or procedure that you proposed, considered, or used for setting, raising, lowering, changing, or maintaining the prices charged for Nexium, including but not limited to price lists, pricing plans, pricing policies, pricing forecasts, pricing strategies, pricing analyzes, pricing projections, or pricing decisions.

37. All documents concerning the actual or projected size, composition, dollar sales, and/or unit sales in the United States market for Nexium or Generic Nexium from January 1, 2005, to the present.

38. Documents or data sufficient to identify the list price, average wholesale price, direct price, and wholesale acquisition cost for Nexium for each month from January 1, 2005 to the present.

39. All documents concerning the projected and actual revenues, returns, profits, margins, contribution, costs – including initial and ongoing research and development costs – or expenses from the sale of Nexium in the United States from January 1, 2005 to the present.

40. All documents concerning the sales and marketing tactics and strategies for Nexium, including but not limited to: (a) sales training materials and presentations; (b) sales and marketing meeting materials, presentations and summaries; and/or (c) tactical plans and budget proposals.

41. All actual or proposed awards or commendations, or submissions related thereto, related in any way to the sale or marketing of Nexium.

42. All documents concerning the promotion and advertising of Nexium, including but not limited to: (a) communications and advertising directed to physicians; (b) detailing pieces; (c) press releases; and/or (d) direct to consumer advertising.

43.   All documents concerning any business plans concerning Nexium including, but not limited to, any short-term or long-range strategies and objectives, pricing plans, budget and financial projections, expansion or retrenchment plans, and competitive assessments, market studies, or analyses of factors that may increase or decrease sales or market share of Nexium.

44.   All documents concerning any business plan concerning an authorized generic version of Nexium, including, but not limited to, any supply and distribution agreements, short term and long range strategies and objectives, pricing plans, budget and financial projections, and competitive assessments, market studies and presentations.

45.   All documents concerning medical education concerning Nexium, including (a) presentations to or at institutes, symposiums, conferences or seminars; (b) publications in professional journals; and/or (c) surveys and any other types of studies.

46.   All documents concerning communications with the FDA concerning sales or marketing of Nexium, including any comparisons to other drug molecules.

**E.      Documents concerning Nexium Patents**

47.   The complete file wrapper, including any documents not to be opened by the public, regardless of date, for the following patents:

      a.   U.S. Patent No. 5,714,504;

      b.   U.S. Patent No. 5,877,192;

      c.   U.S. Patent No. 6,875,872;

      d.   U.S. Patent No. 6,428,810;

      e.   U.S. Patent No. 6,369,085;

      f.   U.S. Patent No. 5,948,789; and

      g.   U.S. Patent No. 7,411,070.

48.   The complete file wrapper, including any documents not to be opened by the public, regardless of date, for any other Nexium patent not identified in Request no. 47 above.

49.   All documents, regardless of date, concerning any patent term extensions applied for, or granted, with respect to any of the patents covered by Request Nos. 46 and 47.

50.   All documents, regardless of date, created or gathered in preparation for the prosecution of any of the Nexium patents.

51.   All memoranda, analyses, emails, meeting minutes or other internal or external communications, regardless of date, concerning decisions concerning either applying for or prosecuting any of the Nexium patents, including documents sufficient to identify the individual(s) who participated in such decisions.

52.   All documents, regardless of date, concerning the validity or enforceability of any of the Nexium patents, including documents concerning any investigation done by or for any defendant concerning the validity or enforceability of the Nexium patents.

53.   All communications between AstraZeneca and its agents, representatives, independent contractors, or employees concerning the motivation or reasons for either applying for or prosecuting any of the Nexium patents.

**F.    Documents concerning Generic Nexium ANDAs**

54.   All communications between and/or among any of the defendants, or between AstraZeneca and any other Generic Manufacturer, concerning ANDA(s) for Generic Nexium, including but not limited to, any Paragraph IV certifications.

55.   All documents concerning any ANDAs for Generic Nexium, including without limitation the ANDAs filed by Dr. Reddy's, Ranbaxy, and Teva.

56.   All analyses of any ANDAs for Generic Nexium.

57.   All documents concerning the scientific research, formulation, ANDA filing, and FDA approval concerning Generic Nexium by any entity, including without limitation

documents concerning the status and timing of FDA consideration or approval (tentative or final) of any ANDA for Generic Nexium.

**G.   Document Concerning Litigation Concerning Nexium Patents**

58.   All documents – including pleadings, discovery, motions, memoranda of law, expert reports, declarations, transcripts of testimony or proceedings, and other documents – produced, filed, or created for or from the litigation involving any of the following patents:

a.   U.S. Patent No. 5,714,504;

b.   U.S. Patent No. 5,877,192;

c.   U.S. Patent No. 6,875,872;

d.   U.S. Patent No. 6,428,810;

e.   U.S. Patent No. 6,369,085;

f.   U.S. Patent No. 5,948,789; and

g.   U.S. Patent No. 7,411,070.

59.   All documents created or gathered in preparation for filing any patent infringement litigation concerning a patent concerning Nexium.

