# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409 |
| | Master File No. 12-md-2409 |
| This Document Relates To: | |
| All Actions | |

### PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS

Pursuant to Fed. R. Civ. P. 34, plaintiffs now request that defendants provide written responses, including any objections and the bases therefor, to this Request for the Production of Documents within 30 days.

### INSTRUCTIONS

1.  Plaintiffs seek production of the documents set forth in the numbered requests below in defendants' possession, custody, and control, control being construed as including in the possession of defendants' attorneys, accountants, or other agents, and including all entities comprising the definitions of "defendants" below.

2.  Any and all headings set forth within the numbered requests below are for convenience only and shall not be deemed to control or affect the meaning or construction of any request.

3.  Unless otherwise stated, these requests cover the period January 1, 2005 to the present (the "Relevant Time Period").

4.  As used in these requests, the singular shall also be treated as plural and vice versa.

5.  Documents are to be produced in full, together with any attachments, exhibits, or

1

appendices. Redacted documents will not constitute compliance with these requests. If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld or redacted.

6.  If any part of a document is responsive to any request, the whole document is to be produced.

7.  Documents not otherwise responsive to this discovery request shall be produced if such documents relate to the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, letters, comments, evaluations or similar materials.

8.  Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final document is a separate and distinct document, and must be produced.

9.  Documents shall be produced either: (a) as they are kept in the usual course of business; or (b) in a manner so that they are organized and labeled to correspond with the Requests. If a document exists in electronic, digital or native form, then it should be produced in that form.  Data sets should be accompanied by data dictionaries including field definitions and any other information necessary to correctly read, manipulate, and interpret the data.

10.  Pursuant to Federal Rule of Civil Procedure 34(b), you are requested to produce any and all electronically stored information in native format (including all metadata) whenever possible.

11.  All documents shall be produced in the file folder, envelope or other container in

which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

12.   In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators or by your attorneys or their agents, employees, representatives or investigators.

13.   If the information sought is not in your control, indicate the company and/or individuals who have such control and/or knowledge.

14.   If you are unable to produce a document in response to any request, so state and indicate whether the document ever existed, or whether the document once existed but cannot be located. To the extent any documents are lost or destroyed, produce any documents which support your assertion that the document was lost or destroyed, and provide the date thereof.

15.   If you claim the attorney-client privilege, or any other privilege (including any so-called "common defense" and/or "common interest" privilege) or work product protection for any document, you shall provide the following information with respect to each such document:

   a.   the type of privilege claimed;

   b.   the type of document;

   c.   general subject matter of the document;

    d.  date of the document;

    e.  such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other; and

    f.  any other information required to be furnished by the local rules of the United States District Court for the District of Massachusetts.

16.  Any privilege log or list shall be produced in an Excel spreadsheet or other similar, searchable electronic format.

17.  These document requests are continuing and therefore require each defendant (or any person acting on its behalf) to furnish supplemental responses whenever a defendant (or any person acting on its behalf) obtains additional information called for by the request. Each supplemental response shall be served on plaintiffs no later than thirty (30) days after the discovery of the further information.

### DEFINITIONS

1.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

2.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3.  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.  When referring to documents, "to identify" means to give, to the extent known, the:

    a.  type of document;

    b.  general subject matter;

    c.  date of the document; and

    d.  author(s), addressee(s), and recipient(s).

5.  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6.  "AstraZeneca" means AstraZeneca AB, Aktiebolaget Hassle, and AstraZeneca LP, including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

7.  "Ranbaxy" means Ranbaxy Pharmaceuticals, Inc., Ranbaxy Laboratories Limited, and Ranbaxy, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

8.  "Teva" means Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

9.  "Dr. Reddy's" means Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the

foregoing.

10.  "Defendants" means the persons, firms, and corporations encompassed by the preceding four (4) definitions.

