# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409<br><br>Master File No. 1:12-md-2409-WGY |
| This Document Relates To:<br><br>All Actions | |

**PLAINTIFFS' THIRD SET OF INTERROGATORIES (NOS. 5-17)
TO ALL DEFENDANTS**

Pursuant to Fed. R. Civ. P. 33, plaintiffs propound the following Interrogatory Nos. 5 to 17 to all defendants. In accordance with Fed. R. Civ. P. 33, each defendant shall submit a separate response to the following Interrogatories within thirty (30) days. These Interrogatories are subject to the Instructions and Definitions set forth below.

**INSTRUCTIONS**

1. As used herein, the singular shall also be treated as the plural and vice versa.

2. If the information sought is not in your control, indicate the company and/or individuals who have such control and/or knowledge.

3. Each Interrogatory is continuing and therefore requires each defendant (or any person acting on its behalf) to furnish supplemental responses whenever a defendant (or any person acting on its behalf) obtains additional information called for by an Interrogatory. Each supplemental response shall be served on plaintiffs no later than thirty (30) days after the discovery of the further information.

1

**DEFINITIONS**

1. "The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

2. The term, "identify" means, as to documents, to give, to the extent known, the:

   a. type of document;

   b. general subject matter;

   c. date of the document; and

   d. author(s), addressee(s), and recipient(s).

3. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

4. "AstraZeneca" means AstraZeneca AB, Aktiebolaget Hassle, and AstraZeneca LP, including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

5. "Ranbaxy" means Ranbaxy Pharmaceuticals, Inc., Ranbaxy Laboratories Limited, and Ranbaxy, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

6. "Teva" means Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

7.      "Dr. Reddy's" means Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc., including their parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

8.      "Defendants" means the persons, firms, and corporations encompassed by the preceding four (4) definitions.

9.      "Ohm" means Ohm Laboratories, Inc., including its parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

10.     "Impax" means Impax Laboratories, Inc., including its parents, subsidiaries, and affiliates, and each of their predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

11.     "Merck" means Merck Sharp & Dohme Corp., including its parents, subsidiaries, and affiliates, and each of its predecessors and successors, and the officers, employees, attorneys, and other agents of all of the foregoing.

12.     "API" means active pharmaceutical ingredient.

13.     The words "any," "each," and "all" shall be construed as to be synonymous so as to bring within the scope of the discovery requests the broadest range of documents.

### INTERROGATORY NOS. 5-18

5.      <u>To AstraZeneca and Ranbaxy</u>: Separately for each of the following agreements, state the quantitative financial value(s) you placed on each and every benefit of the following agreements, and state the assumptions, data, and methodology used to calculate each valuation;

3

and for any benefit you identified but did not place a quantitative value on, describe in detail the benefit you identified and the basis for such identification:

    a. Settlement Agreement dated April 14, 2008 between AstraZeneca, KBI Inc, KBI-E Inc. and Ranbaxy;

    b. API Supply Agreement, dated April 14, 2008 between AstraZeneca and Ranbaxy;

    c. AstraZeneca-Ohm Tolling Agreement, dated April 14, 2008;

    d. Distribution Agreement between AstraZeneca LP and Ranbaxy Pharmaceuticals Inc., dated April 14, 2008, regarding Plendil;

    e. Distribution Agreement between AstraZeneca LP and Ranbaxy Pharmaceuticals Inc., dated April 14, 2008, regarding Prilosec;

    f. Bailment Agreement, dated April 14, 2008; and

    g. Product Development Agreement between Ranbaxy Laboratories, Ltd., and Merck, dated May 8, 2008.

6. <u>To AstraZeneca and Ranbaxy</u>: Identify the date and amount of each payment made to Ranbaxy and/or Ohm under each of the agreements listed in 5(a)-(g) and identify what each payment was for.

7. <u>To AstraZeneca</u>: State the value of (a) your anticipated sales of generic Nexium under "Project Genesis," in dollar amount(s) and as a percentage of total Nexium sales, for each year from 2007 to the present, and (b) the anticipated commission or fee, as a percentage of profits/sales and in dollar amount(s), you anticipated paying to any distributor for sales of generic Nexium under "Project Genesis" on a monthly basis and in the aggregate.

8. <u>To AstraZeneca</u>: State the value of the commission or fee, as a percentage of profits/sales and in dollar amount(s), you paid to each of the distributors of the authorized generic versions of the following, on a monthly basis and in the aggregate:

   a. Toprol XL;

   b. Plendil;

   c. Pulmicort Respules;

   d. Accolate;

   e. Entocort EC;

   f. Atacand HCT;

   g. Zomig; and

   h. Atacand.

