# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409<br><br>Civil Action No. 1:12-md-02409-WGY |
| This Document Relates To:<br><br>All Actions | |

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR ORDER ON CENTRAL ENFORCEMENT OF TRIAL SUBPOENAS

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     PROCEDURAL BACKGROUND.......................................................................2

     A.      Trial of all MDL civil actions starts on October 20, 2014.......................2

     B.      The Court limited plaintiffs to only 15 pretrial depositions. ...................3

     C.      The Court emphasized the importance of primary evidence at trial.........3

     D.      Plaintiffs moved to secure live testimony from AstraZeneca's
           witnesses. ................................................................................................4

     E.      The Court granted Plaintiffs' Motion for Live Trial Testimony
           [ECF No. 830]...........................................................................................4

     F.      Plaintiffs served 26 trial subpoenas requiring witnesses to appear at
           their local district court for live testimony via video. ..............................7

     G.      AstraZeneca moved to quash 6 trial subpoenas.......................................8

     H.      AstraZeneca told Judge McHugh in the Eastern District of
           Pennsylvania that the MDL Court should decide a motion to
           remand in order to conserve judicial resources and maximize
           efficiency..................................................................................................9

     I.      One district court has already referred one of AstraZeneca's
           Motions to Quash to the MDL. ...............................................................11

III.    ARGUMENT .....................................................................................................11

     A.      Congress gave MDL Courts broad power to preside over pretrial
           proceedings. ...........................................................................................11

     B.      Central enforcement of subpoenas by the MDL court is practical,
           efficient, and in line with the rationale for creating MDL courts. .........13

           1.      The JPML acknowledges that having MDL courts address
                  enforcement of subpoena promotes efficiency and avoids
                  inconsistent decisions...............................................................13

           2.      MDL Courts regularly enforce MDL subpoenas. .....................14

           3.      Local district courts regularly transfer motions to quash to
                  the MDL court...........................................................................16

           4.      Recent amendments to Rule 45 counsel in favor of central
                  enforcement...............................................................................17

     C.      Here, facts and circumstances warrant central enforcement of the
           AstraZeneca trial subpoenas by the MDL court. ...................................18

1.  AstraZeneca's motions to quash are efforts to undermine
    this Court's jurisdiction by asking other Courts to
    functionally overrule this Court's pretrial order. ......................................18

2.  Central enforcement is more efficient than piecemeal
    resolution..........................................................................................20

3.  Central enforcement does not limit AstraZeneca's ability to
    object to trial subpoenas...............................................................20

IV.    CONCLUSION.............................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
    2014 U.S. Dist. LEXIS 2231 (W.D. La. Jan. 8, 2014)...........................................................6, 16

*In re Asbestos Prods. Liab. Litig.*,
    256 F.R.D. 151 (E.D. Pa. 2009).....................................................................................12, 16

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
    No. 09-md-02023, ECF No. 184 (E.D.N.Y. Aug. 17, 2012) ...................................................16

*In re C. R. Bard, Inc.*,
    2013 U.S. Dist. LEXIS 94121 (S.D. W. Va. July 5, 2013)...................................................6, 16

*In re Electronic Books Antitrust Litig.*,
    11-md-2293, ECF No. 255 (S.D.N.Y. Oct. 19, 2012) ...........................................................16

*In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*,
    2009 U.S. Dist. LEXIS 103112 (D.N.J. Oct. 6, 2009)...........................................................16

*In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*,
    245 F.R.D. 55 (D. Mass. 2007).....................................................................................12, 15

*In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig*,
    2013 U.S. Dist. LEXIS 161652 (D. Mass. Nov. 13, 2013) ........................................11, 12, 15

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
    Amended Order on Central Enforcement, 13-md-2419, ECF No. 885 (Feb. 7, 2014)......15, 17

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
    Order on Central Enforcement, 13-md-2419, ECF No. 193 (June 21, 2013)......................1, 14

*In re Nexium (Esomeprazole Magnesium) Antitrust Litig.*,
    Miscellaneous Action No. 14-1031-BAH, ECF No. 2 (D.D.C. Sept. 19, 2014) .....................11

*In re Online DVD Rental Antitrust Litig.*,
    744 F. Supp. 2d 1378 (J.P.M.L. 2010)...................................................................................13

*In re Plumbing Fixture Cases*,
    298 F. Supp. 458 (J.P.M.L. 1973)........................................................................................13

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
    117 F.R.D. 30 (D.P.R. 1987) ......................................................................................12, 16

*In re U.S. Office Prod. Co. Sec. Litig.,*
    251 F. Supp. 2d 58 (D.D.C. 2003) ........................................................................................12

*In re Welding Fume Prods. Liab. Litig.*,
　2010 U.S. Dist. LEXIS 146067 (N.D. Ohio, June 4, 2010)....................................................16

*In re Welding Rod Prods. Liab. Litig.*,
　406 F. Supp. 2d 1064 (N.D. Cal. 2005) ..................................................................................16

*Time Ins. Co. v. AstraZeneca AB*,
　2:14-cv-04149-GAM, Memorandum of Law in Opposition to Plaintiffs' Motion to
　Remand, ECF No. 47 (E.D. Pa. August 4, 2014) ...............................................................9, 10

## STATUTES

28 U.S.C. § 1407.................................................................................................................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 30(b)(6)...........................................................................................................3, 12

Fed. R. Civ. P. 45(a)(2)...............................................................................................8, 9, 12, 17

Fed. R. Civ. P. 45(c)(1)..................................................................................................4, 12, 17

# I.      INTRODUCTION

This motion presents a single issue:

> MDL courts have the power to enforce, modify, or quash MDL-issued subpoenas in order to prevent disruptions in the court's management of the underlying litigation.  Here, a month before trial, AstraZeneca moved to quash every one of Plaintiffs' trial subpoenas directed to AstraZeneca witnesses, asking multiple judges in different districts to decide something this Court has already ruled on: whether AstraZeneca witnesses will testify live at trial.  Which court(s) should decide AstraZeneca's motions to quash?

