**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409<br><br>Civil Action No. 1:12-md-02409-WGY |
| This Document Relates To:<br><br>ALL ACTIONS | |

## DECLARATION OF THOMAS M. SOBOL

I, Thomas M. Sobol, hereby depose and state under oath as follows:

1.      I am a member of the bar of the Supreme Judicial Court of Massachusetts and a member of the bar of the United States District Court for the District of Massachusetts.  I am a partner with the law firm of Hagens Berman Sobol and Shapiro LLP and serve as the Managing Partner of the firm's Boston office.  This Court has appointed me Liaison and Co-Lead Counsel for the Direct Purchaser Class Plaintiffs in this matter, *In re: Nexium (Esomeprazole) Antitrust Litigation*, MDL No. 2409, Civil Action No. 1:12-md-02409 (WGY), United States District Court for the District of Massachusetts.

2.      As Co-Lead and Liaison Counsel, I am responsible for the efficient management and preparation of this case toward trial.

3.      I provide this declaration in support of Plaintiffs' Emergency Motion for Central Enforcement of Subpoenas, on behalf of all Plaintiffs in the MDL actions ("Plaintiffs").

4.      Judge Howell in the District of Columbia has already referred AstraZeneca's motion to quash a subpoena issued from that judicial district to AstraZeneca's D.C.-based outside counsel Timothy Hester to this Court, recognizing that having another court resolve the motion to quash had the potential to disrupt this Court's ability to manage the MDL litigation.

1

**A.**     **Formation of the MDL.**

5.     On December 7, 2012, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation transferred five antitrust cases involving the drug Nexium to the District of Massachusetts for assignment to the Honorable William G. Young for coordinated or consolidated pretrial proceedings in MDL No. 2409.  *See In re: Nexium (Esomeprazole) Antitrust Litig.,* 908 F. Supp. 2d 1360 (J.P.M.L 2012).

6.     In total, the MDL now contains nineteen civil actions: five direct purchaser class actions, four direct purchaser individual actions, and ten end payer class actions.

**B.**     **Limitations on Depositions.**

7.     On February 4, 2013, the Court entered a Case Management Order ("CMO"). ECF No. 115.

8.     The CMO limited the total number of depositions each side could take to fifteen depositions. *Id.* Given the limited number, Plaintiffs were selective in noticing depositions.

9.     Given the limitations on depositions and the complexity of the issues, almost all of the depositions were conducted for discovery purposes, that is, the depositions were taken in order to collect facts about who did what, when, and how.  Consequently, most witnesses have not been subjected to truth-telling cross-examination of the type used for trial purposes.

10.     All told, Plaintiffs deposed only 19 fact witnesses, 16 of whom were 30(b)(6) witnesses.  Plaintiffs and defendants agreed that a single Fed.R.Civ.P. Rule 30(b)(6) deposition notice would count as a single deposition even if defendants put up multiple witnesses in response, so long as the total deposition time for each 30(b)(6) notice did not exceed 7 hours.

**C.**     **Plaintiffs' Efforts to Secure Live Trial Testimony from Fact Witnesses within AstraZeneca's control.**

11.     The Court originally set a firm trial date for March 2014.  ECF No. 397.  That date was subsequently changed to October 20, 2014.  ECF No. 982.  Plaintiffs have been preparing diligently for the upcoming trial.

12.     This Court has stressed the importance of presenting primary evidence at trial - that is, "the evidence of what people actually were doing and the typical type of evidence in trials, things that reveal what they thought they were doing, e-mails, agreements, memoranda, meeting minutes and the like."  ECF No. 716 at 21.  To that end, the Court has stated that it will not permit an expert to testify on a subject until the party offering such expert has produced the primary evidence that the party intends to offer on that topic.  ECF No. 716 at 22.

13.     On February 6, 2014, Plaintiffs filed a Motion in Limine to Preclude Argument or Evidence Based Upon Defendants' Invocation of Attorney-Client Privilege.  ECF No. 844.

14.     On July 11, 2014, the Court held a hearing on Plaintiffs' Motion in Limine, as well as other pre-trial motions.  ECF No. 966.  At the hearing, the Court stated that it would address objections to witness testimony based on the attorney-client privilege on a question-by-question basis at trial.  ECF No. 968 at 24-25.  This ruling presumes live witness testimony at trial.

