**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409<br><br>Civil Action No. 1:12-md-02409-WGY |
| This Document Relates To:<br><br>All Actions | **Hon. William G. Young** |

**AMENDED JOINT PRE-TRIAL MEMORANDUM**

# TABLE OF CONTENTS

I.      SUMMARY OF EVIDENCE ...................................................................................5

    A.      Plaintiffs' Summary of the Evidence ......................................................5

    B.      Defendants' Summary of the Evidence ....................................................6

II.     STIPULATIONS OF FACT .................................................................................6

    A.      Plaintiffs' Statement Concerning Fact Stipulations ................................6

    B.      Defendants' Statement Concerning Fact Stipulations .............................7

III.    CONTESTED ISSUES OF FACT .........................................................................8

    A.      Plaintiffs' Statement of Contested Issues of Fact ...................................8

    B.      Defendants' Statement of Contested Issues of Fact.................................9

IV.     JURISDICTIONAL QUESTIONS .......................................................................11

V.      PENDING MOTIONS...........................................................................................11

    A.      Defendants' Motions ...............................................................................11

    B.      Plaintiffs' Motions ..................................................................................11

VI.     ISSUES OF LAW AND EVIDENTIARY QUESTIONS .................................12

VII.    AMENDMENTS TO THE PLEADINGS ...........................................................12

VIII.   ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION ..........12

    A.      Plaintiffs' Reasonable Royalty Expert....................................................12

        1.      Plaintiffs' Statement.....................................................................12

        2.      Defendants' Statement ..................................................................13

    B.      Phasing of the Trial .................................................................................13

        1.      Plaintiffs' Statement.....................................................................13

        2.      Defendants' Statement ..................................................................14

    C.      Causation Issues ......................................................................................15

        1.      Plaintiffs' Statement.....................................................................15

        2.      Defendants' Statement ..................................................................17

    D.      Impact of Summary Judgment Rulings....................................................18

       1.       Plaintiffs' Statement................................................................18

       2.       Defendants' Statement .............................................................19

E.     One Expert per Discipline Rule .........................................................20

       1.       Plaintiffs' Statement................................................................20

       2.       Defendants' Statement .............................................................21

F.     Federal Rule of Evidence 1006 Summaries.......................................22

       1.       Plaintiffs' Statement................................................................22

       2.       Defendants' Statement .............................................................22

G.     Exhibit Books for Jurors ....................................................................23

       1.       Plaintiffs' Statement................................................................23

       2.       Defendants' Statement .............................................................23

H.     Note Taking by Jurors ........................................................................23

       1.       Plaintiffs' Statement................................................................23

       2.       Defendants' Statement .............................................................24

I.     Juror Questions ...................................................................................24

       1.       Plaintiffs' Statement................................................................24

J.     Proposed Preliminary Instructions.....................................................25

K.     Proposed Final Jury Instructions and Verdict Form ...........................25

L.     Proposed Tutorial Background Testimony .........................................25

       1.       Plaintiffs' Statement................................................................25

       2.       Defendants' Statement .............................................................26

M.     Demonstrative Exhibits.......................................................................27

N.     Documents Not Previously Disclosed .................................................27

O.     Additional Statement Concerning Document Issues ...........................28

M.     Use of Depositions..............................................................................29

       1.       Plaintiffs' Position: .................................................................31

       2.       Defendants' Position:..............................................................31

N.    Witness Sequestration ...................................................................31

    1.    Plaintiffs' Statement ..........................................................31

    2.    Defendants' Statement ......................................................32

O.    Service of Documents During Trial ..............................................33

P.    Electronic Equipment .....................................................................34

Q.    Opening and Closing Statements ..................................................35

    1.    Plaintiffs' Proposal ..........................................................35

    2.    Defendants' Proposal .......................................................35

IX.    LENGTH OF TRIAL ...............................................................................36

A.    Plaintiffs' Statement ......................................................................36

B.    Defendants' Statement ...................................................................36

X.    WITNESSES WHO WILL TESTIFY AT TRIAL ................................36

A.    Plaintiffs' Witness List ..................................................................37

B.    Defendants' Witness List ...............................................................45

    1.    Witnesses Defendants Intend to Call to Testify at Trial ...........46

    2.    Witnesses Defendants May Call to Testify at Trial ..................47

XI.    LIST OF THE PROPOSED EXHIBITS ..................................................49

## INTRODUCTION

Pursuant to Local Rule 16.5(d) and the Court's Order dated September 10, 2014 (ECF No. 983), all parties respectfully submit this Amended Joint Pretrial Memorandum[1] concerning Phase I of the trial in this action, which the Court has ruled will decide all issues other than "fact of injury" and "damages," with those last two elements reserved for Phase II (as articulated at the pretrial conference on January 21, 2014).  The parties will submit a further Joint Pretrial Memorandum prior to any Phase II of the trial.

## I.      SUMMARY OF EVIDENCE

*Description: A concise summary of the evidence that will be offered by the plaintiff, defendant and other parties with respect to both liability and damages (including special damages, if any).*

### A.      Plaintiffs' Summary of the Evidence

A summary of the evidence to be offered by the plaintiffs at trial will be filed as Exhibit A (per the parties' practice when dealing with documents that may contain confidential information).  The parties have both had the Court's order and now opinion for some time.  All parties are equally well positioned to state what the issues are in the case, and what facts support those issues.  AstraZeneca and Teva filed a submission a Supplemental Trial Management Submission Based on the Court's Summary Judgment Opinion, ECF No. 992, that purports to address the import of the Court's opinion.  It is thus unclear to Plaintiffs why the Defendants need to see our summary of the evidence before providing theirs.

---

[1] Defendants have submitted their sections of this Pretrial Memorandum jointly as required by the Court's Order, but where indicated, each defendant has set forth its own respective and individual positions.

**B.      Defendants' Summary of the Evidence**

Since the Court issued its summary judgment opinion on September 4, 2014 substantially

narrowing the case, the defendants have repeatedly requested that plaintiffs provide an updated

summary of the evidence they expect to offer at trial.  Because plaintiffs have the burden of

proof, the evidence the plaintiffs expect to offer will of course determine the evidence defendants

expect to present in response. As important, plaintiffs' submissions would help defendants

identify significant areas of disagreement among the parties regarding the scope of evidence that

should be admitted at trial so that these matters could be raised with the Court at the final pretrial

conference.

Nevertheless, plaintiffs have intentionally withheld this document and refused to provide

it to defendants in advance of this filing, despite previously representing that they expected to

provide one on September 15, 2014.  Defendants will submit their respective summaries of what

they expect the evidence to show in response to plaintiffs' submission by September 29.  At this

time, defendants state that they expect the evidence to show that plaintiffs cannot meet their

burden to prove any of the requisite elements of their claims listed in Section III(B) below.

## II.      STIPULATIONS OF FACT

*Description: A statement of facts established by the pleadings, by admissions or by*

*stipulations. Counsel shall stipulate all facts not in genuine dispute.*

The parties will file any Stipulated Facts ultimately agreed to no later than October 13,

2014.

**A.      Plaintiffs' Statement Concerning Fact Stipulations**

Mindful of the complex regulatory and related issues underlying this litigation, plaintiffs

proposed fact stipulations covering, *inter alia*, the role of the FDA and of the PTO, patent

infringement litigation concerning Nexium, the generic defendants' ANDAs for generic Nexium,

and AstraZeneca's revenues and profits from Nexium.  These proposed stipulations cited to defendants' expert reports – including reports submitted on behalf of all defendants – and defendants' answers and declarations.  That is, with precious few exceptions, plaintiffs' proposed stipulations *came from materials that defendants cannot reasonably dispute*.

Nonetheless, defendants rejected the vast majority of plaintiffs' proposed fact stipulations.  Defendants' refusal to stipulate to uncontroversial facts is at odds with defendants' argument that "defendants do not believe that the 52.5 hours of trial time the Court has allotted per side will afford each defendant sufficient time to present its case in full and ensure its due process rights."[2]  Faced with recalcitrant parties, another court has ordered that "[t]he parties shall not unreasonably refuse to stipulate to any proposed stipulation of fact as to which the refusing party has no opposing evidence or reasonable basis for contest."[3]

In an effort to assist the jury and streamline the trial, plaintiffs will include in their proposed tutorial to the jury these uncontroversial facts taken from defendants' submissions.

## B.     Defendants' Statement Concerning Fact Stipulations

Defendants dispute plaintiffs' characterizations of the discussions to date regarding proposed stipulations of fact.  When the parties were last exchanging drafts of the stipulations, in February, defendants were proposing stipulations exceeding 100 separate paragraphs.  Plaintiffs have not provided any further drafts since February, nor have plaintiffs made any attempt to narrow the issues in light of the Court's ruling on summary judgment.  And although plaintiffs proposed the notion of a "tutorial" in February, even today they have disclosed neither who would provide such a tutorial, nor what he or she would say.  *See* Section VIII(L) below.  Other

---

[2] ECF No. 847 at *26.

[3] *See Allianz Ins. Co. v. Pa. Orthopedic Ass'cs*, 6 F. Supp. 2d 424, 427 (E.D. Pa. 1998).

than a discussion in the context of potential resolution of certain trial subpoenas Plaintiffs have

served, since February 2014, the plaintiffs have not made any proposals of any kind to

defendants regarding any proposed fact stipulations.

