UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409 <br><br> Civil Action No. 1:12-md-02409-WGY |
| This Document Relates To: <br><br> All Direct Purchaser Actions <br> *Walgreen* (No. 13-cv-10337-WGY) <br> *Giant Eagle* (No. 13-cv-11305-WGY) <br> *Rite Aid* (No. 13-cv-12074-WGY) | |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' OMNIBUS MOTIONS *IN LIMINE* RELATING TO OPENING STATEMENTS AND EVIDENCE**

In light of opening statements next week and perhaps in an overabundance of caution, this omnibus motion is filed on behalf of Direct Purchaser Class Plaintiffs and Plaintiffs in the *Walgreen* (No. 13-cv-10337-WGY), *Giant Eagle* (No. 13-cv-11305-WGY), and *Rite Aid* (No. 13-cv-12074-WGY) actions (collectively, "Direct Purchaser Plaintiffs").

**Motion *in Limine* No. 1: Motion to Exclude Evidence Regarding (a) Whether Direct Purchaser Plaintiffs "Passed On" Any Overcharge and (b) "Lost Profits"**

This Court has already denied Defendants' motion on point.[1]  In perhaps an overabundance of caution, Direct Purchaser Plaintiffs move for an order precluding Defendants[2] from offering evidence or argument that the Direct Purchaser Plaintiffs were not injured to the full extent of the overcharges they can prove, or that any damages award should be reduced or otherwise limited on the grounds that Direct Purchaser Plaintiffs might have "passed on" any

---

[1] *See In re Nexium (Esomeprazole) Antitrust Litig.*, Case No. 12-MD-02409, 2014 WL 4370333, *56-57 (D. Mass. Sept. 4, 2014).

[2] "Defendants" are AstraZeneca LP, AstraZeneca AB and Aktiebolaget Hassle, Ranbaxy Pharmaceuticals, Inc., Ranbaxy Inc. and Ranbaxy Laboratories Ltd., Teva Pharmaceutical Industries, Ltd. and Teva USA, Inc., and Dr. Reddy's Laboratories Ltd. and Dr. Reddy's Laboratories, Inc.

1

overcharges incurred.  The Direct Purchaser Plaintiffs have the right to pursue damages measured as overcharges under Section 4 of the Clayton Act and are entitled to the "full amount" of the overcharge.[3]  Under Section 4 of the Clayton Act, "[c]ourts will not go beyond the fact of th[e] [overcharge] injury to determine whether the victim of the overcharge has partially recouped its loss in some other way."[4]  This Court has previously recognized the kind of improper sideshows that can be created by delving into issues of purchasers' profitability.[5]  The same should hold true at trial, and Defendants should be precluded from any such efforts.[6]

    ***a. Pass-On.***  Evidence that Direct Purchaser Plaintiffs may have recouped Defendants' unlawful overcharges by, among other things, passing on those overcharges to their customers, is legally irrelevant to the amount of damage they suffered.[7]  Evidence to suggest that Direct Purchaser Plaintiffs had the ability to or, in fact, did pass-on or otherwise recoup Defendants' unlawful overcharges is irrelevant to Direct Purchaser Plaintiffs' damages.  Its introduction in any way would serve to confuse the issues and the jury, and invite the jury to disregard the law to the prejudice of the Direct Purchaser Plaintiffs.  The jury, in the second phase of the trial, need only determine whether and to what extent Defendants overcharged Direct Purchaser Plaintiffs, regardless of whether Direct Purchaser Plaintiffs were able to pass-on the overcharges to their customers or otherwise recoup the overcharges.  Hence, courts have proscribed antitrust

---

[3] *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977).

[4] *Hawaii v. Std. Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972).

[5] *Nexium*, 2014 WL 4370333, at *56-57; *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 55 (D. Mass. 2013).

