# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEXIUM (ESOMEPRAZOLE) ANTITRUST LITIGATION | MDL No. 2409 |
| | Civil Action No. 1:12-md-02409-WGY |
| This Document Relates To: | |
| All Actions | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING VARIOUS TOPICS (ECF NO. 1044)

Plaintiffs[1] hereby respond to Defendants' motions *in limine* filed on October 14, 2014. *See* ECF Nos. 1044, 1045.[2] At the October 15, 2014 Charge Conference, the Court indicated a leaning (without ruling) on a number of these issues, but Plaintiffs file this formal opposition to assist the Court in the event that these issues arise during trial.

Defendants' Motion 6, "The Failure of Any Defendants' Witnesses to Appear at Trial," *see* ECF No. 1045 at 6-7, is likely to be particularly important when the Court formulates its final charge. Plaintiffs understand that the Court would like to "see how that all plays out."[3] Eventually, Plaintiffs believe they will be entitled to an adverse inference instruction, if witnesses *within the control* of Defendants fail to appear at trial despite Plaintiffs' best efforts to have them appear, including by subpoenaing certain witnesses.

---

[1] Plaintiffs include the Direct Purchaser Class Plaintiffs, the End-Payor Class Plaintiffs, and Plaintiffs in the *Walgreen* (No. 13-cv-10337-WGY), *Giant Eagle* (No. 13-cv-11305-WGY), *Rite Aid* (No. 13-cv-12074-WGY), and *CVS* (14-cv-11788) actions.

[2] Memorandum of Law in Support of Defendants' Motions *in Limine* to Exclude Evidence Regarding Various Topics, ECF No. 1045, is referred to herein as "Defs' Mem."

[3] *See* Charge Conference Transcript, October 15, 2014 ("Charge Conference Tr."), at 36.

**DEFENDANTS' MOTION 1:  REFERENCE TO THE SETTLEMENT
AGREEMENTS AS "PAY FOR DELAY AGREEMENTS," "DELAY
AGREEMENTS," "REVERSE PAYMENT AGREEMENTS," OR "BRIBES"**

Plaintiffs understand that the Court is "not troubled" with language such as "[p]ay for delay agreements," "[d]elay agreements" or "[r]everse payment agreements."[4]

Defendants' objection to referring to their agreements as "pay for delay agreements," "delay agreements," or "reverse payment agreements" is baseless.  Defendants label these terms "conclusory," but they are accurate descriptions of the conduct Plaintiffs challenge (*i.e.*, payments flowing from AstraZeneca to the Generic Defendants for the purpose of delaying competition).  At trial, Plaintiffs are entitled to describe Defendants' acts in a manner that "summariz[es] the central conduct with which the defendants [are] charged[.]"[5]  Furthermore, because the terms are an accurate description of Defendants' conduct, Defendants cannot complain that these terms are "pejorative."[6]  Any uncomplimentary connotation results from Defendants' acts, not Plaintiffs' phrasing, and these descriptions should be allowed at trial.[7]

Defendants' Motion *In Limine* to exclude reference to the settlement agreements as "Pay for Delay Agreements," "Delay Agreements" and/or "Reverse Payment Agreements" should be denied.

---

[4] *See* Charge Conference Tr., 35.  The Court stated: "I think I get troubled with 'bribes.'  I don't suggest they'd do that."  *Id.*  Plaintiffs do not intend to use "bribes".

[5] *United States v. Felton*, 417 F.3d 97, 103 (1st Cir. 2005).

[6] Moreover, Defendants are wrong that "reverse payment agreements" is simply a term of Plaintiffs' "choosing".  This Court has repeatedly labeled the challenged conduct as "reverse payment agreements" in written opinions (*see, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 55 (D. Mass. 2013)), as did the Supreme Court (*F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223, 2234, 2236 (2013)), and it is used by the FTC as well (*see, e.g.*, Brief for the Petitioner, *Federal Trade Commission v. Watson Pharmaceuticals, Inc.*, 2013 WL 267027 (U.S.) (U.S. 2013)).

[7] *Felton*, 417 F.3d at 103 ("That the term is highly pejorative is true-but this is a function of the acts that the defendants engaged in, not the government's inaccurate description of those acts.") (citation omitted).

### DEFENDANTS' MOTION 2:  REFERENCES TO PLAINTIFFS AS "VICTIMS"; APPEALS TO JURORS' SELF-INTEREST AS CONSUMERS OR TAXPAYERS

Defendants' Motion 2:  The Court indicated that references to Plaintiffs as "victims" are not troubling.[8]  Plaintiffs agree.

Defendants argue that Plaintiffs should be barred from using the term "victim" because it is allegedly inflammatory and implies, in a noncriminal proceeding, that a crime has taken place, serving only to confuse and mislead the jury.[9]  Courts routinely reject this argument, finding jurors are not so easily confused.[10]  Moreover, as one court has observed, the "rich resources of the English language" should be available to litigants arguing their respective positions at trial; "[t]hat is a basic feature of our adversarial system, not an improper incitement to prejudice," and a court should be "disinclined to restrain the discretion of counsel in their choice of words in arguing their clients' cases, absent a showing of egregiously unfair prejudice arising out of that choice of words."[11]

Defendants have made no such showing here.  The single case cited by Defendants on this point—for the proposition that Rule 403 requires the exclusion of evidence that "provokes an emotional response in the jury"—is far afield factually and actually supports Plaintiffs'

---

[8] *See* Charge Conference Tr., 35.

[9] Defs' Mem. at 2-3.