60.   All documents, regardless of date, concerning whether to list the any patentin the Orange Book as covering Nexium.

61.   All memoranda, analyses, emails, meeting minutes, or other internal or external communications concerning any decision to file patent infringement litigation concerning Nexium or Generic Nexium, including documents sufficient to identify the individuals who participated in such decisions.

62.   All documents evaluating of the bases, merits, likelihood of success, or purpose(s) of any of the patent infringement litigations concerning Nexium or Generic Nexium.

63.   All documents analyzing the scope or effect of any proposed or actual outcome of the patent infringement litigation concerning Nexium or Generic Nexium.

16

64.   All communications (or documents concerning communications) concerning any claim or defense to any patent infringement litigation concerning Nexium or Generic Nexium.

**H.     Documents concerning Generic Nexium market entry**

65.   All documents created, reviewed, or compiled concerning the ANDAs for Generic Nexium, and communications within, between, and among Defendants and their agents concerning the Generic Nexium ANDAs.

66.   All documents concerning communications about Nexium products with any Generic manufacturers, including but not limited to any documents concerning ANDAs for generic Nexium between and among Defendants, their agents, and any Generic Nexium ANDA filer.

67.   All documents concerning communications between and among any of Defendants, their agents, and the FDA concerning any Generic Nexium ANDA.

68.   Any and all documents concerning the readiness, willingness, or ability of pharmaceutical companies to develop, formulate, scale up, process validate, manufacture, market, and sell, Generic Nexium, and to seek (by way of ANDA or otherwise) and obtain FDA approval to do any of the foregoing.

69.   Any documents concerning the actual or expected timing, progress, or impediments of would-be ANDA filers to submit ANDAs to FDA seeking to market Generic Nexium.

70.   All documents concerning the projected or actual date of Generic Nexium market entry.

71.   All documents concerning actions taken by, or considered by, defendants that were designed to, or did in fact, delay or prevent the sale of Generic Nexium including, but not limited to, any act to extend market exclusivity of Nexium.

17

72.   All documents concerning the projected substitution of Generic Nexium for Nexium.

73.   All documents concerning the projected or actual effects of market entry of Generic Nexium on Nexium, including any projections or analyses of the actual or potential impact on sales, prices, or price adjustments, revenue, or profits concerning Nexium, including without limitation, the effect on:

    a)   Unit and dollar volume sales and revenues derived from the sale of Nexium;

    b)   Unit and dollar volume sales of Generic Nexium;

    c)   Pricing of and profits derived from the sales of Nexium; and

    d)   Competition or competitive conditions for Nexium generally.

74.   All documents concerning financial, manufacturing, marketing, or sales plans to prepare for or respond to the projected or actual effects on Nexium sales, prices, revenues, or profits of the market entry of Generic Nexium.

75.   All memoranda, emails, meeting minutes, or communications concerning actual or proposed actions or strategies to prevent or delay the sale of Generic Nexium or to otherwise respond to or diminish any impact of the availability or sale of Generic Nexium.

76.   All documents concerning life cycle management for Nexium.

77.   All documents concerning any physical, regulatory, legal, technical, manufacturing or other issues regarding the readiness, willingness or ability of any generic manufacturer, including but not limited to Dr. Reddy's, Ranbaxy, or Teva, to come to market with Generic Nexium.

78.   All documents concerning any launch of a generic drug product by Dr. Reddy's, Ranbaxy, and Teva that was "at risk" of infringement of any unexpired patent.

79.   All documents concerning any actual or potential "at risk" launch of Generic Nexium.

**I.   Documents concerning sales of Nexium to Direct Purchasers**

80.   Documents sufficient to identify every entity that purchased Nexium directly from AstraZeneca, i.e., direct purchasers, from January 1, 2007 to the present.

81.   All documents concerning contracts for the sale of Nexium including (a) contracts with direct purchasers, (b) contracts that provide that the purchaser will take delivery of Nexium from an entity other than AstraZeneca (such as a wholesaler); (c) contracts concerning the payment of chargebacks from January 1, 2007 to the present; and contracts containing clauses that provide that claims made by direct purchasers of Nexium or their assignees may be adjudicated through arbitration.

82.   Electronic data in a tab-, comma-, or semicolon-delimited ASCII flat text file or similar electronic format from January 1, 2007 to the present sufficient to identify sales of Nexium to direct purchasers in transaction-by-transaction format, as follows:

   a.   All direct sales/invoice transactions (as well as any discounts or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount, (ii) source of the transaction price, (iii) number of units sold, (iv) returned or otherwise affected by the transaction, (v) unit of measure, (vi) date of transaction, (vii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (viii) NDC, (ix) UPC, (x) SKU, (xi) product description, (xii) product form, (xiii) product strength, (xiv) package size in extended units per package, (xv) customer name, (xvi) customer number, (xvii) customer

address, (xviii) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to customer and the ship-to customer), and (xix) the customer's parent company (if the data identify a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

b.   All  data relating to chargebacks, rebates, discounts, and other consideration given or accrued, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity whom AstraZeneca paid, or on whose behalf AstraZeneca accrued, the chargeback, rebate, discount and/or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which AstraZeneca paid or accrued the chargeback, rebate, discount or other consideration; (iv) the sales, or group of sales, upon which the rebate, discount or other consideration is based, including: (aa) the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction; (bb) the bill-to customer; (cc) the ship-to customer; (dd) the dates of the sales, or group of sales; (ee) the invoice amount in dollars for the sales or group of sales; (ff) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; and (gg) the contract, agreement, or other

basis upon which the chargeback, rebate, discount, or other consideration is calculated.