11.  The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

12.  The term "concerning" means referring to, describing, evidencing, or constituting, in whole or part.  To the extent that "concerning" is used regarding agreements, its meaning should be construed to include, but is not limited to, documents pertaining to performance of the agreements and all documents created pursuant to or in connection with the agreements.

13.  "ANDA" means an Abbreviated New Drug Application filed with the FDA, including any amendments or supplements thereto.

14.  "Generic Manufacturers" means any entity seeking to produce, market, sell or promote a generic version of Nexium, specifically including, but not limited to, Ranbaxy, Teva, and Dr. Reddy's.

15.  "Generic Nexium" means any product that is (or is sought to be) AB-rated by the FDA to branded Nexium.

16.  "Nexium patent" means U.S. Patent No. 4,786,505; U.S. Patent No. 4,853,230; U.S. Patent No. 4,738,974; U.S. Patent No. 5,877,192; U.S. Patent No. 6,875,872; U.S. Patent 5,714,504; U.S. Patent No. 5,690,960; U.S. Patent No. 5,900,424; U.S. Patent No. 6,369,085; U.S. Patent No. 7,411, 070; U.S. Patent No. 6,147,103; U.S. Patent No. 6,191,148; U.S. Patent No. 6,166,213; U.S. Patent No. 6,428,810 and U.S. Patent No. 5,948,789; as well as any other patents that AstraZeneca has contended or now contends were infringed by any of the Generic ANDAs (under s. 271(e)(2)(A)) or would have been infringed by marketing any of the Generic Nexium products (under any other provision of s. 271).

6

17.  "Underlying actions" means any of the patent litigations involving any of the defendants and concerning Nexium or Generic Nexium or esomeprazole.

18.  "Electronically stored information" means the broadest possible meaning of the term "electronically stored information" as used in Federal Rule of Civil Procedure 34.

19.  "Native format" means the file format in which a computer or other application or program reads and writes the electronically stored information.

20.  The words "and" and "or" shall be construed either in the disjunctive or the conjunctive, so as to bring within the scope of the discovery request the broadest range of documents.

21.  The words "any," "each," and "all" shall be construed as to be synonymous so as to bring within the scope of the discovery requests the broadest range of documents.

## PLAINTIFFS' DOCUMENT REQUESTS

1.      To the extent that the requested documents are not encompassed by Plaintiffs' First Request for Production of Documents to all Defendants (the "First Requests") and/or not previously produced in *In re: Nexium (Esomeprazole) Antitrust Litigation*, United States District Court for the District of Massachusetts, MDL No. 2409, Master File No. 12-md-2409 (this "action"), all documents concerning AstraZeneca's readiness, ability, intention, plans, and/or preparations to launch or license one or more Generic Manufacturers to sell an authorized generic version of Nexium.

2.      To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning the potential market entry of Generic Nexium or authorized generic version(s) of Nexium during, or prior to the expiration of, Ranbaxy's 180-day exclusivity.

3.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning the potential or forecasted impact of the market entry, or absence thereof, of an authorized generic version of Nexium on sales (measured by units or dollars), profits, and/or unit prices for Nexium and/or Generic Nexium.

4.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning FDA approval of any ANDA for Generic Nexium filed by Ranbaxy, Teva, and Dr. Reddy's, from January 1, 2005 through the present, including but not limited to all communications with FDA concerning Generic Nexium, internal communications discussing FDA approval, and communications between and among any of Ranbaxy, Teva and Dr. Reddy's concerning FDA approval.

5.     All documents concerning actual or proposed waiver, relinquishment, or forfeiture of Ranbaxy's 180-day exclusivity with respect to Generic Nexium, and with respect to generic drugs other than Generic Nexium.

6.     All documents concerning Ranbaxy's compliance or non-compliance with FDA's current Good Manufacturing Practices ("cGMPs") from January 1, 2005 through the present with respect to any of Ranbaxy's ANDA's or manufacturing facilities.