9. <u>To AstraZeneca</u>: Describe the reasons AstraZeneca selected the distributors for the authorized generic versions of the drug products listed in Interrogatory No. 8, including any selection process and criteria used.

10. <u>To AstraZeneca and Teva</u>: Separately for each of the following agreements, state the quantitative financial value(s) you placed on each and every benefit of entering into each of the following agreements, and state the assumptions, data, and methodology used to calculate each valuation; and for any benefit you identified but did not place a quantitative value on, describe in detail the benefit you identified and the basis for such identification:

   a. Settlement Agreement dated January 6, 2010 between AstraZeneca, KBI Inc., KBI-E Inc., Merck, and Teva/IVAX to settle the litigations regarding Nexium; and

below

      b.  Settlement Agreement dated January 6, 2010 between AstraZeneca, KBI Inc., KBI-E Inc., and Teva/IVAX to settle the litigations regarding Prilosec.

11.    <u>To AstraZeneca and Teva</u>: State the dollar amount value of the damages (including enhanced damages), costs and attorneys' fees that Teva was anticipated to owe as a result of Teva/Impax's at risk launch of Prilosec, and state the assumptions, data, and methodology used to calculate such value; and if you contend that the amount was not finalized, then state all estimates, draft estimates, and partial estimates (stating the amounts and the date of the estimates).

12.    <u>To AstraZeneca and Dr. Reddy's</u>: Separately for each of the following agreements, state the quantitative financial value(s) you placed on each and every benefit of entering into each of the following agreements, and state the assumptions, data, and methodology used to calculate each valuation; and for any benefit you identified but did not place a quantitative value on, describe in detail the benefit you identified and the basis for such identification.:

      a.  Settlement Agreement dated January 18, 2011 between AstraZeneca, KBI Inc., Merck, and Dr. Reddy's to settle the litigations regarding Nexium; and

      b.  Settlement Agreement dated January 18, 2011 between AstraZeneca and Dr. Reddy's to settle the litigations regarding Accolate.

13.    <u>To AstraZeneca and Dr. Reddy's</u>:  State whether AstraZeneca and Dr. Reddy's entered into any type of business arrangement, including but not limited to any involving the following pharmaceuticals, on or after January 18, 2011, and state, separately for each such agreement, the quantitative financial value(s) you placed on each and every benefit of entering into such business arrangements, and state the assumptions, data, and methodology used to

calculate each valuation; and for any benefit you identified but did not place a quantitative value on, describe in detail the benefit you identified and the basis for such identification:

　　a.　Seroquel XR;

　　b.　Atacand and/or Atacand HCTZ;

　　c.　Pulmicort;

　　d.　Metroprolol XR;

　　e.　Nexium in Europe;

　　f.　Crestor in Europe;

　　g.　Rosuvastatin; and

　　h.　Brilinta.

　　14.　<u>To AstraZeneca and Ranbaxy</u>: Identify (a) all amounts of API Ranbaxy provided to AstraZeneca pursuant to the API Supply Agreement, dated April 14, 2008, listing all amounts by lot size, date received, and price paid per kilogram, (b) the costs per kilogram to Ranbaxy to supply Nexium API to AstraZeneca, (c) all amounts of finished units of drug product that Ohm/Ranbaxy provided to AstraZeneca pursuant to the AstraZeneca-Ohm Tolling Agreement, dated April 14, 2008, listing all amounts by lot size, date received, and price paid per one-thousand capsules, (d) the costs per capsule to Ohm/Ranbaxy to formulate Nexium capsules for AstraZeneca, and (e) AstraZeneca's source(s) of Nexium API and Finished Nexium after May 27, 2014.

　　15.　<u>To AstraZeneca</u>: Identify (a) the costs per kilogram to AstraZeneca to manufacture Nexium API internally or through Merck, (b) the costs per capsule to AstraZeneca to formulate Nexium capsules internally or through Merck, (c) all the payments per capsule made by AstraZeneca to Merck for formulating/manufacturing Nexium, (d) the amount of

7

Nexium units formulated/manufactured by Merck annually, and (e) the contingent payments made by AstraZeneca to Merck for Nexium sales annually.

16. <u>To Ranbaxy</u>: Identify each instance in which you have agreed to supply another drug company with API and/or finished drug product, including but not limited to, (a) the name of the drug, (b) the name of the drug company to which you supplied the API and/or finished drug product, (c) the per kilogram cost to Ranbaxy of manufacturing the API or the per capsule cost to Ranbaxy of formulating finished drug product, and (d) the price charged by Ranbaxy for such services.