Plaintiffs served trial subpoenas on a number of witnesses controlled by the defendants.  Each subpoena requires the recipient to testify at trial from a federal courthouse within 100 miles of his or her home or office.  DRL did not object.  After some negotiations, Ranbaxy and Teva agreed to have some witnesses testify live at trial and are working with plaintiffs' counsel to obviate others' live testimony with stipulations.  AstraZeneca moved to quash every outstanding trial subpoena issued to witnesses within AstraZeneca's control.

This MDL Court unquestionably has the power to resolve AstraZeneca's motions to quash Plaintiffs' trial subpoenas, and doing so would conserve judicial resources and avoid potentially conflicting decisions.  Judge Howell of the District of Columbia recognized this and has already transferred AstraZeneca's motion to quash to this Court for resolution.  Judge Saylor, of this district, recently enforced over 70 subpoenas in the *New England Compounding* MDL.  And even AstraZeneca has taken the position that this Court's familiarity with the allegations and factual record, and its earlier rulings on a wide range of motions, counseled *in favor* of having this Court (and not a judge in the Eastern District of Pennsylvania) decide motions relating to the allegations in the MDL plaintiffs' complaints.

Central enforcement is particularly appropriate in light of AstraZeneca's arguments to quash.  AstraZeneca asks other courts to functionally overrule this Court's pretrial order

permitting live trial testimony by video by misrepresenting this Court's ruling and making the same arguments that this Court rejected as to why testimony by video should not be permitted – without telling those other courts that this MDL Court already decided the issue.  AstraZeneca's "motions to quash" are, at bottom, a ruse designed to undermine this Court's jurisdiction and power and impede the presentation of live testimony to the jury.

AstraZeneca's witnesses' substantive rights are not affected by central enforcement.  To the extent that AstraZeneca's motions to quash raise legitimate issues of burden or error on plaintiffs' part (if, say, a witness lives 102 miles from the designated courthouse), this Court can resolve those issues.  Central enforcement merely promotes judicial economy and ensures uniform treatment of witnesses while safeguarding this Court's ability to manage and guide this MDL to its conclusion.

Plaintiffs ask this Court to enter an order centralizing the enforcement of all subpoenas issued out of this MDL.  A proposed order is filed herewith.

## II.     PROCEDURAL BACKGROUND[1]

**A.     Trial of all MDL civil actions starts on October 20, 2014.**

On December 7, 2012, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") transferred 5 antitrust cases involving the drug Nexium to the District of Massachusetts for assignment to the Honorable William G. Young for coordinated or consolidated pretrial proceedings in MDL No. 2409.[2]  The MDL now contains nineteen civil actions: five direct purchaser class actions, four direct purchaser individual actions, and ten end payer class actions.

All plaintiffs have consented to trial in this district.  Trial starts on October 20, 2014.

---

[1] *See generally* Declaration of Thomas M. Sobol in Support, filed herewith.
[2] ECF No. 2.

**B.      The Court limited plaintiffs to only 15 pretrial depositions.**

On February 4, 2013, the Court entered a Case Management Order.[3]  The CMO provided that each side could take no more than fifteen depositions.[4]  Given the small number of depositions allowed in this multi-defendant matter, plaintiffs were quite selective.  The class plaintiffs conducted depositions of defendants' 30(b)(6) corporate representatives and other fact witnesses who were either current or former employees of the defendants.

Most depositions were conducted for discovery purposes.[5]  Meaning, plaintiffs' depositions were taken in order to collect facts about who did what, when, and how.  Consequently, most witnesses have not been subjected to truth-telling cross-examination of the type used for trial purposes.

**C.      The Court emphasized the importance of primary evidence at trial.**

This Court has stressed the importance of presenting primary evidence at trial – that is, "the evidence of what people actually were doing and the typical type of evidence in trials, things that reveal what they thought they were doing, e-mails, agreements, memoranda, meeting minutes and the like."[6]  To that end, the Court has stated that it will not permit an expert to testify on a subject until the party offering such expert has produced the primary evidence that the party intends to offer on that topic.[7]

---

[3] ECF No. 115.

[4] *Id.*  Plaintiffs and defendants agreed that defendants could put up multiple witnesses in response to a single Fed. R. Civ. P. 30(b)(6) deposition notice so long as, in total, the depositions associated with a single 30(b)(6) notice did not exceed 7 hours.  Hence, some witnesses were deposed for just a couple hours.  All told, plaintiffs deposed 19 fact witnesses.

[5] *See* Declaration of Thomas M. Sobol at ¶¶ 7-10.

[6] ECF No. 716 at 21.

[7] ECF No. 716 at 22.

**D.      Plaintiffs moved to secure live testimony from AstraZeneca's witnesses.**

In January 2014, plaintiffs and defendants exchanged witness lists.  Plaintiffs' list included current and former employees of (as well as outside counsel for) defendants AstraZeneca, Ranbaxy, Teva, and DRL who can provide primary evidence about what the defendants were doing, what the defendants thought they were doing, and why the defendants were doing it.[8]  Several of these witnesses lived more than 100 miles from the John Joseph Moakley Courthouse in Boston, Massachusetts.  While an MDL court has the power to issue and enforce subpoenas out of the MDL,[9] there is a question as to whether the District of Massachusetts could otherwise compel those witnesses physical attendance at trial in Boston.[10]

Shortly thereafter, plaintiffs' counsel spoke with counsel for each defendant and asked which witnesses, if any, the defendant intended to bring live.  Defendants did not respond.  To this day, defendants have not given plaintiffs a comprehensive list of witnesses that they control who will testify live at trial.