15.     The Court has stated its preference for live witness testimony.  ECF No. 968 at 32.  *See also*, *e.g.,* Fed. R. Civ. P. 43(a) ("In every trial, the testimony of witnesses shall be taken in open court . . .").  Other courts agree.  *ATD-American Co. v. Krueger Intern., Inc.*, 2014 WL 3952848, at *19 (E.D. Pa. Aug. 12, 2014) ("testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person . . . Although the increasing availability and fidelity of videotaped depositions has provided a better alternative than reading a written depositions, a preference for live

testimony is still endorsed by federal courts"), *quoting* C. Wright, A. Miller & R. Marcus, 8A

Federal Practice and Procedure § 2142 at 158-59 (2d ed. 1994); *Ramsey v. Fox News Network,*

*LLC*, 323 F. Supp.2d 1352, 1356 (N.D. Ga. 2004) ("When possible, live testimony is preferred

over other means or presenting evidence.").

16.     In prior cases, Judge Young has stated that "the right to cross examine [is] the

greatest legal engine invented for the discovery of truth." *United States v. Green*, 346 F. Supp.

2d 259, 281 (D. Mass. 2004) (citing 5 J. Wigmore, Evidence § 1367, at 32 (J. Chadbourn rev. ed.

1974); U.S. Const. amend. VI.).  Judge Young has further stated that "the right to confront and

cross-examine witnesses is a critical element of the truth-seeking process" and is "an essential

and fundamental requirement for the kind of fair trial which is this country's constitutional goal."

*United States v. Houlihan*, 887 F. Supp. 352, 360 (D. Mass. 1995) (citing *Chambers v.*

*Mississippi*, 410 U.S. 284, 295 (1973)).

17.     Plaintiffs have undertaken exhaustive measures to select a limited set of trial

witnesses that will best aid the jury in its fact-finding duty.

18.     Plaintiffs exchanged initial witness lists with each of the four defendants,

AstraZeneca, Ranbaxy, Teva, and Dr. Reddy's Laboratories, more than seven months ago, in

January 2014.

**1.     Plaintiffs' Motion for Live Trial Testimony via Video.**

19.     On January 21, 2014, Plaintiffs filed a Motion for Live Trial Testimony Via

Contemporaneous Transmission, in an attempt to provide the jury with live trial testimony from

witnesses located beyond the 100 mile range of the District of Massachusetts.  ECF No. 830.

20.     I am informed and believe that live contemporaneous testimony via video

transmission can be accomplished in an efficient manner.  Plaintiffs have spoken with the

relevant technical personnel at the federal courthouses in Philadelphia and the District of

Columbia who are familiar with the relevant technology.  I am advised that both federal

courthouses have arranged for the transmission of live video testimony to other courts on many

occasions over the last two decades.  Additionally, Plaintiffs have hired a third-party vendor to

facilitate the process and that vendor is experienced in these transmissions.

21.     The Court granted Plaintiffs' Motion on July 11, 2014.  ECF No. 966.

**2.      Plaintiffs Served Targeted Trial Subpoenas to AstraZeneca.**

22.     Beginning the last week of August 2014, Plaintiffs served 25 trial subpoenas,

issued out of the MDL, on witnesses for AstraZeneca, Ranbaxy, Teva and Dr. Reddy's.

23.     Plaintiffs trial subpoenas originally instructed the witnesses to appear at their

local courthouse to testify on October 6, 2014.  On September 11, 2014, after the Court moved

the trial date back, I sent a letter to counsel for each defendant stating that the witnesses need not

appear to testify on October 6, 2014 but instead should appear on October 20, 2014.  I also asked

defense counsel to inform me of the witnesses counsel would represent, and which witnesses

would be represented separately, for purposes of scheduling trial testimony and logistics of the

video transmission.

24.     Plaintiffs are working diligently towards a firm order of witnesses and timing of

each examination, in an effort to inform Defendants and each witness of the precise date(s) in

which Plaintiffs will require each witness to appear, at the earliest possible date.  Once Plaintiffs

establish this timing, Plaintiffs will amend each subpoena, or otherwise notify AstraZeneca and

the witness, to reflect the precise date(s) in which each witness shall appear.