## III.   CONTESTED ISSUES OF FACT

*Description: contested issues of fact.*

**A.     Plaintiffs' Statement of Contested Issues of Fact**

The plaintiffs identify the following as the contested factual issues to be resolved at trial:

- Whether AstraZeneca made a "large" payment to Ranbaxy to settle patent infringement litigation and to delay the entry of generic Nexium;

- Whether there are pro-competitive justifications for AstraZeneca making the large payment to Ranbaxy;

- Whether the agreement between AstraZeneca and Ranbaxy was anticompetitive, i.e., whether the anticompetitive effects of AstraZeneca's large payment to Ranbaxy to delay the launch date for the first filer generic Nexium to May of 2014 outweigh any pro-competitive justifications;

- Whether AstraZeneca made a "large" payment to Teva to settle patent infringement litigation and to delay the entry of generic Nexium;

- Whether there are pro-competitive justifications for AstraZeneca making the large payment to Teva;

- Whether the agreement between AstraZeneca and Teva was anticompetitive, i.e., whether the anticompetitive effects of AstraZeneca's large payment to Teva to accept the delayed launch dae of May of 2014 outweigh any pro-competitive justifications

- Whether Teva joined with AstraZeneca and Ranbaxy to delay generic Nexium, i.e., whether the AstraZeneca-Teva agreement was part of an overall agreement or conspiracy with AstraZeneca and Ranbaxy to delay generic entry;

- Whether DRL joined with AstraZeneca, Ranbaxy, and/or Teva to delay generic Nexium, i.e., whether the AstraZeneca-DRL agreement was part of an overall agreement or conspiracy with the AstraZeneca, Ranbaxy, and/or Teva to delay generic entry;

- Whether AstraZeneca had market and/or monopoly power over the sale of esomeprazole magnesium, sold by AstraZeneca under the brand name Nexium, during some of the period between late 2009 and the present;

- Whether, even if not the sole cause, the AstraZeneca and Ranbaxy agreement delayed the entry of Teva (and the AstraZeneca authorized generic) during some portion of the time from late 2009 to the present;

- Whether, even if not the sole cause, the AstraZeneca and Teva agreement delayed the entry of Teva (and the AstraZeneca authorized generic) during some portion of the time from late 2009 to the present;

- Whether, even if not the sole cause, the overarching antitrust conspiracy delayed the entry of Teva (and the AstraZeneca authorized generic) during some portion of the time from late 2009 to the present;

- The reasonable estimate (month and year) as to when Teva's generic version of Nexium (and the AstraZeneca authorized generic) would have become available were it not for the wrongful conduct found by the jury;

**B.     Defendants' Statement of Contested Issues of Fact**

1.     Whether AstraZeneca made any reverse payment to Teva, and if so the amount of that payment and whether it was large and unjustified under the circumstances;

2.     The identity of the relevant market for assessing any antitrust impact of defendants' conduct;

3.     Whether AstraZeneca exercised market power in the relevant antitrust market;

4.     Whether the Nexium patent settlement agreement between AstraZeneca and Teva actually and proximately caused any delay in Teva's market entry with its generic Nexium (esomeprazole magnesium) product.  To decide this issue, the jury will need to determine at least the following issues:

a.     whether AstraZeneca would have been able to lawfully exclude Teva from the market until May 2014 (or later) absent the settlement;

b.      whether Teva would have obtained tentative FDA approval to sell its generic Nexium product (esomeprazole magnesium) prior to May 2014, and if so when Teva would have obtained that tentative FDA approval absent the settlement;

c.      whether Teva and Ranbaxy would have entered into an agreement by which Ranbaxy would agree to voluntarily relinquish its 180-day exclusivity to the market as a whole, so that Teva could obtain final FDA approval and enter the market prior to May 2014, and if so when Teva and Ranbaxy would have entered into such an agreement absent the Teva-AstraZeneca settlement;

d.      whether Teva would have obtained final FDA approval and actually launched its generic Nexium product prior to May 2014, and if so the month and year when that launch would have occurred absent the Teva-AstraZeneca settlement; and

e.      whether any intervening events not attributable to any of the defendants prevented Teva from launching a generic Nexium product prior to May 27, 2014.

5.      If AstraZeneca made any large, unjustified reverse payment to Teva and if the AstraZeneca-Teva Nexium patent settlement actually and proximately caused any delay in Teva's generic Nexium entry, whether that settlement agreement had any anti-competitive effects in the relevant market, and if so, whether such effects were outweighed by any pro-competitive benefits or was otherwise justified;

6.      If AstraZeneca did make a large and unjustified reverse payment to Teva, and if that reverse payment was intended to and did in fact cause a delay in Teva's market entry with generic Nexium that was not outweighed by any pro-competitive benefits or otherwise justified, whether Ranbaxy and/or DRL entered into a conscious agreement or commitment with Teva to help accomplish this result.

## IV.    JURISDICTIONAL QUESTIONS

The parties are not aware of any jurisdictional issues.

## V.    PENDING MOTIONS

*Description: any question raised by pending motions.*

The following motions listed below are pending before this Court.

### A.    Defendants' Motions

1.    Teva's and AstraZeneca's Motion to Exclude Proposed Expert Testimony of W. Shannon McCool (ECF No. 985)

2.    Teva's and AstraZeneca's Motion to Exclude Proposed Expert Testimony of Thomas McGuire (ECF No. 988)

3.    AstraZeneca and Ranbaxy Defendants' Motion to Exclude the Testimony of Thomas G. McGuire (ECF No. 622)

4.    AstraZeneca, Ranbaxy and Teva Defendants' Motion To Exclude the Testimony of Cheryl Blume, Ph.D. (ECF No. 635)

5.    DRL's Motion in Limine To Exclude Evidence Relating To Accolate Litigation and Settlement (ECF No. __) [to be filed]

6.    Notice by AstraZeneca and Teva Defendants of Supplemental Trial Management Submission Based on Summary Judgment Opinion (ECF No. 992)

7.    Defendants will file additional motions *in limine* at the appropriate time.

### B.    Plaintiffs' Motions

1.    Direct Purchaser and End-Payor Class Plaintiffs' Motion to Exclude the Expert Testimony of Richard S. Ruback (ECF No. 591).

2.    Plaintiffs' Submission in Response To Notice By AstraZeneca and Teva Defendants of Supplemental Trial Management Submission Based on Summary Judgment Opinion (ECF 992) [to be filed]

3.    Plaintiffs will file additional motions in limine at the appropriate time.

## VI.     ISSUES OF LAW AND EVIDENTIARY QUESTIONS

*Description: issues of law, including evidentiary questions, together with supporting authority.*

The parties will address outstanding issues of law, including evidentiary questions, through motions *in limine* that have been filed or will be filed at a later date.[4]  The parties reserve the right to brief additional legal issues that may arise.

## VII.     AMENDMENTS TO THE PLEADINGS

*Description: any requested amendments to the pleadings.*

Each party reserves the right to seek to amend its pleadings to conform to the evidence at trial.

## VIII.   ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

*Description: any additional matters to aid in the disposition of the action.*

### A.     Plaintiffs' Reasonable Royalty Expert

#### 1.     Plaintiffs' Statement

Plaintiffs have filed, or will file later today, a response to the motion defendants discuss below, Teva's and AstraZeneca's Motion to Exclude Proposed Expert Testimony of W. Shannon McCool (ECF No. 985).   As explained further in plaintiffs' opposition: defendants' mischaracterize the Court's ruling on McGuire; McCool is well-qualified and offers a sound, admissible, reasonable royalty opinion; and plaintiffs explicity reserved the right to call McGuire if McCool does not testify.

---

[4] *See* February 3, 2014 Electronic Order (ECF No. 840).

### 2.      Defendants' Statement

Teva and AstraZeneca have filed a motion to exclude the proposed expert testimony of W. Shannon McCool regarding his estimate of the reasonable royalty damages that Teva would have been assessed in the Prilosec patent infringement litigation absent the settlement on the grounds that his opinions do not satisfy the requirements for admissibility under Fed. R. Evid. 702 or *Daubert*.  Because this Court has already recognized that plaintiffs' original reasonable royalty expert, Thomas McGuire, lacks the qualifications to testify to a reasonable royalty in this Court due to his lack of real world experience with patent licenses or royalty rates, and because plaintiffs were ordered by the Court at the July 11, 2014 hearing to pick between Dr. McCool and Dr. McGuire and plaintiffs chose Dr. McCool, if Dr. McCool's proposed testimony is excluded, then this case is over.  Summary Judgment Op. (ECF No. 977) at 154-55.  Defendants therefore request that the Court hold oral argument on and resolve now the pending motion to exclude Dr. McCool's testimony.

### B.      Phasing of the Trial

### 1.      Plaintiffs' Statement

Plaintiffs have filed, or will file later today, a response to the motion defendants discuss below, Teva's and AstraZeneca's Supplemental Trial Management Submission (ECF No. 992). As explained further in plaintiffs' response, the defendants' "trifurcation" approach makes little sense.  The court's logic leads ineluctably to the conclusion that the AstraZeneca-Ranbaxy reverse payment agreement was a material cause of delaying Teva's generic market entry.  Facts of the AstraZeneca-Ranbaxy scheme are critica to trying the AstraZeneca-Teva reverse payment claim.  And, to resolve the overarching conspiracy claim, the jury should hear all the evidence regarding the AstraZeneca-Ranbaxy reverse payment agreement as the scheme that first produced and then protected the delayed May 2014 entry date.

## 2.      Defendants' Statement

As set forth in Teva's and AstraZeneca's Supplemental Trial Management Submission (ECF No. 992), Teva and AstraZeneca respectfully submit that, in light of this Court's summary judgment rulings, additional phasing by dividing Phase I of the trial into two parts would be most consistent with judicial economy and would not prejudice any party.  Specifically, Teva and AstraZeneca request that Phase I be divided as follows.  In the first part of the Phase I trial, which we anticipate would take no longer than two weeks, the Court would try solely the questions of: (i) whether AstraZeneca made a reverse payment to Teva in connection with their patent settlements; and (ii) if so, the amount of such payment and whether it was large and unjustified under the circumstances.  If the jury determines that AstraZeneca did not pay Teva to settle the Nexium patent litigation or that any payment was not "large and unjustified" as required by *Actavis* to trigger antitrust scrutiny under the rule of reason, then the case is over, and there would be no need to proceed further.  On the other hand, if the jury answers yes to all of those questions, then the Court would proceed to try the other issues remaining (such as causation and conspiracy), other than the fact of injury and damages which this Court has already reserved for a separate proceeding (Phase II).