[6] *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425 (3d Cir. 1993) (affirming exclusion of overcharge pass-on information because it is "irrelevant and inadmissible for the purpose of showing that plaintiff did not suffer the full amount of the alleged overcharge").

[7] *Hanover Shoe*, 392 U.S. at 494 (1968) (holding that antitrust defendants are prohibited from raising as a defense that plaintiffs passed-on or otherwise recouped all or some of defendants' overcharges by passing-on those overcharges to their customers).

defendants from "introducing evidence or making argument barred by *Illinois Brick v. Illinois*, 431 U.S. 720 (1977) and its progeny."[8]

**b. Lost Profits.** *Hanover Shoe* and *Illinois Brick* also prohibit what is simply a variation on a "pass on" defense: that Direct Purchaser Plaintiffs somehow benefitted from Defendants' anticompetitive conduct (by, *e.g.*, obtaining increased revenues, or otherwise benefitting from reselling goods at the artificially inflated price).[9] And both this Court and the Third Circuit held these same principles control here, where direct purchasers of a brand drug are seeking overcharges resulting from unlawfully delayed generic competition.[10]

Thus, the Court should preclude Defendants from indirectly raising the pass-on defense by prohibiting Defendants from referring to or attempting to offer evidence regarding the effect of Defendants' overcharges on Direct Purchaser Plaintiffs' businesses or profits. Direct Purchaser Plaintiffs simply do not need to establish that they lost profits in order to establish

---

[8] *Safeway, Inc. v. Abbott Labs.*, No. 4:07-cv-05470-CW (N.D. Cal. Feb. 11, 2011) ("*Safeway* MIL Order"), at 5 (Attached as Ex. A).

[9] *See In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 56 (D. Mass. 2013) ("Moreover, as *Illinois Brick* makes clear, *Hanover Shoe* permits a direct purchaser to recover the full amount of the overcharge, even if he is otherwise benefited[.]") (internal citations and quotes omitted); *In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349, 369 (D. Mass. 2004); *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 884-85 (10th Cir. 1997) (rejecting argument that plaintiff benefitted from alleged violation and therefore lacked injury because "[t]hat reasoning is directly contrary to the Supreme Court's holding in *Hanover Shoe*. *Hanover Shoe* precludes the argument that [plaintiff] did not suffer cognizable antitrust injury merely because it passed overcharges on to its customers or otherwise was shielded from competition by the defendants' anticompetitive behavior"); *Cnty. of Oakland v. City of Detroit*, 866 F.2d 839, 849 (6th Cir. 1989) (*Illinois Brick* "repudiated" earlier Sixth Circuit decision that overcharged direct purchaser suffered no injury because it profited from defendant's challenged conduct).

[10] *See Nexium*, 296 F.R.D. at 56; *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 220-21 (3d Cir. 2012), *judgment vacated sub nom. on other grounds*; *Upsher-Smith Labs., Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013) and *Merck & Co., Inc. v. Louisiana Wholesale Drug Co., Inc.*, 133 S. Ct. 2849 (2013), *reinstatement granted sub nom.*; *In re K-Dur Antitrust Litig.*, No. 10-2077, 2013 WL 5180857 (3d Cir. Sept. 9, 2013). *See also In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349, 369 (D. Mass. 2004) ("Moreover, as Illinois Brick makes clear, Hanover Shoe permits a direct purchaser to recover the 'full amount of the overcharge,' *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 733, 745-46, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), even if he is otherwise benefited, *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 885 (10th Cir. 1997).").

injury.[11]  Like direct evidence of the passing on of Defendants' overcharges, such indirect evidence is irrelevant, would confuse the issues and the jury, and would encourage the jury to find that Direct Purchaser Plaintiffs did not suffer antitrust injury or overcharges because they were still able to earn profits.[12]