[10] *See, e.g.*, *SjÖstrand v. Ohio State Univ.*, No. 2:11-cv-00462, 2014 U.S. Dist. LEXIS 125163, at *21 (S.D. Ohio Sept. 8, 2014) (holding that use of the term "victim" was unlikely to cause jurors to confuse litigation of the plaintiff's Title VII discrimination claims with a criminal proceeding); *see also Riley v. Ford Motor Co.*, No. 2:09-cv-148, 2011 U.S. Dist. LEXIS 84381, at *5-6 (S.D. Miss. July 29, 2011) (noting that "the term 'victim'—when afforded its plain meaning—does not necessarily imply criminal wrongdoing," that the plaintiffs claimed they were the victims of the defendants' negligence, and that they should be free to present their case in this light); *In re Homestore.com, Inc. Sec. Litig.*, No. CV 01-11115, 2011 U.S. Dist. LEXIS 10677, at *37-38 (C.D. Cal. Jan. 25, 2011) (denying motion and finding the defendant failed to sufficiently show that the use of the term "victim" would be prejudicial under Rule 403).

[11] *McEachron v. Glans*, No. 98-CV-17, 1999 U.S. Dist. LEXIS 21926, at *13-14 (N.D.N.Y Aug. 23, 1999).

position.[12]  Accordingly, there should be no blanket restriction on the use of the word "victim."[13]

Defendants also argue in Motion 2 that Plaintiffs should not be permitted to appeal to jurors' self-interest as either consumers or taxpayers.[14]  The Court has indicated that "[o]bviously appeals to the jurors' self-interest as consumers or taxpayers, that's forbidden."[15]  With respect to the two specific examples of such testimony provided, Defendants have no basis to conclude that Plaintiffs intend to discuss how the jurors themselves will benefit from this litigation, or to comment on how any damages award might be spent or allocated.[16]  Cases that Defendants cite merely bar blatant appeals to the personal pecuniary interests of the individuals on the jury and are therefore inapposite.[17]  Plaintiffs will not do that.

To the extent Defendants seek to bar *any* discussion of consumers in a case involving an End-Payor class that includes consumers, their overbroad motion should be denied out of hand.[18]  Moreover, this case involves the antitrust laws and Hatch-Waxman Act—legislation enacted

---

[12] *See United States v. Burgess*, 576 F.3d 1078, 1098-1101 (10th Cir. 2009) (involving a trial court's *refusal* to block the introduction into evidence of lewd text and sexually suggestive photographs that were introduced to show intent and knowledge in connection with charges of knowingly transporting child pornography in interstate commerce).

[13] Defendants' assertions to the contrary notwithstanding, Defs' Mem. at 2-3, it is of no consequence that impact and damages will be tried in a later phase of trial.  Plaintiffs must be allowed to explain their allegations, and the jury instructions and accompanying verdict form will focus the jury's attention on the relevant evidence and rules of law and the questions that must be answered at the conclusion of the first phase.

[14] Defs' Mem. at 3-4.

[15] *See* Charge Conference Tr., 35.

[16] *See id.*

[17] *See, e.g.*, *United States v. Trutenko*, 490 F.2d 678, 679 (7th Cir. 1973) ("plainly improper" statement was made in closing arguments that jurors *themselves* were paying too much in insurance premiums because insurance companies have to pay out on phony claims like the ones involved in the case); *United States ex rel. Health Dimensions Rehabilitation, Inc. v. Rehabcare Group, Inc.*, No. 4:12CV00848, 2013 U.S. Dist. LEXIS 135498, at *7 (E.D. Mo. Sept. 23, 2013) (permitting plaintiffs to explain how the Medicare program operates and the purpose of the Anti-Kickback Statute, so long as they refrained from specifically appealing to the jurors as taxpayers).  Cases concerning references to how the outcome of a case could affect taxpayers, *see* Defs' Mem. at 3-4, are moreover of little relevance to this litigation involving predominately private payors.

[18] *Lopes v. Viera*, No. 1:06-CV-01243, 2012 U.S. Dist. LEXIS 27990 (E.D. Cal. Mar. 2, 2012) ("Generally, motions *in limine* that seek exclusion of broad and unspecific categories of evidence are disfavored."); *Weiss v. La Suisse, Societe d'Assurances sur la Vie*, 293 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2003) (denying motion to exclude evidence for a "lack[] of specificity[,]" stating "[n]o particular documents or testimony have been identified in this motion").

specifically for the benefit of consumers.[19]  A sweeping ruling barring any mention of consumers would be wholly inappropriate where, as here, the interests of consumers are an integral part of the legislation that is at the heart of this case.[20]  Absent a specific description of the evidence they seek to exclude, Defendants improperly seek to hold the Court to a "tentative forecast" made in a vacuum, untethered from the factual context that will unfold at trial.[21]  Defendants' motion should be denied.

### DEFENDANTS' MOTION 3:  THE FINANCIAL STATUS OF THE PARTIES

As the Court recognized, at trial, "[w]e may necessarily have to get into" the "[f]inancial status of the parties."[22]  Indeed, where a showing is made that evidence of a party's financial status bears on an issue of consequence in a particular case, courts frequently admit such evidence.[23]  Evidence of a party's profits and financial situation can be relevant, for example, to establish both the motivations for its actions and causation.[24]

---

[19] *See Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525, 527 (1st Cir. 1989) ("The Sherman Act's very purpose is to help consumers, in part by bringing about low, nonpredatory prices."); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 378 (D. Mass. 2013) (noting the Hatch-Waxman Act "was passed with the express purpose of expediting the entry of noninfringing generic competitors into pharmaceutical drug markets in order to decrease healthcare costs for consumers").