c.  All administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales relating to the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code;

d.  Any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, and all other transaction types not reflected in the above (a through c), whether created or maintained daily, monthly, quarterly, or at some other periodicity.

e.  The complete documentation for all items above (a through d) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g. field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade designations, etc.), including but not limited to (aa) a separate product list, including NDC, SKU, UPC, product description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (cc) a separate table listing and defining each transaction code,

abbreviation, or other field or entry code, and indicating (i) whether quantity

values for each transaction type should be included in calculating net

quantity sold, or should be ignored because they do not affect net quantity

sold and (ii) how negative unit and dollar values should be treated in

calculating net quantities and dollar amounts; (vi) all datasets and

calculations used to determine accrued rebates and/or chargebacks and/or to

periodically reconcile accrued rebates and/or chargebacks with actual rebates

and/or chargebacks; (vii) return and/or exchange policies; and (viii) payment

terms.

83.   Data generated by IMS and Verispan in whatever format it was received from IMS

or Verispan from September 21, 2007 to the present for Nexium, Generic Nexium, and all other

drugs approved to treat the same conditions as Nexium, as follows:

    a.   IMS National Prescription Audit data, including TRx, NRx, extended units, retail
        sales dollars and retail sales price. Preferably, the data should be broken out by
        manufacturer, product, form, strength, NDC and channel.

    b.   IMS National Sales Perspective data, including total units, extended units, total
        sales dollars and price. Preferably, the data should be broken out by manufacturer,
        product, form, strength, NDC and channel.

    c.   Verispan Vector One National (VONA) data, including TRx, NRx, extended
        units, retail sales dollars and retail sales price.  Preferably, the data should be
        broken out by manufacturer, product, form, strength, NDC and channel.

    d.   Documents sufficient to identify all IMS, Verispan, MediSpan, Scott-Levin,
        PriceChek, ImpactRx, First DataBank, or other pharmaceutical industry data
        products purchased by or available to AstraZeneca concerning  Nexium, Generic
        Nexium, and all other drugs approved to treat the same conditions as Nexium.

84.   All documents related to any other price adjustment given to any direct purchaser

not related to specific sales of Nexium.

**J.      Document Retention Policies**

85.   Documents sufficient to show AstraZeneca's document destruction, retention and archiving policies and practices, as well as any changes in such policies and practices implemented since January 1, 1997.

86.   Documents sufficient to show AstraZeneca's policies and procedures for electronic data backup, maintenance, and control.

87.   Documents sufficient to show AstraZeneca's policies and procedures concerning confidentiality of AstraZeneca's business information.

**K.      Other**

88.   Documents sufficient to show the organization of AstraZeneca employees involved in the research, study, development, regulation, approval, packaging, manufacture, pricing, contracting, marketing, advertising, sale and/or distribution of Nexium.

89.   Documents sufficient to show AstraZeneca's internal policies, practices and/or guidelines concerning compliance or failure to comply with federal and state antitrust and competition laws, FDA and United States Health and Human Services regulations, business conduct standards and/or ethics.

90.   All documents concerning any communications between or among AstraZeneca and any other person or entity concerning this action.

91.   All documents concerning agreements between AstraZeneca, on the one hand, and any plaintiff, on the other, concerning the purchase or sale of Nexium.

92.   All calendars or time records of all persons who had substantial involvement in the research, development, manufacture, regulatory action, packaging, pricing, marketing, contracting, advertising, promotion, distribution, or sale of Nexium.

93.   All documents not requested herein that you produce to any other party in this action.

Dated:  November 21, 2012

Respectfully submitted,

**/s/ Thomas M. Sobol**
Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Kristen Johnson Parker, BBO No.
Andrew J. Vasicek, BBO No. 667334
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
kristenjp@hbsslaw.com
andrewv@hbsslaw.com

*Attorneys for Professional Drug Company, Inc.,*
*American Sales Company, LLC,*
*and the Proposed Class*

Don Barrett
Brian Herrington
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

John Radice
RADICE LAW FIRM
34 Sunset Blvd
Long Beach, NJ 08008
Telephone: (646) 386-7688

*Attorneys for Professional Drug Company, Inc.*
*and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, David S. Nalven, hereby certify that I caused a copy of the attached document to be served electronically on all counsel by email.

Dated: November 21, 2012

Respectfully submitted,
**/s/ David S. Nalven**
David S. Nalven, BBO No. 547220