7.     All documents concerning FDA's application of its Application Integrity Policy ("AIP") with respect to Ranbaxy and any and all ANDAs filed by Ranbaxy, from January 1, 2005 through the present, including but not limited to documents and communications concerning:  the effects of AIP on each of Ranbaxy's pending and approved ANDAs, the effects of AIP on Ranbaxy's actual or expected 180-day exclusivity with respect to each, negotiations and communications with FDA and/or other government agencies with respect to each, efforts to

secure resumption of ANDA review with respect to each, consultations with third parties with respect to ameliorating the deficiencies with each that led to application of the AIP, actual or proposed agreements with Generic Manufacturers or other third parties to ameliorate the effect of the AIP with respect to each, the timing of FDA determinations concerning resumed review and 180-day exclusivity determinations with respect to each, and the role of any launch date contained in a settlement or other agreement between Ranbaxy and the manufacturer of the reference-listed drug ("RLD") in connection with such timing.

8.      To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning Ranbaxy's January 2012 consent decree with the United States of America as it relates to any and all ANDAs filed by Ranbaxy, including but not limited to documents and communications concerning:  the effects of the consent decree on each of Ranbaxy's pending and approved ANDAs, the effects of the consent decree on Ranbaxy's actual or expected 180-day exclusivity with respect to each, negotiations and communications with FDA and/or other government agencies with respect to each, efforts to secure resumption of ANDA review with respect to each, consultations with third parties with respect to ameliorating the deficiencies with each that led to the consent decree, actual or proposed agreements with Generic Manufacturers or other third parties to ameliorate the effect of the consent decree with respect to each, the timing of FDA determinations concerning resumed review and 180-day exclusivity determinations with respect to each, and the role of any launch date contained in a settlement or other agreement between Ranbaxy and the manufacturer of the RLD in connection with such timing.

9.      All documents concerning any FDA import ban with respect to Ranbaxy and any and all ANDAs filed by Ranbaxy, including but not limited to, documents and communications

concerning:  the effects of any import ban on each of Ranbaxy's pending and approved ANDAs, the effects of any import ban on Ranbaxy's actual or expected 180-day exclusivity with respect to each, negotiations and communications with FDA and/or other government agencies with respect to each, efforts to lift any import ban with respect to each, consultations with third parties with respect to ameliorating the deficiencies with each that led, in whole or in part, to any import ban, actual or proposed agreements with Generic Manufacturers or other third parties to ameliorate the effect of any import ban with respect to each, the timing of FDA determinations concerning lifting any import ban with respect to each, and the role of any launch date contained in a settlement or other agreement between Ranbaxy and the manufacturer of the RLD in connection with such timing.

10.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning actual or proposed indemnification of infringement liability for selling Generic Nexium, including but not limited to documents concerning insurance for such liability and documents concerning indemnification agreements with one not in the business of insurance.

11.     All documents concerning actual or proposed site transfers, technology transfers, contract manufacturing arrangements, or other contractual arrangements for any Generic Nexium ANDA.

12.     All documents concerning particular solvates, hydrates, or other polymorphic forms of esomeprazole magnesium, including but not limited to submissions to the United States Pharmacopeia or FDA concerning proposed or actual specifications for esomeprazole magnesium, and the commercial availability of active pharmaceutical ingredient ("API") for esomeprazole magnesium meeting such specifications.

13.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning AstraZeneca's ability and capacity to manufacture, have manufactured, store and/or otherwise obtain its Nexium API requirements absent the Ranbaxy Nexium API Supply Agreement, including but not limited to, documents concerning the adequacy of AstraZeneca's other sources of Nexium API, API supply and demand forecasts and other planning documents, API shortages, API production and supply schedules, orders, order cancellations, and communications with (or about) API suppliers, and documents concerning API invoices (and payment thereof), draft and/or executed contracts, and disputes with vendors or proposed vendors.