17. <u>To Ranbaxy and Teva</u>: Identify each instance in which you have considered, negotiated, or entered into an agreement with another generic drug manufacturer which had the purpose or effect of facilitating launch, or earlier launch, of a generic drug, including any agreement regarding at-risk launch, alternate site manufacturing, contract manufacturing, or any other arrangement with the purpose or effect of facilitating any company (including yourself) in monetizing any ANDA, including but not limited to (a) the ANDA product, (b) the name of the drug company you considered, negotiated, or entered into an agreement with, (c) the type of facilitation considered, negotiated, or agreed to, and (d) the status of any such facilitation.

Dated: July 15, 2013

Respectfully submitted,

David F. Sorensen
Daniel Simons
Caitlin Coslett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
dsorensen@bm.net

**/s/ Thomas M. Sobol**
Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Kristen Johnson Parker, BBO No. 667261
Donna M. Evans, BBO No. 554613
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Tel: (617) 482-3700
Fax: (617) 482-3003

| | |
|---|---|
| dsimons@bm.bet<br>ccoslett@bm.net | tom@hbsslaw.com<br>davidn@hbsslaw.com<br>kristenjp@hbsslaw.com<br>donnae@hbsslaw.com |
| Bruce E. Gerstein<br>Joseph Opper<br>Elena Chan<br>Ephraim R. Gerstein<br>GARWIN GERSTEIN & FISHER LLP 1501<br>Broadway, Suite 1416<br>New York, NY 10036<br>Tel: (212) 398-0055<br>Fax: (212) 764-6620<br>bgerstein@garwingerstein.com<br>jopper@garwingerstein.com<br>echan@garwingerstein.com<br>egerstein@garwingerstein.com | |

*Co-lead Counsel for the Direct Purchaser Class*

| | |
|---|---|
| | **  /s/ J. Douglas Richards** |
| Steve D. Shadowen<br>HILLIARD & SHADOWEN LLC<br>39 West Main Street<br>Mechanicsburg, PA 17055<br>Tel: (855) 344-3298<br>steve@hilliardshadowenlaw.com | J. Douglas Richards<br>COHEN MILSTEIN SELLERS & TOLL, PLLC<br>88 Pine Street, 14th Floor<br>New York, New York 10005<br>Tel: (212) 838-7797<br>Fax: (212) 838-7745<br>drichards@cohenmilstein.com |
| Kenneth A. Wexler<br>WEXLER WALLACE LLP<br>55 W. Monroe Street, Suite 3300<br>Chicago, IL  60603<br>Tel: (312) 346-2222<br>Fax: (312) 346-0022<br>kaw@wexlerwallace.com | Jayne A. Goldstein<br>POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP<br>1792 Bell Tower Lane, Suite 203<br>Weston, FL 33326<br>Tel: (954) 315-3454<br>Fax: (954)315-3455<br>jagoldstein@pomlaw.com |

*Interim Co-Lead Counsel for the Proposed End-Payor Class*

| /s/ *Scott E. Perwin* | */s/ Moira Cain-Mannix* |
|---|---|
| Scott E. Perwin (pro hac vice) <br> Anna T. Neill (pro hac vice) <br> Kenny Nachwalter P.A. <br> 1100 Miami Center <br> 201 South Biscayne Boulevard <br> Miami, FL 33131 <br> (305) 373-1000 <br> sperwin@knpa.com <br> aneill@knpa.com <br><br> *Counsel for Walgreen Co., The Kroger Co., Safeway Inc., Supervalu, Inc., and HEB Grocery Co. LP* | Bernard D. Marcus <br> marcus@marcus-shapira.com <br> Moira Cain-Mannix <br> cain-mannix@marcus-shapira.com <br> Jonathan D. Marcus <br> jmarcus@marcus-shapira.com <br> Brian C. Hill <br> hill@marcus-shapira.com <br><br> MARCUS & SHAPIRA LLP <br> One Oxford Centre, 35th Floor <br> 301 Grant Street <br> Pittsburgh, PA 15219 <br> (412) 471-3490 <br><br> Counsel for Giant Eagle, Inc. |

## CERTIFICATE OF SERVICE

I, Donna M. Evans, hereby certify that I caused a copy of the attached document to be served electronically on all counsel by email.

Dated:  July 15, 2013

                                                                            Respectfully submitted,

                                                                            /s/ **Donna M. Evans**
                                                                            Donna M. Evans, BBO No. 554613