**E.      The Court granted Plaintiffs' Motion for Live Trial Testimony [ECF No. 830].**

On January 21, 2014, plaintiffs filed a Motion for Live Trial Testimony via Contemporaneous Transmission.[11]  Pursuant to Rules 43 and 45 of the Federal Rules of Civil Procedure, the class plaintiffs sought an order directing witnesses not appearing in person for trial in Boston to appear by contemporaneous transmission (*e.g.* live video) from another federal courthouse.  Plaintiffs included a proposed protocol outlining procedures for the proposed live trial testimony.

---

[8] *See* December 30, 2013 Hr'g Tr., ECF No. 716 at 21, 22, 27, 28 (discussing primary and secondary evidence).

[9] *See infra.*

[10] Fed. R. Civ. P. 45(c)(1): "A subpoena may commend a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) withint eh state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."

[11] ECF No. 830.

Plaintiffs' motion identified narrow categories of AstraZeneca witnesses whose testimony was sought at trial, such as the following:

Negotiations:

| | |
|---|---|
| Timothy Hester | Outside counsel who drafted and negotiated the detailed legal documents. |
| Jeffrey Pott | Inside counsel who was the lead negotiator and led settlement meetings. |
| Terri Bowman | Senior AstraZeneca employee who was the point person on the side agreements and regulatory issues. |

Authorized Generic:

| | |
|---|---|
| Linda Palczuk | Vice President of AstraZeneca's Cornerstone Business Unit who has knowledge about the policy and history of AstraZeneca's launch of several authorized generics. |
| Richard Barker | AstraZeneca's Supply Chain Lead who was involved in Project Genesis and the destruction of the AstraZeneca's Nexium authorized generic. |

Marketing and Forecasting:

| | |
|---|---|
| Gary Rowles | AstraZeneca Senior Finance Director who dealt with forecasting and projection of Nexium sales as well as the expected impact of anticipated generic entry. |
| Matthew Diggons | AstraZeneca Brand Finance Director who is intimately familiar with Nexium's steadily climbing sales, AstraZeneca's profits from Nexium before generic entry, and Nexium's high profit margins. |

Only these witnesses can testify about their discrete roles and AstraZeneca's approach on the contingent launch provisions, the intergeneric conspiracy, and the impact of a generic on Nexium sales.  While Plaintiffs may be able to get Ranbaxy witnesses to testify about the same topics,

those witnesses were on the other side of that table; they cannot provide AstraZeneca's

perspectives and motives.

Plaintiffs' motion was not without precedent.  At least two other courts have granted

similar motions, in the *Actos* and *C.R. Bard* litigation.[12]

Defendants opposed.[13]  AstraZeneca argued:

- "Plaintiffs' justification for live video transmission of trial testimony is premised solely on the value of 'live' testimony in trial proceedings… that, alone, cannot possibly amount to 'good cause' and compelling circumstances' under Rule 43."[14]

- "There is nothing unexpected or compelling about the fact that witnesses in this case do not reside in Massachusetts or nearby. … Consequently, Class Plaintiffs cannot show good cause and compelling circumstances when they reasonably should have foreseen the precise circumstances they now find themselves in."[15]

- "Plaintiffs' failure to take depositions of several witnesses (or their apparent failure to take the "trial" depositions they now wish they had taken of other witnesses) does not constitute good cause or compelling circumstances."[16]

On July 11, 2014, the Court heard argument and granted Plaintiffs' motion from the

bench:[17]

> Plaintiffs' motion for live trial testimony via contemporaneous transmission, Docket Number 830, *I'm fine with that* and the burden is entirely on the plaintiffs.  Don't think I'm going to bat in some other court and our video hookups go court to court.  The burden is entirely on you.  But *if I can get the visage of the person on the screen in this courtroom and examination can go on, then I'm fine with that.*  But it's your burden.  As to this court's

---

[12] *See, e.g.*, *In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. 11-md-02299, 2014 U.S. Dist. LEXIS 2231, at *39 (W.D. La. Jan. 8, 2014) (The MDL Court found that "Plaintiffs have demonstrated there exists a compelling need for contemporaneous transmission of live testimony from a different location of those current and former employees."); *In re C. R. Bard, Inc.*, No. 11-cv-00195, 2013 U.S. Dist. LEXIS 94121 (S.D. W. Va. July 5, 2013) (the MDL court denied in part defendant's motion to quash plaintiff's subpoena for trial testimony issued to a witness beyond the subpoena power of the MDL court.).

[13] ECF No. 841.

[14] *Id.* at 3.

[15] ECF No. 841 at 6.

[16] *Id.* at 4.

[17] July 11, 2014 Hr'g Tr. at 26:15-25 (emphasis added).  An excerpt is attached to the Declaration of Thomas M. Sobol as Exhibit H.

> facilities and ability to do video conferencing, *we will cooperate fully*.

The Clerk's Notes confirm that the Court granted Plaintiffs' Motion for Live Trial Testimony,[18]

and counsel for AstraZeneca acknowledged this:[19]

> MR. GAFFNEY:  With respect to the contemporaneous transmission motion, there was a proposed protocol attached to their motion which – *I think given your Honor's ruling, that it's fine with me*, but they'll work it out.  I think maybe we need to revisit the mechanics of that.  There was no discussion about that ahead of time.

Counsel for DRL likewise acknowledged that the Court granted the Plaintiff's Motion for Live

Trial Testimony.[20]

Defendant AstraZeneca again acknowledged that the Court had granted Plaintiffs'

Motion for Live Trial Testimony, and asked the Court to clarify that if AstraZeneca produced a

witness for testimony by live video transmission, that it not be precluded from offering that same

witness live at trial.[21]  The Court stated that its routine practice was to allow live testimony at

trial and that it would not restrict Defendants' ability to call live witnesses at trial.[22]

**F.      Plaintiffs served 26 trial subpoenas requiring witnesses to appear at their local district court for live testimony via video.**

In August 2014, plaintiffs served 26 subpoenas for trial testimony, issued from the MDL

court but specifying the location of compliance as a federal courthouse within 100 miles of

where each witness resides or is employed (in accordance with recently-amended Rule 45 of the

---

[18] Electronic Clerk's Notes, ECF No. 966 ("After hearing from counsel the Court enters an Order … granting 830 Motion Direct Purchaser Class and End-Payor Class Plaintiffs' Motion for Live Trial Testimony Via Contemporaneous Transmission….").