25.      Plaintiffs issued trial subpoenas to selected AstraZeneca witnesses who will be able to testify and provide primary evidence concerning four main areas relating to the relevant Nexium agreements.

26.      First, Plaintiffs subpoenaed three key AstraZeneca witnesses who played different roles with respect to evaluating, negotiating, and implementing the settlement agreements at issue: two AstraZeneca employees and one outside counsel.  Jeffrey Pott, AZ's Global General Counsel, was the lead negotiator and led settlement meetings.  Terri Bowman, AZ's Senior Counsel of IP Litigation and Antitrust, was the point person on the side agreements and related regulatory issues.  Timothy Hester, outside counsel from Covington & Burling, LLP, drafted and negotiated the detailed legal documents.

27.      Second, Plaintiffs subpoenaed two key AstraZeneca finance employees with in-depth knowledge of AstraZeneca's market power, including pharmaceutical market dynamics, revenue and profit projections, pricing projections, and other market share analyses.  Gary Rowles, AstraZeneca's Senior Finance Director dealt with forecasting and projection of Nexium sales as well as the expected impact of anticipated generic entry.  Matthew Diggons, AstraZeneca's Brand Finance Director, AstraZeneca Brand Finance Director is intimately familiar with Nexium's steadily climbing sales, AstraZeneca's profits from Nexium before generic entry, and Nexium's high profit margins.

28.      Third, Plaintiffs subpoenaed two AstraZeneca employees who were deeply involved in, among things, AstraZeneca's decision not to launch an authorized generic version of Nexium.  Linda Palczuk, Vice President of AstraZeneca's Cornerstone Business Unit, was deeply involved in the policy and history of AstraZeneca's launch of several authorized generics.

Richard Barker, AstraZeneca's Supply Chain Lead, involved in Project Genesis and the destruction of the AstraZeneca's Nexium authorized generic.

29.     Finally, Plaintiffs subpoenaed two attorneys who served as outside counsel to AstraZeneca in prosecuting the underlying Nexium patent litigation (as opposed to settling that litigation), Errol B. Taylor and Frederick M. Zullow, both partners at the firm of Milbank, Tweed, Hadley & McCloy LLP in New York City.  Those subpoenas have since been withdrawn; Plaintiffs have entered into agreements with AstraZeneca that both the witnesses and AstraZeneca will provide declarations and stipulations to cover the foundation for the documents that the witnesses would otherwise testify about.  ECF 991.

30.     Plaintiffs are negotiating a similar resolution with respect to a subpoena issued to AstraZeneca employee Steven Rothwein.

**3.     Plaintiffs' Carefully Selected Testimony Locations.**

31.     Plaintiffs diligently researched locations to serve these witnesses with trial subpoenas as soon as reasonably possible, in order to provide time to work out the logistics of video transmission and to give the witnesses ample time to make arrangements to testify.

32.     For most witnesses, including all of AstraZeneca's current and former employees, Plaintiffs selected the James A. Byrne U.S. Courthouse in Philadelphia as a central location from which witnesses would testify if they chose not to appear live at trial in Boston. The Courthouse is approximately thirty miles from AstraZeneca's headquarters in Wilmington, Delaware and approximately twenty-five miles from Teva's headquarters in North Wales, Pennsylvania.  The Philadelphia location for testimony is "within 100 miles of where" each of the AstraZeneca and Teva employees "resides, is employed, or regularly transacts business in person," as required by Fed. R. Civ. P. 45(c)(1)(A).

33.     Plaintiffs served one witnesses, AstraZeneca's outside counsel Timothy Hester, with a trial subpoena requiring him to testify at the E. Barrett Prettyman courthouse in Washington, D.C.  Mr. Hester is a partner in Covington & Burling LLP's D.C. office.  Judge Howell in the District of the District of Columbia has already referred AstraZeneca's motion to quash to this Court, recognizing that having another court resolve the motion to quash had the potential to disrupt this Court's ability to manage the MDL litigation.

**E.      AstraZeneca Moved to Quash Plaintiffs' Trial Subpoenas.**

34.     Dr. Reddy's has not objected to the trial subpoenas.

35.     After some negotiations, Ranbaxy and Teva agreed to produce several witnesses live at trial, and Plaintiffs agreed to negotiate stipulations and Federal Rule of Evidence 902(11) declarations in lieu of trial testimony from other witnesses.