To be clear, this first part of the Phase I trial would include all parties, and would ensure that the other defendants shall also be afforded their full rights under the Seventh Amendment to protect and pursue their respective rights in that first trial, including but not limited to rights to make opening and closing statements, examine and cross examine witnesses, make objections, and otherwise fully participate in that first trial consistent with its limited scope.

Teva and AstraZeneca respectfully submit that this proposed phasing of the first trial would maximize judicial economy, substantially simplify the case for the jury, and would not prejudice any party.  As this Court has recognized, "this case implicates a large and complex

body of facts." Summary Judgment Op. at 12. A number of complex legal principles, including patents and patent litigation, the Hatch-Waxman regulatory framework, and FDA approval requirements are also in play. Anything that can be done to narrow and focus the issues presented to the jury will benefit all parties and the interests of justice. Moreover, and again as this Court has recognized, if plaintiffs cannot prevail on their claims that the Teva settlement involved a reverse payment from AstraZeneca, then it would "effectively bring this case to an end" because the Teva-AstraZeneca settlement is the sole remaining vehicle of their many original theories of liability through which plaintiffs can attempt to prove actionable antitrust injury. Summary Judgment Op. at 153-54. Accordingly, if plaintiffs cannot prove to the jury that the Teva-AstraZeneca settlement included a large and unjustified reverse payment, then there is no need for the jury to hear evidence, or spend time deliberating, on the many other complex factual issues presented, such as the many complex causation questions relating to FDA approval and Hatch-Waxman 180-day exclusivity, whether AstraZeneca could lawfully exclude the generic defendants from the market until at least May 2014, and whether Ranbaxy and/or DRL joined the alleged overarching conspiracy.

## C.    Causation Issues

### 1.    Plaintiffs' Statement

Plaintiffs have filed, or will file later today, a response to the motion defendants discuss below, Teva's and AstraZeneca's Supplemental Trial Management Submission (ECF No. 992). As explained further in plaintiffs' response, the Court concludes the evidence sufficient to show Teva could have gained earlier FDA approval and launched generic Nexium. The theory logically applies to all the claims, and has two elements: (i) that "Teva could have obtained tentative FDA approval of its generic Nexium product well before May 2014, and that the company abruptly changed course as a result of AstraZeneca's Nexium settlements" and (ii) that

Ranbaxy's 180-day exclusivity bottleneck could be eliminated through relinquishment of Ranbaxy's first-filer status. "Together, these elements construct a but-for scenario under which Teva would have obtained FDA approval of its Nexium ANDA and overcome Ranbaxy's first-filer marketing exclusivity rights, coming to market significantly earlier than May 2014."

The defendants argue that the Court's opinion rejects the theory that the AstraZeneca-Ranbaxy reverse payment was a cause of delaying a Teva-made generic. This is too crabbed a reading.

First, the Court ruled that there was sufficient evidence that in April of 2008 AstraZeneca made large reverse payments (the no-authorized-generic clause and the side agreements) to induce Ranbaxy to set a delayed, first filer launch date for the esomeprazole magnesium market of May of 2014. And the AstraZeneca-Ranbaxy pact contained provisions to protect that date from attack by later would-be generic entrants. If any unlawful act caused Teva (and other) generic delay, it was the original reverse payment agreement with Ranbaxy.

Second, the May 27, 2014 entry date in the AstraZeneca-*Teva* agreement obviously was a function of, was caused by, the selection of that identical date in the prior, market-setting AstraZeneca-*Ranbaxy* agreement.

Third, the contingent launch provision in the Ranbaxy reverse payment agreement protected against pre-May 2014 launch by any generic, providing the protection "[t]he Defendants themselves have conceded that the Generic Defendants 'needed'."

Fourth, the defedants' position makes little sense. AstraZeneca and Teva contend the Court's ruling limits a theory of Teva causation to the Teva reverse payment and overarching conspiracy claims, but not the Ranbaxy reverse payment. But this interpretation leads to the non-sensical result that Ranbaxy might be held liable for one portion of the AstraZeneca-

Ranbaxy agreement that *coordinated* the May 27, 2014 entry date (the contingent launch provisions behind the overarching conspiracy), but cannot be liable for the other portion of the agreement that *set* the May 27, 2014 entry date in the first place (the reverse payments that induced Ranbaxy to push the entry date out for years).  It is AstraZeneca's payments to Ranbaxy that got this snowball rolling down the hill; AstraZeneca and Ranbaxy may alone be liable for the intended and forseeable consequence of delaying Teva's entry.

2.      **Defendants' Statement**

As set forth in Teva's and AstraZeneca's Supplemental Trial Management Submission (ECF No. 922, at 7-10), the Court's summary judgment opinion left only one surviving causation scenario in the case as to how Teva could overcome Ranbaxy's 180-day exclusivity to enter prior to May 2014 – that Ranbaxy would enter into a "strategic partnership" with Teva and voluntarily relinquish its exclusivity to Teva.  Summary Judgment Op. (ECF No. 977) at 125-27.  As a matter of law, a first-filer (such as Ranbaxy) cannot transfer its exclusivity to a later applicant (such as Teva) through voluntary relinquishment.  Any such relinquishment would have to be to the market as a whole.  64 Fed. Reg. at 42,881.  As a result, in her original expert report, plaintiffs' own regulatory expert, Cheryl Blume, unequivocally stated that a partnership under this theory would not be economically viable after June 2010.  Blume Rpt. (Aug. 23, 2013), ¶ 155 (after June 2010, "Teva would not likely pay Ranbaxy to relinquish its 180-day exclusivity, because Teva would have had insufficient assurance of 'de facto' exclusivity to make paying Ranbaxy for relinquishment a sufficiently safe bet").  There is no evidence at all that Teva and Ranbaxy would have entered into such an agreement so that Teva could enter the market prior to June 2010.  Moreover, plaintiffs; sole remaining causation theory is inconsistent with what the plaintiffs' themselves have asserted is their "primary theory": that the parties

"would have settled" (based on a "payment free settlement") for a May 2012 launch date. *See* Feb. 28, 2014 Pls.' Mot. for Recons. (ECF No. 871) at 3.

Cognizant of the problem that the Hatch-Waxman regulatory framework combined with plaintiffs' own prior admissions on this issue renders it impossible for plaintiffs to prove causation under the sole surviving scenario posited by the Court, on September 15, 2014, plaintiffs served two new expert reports on causation issues from Cheryl Blume and James Morrison. As set forth in defendants' forthcoming motions to strike regarding these new reports, plaintiffs once again layer speculation on top of speculation in an effort to conjure up new causation scenarios but their "regulatory experts": (a) do not have the requisite experience on which to base their opinions, and (b) impermissibly offer opinions which depend on scenarios that have been foreclosed as matter of law by the Court's summary judgment rulings. So that all parties understand what causation scenario (if any) remains for trial, defendants respectfully request the opportunity to address these causation issues with the Court at the final pretrial conference.

## D. Impact of Summary Judgment Rulings

### 1. Plaintiffs' Statement

The plaintiffs have sent, or will send later today, a revised summary of the evidence (attached as Exhibit A), exhibit list, deposition designations, contested issues of fact (*see* supra) and list of witnesses to the defendants. Plaintiffs reserve the right to make minor amendments to these by agreement or for good cause shown.

Plaintiffs also refer to their response to the Teva's and AstraZeneca's Supplemental Trial Management Submission, filed today.

### 2.     Defendants' Statement

Since the Court's summary judgment opinion was issued on September 4, Defendants repeatedly have asked Plaintiffs to provide (1) a revised Summary of Evidence they expect to present at trial; (2) a revised Exhibit List; (3) revised Deposition Designations; (4) revised Contested Issues of Fact; and (5) a revised Witness List so that Defendants can prepare responsive documents, identify disputes to be presented to the Court, and otherwise prepare for trial.  Plaintiffs initially promised to provide these materials on September 15, but as of the time of this filing (over a week later) plaintiffs have yet to do so.  Even now, plaintiffs indicate that they are planning to attach a revised summary of the evidence as Exhibit A to this Memorandum, but are refusing to share that document with defendants in advance of filing.

The Court's summary judgment rulings eliminated the crux of Plaintiffs' case, as a matter of law, and all of the plaintiffs' original generic entry scenarios articulated in their Amended Consolidated Complaint.  Summary Judgment Op. at 153-54.  Yet, plaintiffs have failed to provide any indication that they are prepared to narrow their case to conform to the Court's rulings.  Plaintiffs should be precluded from introducing any documents, lay testimony, expert opinion testimony or argument that are relevant only to theories that this Court has rejected as a matter of law.  For example, this Court rejected as too speculative any theory of causation based on Ranbaxy involuntarily relinquishing its exclusivity prior to May 2014, Summary Judgment Op. at 89-90, but plaintiffs impermissibly seek to call Cheryl Blume and James Morrison to offer expert opinion testimony positing exactly that, per the opinions in their supplemental reports served on September 15, 2014, after the Court's rulings.  This should not be permitted.  Similarly, plaintiffs should not be permitted to continue to introduce evidence of any alleged payments by AstraZeneca to Ranbaxy or DRL, as the Court has now ruled that such payments

could not have caused any delay (and with respect to DRL, there is no evidence of any payment in the first place).

**E.      One Expert per Discipline Rule**

      **1.      Plaintiffs' Statement**

Plaintiffs understand and embrace the Court's rule that there shall be no duplicative expert testimony, and do not seek to offer such testimony.  Defendants, based on their footnote below, apparently are insisting on offering overlapping, duplicative expert testimony.