Defendants, for example, should be barred from making any argument or adducing any evidence concerning "bypass" effects.  As this Court has recently held, "generic bypass cannot be a defense that precludes the Direct Purchaser Plaintiffs from recovering damages based on overcharge calculations."[13]  The direct purchasers are the only entities that may sue under federal law for overcharge damages.[14]  The wholesaler's customers who do the "bypassing" (typically large retail chain drug stores) are *indirect* purchasers of Nexium, and so lack standing to sue under the Clayton Act themselves.[15]  As this Court held in *Relafen*, bypass effects should *not* be deducted from the direct purchasers' claimed overcharges because otherwise "a substantial portion of the harm attributed to [defendants'] conduct would go completely unredressed" – an outcome contrary to the deterrent purposes of the Clayton Act.[16]  Likewise in *Sklaxin*, the court

---

[11] *Nexium*, 2014 WL 4370333, at *57 ("there is "no requirement that antitrust damages be demonstrated only by 'lost profit' methodologies").

[12] *See* Ex. A, *Safeway* MIL Order at 5.

[13] *Nexium*, 2014 WL 4370333, at *57.

[14] Under *Hanover Shoe* and *Illinois Brick*, "[t]he only entities" permitted to sue under the antitrust laws for overcharging "are the wholesalers themselves, the direct purchasers, even if every cent of the overcharge was promptly and fully passed on to the pharmacies in the form of a higher wholesale price."  *In re Brand Name Prescription Drugs Antitrust Litig*., 123 F.3d 599, 606 (7th Cir. 1997) (Posner, C.J.).

[15] When these companies bring claims under the Clayton Act (as they have done here), they do so as assignees of their suppliers, the wholesalers.  The wholesaler/assignors retain their own claims for all unassigned units.

[16] *Relafen*, 346 F. Supp. 2d at 368-69.  *Cf. Loeb Indus., Inc. v. Sumitomo Corp*., 306 F.3d 469, 483 (7th Cir. 2002) ("the antitrust laws create a system that, to the extent possible, permits recovery in rough proportion to the actual harm a defendant's unlawful conduct causes in the market without complex damage apportionment.  This scheme [. . .] never operates entirely to preclude market recovery for an injury.").  The Supreme Court has repeatedly emphasized that a key purpose of allowing antitrust recovery is to "deter violators and deprive [wrongdoers] of the fruits of their illegal actions[.]"  *Blue Shield of Va. v. McCready*, 457 U.S. 465, 472 (1982); *Illinois Brick*, 431 U.S. at 746 (important to 'deter[] violators and depriv[e] them of the 'fruits of their illegality'")

granted plaintiffs' motion *in limine* to preclude Defendant from offering evidence regarding generic bypass.[17]

By seeking summary judgment on point, Defendants have conceded the Direct Purchaser Plaintiffs' ability to recover for such damages is a matter of law. Defendants lost their motion, and Defendants' evidence should be limited accordingly.

**Motion *in Limine* No. 2: Motion to Exclude Evidence Regarding Any Alleged Failure by Direct Purchaser Plaintiffs' to Mitigate Their Damages**

Direct Purchaser Plaintiffs request that the Court preclude Defendants from offering evidence or arguing that Direct Purchaser Plaintiffs failed to mitigate their damages by not, for example, buying some other generic drug in place of generic Nexium. No other drug is AB-rated to Nexium and no other drug can be automatically substituted by pharmacists when filling prescriptions.[18] In other words, the only drug available to direct purchasers for purchase to fulfill demand resulting from prescriptions for Nexium was Nexium itself.

---

(quoting *Hanover Shoe*, 392 U.S. at 494); *Pfizer Inc. v. Gov't of India*, 434 U.S. 308, 314 (1978) (same); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295-96 (2d Cir. 1979) (each purchase from the monopolist at monopoly price constitutes injury because "[a]n unlawful monopolist must be 'deprived of the fruits' of its wrongful conduct, and one of the forbidden fruits is an excessive price") (internal quotes and citation omitted).