[20] *Cf. Health Dimensions*, 2013 U.S. Dist. LEXIS 135498, at *7 (E.D. Mo. Sept. 23, 2013) (permitting plaintiffs to explain how the Medicare program operates and the purpose of the Anti-Kickback Statute, even though such explanation involved discussion of taxpayers).

[21] *See United States v. Griffin*, 818 F.2d 97, 104 (1st Cir. 1987) (noting that "[t]he Rule 403 calculus . . . is subject to change when the case unfolds" and "it is too great a handicap to bind a trial judge to a ruling . . . outside a precise factual context").

[22] *See* Charge Conference Tr., 35.

[23] *See, e.g., Illinois Tool Works, Inc. v. MOC Prods. Co.*, No. 09 CV 1887, 2012 U.S. Dist. LEXIS 116471, at *7-9 (S.D. Cal. Aug. 17, 2012) (in a patent infringement case, evidence of a company's size and status as a family-owned business was "relevant to several of the issues to be tried," including whether the company a) had the capacity to know it was infringing, b) willfully infringed, and/or c) was willfully blind to infringement by others); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 U.S. Dist. LEXIS 15093, at *11 n.5 (S.D.N.Y. Sept. 25, 1998) (evidence in corporate filings of "the enormous resources and expertise" available to a litigant was relevant to whether it could claim justifiable reliance on oral statements made to it in the course of a major business transaction).

[24] *See, e.g., Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 840 (S.D.N.Y. 1998) (evidence of a party's financial condition was relevant to establish causation, as it tended to show the party cut costs voluntarily, and not as a result of the another party's conduct); *Hockensmith v. Ford Motor Co.*, No. 1:01-cv-3645, 2003 U.S.

Plaintiffs agree that evidence concerning Plaintiffs' financial status is wholly irrelevant to their claims in this action.[25]  Evidence related to each Defendants' overall financial condition is, however, squarely relevant to Plaintiffs' allegations concerning Defendants' anticompetitive conduct, including, *inter alia*, whether the generic Defendants had the financial resources to come to market with their generic Nexium products; whether Ranbaxy and Teva were motivated to form a partnership to come to market with a generic Nexium product; and whether they could bear the risk of an at-risk launch.  Evidence of Defendants' profits and status within specific markets is relevant not only to whether AstraZeneca has market power,[26] but also to establish, for example, a reasonable royalty rate in connection with AstraZeneca's alleged payment to Teva.[27]

The cases that Defendants cite either turn on evidentiary considerations unrelated to the admissibility of financial information,[28] serve merely as examples of the default rule that a party's financial condition is not intrinsically relevant,[29] or admit that such evidence can be

---

Dist. LEXIS 27528, at *26 (N.D. Ga. Apr. 17, 2003) (evidence of the defendant's profits and profit margin were relevant to the reasonableness of its design decisions and alleged improper motives).

[25] *See supra* n.1.

[26] Resolution of this issue will involve, for example, evidence of AstraZeneca's sales of Nexium (and profit margins thereon), evidence concerning the ways in which the company drove demand for Nexium through various types of financial expenditures, and evidence concerning AstraZeneca's substantial payments to the generic manufacturers.  *See, e.g.*, *In re Nexium Antitrust Litig.*, 968 F. Supp. 2d 367, 389 (D. Mass. 2013) (finding jury could conclude that AstraZeneca exercised market power where plaintiffs alleged, among other things, that "'AstraZeneca . . . sold Nexium at prices well in excess of marginal costs, and substantially in excess of the competitive price, and enjoyed high profit margins'").

[27] *See, e.g.*, Expert Report of Philip Green, dated Sept. 30, 2013 (Defendants' expert report analyzing, among other things, the gross profits that Teva earned from its omeprazole sales, AstraZeneca's net sales of Prilosec, and the legal costs that would have been expended to continue the litigation); Expert Opinion of W. Shannon McCool, dated June 30, 2014 (conducting *Georgia-Pacific* analysis).

[28] *See, e.g.*, *United States v. Varoudakis*, 233 F.3d 113, 121-22 (1st Cir. 2000) (discussing admissibility of evidence of prior bad acts).

[29] *See, e.g.*, *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990) (statements regarding the defendant's wealth were irrelevant to a murder charge); *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983) (statements about the relative wealth of the parties were irrelevant to the issue of a trucking company's vicarious liability for injuries sustained in a car accident); *Fitzpatrick v. Cohen*, No. 10-cv-54, 2011 WL 1256728, at *2 (D. Me. Apr. 4, 2011) ("the Court will not allow testimony on Defendant's job *unless Plaintiff makes a showing*

relevant for certain purposes, but conclude that the specific evidence in question is not.[30]  None involves allegations of anticompetitive conduct.[31]  And none speaks to the situation presented here, where the size, financial status and capabilities, and financial motivations of the various Defendants permeate the negotiations in which they engaged, the resulting deals that form the basis of Plaintiffs' claims, and the actions Defendants would have taken absent those deals.

Evidence related to Defendants' financial condition is directly relevant to numerous important issues in this antitrust litigation.  This evidence is not an "'appeal[ ] to class prejudice.'"[32]  It goes to the heart of Plaintiffs' substantive allegations and will tend to make it more or less probable that Defendants engaged in anticompetitive conduct.  Evidence of Defendants' financial status is therefore admissible under Federal Rules of Evidence 401, 402, and 403.