14.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning AstraZeneca's ability and capacity to manufacture (or have manufactured) branded Nexium capsules absent the Ohm Tolling Agreement, including but not limited to documents concerning the adequacy of AstraZeneca's other sources of finished Nexium capsules, AstraZeneca's own manufacturing operations and capacity, supply and demand forecasts and other planning documents, manufacturing forecasts, production schedules, orders, order cancellations, and communications with (or about) contract manufacturers.  This also includes, but is not limited to, documents concerning invoices for manufacturing services (and payment thereof), draft and/or executed contracts, and disputes with contract manufacturers or proposed contract manufacturers.

15.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning the actual, potential or forecasted timing or impact of the market entry, or absence thereof, on

11

AstraZeneca's sales, profits, and/or unit prices, of an authorized generic version of Plendil and/or Prilosec.

16.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning AstraZeneca's intention and/or desire to enter the market with authorized generic versions of Nexium, Plendil and/or Prilosec, itself or through a third party, including but not limited to documents concerning authorized generic Nexium, Plendil and/or Prilosec supply and/or demand (including forecasts and other planning documents), regulatory approval, manufacturing forecasts and production schedules, orders (and cancellation thereof), order shipment, marketing and distribution plans, storage plans, destruction of product, and communications with potential distribution or storage vendors, including but not limited to draft and executed contracts relating to authorized generic versions of Nexium, Plendil and/or Prilosec, and disputes relating thereto.

17.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning performance of the Ranbaxy Nexium API Supply Agreement, the Ohm Tolling Agreement and all agreements referred to therein, including but not limited to all documents concerning the Development and Know-How Agreement, the Quality Assurance Agreement, the Product Requirements Schedule, and the Development and Technology Transfer Agreement, including but not limited to, all forecasts and purchase orders for AstraZeneca's purchase of Nexium API from Ranbaxy, all forecasts and firm orders submitted by AstraZeneca to Ohm for Nexium formulation, all Key Performance Indicators data, all documents concerning any technology transfer from AstraZeneca to Ranbaxy concerning Nexium or Generic Nexium, all documents concerning

12

business review meetings between AstraZeneca and Ranbaxy, and all documents relating to audits or inspections of Ranbaxy or Ohm by AstraZeneca.

18.     All documents concerning performance of the Ranbaxy Prilosec and Plendil Authorized Generic agreements, including but not limited to all documents that were required to be created and/or delivered pursuant thereto and documents concerning forecasts and firm orders.

19.     All documents concerning performance of the Teva Nexium and Prilosec Settlement Agreements, including but not limited to all documents that were required to be created and/or delivered pursuant thereto.

20.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning Teva's or Impax Laboratories Inc.'s ("Impax") liability or potential liability to AstraZeneca for sales of generic Prilosec 40mg, without limitation to the Relevant Time Period.

21.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, documents sufficient to show Teva or Impax's sales (monthly and aggregate) of generic Prilosec 40 mg from September 2004 to October 2007, without limitation to the Relevant Time Period.

22.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents reflecting or evaluating AstraZeneca's lost sales of Prilosec 40 mg as a result of Teva or Impax's marketing of generic Prilosec 40 mg from September 2004 to October 2007, without limitation to the Relevant Time Period.

23.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents reflecting or evaluating the profits lost by AstraZeneca as a result of Teva or Impax's marketing of generic Prilosec 40 mg from September 2004 to October 2007, without limitation to the Relevant Time Period.

24.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents reflecting or estimating the damages caused to AstraZeneca as a result of Teva or Impax's marketing of generic Prilosec 40 mg from September 2004 to October 2007, without limitation to the Relevant Time Period.

25.     Documents sufficient to show Dr. Reddy's sales (monthly and aggregate) of generic Accolate prior to January 18, 2011.

26.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning, reflecting or evaluating the sales of Accolate lost by AstraZeneca as a result of Dr. Reddy's marketing of generic Accolate prior to January 18, 2011.

27.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning, reflecting or evaluating the profits lost by AstraZeneca as a result of Dr. Reddy's marketing of generic Accolate prior to January 18, 2011.