[19] July 11, 2014 Hearing Tr. at 31:24 - 32:4.

[20] *Id.* at 30:19 -31:15.

[21] *Id.* at 32:5-22.

[22] *Id.*

Federal Rules of Civil Procedure).[23]  Plaintiffs sought to consolidate the testimony locations for ease of case management.  All witnesses were subpoenaed to testify in federal court in either Philadelphia or the District of Columbia.  All were either current or former employees of (or outside counsel for) a defendant.

**G.    AstraZeneca moved to quash 6 trial subpoenas.**

Ranbaxy, Teva, and DRL have cooperated, and are working with plaintiffs to resolve their objections.  AstraZeneca has not.  AstraZeneca's moved to quash all but one of the subpoenas issued to its current and former employees or outside counsel.[24]  Copies of these motions to quash are attached to the accompanying Declaration of Thomas M. Sobol.

| Witness | Party | Relationship | Testimony Location | Status |
|---|---|---|---|---|
| Barker, Richard S. | AZ | Current employee | E.D. Pa. | **Moved to Quash** 2:14-mc-00225 (Savage, J.) |
| Bowman, Terri L. | AZ | Current employee | E.D. Pa. | **Moved to Quash** 2:14-mc-00225 (Savage, J.) |
| Diggons, Matthew R. | AZ | Current employee | E.D. Pa. | **Moved to Quash** 2:14-mc-00225 (Savage, J.) |
| Hester, Timothy C. | AZ | Trial counsel (Partner, Covington & Burling LLP) | D.D.C. | **Moved to Quash** 14-ma-1301 (Howell, J.) |
| Palczuk, Linda S. | AZ | Current employee | E.D. Pa. | **Moved to Quash** 2:14-mc-00225 (Savage, J.) |

---

[23] *See* Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from the court where the action is pending."); 45(c) ("Place of Compliance" for "a trial, hearing or deposition" shall be "within 100 miles of where the person resides, is employed, or regularly transacts business in person").

[24] Counsel are negotiating a resolution with respect to Mr. Rothwein.

| | | | | |
|---|---|---|---|---|
| Rothwein, Steven J. | AZ | Current employee | E.D. Pa. | **Negotiating** |
| Rowles, Gary S., Jr. | AZ | Current employee | E.D. Pa. | **Moved to Quash** 2:14-mc-00225 (Savage, J.) |
| Taylor, Errol B. | AZ | Patent litig. counsel (Partner, Milbank, Tweed, Hadley & McCloy LLP) | E.D. Pa. | **Withdrawn** |
| Zullow, Fredrick M. | AZ | Patent litig. counsel (Partner, Milbank, Tweed, Hadley & McCloy LLP) | E.D. Pa. | **Withdrawn** |
| Pott, Jeffrey A. | AZ | Current employee | E.D. Pa. | **Moved to Quash** 2:14-mc-00225 (Savage, J.) |

**H.     AstraZeneca told Judge McHugh in the Eastern District of Pennsylvania that the MDL Court should decide a motion to remand in order to conserve judicial resources and maximize efficiency.**

In July 2014, AstraZeneca removed two civil actions from Court of Common Pleas of Philadelphia County to the Eastern District of Pennsylvania ("the *Time* and *Cariten* actions").[25] Those complaints, like the operative complaints here, allege that AstraZeneca violated state antitrust, unfair competition, and/or consumer protection laws by entering into allegedly anticompetitive settlements of three separate federal patent infringement suits relating to Nexium.  AstraZeneca – specifically, outside counsel Timothy Hester, one of the AstraZeneca witnesses plaintiffs subpoenaed for trial – quickly asked the JPML to transfer both actions to this MDL.[26]

---

[25] *Time Ins. Co. v. AstraZeneca AB,* originally Case ID No. 140101903, now 2:14-cv-04149-GAM (E.D. Pa.); *Cariten Ins. Co. v. AstraZeneca AB*, originally Case ID No. 140102106, now 2:14-cv-04156-AB (E.D. Pa.).

[26] MDL 2409, Notice of Tag-Along Actions, ECF No. 102 (J.P.M.L. July 22, 2014) (stating, "[t]he *Cariten* and *Time* actions involve common questions of fact and law with the actions consolidated as MDL No. 2409.").

The *Time* and *Cariten* plaintiffs moved to remand.  AstraZeneca opposed, insisting that the MDL Court, not the judge in the Eastern District of Pennsylvania, should decide the issue because of his familiarity with the allegations and the factual record:[27]

> In these circumstances, motions for remand are best left to the MDL court to decide.… Given his familiarity with the allegations of Plaintiffs' Complaint (which mirror the allegations of a consolidated complaint on file in the MDL) and the factual record, Judge Young is particularly suited to consider whether the Complaint's substantial allegations relating to the alleged invalidity and/or non-infringement of AstraZeneca's patents protecting Nexium® give rise to federal question jurisdiction (and thus whether removal is proper).