36.     AstraZeneca moved to quash every outstanding trial subpoena issued to its employees, witnesses who are ostensibly within AstraZeneca's control, including its Global Counsel, Mr. Pott, a corporate officer.  On September 17, 2014, AstraZeneca filed Motions to Quash trial subpoenas in the Eastern District of Pennsylvania and the District of Columbia, the districts in which compliance with the subpoenas is required.  AstraZeneca did not contact Plaintiffs in an attempt to negotiate a resolution before filing the motions.

37.     On September 19, the District Court for the District of Columbia issued an Order transferring a Motion to Quash the subpoena of Timothy Hester to the MDL court, under the authority of FED. R. CIV. P. 45(f).  A true and accurate copy of the Order is attached hereto as Exhibit A.

**F.      Additional Exhibits in Support of Plaintiffs' Motion for Central Enforcement.**

38.     Attached hereto as Exhibit B is a true and accurate copy of my September 11, 2014 letter.

39.     Attached hereto as Exhibit C is a true and accurate copy of an Amended Order entered by Judge Saylor in *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig*., No. 13-md-02419, ECF No. 885 (D. Mass. Feb. 7, 2014).

40.     Attached hereto as Exhibit D is a true and accurate copy of an Order entered by Judge Saylor in *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig*., No. 13-md-02419, ECF No. 193 (D. Mass. Jun. 21, 2013).

41.     Attached hereto as Exhibit E is a true and accurate copy of an excerpted transcript of a July 17, 2013 status conference held before Judge Saylor in *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig*., No. 13-md-02419, (D. Mass. Jul. 17, 2013).

42.     Attached hereto as Exhibit F is a true and accurate copy of a Notice of Tag-Along Actions pending in the District Court for the Eastern District of Pennsylvania, filed by Timothy Hester, a partner at Covington & Burling, LLP and outside counsel to AstraZeneca, before the Judicial Panel on Multidistrict Litigation on July 22, 2014.

43.     Attached hereto as Exhibit G is a true and accurate copy of AstraZeneca's Memorandum of Law in Opposition to Plaintiffs' Motion for Remand, No. 14-cv-04149, ECF No. 47 (E.D. Pa. Aug. 4, 2014).

44.     Attached hereto as Exhibit H is a true and accurate copy of an excerpted transcript from this Court's July 11, 2014 Hearing addressing Plaintiffs' Motions for Live Trial Testimony by Contemporaneous Transmission.

45.     Attached hereto as Exhibit I is a true and accurate copy of an order entered by Judge Cote in *In re Electronic Books Antitrust Litig.*, 11-md-2293, ECF No. 255 (S.D.N.Y. Oct. 19, 2012).

46.     Attached hereto as Exhibit J is a true and accurate copy of Jeffrey A. Pott's Motion to Quash Subpoena to Appear and Testify at Trial and Memorandum in Support.

47.     Attached hereto as Exhibit K is a true and accurate copy of Richard S. Barker's Motion to Quash Subpoena to Appear and Testify at Trial and Memorandum in Support.

48.     Attached hereto as Exhibit L is a true and accurate copy of Terri L Bowman's Motion to Quash Subpoena to Appear and Testify at Trial and Memorandum in Support.

49.     Attached hereto as Exhibit M is a true and accurate copy of Matthew R. Diggons' Motion to Quash Subpoena to Appear and Testify at Trial and Memorandum in Support.

50.     Attached hereto as Exhibit N is a true and accurate copy of Timothy C. Hester's Motion to Quash Subpoena to Appear and Testify at Trial and Memorandum in Support.

51.     Attached hereto as Exhibit O is a true and accurate copy of Linda S. Palczuk's Motion to Quash Subpoena to Appear and Testify at Trial and Memorandum in Support.

52.     Attached hereto as Exhibit P is a true and accurate copy of Gary S. Rowles, Jr.'s Motion to Quash Subpoena to Appear and Testify at Trial and Memorandum in Support.


Executed this 22 day of September, 2014 under the pains and penalties of perjury.


**/s/ Thomas M. Sobol**
Thomas M. Sobol

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated:  September 22 , 2014

*/s/* **Thomas M. Sobol**
Thomas M. Sobol