All parties have retained and offered reports from multiple experts in the same or similar disciplines.  For example, defendants have offered reports and list on their witness list below multiple experts from the same discipline, including multiple economists (including Gregory K. Bell and Richard S. Ruback), multiple patent/chemistry experts (including Stephen G. Davies, Shen Luk, David W.C. MacMillan, and Paul A. Bartlett), multiple regulatory/causation experts (including Nicholas M. Fleischer, Douglas L. Sporn, and Gordon Johnston), and multiple clinicians (including Timothy S. Tracy and Nimish Vakil).  Plaintiffs propose that the parties meet and confer in advance of the final pretrial conference on September 30, 2014 and present the Court with a proposal for non-duplicative expert testimony, listing the issues covered by each expert.  Experts within a given discipline have offered opinions on different, non-overlapping issues and the parties should be able to agree to a schedule of expert testimony.  If the parties cannot agree, the parties will present the dispute to the Court.

As explained in plaintiffs' oppositions to defendants' motions to exclude McCool and McGuire, filed contemporaneously with this memorandum, McCool and McGuire do not offer duplicative testimony

### 2.      Defendants' Statement

The plaintiffs (who now profess to have an agreement sharing all of their experts) have indicated that they intend to call at trial multiple experts from the same discipline on a number of topics, in violation of the Court's one expert per discipline rule.[5]  For example, plaintiffs have indicated that they intend to call both Drs. Blume and Morrison on regulatory issues relating to whether and when Teva would have obtained FDA approval and launched generic Nexium in the but-for-world, Drs. Hartman, Rosenthal and Leffler on market definition, and Drs. Abramson, Kessler and Kesselheim on the irrelevant issue of the clinical advantages of Nexium as compared to Prilosec.  In addition, and as set forth in Teva's and AstraZeneca's motion to exclude Dr. McGuire's proposed testimony (ECF No. 988, 989), even though the Court previously directed the plaintiffs, at the hearing on July 11, 2014, to pick between Drs. McCool and McGuire on the Prilosec damages and "net payment" issues and plaintiffs chose Dr. McCool, plaintiffs' recent supplemental expert reports indicate that they apparently still intend to introduce duplicative expert testimony from Dr. McGuire on certain aspects of these same topics.

Plaintiffs' approach should not be permitted.  Defendants therefore request that the Court: (a) hold the plaintiffs to their prior choice of Dr. McCool over Dr. McGuire on the Prilosec issues and grant Teva's and AstraZeneca's motion (ECF No. 988) to exclude Dr. McGuire's testimony on those topics; and (b) for all other subjects, order plaintiffs to make a final selection of one expert per discipline on each issue in the case, and to disclose that final selection to

---

[5]  Each defendant has retained experts to explain the circumstances relevant to itself.  While this may result in a defendant calling an expert who is within the same discipline as an expert called by another defendant, the overlap of topics is minimal, and in any event each defendant has a due process right to put on its own defense.  Plaintiffs, by contrast, have an agreement regarding the sharing of all trial experts.  In this first phase trial there are no issues (at least none set out in expert reports) specific to any particular plaintiff, and the overlap in topics among the plaintiffs' experts who share a discipline is nearly complete.  Unlike the defendants, plaintiffs have disclosed multiple experts from the same discipline to testify to the same opinions, on the same topics, and on behalf of the same parties.

defendants no later than October 3, 2014.  While defendants are happy to review any proposals made by the plaintiffs in advance of the pretrial conference to eliminate the duplication in their proposed expert testimony, as of the date of this filing, plaintiffs have made no such proposal.

**F.    Federal Rule of Evidence 1006 Summaries**

**1.    Plaintiffs' Statement**

Plaintiffs intend to offer into evidence a series of summaries under Federal Rule of Evidence 1006.  After admission of the documents that are summarized in the Rule 1006 summary, a person would be permitted to read into the record, in an objective and neutral manner, selected portions of the summary.  If otherwise admissible, the summary itself shall also be received into evidence.

**2.    Defendants' Statement**

The proposed summaries that plaintiffs disclosed in the exhibit list they provided back in February (and have declined to update since then, despite the Court's summary judgment rulings) should not be admitted because: (a) many of the proposed summaries offer evidence relevant only to theories of liability that have been foreclosed, as a matter of law, by the Court's summary judgment rulings; and (b) the proposed summaries do not comply with Fed. R. Evid. 1006 in any event.

As to the latter issue, these supposed "summaries" do not portray data that is scattered across voluminous documents.  Rather, they consist of misleading characterizations and excerpts -- not summaries -- of pleadings, regulatory files, and other documents that can conveniently be examined in court, as plaintiffs themselves acknowledge by including on their exhibit list many of the underlying documents that are also included in their purported summaries.  Plaintiffs must

try to prove their case through primary evidence, and may not avoid this burden by instead reading to the jury self-serving "summaries" and characterizations of such primary documents.

## G.     Exhibit Books for Jurors

### 1.     Plaintiffs' Statement

Each side (one for plaintiffs and one for defendants) may provide the jurors with individual notebooks containing key exhibits selected by that party.  Each afternoon after the completion of the trial day, the parties may update the binders with an updated table of contents and additional exhibits.  No party may provide the jurors with more than fifty exhibits for their binders.

### 2.     Defendants' Statement

Defendants object to the proposal that plaintiffs made previously with respect to exhibit books.  Each defendant has separate defenses, so requiring defendants to share one notebook of exhibits would unfairly prejudice the defendants, particularly given the plaintiffs' conspiracy allegations in this case.  Nor would it be desirable for each juror to hold five separate notebooks (one from plaintiffs and one from each defendant) every day.  Accordingly, defendants request that exhibits be published to the jury in accordance with this Court's normal practices and procedures.

## H.     Note Taking by Jurors

### 1.     Plaintiffs' Statement

Jurors will be permitted to take notes in notebooks that the Court will provide. The jurors will be given a preliminary instruction about note taking.  During recesses, jurors will be required to leave their notebooks in the courtroom on their seats.  At the end of each day, the notebooks will be collected by the clerk, and they will be placed back on the jurors' seats at the commencement of the trial on the following day.  At the end of the trial, the jurors will be

permitted to take their notebooks to the jury room for use during deliberations. At the end of deliberations, any notes taken by jurors will be destroyed.

### 2. Defendants' Statement

Defendants expect that the Court will adhere to its usual practice with respect to juror note-taking.

## I. Juror Questions

### 1. Plaintiffs' Statement

After all counsel have completed their examinations of a witness, jurors will be permitted to submit questions to the witness pursuant to the following procedure:

(A) During the Court's preliminary instructions, jurors will be told that they will be permitted to submit written questions to the Court after counsel have completed their examination of a witness. The Court's preliminary instructions will also include an admonition to the jury that if they decide to ask a question, they should do so as a neutral judge of the facts and not as a partisan advocate for one side or the other. Moreover, the jurors will be told that the Court may not be able to ask a witness a proposed question for legal reasons and that if that occurs, the jurors must act as if the question was never submitted to the Court, and they cannot speculate about what the answer would have been or why the Court declined to ask it.

(B) When a written question is submitted by a juror, the question will be reviewed by the Court with counsel, who will be given the opportunity to lodge any objections. The Court will either sustain the objection(s) and not submit the question to the witness or overrule the objection(s) and submit the question to the witness through the Court.

### 2. Defendants' Statement

Defendants expect that the Court will adhere to its usual practice with respect to juror

questions.  Defendants request that any time devoted to juror questions should not count against

the clock for either side.

**J.      Proposed Preliminary Instructions**

In addition to the Court's customary preliminary instructions to jurors at the outset of the

case, the parties request that they have the opportunity to submit certain other proposed

preliminary instructions or stipulations of background facts to the Court for consideration.   The

parties will submit proposed preliminary instructions to the Court by October 6, 2014.

**K.      Proposed Final Jury Instructions and Verdict Form**

All parties agree that, given that this is the first case to be tried under *Actavis*, it would be

beneficial to try to finalize the verdict form and final jury instructions, to the full extent possible,

well in advance of closing arguments.  To this end, the parties propose that each party be

required to file its preliminary proposed verdict form and its preliminary proposed final jury

instructions no later than October 6, 2014, and the Court set a preliminary charge conference for

as soon as practicable thereafter in order to allow the parties to be heard regarding the same.

**L.      Proposed Tutorial Background Testimony**

**1.      Plaintiffs' Statement**

Plaintiffs propose that the Court consider a brief background tutorial for the jury on the

regulatory background of generic approvals, generic substitution of prescription drugs, and

patents.  Although the plaintiffs are flexible with respect to format, we believe that it is critical

for the jury to be informed of this background prior to hearing primary evidence.  If not, the

meaning of that primary evidence may not be understood.  Various formats are possible.  One

would be that the plaintiffs call experts to provide non-opinion, basic background information

regarding the Hatch-Waxman Act and its implementing regulations, Hatch-Waxman patent

litigation processes, and generic substitution.  Plaintiffs propose to have each of these witnesses

testify regarding these subjects in an entirely neutral, objective manner without offering any

opinions.  This testimony will be helpful to the jury in gaining an understanding of the basic

statutory and regulatory context within which the important events in the case occurred.

Plaintiffs shall provide a detailed outline of the proposed testimony to the Court and Defendants

two days in advance of trial, ensuring that the information transmitted to the jury is neutral,

objective, and appropriate background evidence only.  Plaintiffs anticipate that the direct

examination of each of these witnesses will require a half hour or less.

### 2.      Defendants' Statement

Defendants object to plaintiffs' proposed expert tutorial at the outset of the case on

several grounds.  First, it is inconsistent with the Court's directive that plaintiffs must first put in

all of their primary evidence, and that no experts will be permitted to testify until that process is

complete.  Second, it is the role of the Court to instruct the jury on the law; no expert testimony

as to what the law provides should be permitted.  Third, plaintiffs' proposal is too vague to

warrant any consideration at this time.  Plaintiffs have not identified the specific "background"

expert testimony they intend to offer, by reference to any expert report or otherwise, or even how

many proposed background "experts" they propose be allowed to testify at the outset.  Further,

under their proposal plaintiffs would not be obligated to make any such disclosure until right

before trial.   Defendants respectfully submit that the plaintiffs are improperly asking this Court

to provide its advance blessing to a proposal that is still in its formative stages.  To the extent the

parties determine, and the Court agrees, that the jury needs guidance on these or any other topics,

that guidance can be provided by appropriate preliminary instructions from the Court.