[17] *In re Skelaxin (Metaxalone) Antitrust Litig.*, Case No 1:12-md-2343, 2014 WL 2002887, at *1 (E.D. Tenn. May 15, 2014). The court explained that "contrary to Defendant's argument, *Illinois Brick* suggests just that: the antitrust laws are much more concerned with fully divesting antitrust violators of the benefit of their violation than with any potential windfall to plaintiffs." *Id.* at *6.

[18] *See* Drug Substitution State Statutes: Ala. Code §34-23-8 (2013); Alaska Stat. §08.80.295 (2013); Ariz. Rev. Stat. Ann. §32-1963:01 (2013); Ark. Code Ann. §17-92-503 (2013); Cal. Bus. Prof. Code §4073 (2013); Colo. Rev. Stat. Ann. §12-42.5-122 (2013); Conn. Gen. Stat. Ann. §17b-493 (2013); Del. Code Ann. tit. 24 § 2549 (2013); D.C. Code §48-803.02 (2013); Fla. Stat. Ann. § 465.025 (2013); Ga. Code Ann. § 26-4-81 (2013); Haw. Rev. Stat. Ann. § 328-92 (2013); Idaho Admin. Code §27.01.01.131 (2013); 225 Ill. Comp. Stat. Ann. 85/25 (2013); Ind. Code Ann. §16-42-22-8 (2013); Iowa Code Ann. §155A.32 (2013); Kan. Stat. Ann. §65-1637 (2013); Ky. Rev. Stat. Ann. §217.822 (2013); La. Rev. Stat. Ann. §37:1241 (2013); Me. Rev. Stat. Ann. tit. 32 §13781 (2013); Md. Code Ann., Health Occ. §12-504 (2013); Mass. Gen. Laws Ann. Ch. 112 §12D (2013); Mich. Comp. Laws Ann. §333.17755 (2013); Minn. Stat. Ann. §151.21 (2013); Miss. Code Ann. 73-21-115 (2013); Mo. Ann. Stat. §338.056 (2013); Mont. Code Ann. §37-7-505 (2013); Neb. Rev. Stat §71-5403 (2013); Nev. Rev. Stat. Ann. 639.2583 (2012); N.H. Rev. Stat. Ann. §146-B:2 (2013); N.J. Stat. Ann. §24:6E-7 (2013); N.M. Stat. Ann. §26-3-3 (2013); N.Y. Educ. Law §6816-a (2013); N.C. Gen. Stat. §90-85.28 (2013); N.D. Cent. Code §19-02.1-14.1 (2013); Ohio Rev. Code Ann. §4729.38 (2013); Okla. Stat. tit. 59 §353.13 (2013); Or. Rev. Stat. §689.515 (2013); 35 P.A. Cons. Stat. Ann. §960.3 (2013); R.I. Gen. Laws §5-37-18.1 (2013); S.C. Code Ann. §39-24-30 (2013); S.D. Codified Laws §36-11-46.1

More generally, in cases like this where needed products are sold at supracompetitive prices, plaintiffs generally are not required to mitigate their damages.[19] Such a rule makes both logical and practical sense. Mitigation of damages by an antitrust plaintiff is impossible where, as here, purchasers need to acquire Nexium to supply their customers and have no alternate source of supply for the drug. Defendants' experts recognize that for a "single-source" drug such as Nexium (*i.e.*, a drug for which no AB-rated equivalents are available), once a physician has written a prescription for Nexium, only Nexium can be dispensed to fill the prescription.[20] To supply customer demand for the more than $3 billion in annual Nexium prescriptions, all direct purchasers had to stock the drug given their role as middle-men in the distribution chain, and had to purchase Nexium at whatever price AstraZeneca commanded.[21]

**Motion *in Limine* No. 3: Motion to Bar Reference to Treble Damages, Attorney Fees, and Costs**

Direct Purchaser Plaintiffs request that the Court order Defendants not to refer to or introduce any evidence at trial regarding Direct Purchaser Plaintiffs' ability to recover treble damages or attorneys' fees and costs. Any such evidence is irrelevant, would improperly