### DEFENDANTS' MOTION 4:  THE SIZE, LOCATION, OR SPECIALIZATION OF DEFENDANTS' COUNSEL

Plaintiffs construe Defendants' motion as relevant only to evidence about the lawyers trying this antitrust litigation.  For the reason stated in Plaintiffs' Motion *in Limine* B: Motion to Exclude Any Evidence Regarding Past or Present Litigation Involving Plaintiffs or Their Counsel, Plaintiffs do not oppose Defendants' Motion *in Limine* to prohibit evidence about the size, location, or specialization in pharmaceutical antitrust litigation of Defendants' counsel.

---

*as to the particular relevance*" (emphasis added)); *Logan v. Trucks For You, Inc.*, No. 01-cv-7350, 2002 WL 34453503, at *1 (C.D. Cal. May 21, 2002) (evidence of the defendant's net worth was irrelevant where the plaintiff's claim for punitive damages was dismissed).

[30] *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) (although the plaintiff's sophistication was relevant to the reasonableness of his reliance on allegedly misleading statements, correspondence from over a year after the statements were made was not relevant to his level of sophistication at the time).

[31] *Varoudakis*, 233 F.3d 113 (criminal arson charges); *Sizemore*, 921 F.2d 667 (*habeas corpus* petition); *Sam Tanksley Trucking*, 708 F.2d 519 (claims concerning automobile collision); *Fitzpatrick*, 2011 WL 1256728 (claims stemming from motorcycle accident); *Kinsey*, 588 F. Supp. 2d 516 (employment-related claims); *Trucks For You, Inc.*, 2002 WL 34453503 (employment-related claims).

[32] Defs' Mem. at 4.

Plaintiffs believe that all evidence related to both Plaintiffs' and Defendants' counsel's involvement in past reverse payment litigation should not be admitted at trial.

Plaintiffs do, however, oppose the exclusion of evidence that some of the same counsel who negotiated the very reverse payment agreements at issue also represent Defendants in the instant action.  Some of these lawyers will appear as witnesses at trial (either live or through deposition) in an attempt to defend *their own actions and advice*.  Defendants' motion should be denied to the extent that it in any way limits Plaintiffs' ability to present information about Defendants' attorneys who negotiated the underlying agreements and who will appear as fact witnesses at trial (whether live or by deposition).

### DEFENDANTS' MOTION 5:  DEFENDANTS' STATUS AS FOREIGN COMPANIES

Plaintiffs agree with the Court:  "Foreign companies is not going to be emphasized and I'll say everyone's equal before the law."[33]  Some references to Defendants as foreign entities will inevitably occur simply as part of presenting basic facts to the jury, but Plaintiffs have no intention of "emphasizing" the point.  Defendants themselves recognize that evidence in the case will reveal their locations and do not seek to somehow scrub this information from the documents or testimony that will be presented at trial.[34]

The cases that Defendants cite do not support exclusion here.  One stands merely for the general proposition that repeated references to a litigant's foreign status are not permitted where unique circumstances would cause the jury to harbor xenophobic thoughts.[35]  Defendants fail to

---

[33] *See* Charge Conference Tr., 36; *compare* Defs' Mem. at 6 (citing cases involving "repeated references").

[34] *Id.* at 6 (citing *Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525, 2014 U.S. Dist. LEXIS 25356, at *12 (D. Del. Feb. 27, 2014), in which the court allowed relevant evidence to be introduced where it contained foreign addresses).

[35] *United States  v. Gearhart v. Uniden Corp. of Am.*, 781 F.2d 147, 153 (8th Cir. 1986) (court worried that repeated references to the defendant's foreign parent corporations, "foreign goods," and "foreign products" were potentially prejudicial in light of the ongoing United States-Japanese trade imbalance).

provide any basis for suspecting that Plaintiffs will make such repeated, much less improper, references, point to no current events or other specific conditions likely to incite xenophobic thoughts in the minds of jurors, and only vaguely seek exclusion of "references with the potential to provoke a regional bias."[36]

Other cases cited by Defendants stand merely for the proposition that references to a litigant as a foreign company may be precluded *where no relevant purpose is articulated*.[37]  In this litigation, however, there are a number of legitimate reasons why Plaintiffs may reference Defendants' foreign status and/or international presence.  Plaintiffs may do so, for example, in connection with certain infringement arguments concerning whether the generic Defendants manufactured their products outside the United States.[38]  Plaintiffs may also seek to introduce evidence that the generic Defendants have sold generic Nexium in a host of other countries since at least 2010, which tends to make it more probable that those Defendants would have marketed their generic products in the United States sooner but for the challenged agreements.

Given the relevant and proper reasons why Plaintiffs may reference Defendants' status as foreign companies, the Court should not impose the blanket restriction that Defendants request. The Court can rule on any objections Defendants may make at trial, where the statements can be evaluated in the context of the evidence that is being presented.[39]  This is particularly true where

---

[36] Defs' Mem. at 6.

[37] *Personalized User Model*, 2014 U.S. Dist. LEXIS 25356, at *12 (making no mention of any relevant purpose proposed by the party opposing a motion *in limine*); *Boyle v. Mannesmann Demag Corp.*, No. No. 91-3909, 1993 U.S. App. LEXIS 8682, at *8-9 (6th Cir. Apr. 13, 1993) (foreign currency exchange rate information the plaintiff sought to introduce was not relevant to any issue in the case).

[38] *See generally*, Oct. 28, 2013 Rebuttal Expert Rep. of Bernhardt L. Trout, Ph.D. Prepared on Behalf of the Direct Purchaser Class and Indirect Purchaser Class, ¶¶ 242-46.