28.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents concerning, reflecting or estimating the damages caused to AstraZeneca as a result of Dr. Reddy's marketing of generic Accolate prior to January 18, 2011.

29.     All documents and communications concerning secondary considerations of non-obviousness for all Nexium patents.

30.     All validity or patentability prior art searches or investigative reports relied upon, reviewed, generated, performed, commissioned, ordered, requested, received, contracted or purchased by or for any Defendant concerning the Nexium patents.

31.     All documents and communications that any Defendant relied upon or intended to rely upon to support its positions regarding claim construction concerning the Nexium patents.

32.     All legal opinions, studies, analyses, and other documents and communications regarding: (a) the interpretation, scope or meaning of any of the claims of the Nexium patents; (b)the infringement, validity, or enforceability of any of the claims of the Nexium patents and (c) the likelihood of success in any of the underlying actions.

33.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents and communications concerning any licenses, agreements or contracts concerning the Nexium patents.

34.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all documents and communications concerning the underlying actions including, without limitation, any infringement analysis, investigation, or evaluation of any product made, used, sold, offered for sale, or imported by any of the Generic Manufacturers, as well as any prior art/invalidity analysis, investigation, or evaluation.

35.     To the extent that the requested documents are not encompassed by the First Requests and/or not previously produced in this action, all pleadings, filings, submissions, briefing, disclosures, discovery responses, expert reports, deposition transcripts and exhibits,

hearing transcripts and exhibits, declarations, affidavits, and correspondence files from or concerning the underlying actions and/or involving or concerning any of the Nexium patents or any governmental investigations related thereto.

36.     All documents and communications exchanged between AstraZeneca and any inventors of the Nexium patents concerning the underlying actions.

**INDIRECT PURCHASER PLAINTIFFS ONLY DOCUMENT REQUESTS**

37.     All documents concerning any proposed or actual license, contract, or agreement between AstraZeneca and Dr. Reddy's within one year of the January 28, 2011 agreements between AstraZeneca and Dr. Reddy's referenced in the complaints, including but not limited to any proposed agreements involving Dr. Reddy's supply of API to AstraZeneca, and/or Dr. Reddy's sale of an authorized generic version of any AstraZeneca drug.

38.     All documents concerning any licenses, agreements, or contracts between AstraZeneca, on the one hand, and Dr. Reddy's, Ranbaxy, Teva, or other prospective manufacturers of Generic Nexium on the other, concerning the manufacture, promotion, and sale of Nexium or Generic Nexium, including any information regarding royalties, payments, or profit sharing.

39.     All documents concerning any business plan concerning an over-the-counter version of Nexium, including but not limited to any supply and distribution agreements, short-term and long-range strategies and objectives, pricing plans, budget and financial projections, and competitive assessments, market studies, and presentations.

40.     To the extent that the requested documents are not encompassed by the First Requests, including requests nos. 37 and 39, and/or not previously produced in this action, documents sufficient to show the following for Nexium from January 1, 2005 to the present: (a)

gross revenue; (b) net revenue; (c) cost of goods sold; (d) manufacturing cost; (e) sales and distribution cost; (f) marketing, advertising, promotional, and sales expenses; (g) depreciable and capital improvements; (h) research and development expenditures; (i) licensing fees and royalties paid and received; (j) short-run average variable costs; (k) long-run average variable costs; (l) fixed costs; (m) materials cost; (n) labor cost; (o) marginal cost; (p) rebates and discounts; (q) gross profit; (r) net profit; (s) unit volume sold; (t) unit volume sold net of returns; (u) cost and price analyses; and (v) the allocation of overhead costs to Nexium if not booked separately.