AstraZeneca stressed that the plaintiffs would not be prejudiced because they would be able to seek the same relief from this MDL Court: "Plaintiffs will not be prejudiced … as they will be able to reassert their request for remand before Judge Young if they so choose."[28]

AstraZeneca repeatedly argued that Judge Young's extensive experience presiding over the MDL created efficiencies:

> Judge Young has gained very substantial familiarity with the facts and allegations of the consolidated cases.  He has issued many rulings on a wide range of motions.[29]
>
> [Allowing Judge Young to decide the motion to remand] would conserve judicial resources and maximize efficiency for both litigants and the Court.  Judge Young has presided over cases involving antitrust challenges to the Settlements for almost two years and the MDL for over 18 months.  Under such circumstances, the efficiencies a stay would create are magnified.[30]
>
> There are also efficiencies beyond the jurisdictional phase.  This Court would need to manage this lawsuit without the benefit of the

---

[27] *Time Ins. Co. v. AstraZeneca* AB, 2:14-cv-04149-GAM, Memorandum of Law in Opposition to Plaintiffs' Motion to Remand, ECF No. 47 (E.D. Pa. August 4, 2014) at p. 1.  A copy of AstraZeneca's Opposition is attached to the Declaration of Thomas M. Sobol as Exhibit G.

[28] *Id.*

[29] *Id.* at 3.

[30] *Id.* at 5 (internal citation omitted).

MDL court's extensive experience concerning the same subject matter.[31]

## I.     One district court has already referred one of AstraZeneca's Motions to Quash to the MDL.

Judge Howell, of the United States District Court for the District of Columbia, was assigned to AstraZeneca's Motion to Quash the trial subpoena issued to outside counsel Timothy Hester.  Judge Howell recognized that having another court resolve the motion to quash had the potential to disrupt this Court's ability to manage the MDL litigation.  Before an opposition had even been filed, Judge Howell transferred the motion to quash to this MDL:[32]

> Since it is clear that resolution of this motion to quash a trial subpoena has the potential to "disrupt[] the issuing court's management of the underlying litigation," particularly since the trial in the underlying litigation is imminent and that court "has already ruled on issues presented by the motion," it is hereby **ORDERED** that the Clerk of the Court shall transfer this matter to the United States District Court for the District of Massachusetts.

## III.     ARGUMENT

## A.     Congress gave MDL Courts broad power to preside over pretrial proceedings.

Congress gave MDL courts authority to preside over coordinated or consolidated pretrial proceedings.[33]  Congress's mandate has been interpreted liberally to give the MDL court control over "any and all" proceedings prior to trial.[34]  The scope of the MDL judge's authority, then, is

---

[31] *Id.* at 5, n. 3.

[32] *In re Nexium (Esomeprazole Magnesium) Antitrust Litig.*, Miscellaneous Action No. 14-1031-BAH, ECF No. 2 (D.D.C. Sept. 19, 2014) (quoting  Rule 45(f) advisory cmte. notes).  A copy is attached to the Declaration of Thomas M. Sobol as Exhibit J.

[33] 28 U.S.C. §1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.").

[34] *In re New Eng. Compounding Pharm., Inc.*, No. 13-md-02419, 2013 U.S. Dist. LEXIS 161652, at *18 (D. Mass. Nov. 13, 2013) (quoting *In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*, 245 F.R.D. 55, 57 (D. Mass. 2007)).

quite broad; an MDL judge has the same jurisdiction and power over pretrial proceedings that the transferor judge would have in the absence of the transfer.[35]

MDL judges have the authority to issue and enforce subpoenas pursuant to Federal Rules of Civil Procedure 30 and 45 and 28 U.S.C. § 1407(b).  The language of § 1407(b) explicitly references the MDL judge's enforcement power when it comes to conducting pretrial depositions: "[t]he judge or judges to whom [MDL] actions are assigned … may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings."[36]  Although § 1407(b) refers to "pretrial depositions," courts construe the statute to encompass subpoenas duces tecum as well.[37]

There is not much case law on, specifically, the enforcement of *trial* subpoenas by an MDL court, largely because defendants usually want to, and do, have their employees testify live at trial.

Courts have concluded that MDL judges' inherent powers include the ability to resolve objections to subpoenas made by subpoena recipients who are not within 100 miles of the MDL courthouse:[38]

> [T]he MDL judge has the power to compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted.

---

[35] *In re New Eng. Compounding Pharm., Inc.*, 2013 U.S. Dist. LEXIS 161652, at *19; *In re U.S. Office Prod. Co. Sec. Litig.,* 251 F. Supp. 2d 58, 65 (D.D.C. 2003).

[36] 28 U.S.C. § 1407(b).

[37] *See In re Neurontin Mktg., Sales Practices, and Products Liab. Litig.*, 245 F.R.D. at 58-59; *In re Asbestos Prods. Liab. Litig.*, 256 F.R.D. 151, 154 (E.D. Pa. 2009); *In re San Juan Dupont Plaza Fire Litig.*, 117 F.R.D. 30, 32 (D.P.R. 1987).

[38] *In re New Eng. Compounding Pharm., Inc.*, 2013 U.S. Dist. LEXIS 161652, at *20 (quoting *United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 468-469 (6th Cir. 2006)).

**B.  Central enforcement of subpoenas by the MDL court is practical, efficient, and in line with the rationale for creating MDL courts.**

   **1.  The JPML acknowledges that having MDL courts address enforcement of subpoena promotes efficiency and avoids inconsistent decisions.**

The statute creating the JPML and the MDL mechanism, 28 U.S.C. §1407(a), notes that MDLs are intended to promote the convenience of the parties and efficiency: "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings….[and] that transfers for such proceedings will be for the *convenience of parties and witnesses and will promote the just and efficient conduct of such actions*."[39]  The objective of transfer "is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."[40]

In *In re Online DVD Rental Antitrust Litigation*, the JPML found that motions to quash brought by a third party subpoenaed by the MDL plaintiffs were better decided by the transferee judge rather than a judge in another district with no particular knowledge of the MDL.  As the Panel put it, "requiring a judge in the Northern District of Texas to learn the particulars of MDL No. 2029 would not promote the just and efficient conduct of this action or the litigation as a whole[,]" and the "litigation would be best served by allowing the transferee judge to determine the scope of discovery in the MDL."[41]

---

[39] 28 U.S.C. § 1407(a) (emphasis added).