**M.      Demonstrative Exhibits**

Any demonstrative exhibit (except for those used for cross-examination, those created during testimony of a witness, or those addressed below for use during opening and/or closing statements) shall be exchanged no later than 6:30 p.m. the day before its anticipated use.  The parties shall exchange color copies of demonstrative exhibits, if color is necessary to interpret the exhibit.  Demonstrative exhibits may be exchanged by copies on 8½ by 11 inch paper or electronically; exchange of large boards is not required.  The parties shall meet and confer on any objections by 9:00 p.m. that evening and will present any unresolved issues to the Court the morning of the proposed use of the disputed demonstrative.

Copies of all demonstratives to be used in opening statements shall be exchanged by 5:00 p.m. two days before their intended use.  Copies of all demonstratives to be used in closing arguments shall be exchanged by 5:00 p.m. the day before their intended use.  Objections to demonstratives to be used in opening statements and closing arguments shall be exchanged by 8:30 p.m. the evening of disclosure.  The parties shall meet and confer to resolve any objections to these demonstratives.  Any objection that cannot be resolved shall be raised with the Court before the demonstrative is used in Court.

**N.      Documents Not Previously Disclosed**

The parties reserve their right to supplement their exhibit lists up to and during trial by agreement or for good cause shown.  Any document not identified on an exhibit list may be used at trial solely for purposes of impeachment.  Any deposition or portion thereof not specifically designated may still be used at trial solely for purposes of impeachment.

### O.     Additional Statement Concerning Document Issues

In an effort to avoid introducing duplicate materials to the jury, the parties have agreed to work together to introduce only a single version of a document, even if that document was introduced and stamped with exhibit stickers at multiple depositions.

#### 1.     Plaintiffs' Statement

Certain documents produced in this litigation, especially those containing graphs and figures, were created in color but were produced only in greyscale.  Because color would substantially aid in the jury's understanding of those documents, plaintiffs request that the Court order that any party wishing to introduce such a document may seek from the producing party a color version of that document, and that the producing party be required to produce a color version unless one is not reasonably accessible.

#### 2.     Defendants' Statement

If there were any additional copies of documents that plaintiffs wished to obtain from defendants, they should have sought them during discovery.   It would be unduly burdensome for defendants to be required to start searching for color copies of documents in the middle of trial, with no provision for any advance notice.

### K.     Enlargement of Exhibits

No advance notice of intent to enlarge an admitted exhibit or a portion thereof – with or without highlights – is required.

### L.     Order of Witnesses

Plaintiffs will provide to defendants a list of witnesses whom they in good faith intend to call on direct examination in the order in which they intend to call them and a good-faith estimate of the length of the direct examination of each witness by close of business on October 13, 2014.

Defendants will provide to plaintiffs a list of witnesses whom they in good faith intend to call on direct examination in the order in which they intend to call them by 7:00 p.m. two business days before the defendants begin to put on their case.

The parties have agreed to provide the names of witnesses to be called in their rebuttal case, if any, by 7:00 p.m. two business days prior to calling the witness.

If any party decides to change the order in which it intends to call its witnesses or drop any witness previously listed, that party will notify the opposing party as early as possible, but in no event later than 7:00 p.m. the day before those witnesses are intended to testify.

Nothing in this Section L is intended to revise or otherwise change any applicable rule(s) relating to securing the attendance of witnesses at trial.  Without waiving the right of any party to object to producing any witness, if a party intends to call in its case an employee (or Rule 30(b)(6) designee) of an opposing party, the party desiring to call that employee (or Rule 30(b)(6) designee) shall provide the other party with as much advance notice as practicable, and in no circumstances less than two weeks notice.  The party receiving said notice shall advise the requesting party as soon as practicable whether the witness will be produced for examination by the requesting party.  The party receiving said notice reserves all rights and objections to producing any such witness, and nothing herein should be construed as requiring any party receiving said notice to produce any witness.

**M.     Use of Depositions**

The parties previously exchanged deposition designations in early 2014, prior to the Court's summary judgment rulings.  The parties propose the following go forward:

In light of the Court's summary judgment rulings, plaintiffs shall provide an amended set of deposition designations today, September 23, 2014.  Defendants shall provide their amended

designations and any counter-designations on or before October 6, 2014.  Plaintiffs shall provide their counter-designations on or before October 15, 2014.

The parties have agreed to the following procedure regarding the use of depositions or parts thereof at trial: By 7:00 p.m. three days before any testimony is to be offered by deposition, the offering party must provide the opposing party with its final designation of the testimony it intends to offer, which shall be a subset of the designations previously exchanged, and notify the opposing party of its intent to offer the testimony and any referenced exhibits.  If the offering party, in good faith, makes any changes to its designations after 7:00 p.m. three days before any testimony is to be offered by deposition, it must notify the opposing party as early as possible, but in no event later than 7:00 p.m. the night before the testimony is to be offered.

The opposing party must serve its final counter-designations and objections that it will continue to maintain by 7:00 p.m. one day after receiving the final initial designations, along with an identification of the exhibits it intends to offer as part of its final counter-designations, if any, which shall be a subset of the counter-designations and objections previously exchanged. Objections to counter-designations that continue to be maintained shall be provided by 7:00 p.m. one day later.

All designations, counter-designations, and affirmative responsive designations shall be made in the form of highlighted transcripts as well as in page and line form and shall be delivered to the non-designating party by the appropriate deadline.

The parties will meet and confer on any objections by 8:30 p.m. the evening that counter-designations to affirmative responsive designations are provided and will present any unresolved issues to the Court the morning of the proposed use of the designated testimony and referenced exhibits.

Each party shall be charged only with the time needed to read, or play by videotape, its own designation or counter-designation, and will not be charged with the time necessary to read, or play by videotape, the other party's designations and counter-designations.

The parties shall not designate more testimony than they reasonably expect to use.

The parties' technical staffs will use best efforts to coordinate the preparation of the designated videotaped deposition testimony to be played at trial.

### 1.      Plaintiffs' Position:

Plaintiffs do not agree with the defendants' proposal that objections, instructions not to answer, and instructions not to answer be omitted from deposition excerpte played or read to the jury.

### 2.      Defendants' Position:

The defendants ask that the following be omitted from any deposition excerpts played or read to the jury: (a) objections; (b) instructions not to answer; and (c) any questions that were not answered due to instructions not to answer.


### N.      Witness Sequestration

### 1.      Plaintiffs' Statement

Plaintiffs propose that, with the exception of expert witnesses designated by a party under Fed. R. Civ. P. 26(a)(2), any person designated on either party's list of trial witnesses shall be sequestered from the courtroom, except to testify, and shall not review any trial transcripts until that witness has completed all trial testimony or has been removed from all parties' lists of trial witnesses.

Defendants seek to have their witnesses who have yet to testify be permitted to read transcripts of the ongoing proceeding.  There is no good reason for this, and defendants have offered none.  As the Fifth Circuit has explained:

> The purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion. *Taylor v. United States*, 388 F.2d 786 (9th Cir. 1967); *United States v. Leggett*, 326 F.2d 613 (4th Cir.), *cert. denied*, 377 U.S. 955, 84 S. Ct. 1633, 12 L. Ed. 2d 499 (1964). The opportunity to shape testimony is as great with a witness who reads trial testimony as with one who hears the testimony in open court. The harm may be even more pronounced with a witness who reads trial transcript than with one who hears the testimony in open court, because the former need not rely on his memory of the testimony but can thoroughly review and study the transcript in formulating his own testimony. The court properly held that providing a witness daily copy constitutes a violation of rule 615.

*Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. Fla. 1981).

The parties agree that each party may identify one fact witness who is allowed to be present in the courtroom during all testimony.  The party must identify that witness by 7 p.m. on the night prior to the first time that the witness attends trial.  Each party is allowed to have other party representatives, who are not on any party's list of "will call" or "may call" witnesses, in the courtroom at all times.

## 2.    Defendants' Statement

Defendants object to plaintiffs' proposal as exceeding the scope of Fed. R. Evid. 615, which directs the Court to order the sequestration of witnesses if requested by a party subject to certain limitations, but does not establish any prohibition on witness review of trial transcripts. Defendants therefore request that the Court strike the phrase "shall not review any trial transcripts" from plaintiffs' proposal.   If this broader prohibition were intended, the Rules would have so stated.

**O.     Service of Documents During Trial**

Beginning five calendar days before the start of trial, service of documents, including but not limited to any pleadings and/or bench memoranda, will occur by email or hand delivery no later than 8:30 p.m.  Overly large documents, including but not limited to any pleadings and/or bench memos that cannot be received effectively or efficiently by email will be served by hand delivery no later than 8:30 p.m.  Service shall be made at least on the following three designated representatives for each party.

For Direct Purchaser Class Plaintiffs, the three designated representatives for service are: (1) Donna Evans, Hagens Berman Sobol Shapiro LLP (2) Elena Chan, Garwin Gerstein and Fisher LLP, and (3) Peter Kohn, Faruqi & Faruqi LLP.  Hand deliveries to Direct Purchaser Class Plaintiffs shall be made to Donna Evans, Hagens Berman Sobol Shapiro LLP, 55 Cambridge Parkway, Suite 301, Cambridge MA 02142.  For End-Payor Class Plaintiffs, the three designated representatives for service are: (1) Jayne Goldstein, (2) Anne Fornecker, and (3) and Sharon Robertson.  Hand deliveries to End Payor Class Plaintiffs shall be made to Glen DeValerio, Berman DeValerio, One Liberty Square, Boston, MA 02109, and Anne Fornecker at The Royal Sonesta Cambridge 40 Edwin H Land Blvd Cambridge, MA  02142.  Hand deliveries to Retailer Plaintiffs shall be made to Lauren Ravkind, Monica Rebuck, and Moira Cain-Mannix (at addresses to be provided later).