---

(2013); Tenn. Code Ann. §53-10-204 (2013); Tex. Occ. Code Ann. §562.008 (2013); Utah Code Ann. §58-17b-605 (2013); Vt. Stat. Ann. tit. 18 §4605 (2013); Va. Code Ann. §54.1 - 3408.03 (2013); Wash. Rev. Code Ann. §69.41.120 (2013); W. Va. Code Ann. §30-5-12b (2013); Wis. Stat. Ann. §450.13 (2013); Wyo. Stat. 33-24-148 (2013).

[19] *See In re Airline Ticket Com'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) ("[i]n a horizontal price-fixing case, . . . mitigation and offset generally do not affect the ultimate measure of damages."); *Westman Comm'n Co. v. Hobart Corp.*, 541 F. Supp. 307, 314-15 (D. Colo. 1982) (refusal-to-deal case; the "argument that [plaintiff] failed to mitigate its damages . . . is ridiculous. This argument implicitly assumes that [defendant] was guilty of a continuing violation of the antitrust laws, yet attempts to place the onus of stopping that violation on [plaintiff] . . .. [A] defendant [cannot] claim immunity from damages caused by its illegal actions because a plaintiff could have stopped them . . .."); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819 CW (N.D. Cal.) (Dec. 16, 2010), Order on Motions In Limine And For Pre-Trial Preparation, Dkt. No. 1206, at *5 (Dec. 16, 2010) ("*SRAM* MIL Order") (Attached as Ex. B) (granting unopposed *in limine* motion on mitigation of damages).

[20] *See* Expert Report of Gregory K. Bell, Ph.D. (Sept. 30, 2013), at ¶¶ 14, 18, 47.

[21] Declaration of Raymond S. Hartman in Support of the Certification of the Class of Direct Purchasers of Nexium (Aug. 23, 2013), at ¶¶ 26-28.

interfere with the jury's fact-finding role, and would unfairly prejudice the Direct Purchaser Plaintiffs.  It is hornbook law that a plaintiff's entitlement to treble damages is inadmissible in a jury trial.[22]  Likewise, the case law has established that just as the treble damages award is an issue outside the province of the jury, so too is the attorneys' fees determination.[23]

**Motion *in Limine* No. 4: Motion to Exclude Any Evidence Regarding Direct Purchaser Plaintiffs' Financial Condition**

Direct Purchaser Plaintiffs move *in limine* for an order precluding Defendants from offering evidence or making reference to named Direct Purchaser Plaintiffs' financial condition or status before the jury.  Direct Purchaser Plaintiffs' financial condition is not relevant to allegations of anticompetitive conduct or to questions of antitrust injury.  Therefore, evidence of the class representatives' financial condition should be excluded at trial.

Direct Purchaser Plaintiffs' financial condition is not relevant to any issue in the case.  According to Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  It follows, then, that any fact that does not make it more or less probable that Defendants engaged in anticompetitive conduct or that Direct Purchaser Plaintiffs sustained injury from Defendants' alleged anticompetitive conduct is

---

[22] *See, e.g., Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991) ("An instruction informing the jury of the trebling provision 'is an invitation to the jury to negate Congress' determination that actual damages should be trebled in order to deter antitrust violations and encourage private enforcement of the antitrust laws.'") (citation omitted); *Insignia Sys., Inc. v. News Am. Mktg. In-Store*, No. 04-4213 (JRT/AJB), 2011 U.S. Dist. LEXIS 10740, at *4 (D. Minn. Feb. 11, 2011); *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 781960, at *3 (N.D. Cal. March 13, 2007) (granting motion *in limine*); Ex. B, *SRAM* MIL Order, at *6.