[39] *See Midwest Oilseeds*, No. 4:00-cv-90695, 2002 U.S. Dist. LEXIS 28698, at *6 (S.D. Ia. Nov. 8, 2002) ("If counsel attempts to improperly inject into the record prejudicial and inappropriate remarks the Court will rule on the objections as made.").  *See also id.* at *6 ("The simple fact is, however, [the defendant's successor] is a French corporation.  [Defendant] may rest assured that the Court will not tolerate any attempt by Plaintiff to unfairly prejudice the jury because of this fact, but the Court sees no need to exclude any mention of the obvious at this stage.").

the Court has already assured the parties that it will properly instruct the jury in this regard.[40]

For all of these reasons, Defendants' motion to somehow exclude all evidence that some Defendants are foreign corporations should be denied.

### DEFENDANTS' MOTION 6:  THE FAILURE OF ANY OF DEFENDANTS' WITNESSES TO APPEAR AT TRIAL

Defendants seek a blanket prohibition against any comment on the failure of key witness to appear at trial.  Plaintiffs understand that the Court has not yet ruled on this motion, and wants to see how this plays out at trial.[41]  Plaintiffs may, however, at the close of Defendants' case, ask the Court to instruct the jury that it may draw an adverse inference from the fact that certain of Defendants' witnesses – under Defendants' control – failed to appear at trial.

Under First Circuit law, a jury may draw an adverse inference from a party's failure to call a witness in certain circumstances including:  (1) where the witness is "'favorably disposed,' because the party would normally be expected to produce such a witness"; (2) "when a party fails to produce a material witness who is peculiarly available to that party"; or (3) "when a party having *exclusive* control over a witness who could provide relevant, noncumulative testimony fails to produce the witness."[42]

Whether such an inference is warranted depends upon the specific facts surrounding a witness's failure to testify.  The identity of the witness, the testimony that the witness would have offered, the reason for the failure to appear at trial, and the connection of the witness to the

---

[40] *See* Charge Conference Tr. 36 ("I will say everyone's equal before the law.").  *See also Midwest Oilseeds*, 2002 U.S. Dist. LEXIS 28698, at *6 ("The Court's instructions will likewise advise the jury that the case will and should be decided based only upon the law and facts and not bias, sympathy or prejudice and that all parties stand alike and equal before the law and this Court.").

[41] *See* Charge Conference Tr., 36.

[42] *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597 (1st Cir. 1989) (quoting *United Sates v. Ariza-Ibarra*, 651 F.2d 2, 16 (1st Cir. 1981)).  *See also Graves v. United States*, 150 U.S. 118, 121 (1893) ("if a party has peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable")

10

opposing party are all relevant factors.  This fact-specific inquiry means that Defendants'

motion, seeking a blanket prohibition against comments on the failure of witnesses to appear,[43] is

both improper and premature.  Defendants have not identified any decision granting such a

blanket prohibition and without considering the specific facts at trial.[44]  As one court explained

in denying such a motion:  "[a]s the trial has not yet begun and the circumstances surrounding

any missing witnesses have not been presented, there is no foundation for ruling on any party's

references to a missing witness."[45]

At an appropriate time, Plaintiffs may request that the jury be given a missing witness

instruction.  Defendants plainly wish to keep key witnesses on important issues away from this

trial.  As this Court has explained, the jurors will be "very interested in why AstraZeneca settled

and indeed why the generics settled the patent litigation and why the payments that were made

were made."[46]  This will be an "essential part of the antitrust case."[47]  Yet Defendants have

fought every one of Plaintiffs' efforts to subpoena the testimony of the key negotiators – the

people whose "testimony would elucidate the transaction." [48]

---

[43] See *St. Cyr v. Flying J Inc.*, No. 3:06-cv-13-J-33TEM, 2007 WL 2850521, at *4 (M.D. Fla. Sept. 27, 2007) (denying motion *in limine* and criticizing Defendant for "fail[ing] to reference a single witness").

[44] Defendants' only case concerning adverse inferences from the failure of a witness to appear at trial concerned an instruction at the conclusion of trial, after the requesting party had shown the jury the witness' videotaped deposition.  See Defs' Mem. at 7 (citing *Latin Am. Music Co. v. Am. Soc'y of Composers Authors & Publishers*, 593 F.3d 95, 102 (1st Cir. 2010)).  The only other case that Defendants cite concerns the use of deposition testimony at trial.  *See id.* (citing *Air Turbine Tech., Inc. v. Atlas Copco* AB, 217 F.R.D. 545, 546-47 (S.D. Fla. 2003)).  Neither case allowed a blanket prohibition against comments on unidentified absent witnesses.

[45] *Gumbs-Heyliger v. CMW and Assocs. Corp.*, C.A. No. 1:12-cv-0078, 2014 WL 5135184, at *2 (D.V.I. Oct. 13, 2014) (denying motion *in limine*); *see also Carlson v. Banks*, No. 05 C 1650, 2007 WL 5711692, at *8 (N.D. Ill. Feb. 2, 2007) (denying motion *in limine* seeking to exclude evidence or comment on failure of witnesses to testify, finding that any such issues will be resolved during trial).

[46] *See* December 11, 2013 Hearing Transcript, at 10.

[47] *Id*.  *See also* September 30, 2014 Hearing Transcript, at 20-21 (encouraging testimony from the witnesses "who know why they settled, why they did what they did").

[48] *See Graves v. United States*, 150 U.S. 118, 121 (1893).

For example, Lisa Jose Fales and Jay R. Deshmukh both helped negotiate the Ranbaxy settlement agreement.  Deshmukh was Ranbaxy's lead negotiator regarding the agreement, and Fales was one of a few

Depending upon which of Defendants' witnesses actually appear at trial, Plaintiffs may ask the Court for a missing witness instruction at the close of the evidence.  But now is not the time to consider this issue and Defendants' motion *in limine* should be denied.