41.     All product-specific profit and loss statements from January 1, 2005 to the present, including but not limited to documents or data concerning any of the following financial characteristics of Nexium, broken down by form and dosage strength if available: (a) the total amount of revenue from sales; (b) the total gross profit from sales; (c) the total net profit from sales, together with all expenses, deductions, allowances or other adjustments used to calculate net profits; and (d) the total amount spent on marketing, advertising, promotions and sales both in the aggregate and based on the particular type of expense.

42.     To the extent that the requested documents are not encompassed by the First Requests, including request no. 40, and/or not previously produced in this action, all documents concerning strength-weakness-opportunity-threat ("SWOT") analyses.

43.     All documents concerning pricing of Nexium, including documents concerning the factors considered in setting or changing list prices or determining adjustments to prices, such as rebates and discounts, and documents showing rebate calculations.

44.     Documents sufficient to identify the total number of units of Nexium sold to end-payors from January 1, 2007 to the present, on a monthly, quarterly, annual and/or other period basis, together with documents or data sufficient to show: (a) location of sales (city and state);

(b) product description; (c) product strength; (d) product form; (e) package size in terms of units per package; and (f) NDC, UPC, or SKU.

45.     To the extent that the requested information is not encompassed by the First Requests, including request no. 82, and/or not previously produced in this action, the following electronic data in the format stated in request no. 82, from January 1, 2007 to the present:

a.     All indirect sales/invoice/chargeback transactions, together with any discounts, price adjustments or offsets contained in the transaction data, including fields containing the following information: (i) wholesaler name; (ii) wholesaler number; (iii) wholesaler DEA number; (iv) indirect customer name; (v) indirect customer number; (vi) indirect customer DEA number; (vii) indirect customer complete address; (viii) indirect customer class of trade code; (ix) indirect customer class of trade code description; (x) NDC; (xi) product description; (xii) product form; (xiii) product strength; (xiv) product package size; (xv) date of transaction between the wholesaler and its customer (i.e., the indirect customer); (xvi) date of chargeback payment; (xvii) chargeback amount; (xviii) contract price; (xix) wholesale price; (xx) number of units sold; (xxi) location of transaction (city and state); and (xxii) gross profit, net profit, or rate of return.

b.     All rebate transactions, including fields containing the following information: (i) customer DEA number; (ii) customer class of trade code; (iii) customer class of trade code description; (iv) product description; and (v) date of rebate payment

46.     To the extent that the requested information is not encompassed by the First Requests and/or not previously produced in this action, all data generated by IMS Health NPA Market Dynamics, IMS Health New Product Spectra, IMS Health Xponent PlanTrak, IMS Health Xponent Prescribing Dynamics, IMS National Prescription Audit, IMS National Sales Perspective Data,  Verispan/SDI/Scott-Levin, Wolters Kluwer, and/or Source Healthcare Analytics in whatever format it was received from these entities, from January 1, 2007 to the present, for Nexium, Generic Nexium, and all other drugs used or approved to treat the same conditions as Nexium, including (where applicable): (a) TRx; (b) NRx; (c) total units; (d) extended units; (e) total sales dollars; (f) price; (g) retail sales dollars; (h) retail sales price; and

(i) state of sale.  Preferably, the data should be broken out by manufacturer, product, form, strength, NDC, and channel.

47.     All documents concerning data from, or analysis using data from, IMS Health NPA Market Dynamics, IMS Health New Product Spectra, IMS Health Xponent PlanTrak, IMS Health Xponent Prescribing Dynamics, IMS National Prescription Audit, IMS National Sales Perspective Data, Verispan/SDI/Scott-Levin, Wolters Kluwer, and/or Source Healthcare Analytics concerning Nexium, Generic Nexium, and all other drugs used or approved to treat the same conditions as Nexium.

48.     All documents, reports, or analyses concerning method of payment for Nexium, including without limitation documents concerning the portion of Nexium sales paid by private third-party payors, Medicaid, and cash payors.

49.     All documents related to advertising, sales, or marketing materials for third-party payors or entities or persons that paid or reimbursed for all or any portion of Nexium bought at retail or mail order pharmacies.