[40] MCL 4th § 20.131, referencing *In re Plumbing Fixture Cases*, 298 F. Supp. 458 (J.P.M.L. 1973).

[41] *In re Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378 (J.P.M.L. 2010).

2.      **MDL Courts regularly enforce MDL subpoenas.**

MDL Judges in the District of Massachusetts regularly choose to centrally enforce

subpoenas issued out of the MDL.

In the *New England Compounding* MDL, the Plaintiffs' Steering Committee issued over

70 subpoenas to pain clinics, hospitals, and doctors seeking information about their purchases

from and communications with defendant NECC.  None of the subpoena recipients was located

in Massachusetts; none was within 100 miles of the Moakley Courthouse.  Judge Saylor

determined that the MDL court had the power to, and would, centrally resolve motions to quash

or other objections.[42]  Judge Saylor then commented on the jurisdictional objections raised in

many of the motions to quash:

> [Judge Saylor:] I concluded that I had the authority both to have
> the subpoenas issue out of this Court and to have centralized
> enforcement.
>
> 28 U.S.C., Section 1407(b) provides that I can exercise the powers
> of a district judge in any district. The statute literally says for the
> purpose of conducting pretrial depositions, and there is authority to
> the effect that that includes document subpoenas as well, there
> being little practical difference between a document subpoena and
> a keeper of the records deposition with a subpoena duces tecum.
>
> I issued an order providing for that centralized enforcement. I think
> that decision is correct as well as practical. I think I have the
> authority under the statute to do it, and to that extent, on any of
> these motions, objections to the jurisdiction or authority of the
> Court is going to be denied.[43]

---

[42] *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, Order on Central Enforcement, 13-md-2419, ECF No. 193 (June 21, 2013).  A copy is attached to the Declaration of Thomas M. Sobol as Exhibit D.

[43] *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419, July 17, 2013 Hearing Tr., at p. 42-43.  An excerpt of this transcript is attached to the Declaration of Thomas M. Sobol as Exhibit E.

Judge Saylor referred the remaining motions to quash and objection to Judge Boal,[44] and later

expanded his original order on central enforcement to cover any and all subpoenas issued out of

the MDL.[45]

In the *Neurontin* MDL, Judge Sorokin determined that the MDL court had jurisdiction

over subpoena enforcement, and ordered a motion to quash a subpoena issued to an out-of-

district non-party transferred to the MDL court because "there is a clear textual basis for transfer

of motions to quash subpoenas in an MDL case from the Court that issued to subpoena to the

Court that presides over the underlying MDL."[46]   The court observed that centrally resolving

motions to quash was consistent with the purposes of creating MDL courts:

> [T]his Court has jurisdiction to issue orders related to the
> subpoenas at issue.  The purpose of a multidistrict litigation
> consolidation is to 'avoid duplicative discovery, prevent
> inconsistent pretrial rulings and conserve judicial resources.'  *In re
> Air Disaster*, 486 F.Supp. 241, 243 (Jud. Pan. Mult. Lit. 1980).
> The relevant statutes and case law provide for an MDL Court to
> resolve disputes arising from the service of Rule 45 subpoenas on
> non-parties located in other districts[.][47]

In the *AWP* MDL, Judge Bowler likewise resolved motions to quash subpoenas issued

out of the MDL.[48]

Courts in the Eastern District of Pennsylvania, where Defendants seek to quash the

subpoenas, likewise agree that "the district in which the MDL proceeding is pending…has

jurisdiction to address motions to compel compliance with the subpoenas and motions to quash

---

[44] Judge Boal undertook the herculean task of resolving 39 motions to quash.  Her thoughtful opinion is available at *In re New Eng. Compounding Pharm., Inc.*, 2013 U.S. Dist. LEXIS 161652 (D. Mass. Nov. 13, 2013).

[45] *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, Amended Order on Central Enforcement, 13-md-2419, ECF No. 885 (Feb. 7, 2014).  An copy is attached to the Declaration of Thomas M. Sobol as Exhibit C.

[46] *In re Neurontin Mktg*., 245 F.R.D. 55, 59 (D. Mass. 2007) (internal quotation marks omitted).

[47] *Id.* at 57.

[48] *See In re Average Wholesale Price Litig.*, Electronic Order, (November 2, 2004).

the subpoenas[.]"[49]  And MDL judges in other districts also routinely exercise their authority to

preside over challenges to subpoenas directed to parties beyond the subpoena power of the MDL

court.[50]  The same rationale applies to trial subpoenas in MDL actions.[51]

### 3.    Local district courts regularly transfer motions to quash to the MDL court.

District courts regularly transfer motions to quash to the MDL court.[52]  Those courts

recognize that the MDL judge is in a better position to evaluate motions to quash in light of his

or her familiarity with the history and underlying issues of the case:[53]

> [T]his Court is persuaded that referring the instant dispute to the
> Middle District of Georgia will best serve the interests of justice,
> judicial efficiency, and consistency underlying the MDL rules. As
> the Judge already assigned to the matter, Judge Land is readily
> familiar with the underlying issues of the case and will be in a
> better position to rule on this Motion to Quash.

In fact, Judge Howell, from the District of Columbia, has already determined, *sua sponte*,

before an opposition was filed, that this MDL court is better situated to hear AstraZeneca's

motions to quash and transferred the motion to this Court.[54]

---

[49] *In re Asbestos Prods. Liab. Litig.*, 256 F.R.D. 151, 154 (E.D. Pa. 2009); *id.* ("To hold that a court presiding over an MDL case could not enforce a motion to compel would hamper the ability of an MDL court to coordinate and consolidate pretrial proceedings.").