For Defendant AstraZeneca, the three designated representatives for service are (1) John Schmidtlein (2) Paul Gaffney; and (3) John Joiner, all of Williams and Connolly.  Hand deliveries to Defendant AstraZeneca shall be made to John Schmidtlein, Paul Gaffney and John Joiner at the Boston Harbor Hotel, 70 Rowes Wharf, Boston, MA.    For Defendant Ranbaxy, the three designated representatives for service are: (1) J. Douglas Baldridge of Venable, LLP; (2) Danielle Foley of Venable, LLP and (3) Leslie Su of Minerva Law PC.   Hand deliveries to

Defendant Ranbaxy shall be made to J. Douglas Baldridge and Danielle Foley at the Boston

Harbor Hotel, 70 Rowes Wharf, Boston, MA.  For Defendant Teva, the three designated

representatives for service are (1) Karen Walker of Kirkland & Ellis, (2) Larry Schoen of Mintz

Levin, and (3) Kathryn Einspanier of Kirkland & Ellis.  Hand deliveries to Defendant Teva shall

be made to Larry Schoen and Emily Kanstroom, Mintz Levin, One Financial Center, Boston,

MA 02111 and to Karen Walker, Intercontinental Hotel, 510 Atlantic Avenue, Boston, MA.  For

Defendant Dr. Reddy's, the three designated representatives for service are (1) Kevin McDonald;

(2) Jonathan Berman; and (3) Michael Marcucci, all of Jones Day.   Hand deliveries to

Defendant Dr. Reddy's shall be made to Kevin McDonald and Jonathan Berman at the

Intercontinental Hotel, 510 Atlantic Avenue, Boston, MA and to Michael Marcucci at Jones Day,

100 High St, 21st Floor, Boston, MA.

     The parties have agreed that when documents or exhibits are served in the courtroom (or

at the courthouse), two full copies of the documents will be served on the designated

representatives for service identified above.

     The parties have agreed that beginning five calendar days before the start of trial, the

term "days" as used herein shall refer to calendar, as opposed to business days.  This agreement

ends when the trial is concluded.

**P.**    **Electronic Equipment**

     Each party will be permitted to use electronic equipment for the presentation of evidence

and will be permitted to have one technician in the courtroom to operate such system.  The

parties will split the costs of any shared audio and video equipment used to present such

evidence.  No later than five days before trial, the parties will present to the Court a list of all

audio and video equipment that will be used to present evidence during the trial and the names of

the persons who will be responsible for delivering and setting up the equipment on the equipment set-up date, which will be provided by the Court.

The parties request that the Court grant access to the courtroom on the business day before trial for the purposes of setting up electronic and computer devices.

**Q.     Opening and Closing Statements**

**1.     Plaintiffs' Proposal**

The parties shall be allotted sixty minutes per side for opening statements and ninety minutes per side for closing arguments. This time far exceeds the Court's general practice and is more than sufficient for presentation of each party's case.

**2.     Defendants' Proposal**

Defendants request that the Court allow 2 hours per side for opening statements and 2 hours per side for closing arguments. Defendants further state that the allocations under plaintiffs' proposal are inadequate and would unfairly prejudice the defendants. Under plaintiffs' proposal, if the defendants were to divide the time evenly, each defendant would have only 15 minutes for opening statements and 22 minutes for closing arguments in an extremely complex case in which the plaintiffs' are claiming billions in damages (prior to trebling). This is particularly unfair and one-sided given that: (a) each defendant has separate and unique defenses; and (b) given the plaintiffs' conspiracy allegations, it is imperative that each defendant be given a separate and full opportunity to be heard. No defendant can have any other defendant speak for it, as that could only falsely reinforce plaintiffs' conspiracy allegations in the eyes of the jury. Defendants therefore respectfully request that given the complexities of this case and the enormous amounts in controversy, two hours per side for openings and closings is necessary and appropriate in order to protect all parties' due process rights.

## IX.    LENGTH OF TRIAL

*Description: the probable length of trial and whether jury or nonjury.*

### A.    Plaintiffs' Statement

The parties and the Court have determined that there will be a six-week trial (thirty trial days).  We remain of the opinion that this makes sense.

Trial days are 3.5 hours in length.  The time will be divided equally between the parties, with each party getting 52.5 hours of trial time.

A second trial on antitrust impact and damages will be held later, starting a full month after the first Monday of the month following the completion of the first trial.

### B.    Defendants' Statement

This is a jury trial.  The Court has allotted six weeks (52.5 hours per side) for Phase I of the trial, which will, as currently contemplated, decide all issues other than fact of injury and damages.  Given that there are four defendants and each defendant has separate defenses, the defendants do not believe that the 52.5 hours of trial time the Court has allotted per side will afford each defendant sufficient time to present its case in full and ensure its due process rights. All defendants expressly reserve all rights on this issue.

Teva and AstraZeneca have requested that Phase I be divided into two parts (as discussed above), with the first trial to decide only the issues of whether Teva received a reverse payment, and if so the amount of that payment and whether it was large and unjustified.  A first trial confined to those threshold issues would take no more than two weeks.

## X. WITNESSES WHO WILL TESTIFY AT TRIAL

*Description: a list of the names and addresses of witnesses who will testify at trial and the purpose of the testimony, i.e., whether factual, medical, expert, etc.*

A.      **Plaintiffs' Witness List**

The plaintiffs hereby submit this list of witnesses that they (or one set of them) intend to call or may call to testify at trial.  This list is not a commitment that the plaintiffs will call any particular witness at trial.

The plaintiffs reserve the right to amend and supplement this list; to call all persons identified as witnesses by the defendants; to call additional witnesses to authenticate, or otherwise lay the foundation for admission of, evidence, or for purposes of impeachment or rebuttal; to call any person whose deposition testimony has been designated by any party; and to supplement this list based upon the Court's rulings, including regarding *Daubert* and *in limine* motions, and any issues, exhibits, or witnesses presented by any party. The plaintiffs further reserve the right to supplement this list and identify additional witnesses for any second trial phase.

Plaintiffs have sought confirmation from defendants as to which witnesses defendants will be producing live at trial.  Plaintiffs have separated their witness list into Will Call and May Call lists to reduce the burden, but they have received no response from defendants about whom they will bring to trial.  Plaintiffs respectfully request that the Court order defendants to inform plaintiffs as to which witnesses defendants will produce live at trial.

**Witnesses Plaintiffs Will or May Call at Trial:**

| Witness Name/Address | Party | Category [Fact, Expert, Medical] | Will or May Call |
|---|---|---|---|
| Richard Barker AstraZeneca Pharmaceuticals LP 1800 Concord Pike | AZ | Fact | Will call |

Wilmington, DE 19850

| | | | |
|---|---|---|---|
| Terri Bowman<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | Will call |
| Matt Diggons<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | Will call |
| Timothy Hester<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2401 | AZ | Fact | Will call |
| Linda Palczuk<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | Will call |
| Jeffrey Pott<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | Will call |
| Gary Rowles<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | Will call |
| David Snow, by prior testimony<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | Will call |
| Custodian of Records for:<br>  AstraZeneca AB,<br>  AstraZeneca LP, and<br>  Aktiebolaget Hassle,<br>Absent agreement on authenticity and<br>business record exception<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | Will call |

| | | | |
|---|---|---|---|
| Ahmad Aboelezz<br>Ranbaxy Pharmaceuticals Inc.<br>600 College Road East, Suite 2100<br>Princeton, NJ 08540 | Ranbaxy | Fact | Will call |
| Jay Deshmukh<br>Knobbe, Martens, Olson & Bear, LLP<br>1717 Pennsylvania Avenue N.W., Suite 900<br>Washington, DC 20006 | Ranbaxy | Fact | Will call |
| Venkatachalam Krishnan<br>Ranbaxy Pharmaceuticals Inc.<br>600 College Road East, Suite 2100<br>Princeton, NJ 08540 | Ranbaxy | Fact | Will call |
| P.P. Nath<br>Ranbaxy Pharmaceuticals Inc.<br>600 College Road East, Suite 2100<br>Princeton, NJ 08540 | Ranbaxy | Fact | Will call |
| Usha Sankaran<br>Ranbaxy Pharmaceuticals Inc.<br>600 College Road East, Suite 2100<br>Princeton, NJ 08540 | Ranbaxy | Fact | Will call |
| Robert G. Sheperd or 1006 summary<br>Porzio Bromberg & Newman P.C.<br>29 Thanet Road, Suite 201<br>Princeton, NJ 08540-3661 | Ranbaxy | Fact | Will call |
| Joseph Todisco<br>Amneal Pharmaceuticals LLC<br>400 Crossing Boulevard<br>Bridgewater, NJ 08807 | Ranbaxy | Fact | Will call |
| Custodian of Records for:<br>  Ranbaxy Pharmaceuticals, Inc.,<br>  Ranbaxy Laboratories Limited,<br>Absent agreement on authenticity and<br>business record exception<br>Ranbaxy Pharmaceuticals Inc.<br>600 College Road East, Suite 2100<br>Princeton, NJ 08540 | Ranbaxy | Fact | Will call |
| Patricia Jaworski<br>Alvogen | Teva | Fact | Will call |