[23] *See Brooks*, 938 F.2d at 1048 ("[i]n a case where the plaintiff is entitled to compensatory damages, informing the jury of the plaintiff's potential right to receive attorneys' fees might lead the jury to offset the fees by reducing the damage award."); *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45-46 (2d Cir. 1994) (collecting "cornucopia" of case law, and stating: "In that context [of antitrust violations] as well, courts have uniformly concluded that mentioning treble damages and attorneys fees to the jury is improper."); *Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*, 736 F.2d 441, 446 (8th Cir. 1984) (providing that awarding of attorney fees in an antitrust action rests in discretion of the district court); *Insignia Sys.*, 2011 U.S. Dist. LEXIS 10740, at *4.

irrelevant and should be excluded. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Here, testimony or other evidence relating to Direct Purchaser Plaintiffs' financial condition does not tend to make it more or less probable that Defendants violated the Sherman Act or that Direct Purchaser Plaintiffs were injured as a result. Thus, the Court should exclude any reference to Direct Purchaser Plaintiffs' financial condition based on relevance grounds.

Case law supports the exclusion of evidence of Direct Purchaser Plaintiffs' financial condition.[24] Moreover, "Courts have routinely denied access to personal financial records in civil discovery . . ."[25] Direct Purchaser Plaintiffs' financial condition is irrelevant to Plaintiffs' claims, namely, whether Defendants violated the Sherman Act and whether Direct Purchaser Plaintiffs were injured as a result.[26]

Furthermore, evidence of Direct Purchaser Plaintiffs' financial status should be excluded because the probative value, if any, is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."[27]

---

[24] "The general rule is . . . no reference should be made to the wealth or poverty of a party . . .." *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002) (applying Florida law). "Evidence of a party's financial condition is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case." *In re Homestore.com, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 10677, at *7 (C.D. Cal. Jan. 25, 2011) (evidence of named plaintiff's financial condition not admissible).

[25] *Freese v. FDIC*, 837 F. Supp. 22, 24 (D.N.H. 1993), *vacated as moot*, 70 F.3d 1252 (1st Cir. 1994).

[26] *Sanderson v. Winner*, 507 F.2d 477, 479-80 (10th Cir. 1974) ("Ordinarily courts do not inquire into the financial responsibility of litigants."). *See also Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (improper to use party's financial status as a way to create sympathy from a jury); *Slantis v. Capozzi & Assoc., P.C.*, 2010 U.S. Dist. LEXIS 79866, at *12 (M.D. Pa. Aug. 9, 2010) (evidence of plaintiff's financial obligations irrelevant).

[27] Fed. R. Evid. 403; *Homestore.com*, 2011 U.S. Dist. LEXIS 10677, at *7 (evidence of a party's financial condition can be "unduly prejudicial").

Dated:  October 14, 2014

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Donna M. Evans, BBO No. 554613
Kristen A. Johnson, BBO No. 667261
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel:  (617) 482-3700
Fax:  (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
donnae@hbsslaw.com
kristenj@hbsslaw.com

*Liaison Counsel and Co-lead Counsel for the Direct Purchaser Class*

David F. Sorensen
Daniel Simons
Caitlin G. Coslett
Nicholas Urban
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
dsorensen@bm.net
dsimons@bm.net
ccoslett@bm.net

Bruce E. Gerstein
Joseph Opper
Elena Chan
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel:  (212) 398-0055
Fax:  (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
echan@garwingerstein.com
egerstein@garwingerstein.com

*Co-lead Counsel for the Direct Purchaser Class*


Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861

*Counsel for Walgreen Plaintiffs*

Barry L. Refsin
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA. 19103
Tel: 215-568-6200

Monica L. Rebuck
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Tel.: 717-364-1007

*Counsel for Rite Aid Plaintiffs*

Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Erin Gibson Allen
MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219
Tel.: 412-338-3344

*Counsel for Giant Eagle, Inc.*

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: October 15, 2014

                                                         */s/ Thomas M. Sobol*
                                                         Thomas M. Sobol