### DEFENDANTS' MOTION 7:  ALLEGATIONS THAT DEFENDANTS ACTED UNETHICALLY OR IMMORALLY

As the Court recognized during the charge conference, Plaintiffs are seeking to prove at trial that Defendants violated the antitrust laws.  Because violating the antitrust laws is neither ethical nor moral, Defendants' motion makes no sense and should be denied.  This issue can be addressed, if need be, in a specific context if it arises.

### DEFENDANTS' MOTION 8:  IRRELEVANT MATTERS CONCERNING THE PHARMACEUTICAL INDUSTRY

Plaintiffs do not intend to present irrelevant evidence at trial.  And of course the Court "will exclude irrelevant matters."[49]  Accordingly, there is no basis for Defendants' motion.

But, this is an antitrust case.  Plaintiffs intend to prove that Defendants' conduct resulted in anticompetitive effects in the form of higher prices.  Defendants cannot prevent Plaintiffs from arguing that Defendants' actions resulted in increased prices paid for Nexium (esomeprazole magnesium), which is the thrust of Plaintiffs' case.

Defendants seek to exclude any references to "matters involving the pharmaceutical industry unrelated to this case."[50]  In particular, they contend that any references to high

---

principal Ranbaxy representatives who negotiated and drafted those agreements.  Neither was deposed, so there is no videotaped deposition to play at trial.  After Defendants refused to voluntarily produce these witnesses, Plaintiffs sought the testimony of those witnesses under Federal Rule of Civil Procedure 43(a).  Defendants moved to quash those subpoenas, and it now appears as though Deshmukh will testify live at trial while it is still not clear whether Fales will appear live.  These changes (and others) to the list of witnesses who will appear live at trial demonstrate that the Court should not reach this issue until it is clear that there is an actual issue ripe for decision.  If any Defendant decides to keep a key witness away from the trial, it should not be immunized from the adverse inferences appropriately flow from such a decision.

[49] Charge Conference Tr., 36.

[50] Defs' Mem. at 9.

pharmaceutical or healthcare costs would "condemn[] Defendants by association" and that "[t]his trial should not be turned into a forum on healthcare costs."[51]  As the Court recognized at the charge conference, such a general challenge to relevance cannot be decided in the abstract before the presentation of evidence.  The issue is particularly unsuited for a pretrial determination here, where Defendants have failed to specify the scope of the evidence sought to be excluded or to articulate any unfair prejudice.

The Court has previously noted that the "particularities of the parties' industry" are relevant in analyzing the lawfulness of a reverse payment.[52]  And, Plaintiffs allege that the purpose of the reverse payment agreements and overall conspiracy in this case was to maintain supracompetitive Nexium prices.  Accordingly, the Court should not make any decisions on relevance of pharmaceutical industry practices or high prices in the industry until the evidence is presented at trial.  Nor should the Court make any determinations about undue prejudice under Rule 403 until it sees the evidence and Defendants actually make a showing as to how that evidence creates a risk of unfair prejudice.

### DEFENDANTS' MOTION 9:  REFERENCES TO "BIG PHARMA" OR SIMILAR TERMS

Plaintiffs are challenging the specific acts of the named Defendants in this case, and are not attacking or challenging the pharmaceutical industry as a whole in some abstract way.

Defendants have asked the Court to exclude terms such as "Big Pharma," "big drug company," or any "similar pejorative description," and further request that Defendants' counsel not be referred to as a "drug company's counsel."[53]  Defendants provide no legal basis for their

---

[51] *Id.*

[52] *See United States v. Joseph*, 530 Fed. Appx. 911, 922 (11th Cir. 2013); *PBM Prods, LLC v. Mead Johnson & Co*., 639 F.3d 111, 124-25 (4th Cir. 2011); *K-B Trucking Co. v. Riss Int'l Corp*., 763 F.2d 1148, 1155-56 (10th Cir. 1985); *Morales v. Vives*, No. Civ. 02-1107, 2006 WL 852068, at *2 (D.P.R. Mar. 28, 2006).

[53] Defs' Mem. at 10.

position that true descriptive terms be excluded from use at trial and cannot establish any genuine prejudice, much less "undue prejudice" as required under Fed. R. Evid. 403. Accordingly, the request should be denied.

Defendants claim that the terms sought to be excluded "would confuse and distract the jury" and "serv[e] no purpose here other than to elicit juror bias against pharmaceutical companies."[54]  The cases that Defendants cite are inapposite.  For instance, in *United States v. Felton*, the First Circuit upheld the district court's decision to allow the use of the term "terrorist" in describing the defendants and their actions in connection with charges of bank robbery, counterfeiting, and the planned construction of explosives.[55]  The court noted that the term "'terrorist' is obviously a provocative term," but that the term "was certainly an accurate lay use of the term. . . . That the term is highly pejorative is true-but this is a function of the acts that the defendants engaged in, not the government's inaccurate description of those acts."[56]

Similarly, Defendants make no showing that the terms sought to be excluded do anything more than accurately describe the Defendants.  While Plaintiffs do not plan to make it the focus of their presentation to the jury, it is true that the Defendants are large pharmaceutical companies and that their lawyers are lawyers for drug companies.  Thus, the terms that Defendants seek to exclude are not pejorative, but simply accurate, innocuous terms.[57]  The term "Big Pharma," in

---

[54] Defs' Mem. at 10-11.

[55] 417 F.3d 97, 103-04 (1st Cir. 2005).