50.     To the extent that the requested information is not encompassed by the First Requests and/or not previously produced in this action, all data generated by IMS Integrated Promotional Services or any other vendor, in whatever format it was received from those entities, from January 1, 2007 to the present, concerning promotional activity for Nexium, Generic Nexium, and all other drugs used or approved to treat the same conditions as Nexium, including (where applicable): (i) contacts; (ii) contact dollars; (iii) samples; (iv) extended unit samples (samples EU); (v) retail value of samples (RVOS); (vi) journal advertisements; (vii) journal pages; (viii) journal dollars; (ix) direct-to-consumer advertising dollars (DTC); (x) manufacturer; (xi) formulation; and (xii) strength.

51.     All documents identifying any third-party payors or entities or persons that paid or reimbursed for all or any portion of Nexium bought at retail or mail order pharmacies from January 1, 2007 to the present.

52.     All documents related to any rebates provided to any third-party payors or entities or persons that paid or reimbursed for all or any portion of Nexium bought at retail or mail order pharmacies related to purchases or reimbursement of Nexium.

53.     All documents, reports, or analyses concerning the formulary or tier placement for Nexium or Generic Nexium.

54.     All IMS National Disease and Therapeutic Index (NDTI) data, reports, analyses, or summaries, in whatever format it was received, from January 1, 2007 to the present, concerning (a) the diagnoses for which Nexium or Generic Nexium was used and the number of uses for each diagnosis; and (b) for the top 20 Nexium diagnoses, all other oral drugs used for each diagnosis and the number of uses for each drug.  Where available, this data should be broken down by diagnosis and type of issuance (e.g., Prescription, Sample & Rx, Sample, Unspecified, Not issued this visit, Hospital order, Recommended, Stock dispensed, Administered, Sold stock to patient).  This request encompasses equivalent data, reports,

analyses, or summaries generated by any other vendor.

Dated:  May 1, 2013        Respectfully submitted,

                 **/s/ Thomas M. Sobol**

David F. Sorensen         Thomas M. Sobol, BBO No. 471770
Daniel Simons          David S. Nalven, BBO No. 547220
Catlin Coslett          Kristen Johnson Parker, BBO No. 667261
BERGER & MONTAGUE, P.C.    Donna M. Evans, BBO No. 554613
1622 Locust Street        HAGENS BERMAN SOBOL SHAPIRO LLP
Philadelphia, PA 19103      55 Cambridge Parkway, Suite 301
Tel: (215) 875-3000       Cambridge, MA  02142
Fax: (215) 875-4604       Tel: (617) 482-3700
dsorensen@bm.net       Fax: (617) 482-3003
dsimons@bm.net        tom@hbsslaw.com
ccoslett@bm.net        davidn@hbsslaw.com
                 kristenjp@hbsslaw.com
Bruce E. Gerstein        donnae@hbsslaw.com
Joseph Opper
Elena Chan
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP 1501
Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
echan@garwingerstein.com
egerstein@garwingerstein.com

*Co-lead Counsel for the Direct Purchaser Class*

Steve D. Shadowen
HILLIARD & SHADOWEN LLC
39 West Main Street
Mechanicsburg, PA 17055
Tel: (855) 344-3298
steve@hilliardshadowenlaw.com

Kenneth A. Wexler
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com

J. Douglas Richards
COHEN MILSTEIN SELLERS & TOLL, PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
drichards@cohenmilstein.com


Jayne A. Goldstein
POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Tel: (954) 315-3454
Fax: (954)315-3455
jagoldstein@pomlaw.com

*Interim Co-Lead Counsel for the Proposed End-Payor Class*

**CERTIFICATE OF SERVICE**

     I, Donna M. Evans, hereby certify that I caused a copy of the attached document to be served electronically on all counsel by email.

Dated:  May 1, 2013

                                     Respectfully submitted,

                                     /s/ **Donna M. Evans**
                                     Donna M. Evans, BBO No. 554613