[50] *See, e.g.*, *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-02023, ECF No. 184 (E.D.N.Y. Aug. 17, 2012) (centralizing enforcement of subpoenas and finding that "this Court has jurisdiction to enforce subpoenas issued by plaintiffs in other jurisdictions pursuant to 28 U.S.C. § 1407, which grants judges who have been assigned multi-district actions 'the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated proceedings' . . . . this power includes the ability to quash, modify, or enforce a subpoena directed to an extra-district nonparty") (quoting 28 U.S.C. § 1407(b)); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 117 F.R.D. 30, 32-33 (D.P.R. 1987) (the MDL court found that it was "empowered to order compliance with a subpoena duces tecum issued in a deposition court other than the transferee court" where non-party witness objected to production of documents in a subpoena); *In re Electronic Books Antitrust Litig.*, 11-md-2293, ECF No. 255 (S.D.N.Y. Oct. 19, 2012) (transferring action regarding subpoena issued to Amazon to the MDL) (a copy is attached to the Declaration of Thomas M. Sobol as Exhibit I.).

[51] *See, e.g.*, *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 2231 at *39; *In re C. R. Bard, Inc.)*, 2013 U.S. Dist. LEXIS 94121 (the MDL court denied in part defendant's motion to quash plaintiff's subpoena for trial testimony issued to a witness beyond the subpoena power of the MDL court).

[52] *See, e.g., In re Welding Fume Prods. Liab. Litig.*, No. 03-cv-17000, 2010 U.S. Dist. LEXIS 146067 (N.D. Ohio, June 4, 2010) (motion to quash a subpoena duces tecum of a non-party witness was transferred to a district court in Ohio where the MDL action was pending for pre-trial proceedings); *In re Welding Rod Prods. Liab. Litig.*, 406 F. Supp. 2d 1064, 1064 (N.D. Cal. 2005) (referring a non-party's motion to quash subpoenas to the MDL court).

[53] *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 09-cv-03073, 2009 U.S. Dist. LEXIS 103112, at *7-8 (D.N.J. Oct. 6, 2009).

### 4.      Recent amendments to Rule 45 counsel in favor of central enforcement.

Congress amended Federal Rule of Civil Procedure 45 in 2013, effective as of December 1, 2013.[55]  The *NECC* MDL court amended its earlier orders to confirm that it would centrally enforce *all* subpoenas issued out of the MDL on February 7, 2014, after the new Rule took effect.[56]

Rule 45(f) now empowers the court where compliance is required to transfer a subpoena-related motion to the court where the action is pending in exceptional circumstances. The Advisory Committee Notes observe that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when … the same issues are likely to arise in discovery in many districts."[57]  The Notes also suggest that judges in compliance districts may find it helpful to consult with the judge presiding over the underlying case about any subpoena-related motions.

Rule 45 acknowledges that there are times when it is necessary for the judge in the presiding district – here, the MDL judge – to resolve challenges to subpoenas himself in order to maintain control over the ongoing litigation.  While neither the Rule nor the notes explicitly address an MDL context, the rationale explained by the Advisory Committee strongly counsels in favor of MDL judges enforcing subpoenas, particularly when not doing so jeopardizes the just and efficient administration of ongoing MDL litigation and could lead to contradictory results.

---

[54] *See supra.*

[55] As amended, Rule 45(c) provides that a subpoena may only command a person to attend a trial, hearing, or deposition within 100 miles of where the person resides, is employed, or regularly transacts business in person or (in certain circumstances) within the state where the person resides.  Plaintiffs' trial subpoenas recognized the amendment.

[56] *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, 13-md-2419, ECF No. 885 (Feb. 7, 2014).  A copy of this order is attached to the Declaration of Thomas M. Sobol as Exhibit C.

[57] *See* Fed. R. Civ. P. 45  advisory cmte. notes.

**C.      Here, facts and circumstances warrant central enforcement of the AstraZeneca trial subpoenas by the MDL court.**

**1.      AstraZeneca's motions to quash are efforts to undermine this Court's jurisdiction by asking other Courts to functionally overrule this Court's pretrial order.**

AstraZeneca's Motions to Quash unabashedly attempts to game the system by asking other courts to functionally overrule this Court's pretrial order.

AstraZeneca filed a motion to quash for every outstanding subpoena to AstraZeneca witness.  It is beyond dispute that this Court granted plaintiffs' motion for live trial testimony. Yet, in its motions to quash, AstraZeneca misrepresents this fact by suggesting that there is uncertainty about whether plaintiffs are *really* permitted to introduce live testimony by video and selectively quoting the Court's words:

> Judge Young did not, however, compel the remote testimony of any witnesses or enter a protocol for such testimony submitted by Plaintiffs.  Judge Young instead advised the parties from the bench that "the burden is entirely on the plaintiffs.  Don't think I'm going to bat in some other court and our video hook ups go court to court.  The burden is entirely on you."

AstraZeneca did not share the portion of the transcript where this Court stated *"if I can get the visage of the person on the screen in this courtroom and examination can go on, then I'm fine with that"* and "As to this court's facilities and ability to do video conferencing, *we will cooperate fully*."

Likewise, it is beyond dispute that the MDL Court restricted Plaintiffs to 15 depositions. AstraZeneca did not reference this fact in its motions to quash.