10 Bloomfield Avenue
Pine Brook, NJ 07058

| | | | |
|---|---|---|---|
| Stacie Julie<br>Teva Pharmaceuticals<br>1090 Horsham Road<br>North Wales, PA 19454-1505 | Teva | Fact | Will call |
| Michael E. Patunas (Teva) or 1006 summary<br>Lite DePalma Greenberg LLC<br>Two Gateway Center, 12th Floor<br>Newark, NJ 07102 | Teva | Fact | Will call |
| Custodian of Records for:<br>   Teva Pharmaceutical Industries, Ltd.<br>   Teva Pharmaceuticals USA, Inc.<br>Absent agreement on authenticity and<br>business record exception<br>Teva Pharmaceuticals<br>1090 Horsham Road<br>North Wales, PA 19454-1505 | Teva | Fact | Will call |
| Lee Banks, by prior testimony<br> Dr. Reddy's Laboratories, Inc.<br>200 Somerset Corporate Boulevard, Floor 7<br>Bridgewater, NJ 08807 | DRL | Fact | Will call |
| Andrew Miller<br>Budd Larner, PC<br>150 JFK Parkway<br>Short Hills, NJ 07078 | DRL | Fact | Will call |
| Ajay Singh<br>21 Exeter Court<br>Princeton, NJ 08540 | DRL | Fact | Will call |
| Custodian of Records for:<br>   Dr. Reddy's Laboratories, Inc.<br>   Dr. Reddy's Laboratorites, Ltd.<br>Absent agreement on authenticity and<br>business record exception<br>Dr. Reddy's Laboratories, Inc.<br>200 Somerset Corporate Boulevard, Floor 7<br>Bridgewater, NJ 08807 | DRL | Fact | Will call |
| Laurence F. Doud III | Plaintiffs | Fact | Will call |

Rochester Drug Co-Operative, Inc.
Jet View Drive
Rochester, NY  14624

| | | | |
|---|---|---|---|
| Lissette Priegues-Granado<br>Fraternal Order of Police Miami Lodge 20,<br>Insurance Trust Fund<br>400 Northwest 2nd Avenue<br>Miami, FL  33128 | Plaintiffs | Fact | Will call |
| A witness or witnesses to provide<br>foundational testimony for an exhibit or<br>exhibits summarizing voluminous documents<br>pursuant to Fed. R. Evid. 1006 | Plaintiffs | Fact | Will call |
| Cheryl Blume<br>PDG, Inc.<br>13902 North Dale Mabry Highway,<br>Suite 230<br>Tampa, Florida 33618 | Plaintiffs | Expert | Will call |
| David Kessler<br>2715 Steiner Street<br>San Francisco, CA 94123 | Plaintiffs | Expert | Will call |
| Shannon McCool<br>The Fallon Group, LLC<br>1325 Sunset Drive<br>Johnson City, TN 37604 | Plaintiffs | Expert | Will call |
| Thomas McGuire<br>Department of Health Care Policy<br>Harvard Medical School<br>180 Longwood Ave.<br>Boston, MA 02115 | Plaintiffs | Expert | Will call |
| James Morrison<br>5166 Durham Road West<br>Columbia, MD 21044 | Plaintiffs | Expert | Will call |
| Meredith Rosenthal<br>GMA<br>One Memorial Drive, Suite 1410<br>Cambridge, MA 02142 | Plaintiffs | Expert | Will call |
| Bruce Sunstein<br>Sunstein Kann Murphy & Timbers LLP | Plaintiffs | Expert | Will call |

125 Summer Street
Boston, MA 02110-1618

| | | | |
|---|---|---|---|
| Steve Rothwein, unless stipulate to exhibits<br>AstraZeneca Pharmaceuticals LP<br>1800 Concord Pike<br>Wilmington, DE 19850 | AZ | Fact | May call |
| Lisa Jose Fales<br>Venable LLP<br>575 7th Street, N.W.<br>Washington, DC 20004 | Ranbaxy | Fact | May call |
| James Galbraith<br>Kenyon & Kenyon LLP<br>One Broadway<br>New York, NY 10004-1007 | Teva | Fact | May call |
| Jennifer King<br>Teva Pharmaceuticals<br>1090 Horsham Road<br>North Wales, PA 19454-1505 | Teva | Fact | May call |
| Allan H. Pollack<br>Budd Larner, PC<br>150 JFK Parkway<br>Short Hills, NJ 07078 | Teva | Fact | May call |
| Srini Rao<br>Dr. Reddy's Laboratories, Inc.<br>200 Somerset Corporate Boulevard, Floor 7<br>Bridgewater, NJ 08807 | DRL | Fact | May call |
| Jose Alcaine<br>Safeway Inc.<br>5918 Stoneridge Mall Road<br>Pleasanton, CA 94588 | Plaintiffs | Fact | May call |
| Robert Breetz<br>The Kroger Co.<br>1014 Vine Street<br>Cincinnati, OH 45202 | Plaintiffs | Fact | May call |
| Gregory Carlson<br>Giant Eagle, Inc.<br>267 Kappa Drive<br>Pittsburgh, PA 15238 | Plaintiffs | Fact | May call |

| | | | |
|---|---|---|---|
| Gregory Drew<br>Value Drug Company<br>One Golf View Drive<br>Altoona, PA  16601 | Plaintiffs | Fact | May call |
| Margaret Glazier<br>Burlington Drug Company<br>91 Catamount Drive<br>Milton, VT  05468 | Plaintiffs | Fact | May call |
| Laura Schneider James<br>American Sales Company, LLC<br>8301 Professional Place<br>Landover, MD 20785 | Plaintiffs | Fact | May call |
| Scott Johnson<br>Albertson's LLC<br>2501-1 W. Grandview Rd.<br>Phoenix, AZ 85023 | Plaintiffs | Fact | May call |
| Chris McHugh<br>Walgreen Co.<br>1417 Lake Cook Road<br>Deerfield, IL 60015 | Plaintiffs | Fact | May call |
| Owen McMahon<br>Rite Aid Corporation<br>30 Hunter Lane<br>Camp Hill, PA 17011 | Plaintiffs | Fact | May call |
| Leon Nevers<br>HEB Grocery Company<br>646 South Main Avenue<br>San Antonio, TX 78204 | Plaintiffs | Fact | May call |
| Matthew Pike<br>Walgreen Co.<br>Director – Generic Pharmaceutical<br>Purchasing<br>1417 Lake Cook Road<br>Deerfield, IL 60015 | Plaintiffs | Fact | May call |
| Ellen Pickering<br>9006 NW 9th Lane<br>Gainesville, FL  32606 | Plaintiffs | Fact | May call |
| Edward Poon | Plaintiffs | Fact | May call |

New York Hotel Trades Council & Hotel
Assoc. of New York City, Inc. Health Benefits
Fund
37-11 Queens Blvd
Long Island City, NY 11101-172

| | | | |
|---|---|---|---|
| Ernie Richardsen<br>Rite Aid Corporation<br>30 Hunter Lane<br>Camp Hill, PA 17011 | Plaintiffs | Fact | May call |
| Jeffery D. Romano<br>Meijer, Inc.<br>2929 Walker Avenue, NW<br>Grand Rapids, Michigan  49544 | Plaintiffs | Fact | May call |
| Daniel Ryan<br>United Food and Commercial Workers<br>Unions and Employers Midwest Health<br>Benefits Fund<br>1300 Higgins Road<br>Park Ridge, IL  60068 | Plaintiffs | Fact | May call |
| John Abramson<br>39 Spring Street<br>Ipswich, MA 01938 | Plaintiffs | Expert | May call |
| Kevin Burgess<br>ILSB Room 2161<br>Texas A&M University<br>301 Old Main Drive<br>College Station, TX 77843-3473 | Plaintiffs | Expert | May call |
| John Caldwell<br>1 Pheasants Ridge<br>Marlow<br>Buckinghamshire SL7 3QT<br>United Kingdom, 01628 485965 | Plaintiffs | Expert | May call |
| Raymond Hartman<br>Greylock McKinnon Associates<br>One Memorial Drive<br>14th Floor<br>Cambridge, MA 02142 | Plaintiffs | Expert | May call |
| Aaron Kesselheim<br>Division of Pharmacoepidemiology and | Plaintiffs | Expert | May call |

Pharmacoeconomics
1620 Tremont Street, Suite 3030
Boston, MA 02120

| | | | |
|---|---|---|---|
| Keith Leffler<br>14516 Edgewater Lane NE<br>Seattle, WA 98155 | Plaintiffs | Expert | May call |
| Jerrold Meinwald<br>Department of Chemistry & Chemical<br>Biology<br>Baker Laboratory<br>Cornell University<br>Ithaca, NY 14853 | Plaintiffs | Expert | May call |
| Bernhardt Trout<br>Department of Chemical Engineering<br>MIT<br>77 Massachusetts Ave, E19-502B<br>Cambridge, MA 02139 | Plaintiffs | Expert | May call |
| Shashank Upadhye<br>Seyfarth Shaw LLP<br>131 S. Dearborn St.<br>Suite 2400<br>Chicago, Ill. 60603<br>312-460-5301 | Plaintiffs | Expert | May call |

## B.     Defendants' Witness List

Defendants expressly reserve their rights to object to the witnesses listed by the plaintiffs on their proposed witness list.

The list below identifies the witnesses that defendants intend to call or may call to testify in person or by deposition at trial.  This list is preliminary only.  Since the Court's summary judgment opinion was issued on September 4, defendants have repeatedly asked the plaintiffs to provide an updated witness list in light of those rulings narrowing the case; given that plaintiffs' bear the burden of proof, their revised list will of course substantially influence whom defendants call to testify at trial.  However, plaintiffs refused to prove their updated list to

defendants until 3 p.m. today, leaving defendants no time to review it prior to the submission of this Joint Pretrial Memorandum.

The list below is not a commitment that defendants will call any particular witness at trial.  All witnesses may be contacted through counsel.