[56] *Id*. at 103.  Additionally, in *United States v. Burgess*, the Tenth Circuit concluded that, despite arguments of unfair prejudice and cumulative evidence under Rules 404(b) and 403, the trial court properly *admitted* several pornographic and sexually suggestive photographs saved on the Defendants' hard drive.  576 F.3d 1078, 1097-98 (10th Cir. 2009).  As that court made clear (in the very same sentence partially quoted by Defendants), "[t]o be inadmissible under [R]ule 403, evidence must do more than damage the Defendant's position at trial."  *Id*. at 1099.

[57] *See United States v. Guzman*, 571 Fed. Appx. 356, 360-61 (6th Cir. 2014) (affirming denial of motion *in limine* seeking to exclude use of the term "pill mill" to describe defendant's business after finding that defendant failed to explain how the "oft-used term" was pejorative).

particular, is common shorthand for the Defendants' industry.[58]  AstraZeneca itself uses this term *on its own website* where it describes itself as "one of the only big pharma still devoting resources to discovering and developing new medicines to cure [lethal superbugs]."[59]

Accordingly, Defendants' request to preclude Plaintiffs from using actual descriptive terms should be denied.

### DEFENDANTS' MOTION 10:  PRIOR UNRELATED LITIGATION AND REGULATORY PROCEEDINGS

During the October 15, 2014 pre-trial hearing, the Court stated that prior unrelated litigation and regulatory proceedings would be excluded from evidence if the Court determined that the evidence in question was, in fact, unrelated.[60]  Plaintiffs agree with the Court that these issues should not be decided in advance of when these issues arise, if at all, at trial.

Plaintiffs note, for example, that they may need to introduce evidence about the FTC's investigation if they present testimony given by Defendants' employees during FTC hearings at trial.  Plaintiffs believe, however, that the jury should be instructed not to consider the FTC's inaction as a sign that the FTC "approved" in any way the challenged agreements.

---

[58] *Cf. In re SFBC Int'l, Inc. Sec. & Derivatives Litig.*, 495 F. Supp. 2d 477, 481 (D.N.J. 2007) (noting article published by Bloomberg News entitled "Big Pharma's Shameful Secret").

[59] *See* AstraZeneca featured on CBS Evening News, Nov. 17, 2010, http://www.astrazeneca.com /Research/news/Article/AstraZeneca-featured-on-CBS-Evening-News.

Defendants' other cases relating to bias against particular industries or corporations are equally off-point. *See City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756-57 (6th Cir. 1980) (noting that the corporate name of the defendant was not "synonymous with a 'corporate giant,' as, for example, IBM or General Motors would be," which meant that the jury would not have been aware of defendant's size but for the references throughout trial by the opposing party); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) (finding counsel's improper comments went well beyond simply noting the corporate status and location of the defendant and were made repeatedly after the court had provided a specific instruction to not make several prejudicial comments); *Honda Motor Co. Ltd. v. Oberg*, 512 U.S. 415, 432 (1994) (discussing potential problems of jury bias and the associated dangers when presented with a defendant's net worth in the context of awarding punitive damages).

[60] Charge Conference Tr., 37.

**DEFENDANTS' MOTION 11:  "CONFIDENTIAL" OR "HIGHLY CONFIDENTIAL" DESIGNATIONS AND OTHER IRRELEVANT LITIGATION STAMPS**

The Court has indicated that it intends to instruct the jury to disregard "confidential" and "highly confidential" designations when it encounters them, and to explain that such designations were only for production purposes during the course of the litigation between the parties.  Specifically, the Court stated that the jury would be told that "confidential" and "highly confidential" designations were "just part of the…business of getting ready for trial."[61]  Plaintiffs agree.

**DEFENDANTS' MOTION 12:  IRRELEVANT DOCUMENTS INVOLVING DISCOVERY OR PRIVILEGE ISSUES**

The Court has stated that "making motions that I would exclude irrelevant matters is not terribly helpful because I will exclude irrelevant matters." [62]

However, the Court has previously expressed its serious concern with Defendants hiding behind the attorney-client privilege and then trying to put into evidence exculpatory testimony or documents on the same subject:

> Now, I cannot emphasize enough, I remain gravely troubled by this assertion of the attorney-client privilege.  I have already said that where justified I'm vindicating the privilege, and that's so, and I will, and I have, but no expert is going to take the stand here and say, 'Here's why the company did what it did.  Here's the business justification.  It's perfectly obvious this is what they did and this is why they did it, because I'm Mr. Economic guru.'  Nobody's going to say that. And the reason is it won't pass *Cumo* [sic] *Tire vs. Carmichael*. This is a factual situation where *the people who actually did it*, in the existential world, *have evidence to give as to what they did*, and I'm hearing from those people first.[63]

---

[61] Charge Conference Tr., 37.

[62] Charge Conference Tr., 37-38.

[63] *See* September 30, 2014 Pretrial Conference Transcript, at 20 (emphasis added).

Defendants' motion should be denied, and this issue should be addressed at trial on a case-by-case basis, as it arises.  Defendants should not be permitted to use the privilege as both a sword and a shield,[64] and the Court should handle privilege issues as they arise in the context of specific testimony.