AstraZeneca's motions ask other courts to "quash the subpoena requiring [the witness] to appear and testify via remote video transmission."[58]  In doing so, AstraZeneca makes many of the very same arguments this Court rejected in granting Plaintiffs' Motion for Live Testimony:

| AZ's Opposition to Motion for Live Trial Testimony (MDL) | AZ's Motions to Quash (E.D. Pa., D.D.C.) |
|---|---|
| "Plaintiffs' justification for live video transmission of trial testimony is premised solely on the value of 'live' testimony in trial proceedings… that, alone, cannot possibly amount to 'good cause' and compelling circumstances' under Rule 43."[59] | "That Plaintiffs may prefer live testimony to videotaped testimony or, in hindsight, are unhappy with the deposition they took has no bearing on whether good cause in compelling circumstances exists."[60] |
| "There is nothing unexpected or compelling about the fact that witnesses in this case do not reside in Massachusetts or nearby. … Consequently, Class Plaintiffs cannot show good cause and compelling circumstances when they reasonably should have foreseen the precise circumstances they now find themselves in."[61] | "Here, there are no '*unexpected* reasons' or '*unforeseen* circumstances' that preclude Mr. Barker from appearing at trial in Boston.  Far from it.  It has never been lost on Plaintiffs that Mr. Barker was a potential witness and one who was outside the subpoena power of the trial court."[62] |
| "Plaintiffs' failure to take depositions of several witnesses (or their apparent failure to take the 'trial' depositions they now wish they had taken of other witnesses) does not constitute good cause or compelling circumstances."[63] | "Plaintiffs were free to obtain testimony from Mr. Pott during the MDL's fact discovery period, but elected not to depose him."[64] |

This Court is best situated to decide whether its earlier decision to permit trial testimony by video should be revisited.

---

[58] Motion to Quash Pott at 8, attached to the Declaration of Thomas M. Sobol as Exhibit J.

[59] ECF No. 841 at 3.

[60] Motion to Quash Barker at 6, attached to the Declaration of Thomas M. Sobol as Exhibit K.

[61] ECF No. 841 at 6.

[62] Motion to Quash Barker at 5.

[63] ECF No. 841 at 4.

[64] Motion to Quash Pott at 1.

**2.      Central enforcement is more efficient than piecemeal resolution.**

It will be far more efficient for this Court to centrally enforce subpoenas issued out of the MDL. This Court has familiarity with the unique issues presented by this litigation and is well positioned to centrally resolve objections to subpoenas efficiently and effectively.  Since one court has already referred one motion to quash to the MDL, this Court will have to resolve at least that single motion in any event.

If enforcement is left to each local district court where a subpoena is served, there is a very real possibility that there will be conflicting decisions as to the appropriate scope of the various subpoenas.  This will inevitably be more costly and inefficient.  It would also be counter to the fundamental notion of coordinated pretrial proceedings that underlies the MDL mechanism.

**3.      Central enforcement does not limit AstraZeneca's ability to object to trial subpoenas.**

The attached proposed order addresses the central enforcement of subpoenas issued out of the MDL.  It does not restrict in any way, shape, or form a recipient's ability to object to a subpoena, the scope of the subpoena, or the time constraints imposed by the subpoena.  Any and all legally cognizable objections to the content or form of a subpoena are available to a subpoena recipient.

## IV.      CONCLUSION

For the sake of efficiency and reducing the costs associated with adjudicating subpoenas, plaintiffs ask this Court to enter an order (1) confirming that it will centrally enforce trial subpoenas issued out of the MDL, (2) requiring that objections or motions to quash subpoenas issued out of the MDL be filed directly into the MDL, and (3) ordering transfer of existing motions to quash subpoenas to this Court.

Dated:  September 22, 2014

*/s/ Thomas M. Sobol*

Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Donna M. Evans, BBO No. 554613
Kristen A. Johnson, BBO No. 667261
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel:  (617) 482-3700
Fax:  (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
donnae@hbsslaw.com
kristenp@hbsslaw.com

*Liaison Counsel and Co-lead Counsel for the
Direct Purchaser Class*

David F. Sorensen
Daniel Simons
Caitlin Coslett
Nicholas Urban
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
dsorensen@bm.net
dsimons@bm.net
ccoslett@bm.net

Bruce E. Gerstein
Joseph Opper
Elena Chan
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel:  (212) 398-0055
Fax:  (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
echan@garwingerstein.com
egerstein@garwingerstein.com

*Co-lead Counsel for the Direct Purchaser Class*

Glen DeValerio (BBO #122010)
BERMAN DeVALERIO
One Liberty Square
Boston, MA  02109
Tel: (617) 542-8300
Fax: (617) 542-1194
gdevalerio@bermandevalerio.com

Todd A. Seaver (BBO #645874)
BERMAN DeVALERIO
One California Street, Suite 900 San Francisco, CA  94111
Tel:  (415) 433-3200
Fax:  (415) 433-6382
tseaver@bermandevalerio.com

*Liaison Counsel for the End-Payor Class*

Steve D. Shadowen
HILLIARD & SHADOWEN LLC
39 West Main Street
Mechanicsburg, PA 17055
Tel: (855) 344-3298
steve@hilliardshadowenlaw.com

Anne Fornecker
Daniel Gonzales
HILLIARD & SHADOWEN LLC
919 Congress Ave., Suite 1325
Austin, TX 78701
Tel: (512) 851-8990
anne@hilliardshadowenlaw.com
daniel@hilliardshadowenlaw.com

Kenneth A. Wexler
Bethany R. Turke
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com
brt@wexlerwallace.com

jnb@wexlerwallace.com

J. Douglas Richards
George Farah
Sharon K. Robertson
Hiba Hafiz
COHEN MILSTEIN SELLERS & TOLL,
PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
drichards@cohenmilstein.com
srobertson@cohenmilstein.com

Jayne A. Goldstein
POMERANTZ LLP
1792 Bell Tower Lane
Suite 203
Weston, FL 33326
Tel: 954-315-3454
Fax: 954-315-3455
jagoldstein@pomlaw.com

*Co-Lead Counsel for the End-Payor Class*

Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861

*Counsel for Walgreen Plaintiffs*

Barry L. Refsin
HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA. 19103
Tel: 215-568-6200

Monica L. Rebuck
HANGLEY ARONCHICK SEGAL PUDLIN

& SCHILLER
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Tel.: 717-364-1007

*Counsel for Rite Aid Plaintiffs*

Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Erin Gibson Allen
MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219
Tel.: 412-338-3344

*Counsel for Giant Eagle, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas M. Sobol, hereby certify that I caused a copy of the above Memorandum in support of Motion to Centralize Enforcement of Subpoenas and proposed order to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: September 22, 2014

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO # 667261