Defendants reserve the right to call plaintiffs and all persons identified as witnesses by plaintiffs; to call additional witnesses to authenticate, or otherwise lay the foundation for admission of, evidence, or for purposes of impeachment or rebuttal; to call any person whose deposition testimony has been designated by any party; and to supplement this list based upon the Court's rulings, including on summary judgment, *Daubert*, and in limine motions, and any issues, exhibits, or witnesses presented by any party.  Defendants further reserve the right to supplement this list and identify additional witnesses for any second trial phase, if one is necessary.

### 1.    Witnesses Defendants Intend to Call to Testify at Trial

<u>Fact witnesses</u>

1.    Tommy Andersson

2.    Lee Banks

3.    Rich Fante

4.    Timothy C. Hester

5.    Staci Julie

6.    Venkat Krishnan

7.    Magnus Larsson

8.    Per Lindberg

9.    Shen Luk

10.     Linda Palczuk

11.     Jill Pastore

12.     Ajay Singh

13.     Einar Stole

14.     Sverker Von Unge

Expert witnesses

15.     Gregory K. Bell

16.     Stephen G. Davies

17.     Anthony Figg

18.     Nicholas M. Fleischer

19.     Robert S. Frank, Jr.

20.     Lawrence J. Goffney, Jr.

21.     Philip Green

22.     Gordon Johnston

23.     S. Peter Ludwig

24.     Shen Luk

25.     David W.C. MacMillan

26.     Douglas L. Sporn

27.     Donald Ware

**2.      Witnesses Defendants May Call to Testify at Trial**

Fact witnesses

28.     Ahmad Aboelezz

29.     Richard Barker

30.     Jamie Berlanska

31.    Terri Bowman

32.    Maureen Cavanaugh

33.    Jay Deshmukh

34.    Matt Diggons

35.    Richard Egosi

36.    Michael Imbacuan

37.    Jen King

38.    Frans Langkilde

39.    Andrew Miller

40.    P.P. Nath

41.    Amit Patel

42.    Alan Pollack

43.    Jeffrey A. Pott

44.    Gary Rowles

45.    Usha Sankaran

46.    David P. Snow

47.    David Stark

48.    Bjorn Sverius

49.    Joseph Todisco

Expert Witnesses

50.    Paul A. Bartlett

51.    David Feigal

52.    James Hughes

53.     Richard S. Ruback

54.     Timothy S. Tracy

55.     Nimish Vakil

## XI.     LIST OF THE PROPOSED EXHIBITS

*Description: a list of the proposed exhibits (photographs, documents, instruments, and all other objects) in numerical order. Those exhibits to be introduced without objection shall be identified by a single sequence of numbers and those items to which a party reserves the right to object, which will either be (i) of capital letters in the following form: A-Z,AA-AZ, BA-BZ, etc, regardless of which party is offering the exhibit, or (ii) as jointly suggested by the parties and permitted by the court.*

The parties state that they are continuing to work on the exhibit list and to resolve as many objections as possible, and will submit an exhibit list to the Court on or before October 14, 2014.

Dated:  September 23, 2014

Respectfully submitted,

/s/Laurence A. Schoen
Laurence A. Schoen, BBO no. 633002
Adam L. Sisitsky, BBO no. 637532
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKYAND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
LASchoen@mintz.com
ALSisitsky@mintz.com

KIRKLAND & ELLIS LLP
Jay P. Lefkowitz, P.C. (pro hac vice)
601 Lexington Avenue

/s/Kevin D. McDonald
Kevin D. McDonald (pro hac vice)
Jonathan Berman (pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
kdmcdonald@jonesday.com
jberman@jonesday.com

Andrew J. Miller (pro hac vice)
BUDD LARNER, PC
150 JFK Parkway
Short Hills, NJ 07078

New York, NY 10022
Telephone (212) 446-4800
Facsimile: (212) 446-4900
jay.lefkowitz@kirkland.com

Karen N. Walker, P.C. (pro hac vice)
Rebecca A. Koch (pro hac vice)
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
karen.walker@kirkland.com
rebecca.koch@kirkland.com

*Attorneys for Teva Pharmaceuticals USA, Inc.
and Teva Pharmaceutical Industries, LTD*

/s/ J. Douglas Baldridge
J. Douglas Baldridge (*pro hac vice*)
Lisa Jose Fales (*pro hac vice*)
Danielle R. Foley (*pro hac vice*)
Sarah Choi (*pro hac vice*)
VENABLE LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4000
(202) 344-8300 (fax)
jdbalridge@venable.com
ljfales@venable.com
drfoley@venable.com
schoi@venable.com

Leslie F. Su (BBO No. 641833)
MINERVA LAW, P.C.
300 Brickstone Square, Suite 201
Andover, MA 01810
(978) 494-4695
leslie.su@minervalawpc.com

*Counsel for Defendants Ranbaxy
Pharmaceuticals, Inc., Ranbaxy Inc., and
Ranbaxy Laboratories, Ltd.*

Telephone: (973) 379-4800
Facsimile: (973) 379-7734
amiller@buddlarner.com

Brian T. Moriarity, BBO No. 665995
HAMILTON BROOK SMITH &
REYNOLDS
530 Virginia Road
Concord, MA 01742
Telephone: (978) 341-0036
Facsimile: (978) 341-0136
Brian.moriarity@hsbr.com

*Attorneys for Dr. Reddy's Laboratories, Inc.
and Dr. Reddy's Laboratories, Ltd.*

/s/ John E. Schmidtlein
Dane H. Butswinkas (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Paul B. Gaffney (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Ph: 202-434-5000
Fax: 202-434-5029
DButswinkas@wc.com
JSchmidtlein@wc.com
PGaffney@wc.com

Timothy C. Hester (*pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 662-6000 (telephone)
(202) 662-6291 (facsimile)
thester@cov.com

William A. Zucker, Esq., BBO # 541240
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
617.449.6500
617.607.9200 (facsimile)
wzucker@mccarter.com

*Counsel for AstraZeneca LP, AstraZeneca*

*AB, and Aktiebolaget Hässle*

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Donna M. Evans, BBO No. 554613
Kristen Johnson Parker, BBO No. 667261
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel:  (617) 482-3700
Fax:  (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
donnae@hbsslaw.com
kristenjp@hbsslaw.com

*Liaison Counsel and Co-lead Counsel for the Direct Purchaser Class*

David F. Sorensen
Daniel Simons
Ellen Noteware
Caitlin Coslett
Nicholas Urban
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
dsorensen@bm.net
dsimons@bm.net
ccoslett@bm.net
nurban@bm.net

Bruce E. Gerstein
Joseph Opper
Elena Chan
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Tel:  (212) 398-0055
Fax:  (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
echan@garwingerstein.com

egerstein@garwingerstein.com

*Co-lead Counsel for the Direct Purchaser Class*

Glen DeValerio (BBO #122010)
BERMAN DeVALERIO
One Liberty Square
Boston, MA  02109
Tel: (617) 542-8300
Fax: (617) 542-1194 gdevalerio@bermandevalerio.com

Todd A. Seaver (BBO #645874)
BERMAN DeVALERIO
One California Street, Suite 900 San Francisco, CA  94111
Tel:  (415) 433-3200
Fax:  (415) 433-6382
tseaver@bermandevalerio.com

*Liaison Counsel for the End-Payor Class*

Steve D. Shadowen
HILLIARD & SHADOWEN LLC
39 West Main Street
Mechanicsburg, PA 17055
Tel: (855) 344-3298
steve@hilliardshadowenlaw.com

Anne Fornecker
Daniel Gonzales
HILLIARD & SHADOWEN LLC
919 Congress Ave., Suite 1325
Austin, TX 78701
Tel: (512) 851-8990
anne@hilliardshadowenlaw.com
daniel@hilliardshadowenlaw.com

Kenneth A. Wexler
Bethany R. Turke
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com
brt@wexlerwallace.com

jnb@wexlerwallace.com

J. Douglas Richards
George Farah
Sharon K. Robertson
Hiba Hafiz
COHEN MILSTEIN SELLERS & TOLL, PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
drichards@cohenmilstein.com
gfarah@cohenmilstein.com
srobertson@cohenmilstein.com
hhafiz@cohenmilstein.com

Jayne A. Goldstein
POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP
1792 Bell Tower Lane
Suite 203
Weston, FL 33326
Tel: 954-315-3454
Fax: 954-315-3455
jagoldstein@pomlaw.com

*Co-Lead Counsel for the End-Payor Class*

> Richard Alan Arnold
> Scott E. Perwin
> Lauren C. Ravkind
> Anna T. Neill
> KENNY NACHWALTER P.A.
> 1100 Miami Center
> 201 South Biscayne Boulevard
> Miami, FL 33131
> Tel: 305-373-1000
> Fax: 305-372-1861
> sperwin@kennynachwalter.com
> *Counsel for Walgreen Plaintiffs*

> Barry L. Refsin
> HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, P.A.
> One Logan Square, 27th Floor
> Philadelphia, PA. 19103
> Tel: 215-568-6200

brefsin@hangley.com

Monica L. Rebuck
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER P.A.
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Tel.: 717-364-1007
mrebuck@hangley.com

*Counsel for Rite Aid Plaintiffs*

Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Erin Gibson Allen
MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219
Tel.: 412-338-3344
bdm@marcus-shapira.com
cain-mannix@marcus-shapira.com
hill@marcus-shapira.com

*Counsel for Giant Eagle, Inc.*

## CERTIFICATE OF SERVICE

I, Benjamin M. Greenblum, hereby certify that I caused a copy of the foregoing
document to be filed electronically via the Court's electronic filing system on September 23,
2014.  Those attorneys who are registered with the Court's electronic filing system may access
these filings through the Court's system, and notice of these filings will be sent to these parties
by operation of the Court's electronic filing system.

*/s/ Benjamin M. Greenblum*
Benjamin M. Greenblum

# Exhibit A

# Plaintiffs Statement of Evidence

Not Currently Being Filed Due to Confidentiality Review.  Plaintiffs Will Provide the Court with an Unredacted Courtesy Copy.