### DEFENDANTS' MOTION 13:  MEDIA COVERAGE OF DEFENDANTS, ANY OTHER PHARMACEUTICAL COMPANY, OR THE PHARMACEUTICAL INDUSTRY

This motion is facially overbroad and premature.  Defendants ask the Court to "preclude Plaintiffs from introducing any newspaper articles, television newscasts, or other media coverage relating to Defendants, other pharmaceutical companies, or the pharmaceutical industry as a whole."[65]

Absent a specific description of the evidence they seek to exclude, Defendants improperly seek to hold the Court to a "tentative forecast" made in a vacuum, untethered from the factual context that will unfold at trial.[66]

---

[64] *See generally Hoffmann-La Roche, Inc. v. Roxane Labs., Inc.*, No. 09-CV-6335, 2011 U.S. Dist. LEXIS 50404, at *37 (D.N.J. May 11, 2011) ("[f]undamental fairness requires that [plaintiff's witness] not be permitted to offer unchecked testimony on such allegedly privileged issues, while at the same time [plaintiff] fights to keep written communications on the same issues private. To do so would prevent [defendant] from effectively responding to assertions or implications about the substance of privileged communications, and would have the result of presenting only [plaintiff's] side of the story."); *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 161 (D.N.J. 2008) ("Defendant cannot on the one hand implicitly rely on the fruits of this background investigation as evidence that [it] exercised its diligence . . . while at the same time depriving Plaintiffs of access to this information on the basis of privilege. To do so prevents Plaintiffs from effectively challenging [Defendant's] good faith intentions . . . and therefore undercuts the fairness considerations underlying the attorney-client privilege doctrine.").  *See also* Plaintiffs' Opposition to Defendants' Motion *in Limine* to Preclude Argument or Evidence Based Upon Defendants' Invocation of Attorney-Client Privilege (ECF No. 844) and Memorandum in Support of Plaintiffs' Cross-Motion *in Limine* to Preclude Defendants' Selective Introduction of Evidence on Topics for Which They Purport to Invoke the Attorney-Client Privilege or Work Product Protection, ECF No. 918, at 12-17.

[65] *See* Defs' Mem. at 14.

[66] *See generally United States v. Griffin*, 818 F.2d 97, 104 (1st Cir. 1987) (noting that "[t]he Rule 403 calculus . . . is subject to change when the case unfolds" and "it is too great a handicap to bind a trial judge to a ruling . . . outside a precise factual context").

**DEFENDANTS' MOTION 14:  TRIAL PUBLICITY**

During the October 15, 2014 pre-trial hearing, the Court stated that, "I'm not interested in trial publicity.  I don't think I need to make rulings on any of that. Competent counsel would stay away from all of that…with the excisions that I have mentioned."[67]  Plaintiffs agree.

Dated:  October 23, 2014

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO No. 471770
David S. Nalven, BBO No. 547220
Donna M. Evans, BBO No. 554613
Kristen A. Johnson, BBO No. 667261
HAGENS BERMAN SOBOL SHAPIRO
LLP55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel:  (617) 482-3700
Fax:  (617) 482-3003
tom@hbsslaw.com
davidn@hbsslaw.com
donnae@hbsslaw.com
kristenp@hbsslaw.com

*Liaison Counsel and Co-lead Counsel for
the Direct Purchaser Class*

David F. Sorensen
Daniel Simons
Ellen Noteware
Caitlin G. Coslett
Nicholas Urban
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
dsorensen@bm.net
dsimons@bm.net
ccoslett@bm.net

Bruce E. Gerstein
Joseph Opper

---

[67] Charge Conference Tr., 38.

Elena Chan
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel:  (212) 398-0055
Fax:  (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
echan@garwingerstein.com
egerstein@garwingerstein.com

*Co-lead Counsel for the Direct Purchaser Class*

Glen DeValerio (BBO #122010)
BERMAN DeVALERIO
One Liberty Square
Boston, MA  02109
Tel: (617) 542-8300
Fax: (617) 542-1194
gdevalerio@bermandevalerio.com

Todd A. Seaver (BBO #645874)
BERMAN DeVALERIO
One California Street, Suite 900 San Francisco, CA  94111
Tel:  (415) 433-3200
Fax:  (415) 433-6382
tseaver@bermandevalerio.com

*Liaison Counsel for the End-Payor Class*

Steve D. Shadowen
HILLIARD & SHADOWEN LLC
39 West Main Street
Mechanicsburg, PA 17055
Tel: (855) 344-3298
steve@hilliardshadowenlaw.com

Anne Fornecker
Daniel Gonzales
HILLIARD & SHADOWEN LLC
919 Congress Ave., Suite 1325
Austin, TX 78701
Tel: (512) 851-8990
anne@hilliardshadowenlaw.com

daniel@hilliardshadowenlaw.com

Kenneth A. Wexler
Bethany R. Turke
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com
brt@wexlerwallace.com
jnb@wexlerwallace.com

J. Douglas Richards
George Farah
Sharon K. Robertson
Hiba Hafiz
COHEN MILSTEIN SELLERS & TOLL,
PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
drichards@cohenmilstein.com
srobertson@cohenmilstein.com

Jayne A. Goldstein
POMERANTZ LLP
1792 Bell Tower Lane
Suite 203
Weston, FL 33326
Tel: 954-315-3454
Fax: 954-315-3455
jagoldstein@pomlaw.com

*Co-Lead Counsel for the End-Payor Class*

Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Tel: 305-373-1000

Fax: 305-372-1861

*Counsel for Walgreen Plaintiffs*

Barry L. Refsin
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA. 19103
Tel: 215-568-6200

Monica L. Rebuck
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Tel.: 717-364-1007

*Counsel for Rite Aid and CVS*

Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Erin Gibson Allen
MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219
Tel.: 412-338-3344

*Counsel for Giant Eagle, Inc.*

## **CERTIFICATE OF SERVICE**

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated:  October 20, 2014

> **_/s/ Thomas M. Sobol_**
> Thomas M. Sobol