UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

*In re: Nexium (Esomeprazole Magnesium) Antitrust Litigation*

This Document Relates to:

All Actions

MDL No. 2409

Civil Action No. 1:12-md-02409-WGY

### TEVA'S OPPOSITION TO PLAINTIFFS' BENCH MEMORANDUM (ECF NO. 1174) REGARDING TEVA'S [PURPORTED] WAIVER OF ATTORNEY-CLIENT PRIVILEGE AS TO CERTAIN SPREADSHEETS

Citing testimony by Teva's Stacie Julie, plaintiffs' bench memorandum claims that Teva has waived its attorney-client privilege with respect to 163 spreadsheets listed on its privilege log relating to the market entry of generic Nexium. There was no waiver, and the Court should deny plaintiffs' request for production.

### Ms. Julie's Testimony Regarding Second ANDA Filers

To illustrate the economic opportunity a first filer with exclusivity has compared to later filers, Ms. Julie addressed a hypothetical involving, as a starting point, a brand drug with $3 billion in sales and explained the profits a generic company can expect to make under certain assumptions. This testimony was based on Ms. Julie's business knowledge, and plaintiffs did not object to it or claim that it waived any privilege. Seven days later, plaintiffs filed their "bench memorandum" claiming, for the first time, that Ms. Julie's testimony about how one might value the hypothetical launch of a hypothetical product under certain hypothetical assumptions somehow waives Teva's privilege claim with respect to various spreadsheets and forecasts included on its privilege log that were sent to or from attorneys or contain information provided by attorneys concerning various launch scenarios or the effect of litigation and other occurrences on potential launch dates.

1

Even if Ms. Julie's discussion were not explicitly framed as a hypothetical—and it was—her explanation of the business opportunities associated with various launch scenarios and whether an entity is a first filer with exclusivity or a later filer with later entry is not privileged. Indeed, Teva has produced, from custodian Jennifer King, hundreds of forecast documents containing Teva's business forecasts under various launch scenarios.[1] These forecast documents contain business analyses similar to the hypothetical analysis conducted on the stand by Ms. Julie. As the Court noted, Ms. Julie's testimony contained "a lot of business stuff" (Oct. 31, 2014 Tr. Vol. 1 at 70), and that business stuff is not privileged merely because it is uttered from the mouth of a lawyer. In contrast to the produced forecast documents (which plaintiffs never used with Ms. Julie) and Ms. Julie's general testimony about business opportunities for later filers, the spreadsheets plaintiffs now seek to obtain contain information supplied by Teva's attorneys, or were prepared at the request of counsel for the purposes of providing legal advice, or were sent to or from Teva's attorney's for that purpose. Plaintiffs failed to object to Ms. Julie's hypothetical and have apparently constructed this waiver argument in a thinly veiled and untimely attempt to exclude it.

**Ms. Julie's Testimony About Impax Quarterly Sales And Profit Data**

Although their bench memo is not clear what documents they actually seek, plaintiffs also claim that Ms. Julie's testimony about the Impax quarterly reports resulted in a broad privilege waiver, a claim that the Court already rejected. Oct. 31, 2014 Tr. Vol. 1 at 53 ("THE COURT: It's not a broad waiver."). Ms. Julie first testified about the Impax quarterly reports that Teva produced in discovery to AstraZeneca in the *Prilosec* litigation and to plaintiffs here.

---

[1] *See, e.g.,* Exhibits EJR, EKU, EKW, ELG, EQA. Such non-privileged Teva business forecasts of esomeprazole sales—all produced without objection in the case—include projections on the size of the overall generic market based on generic conversion rates and price erosion as well as projections respecting Teva's market share based on entry timing and first-filer status. *See, e.g.*, Teva-ESO-039431.

At no time has Teva asserted privilege over these reports. Yet plaintiffs dedicate three pages of their memorandum to block-quotes of Ms. Julie's testimony about these non-privileged reports. (Pls.' Mem. at 5-7.) In the next sentence, plaintiffs misleadingly quote from four pages later in the trial transcript when Ms. Julie identified documents that Teva's attorneys had used to prepare for "discussions with AstraZeneca regarding settlements on Nexium and Prilosec." (*Id*. at 7 n.9 (quoting Oct. 31, 2014 Tr. Vol. 1 at 54-55).) This issue was on the the table because plaintiffs had introduced and questioned Ms. Julie about Exhibit 76, an email relating to Teva's preparations for its settlement negotiations with AstaZeneca. The email asked that Kai Lyman "have the data handy for the royalty discussion." While being questioned generally about the data Teva had used to prepare for the negotiations, Ms. Julie, in response to a question from the Court, explained that Teva had used a summary Teva's outside counsel had prepared of the sales and profit information contained in the Impax reports:

> Q. And are you aware what data, if any, Teva used to get ready for that call?
> A. I am.
> MR. SOBOL: Objection.
> MS. WALKER: I'm just asking what the data was, your Honor, not the contents.
> THE COURT: Not the substance, but what data, yes. So what did you use, what documents, what analyses, without telling us what it said?
> THE WITNESS: ***We used outside counsel's summary of the royalty reports from Impax*** that we gave them.

Oct. 31, 2014 Tr. Vol. 1 at 54-55 (emphasis added). Per the Court's instruction, Ms. Julie did <u>not</u> reveal the substance of the summary. After the Court clarified that doing so would not result in a broad waiver, Teva then produced to plaintiffs (and showed the Court) a copy of the Impax data summary that Ms. Julie had referenced and the email from Teva's outside counsel at Goodwin Procter transmitting that summary to Teva in August 2009. *Id*. at 53-54, 57-58. The

3

summary and email were ***not*** admitted into evidence or published to the jury because plaintiffs objected and their objection was sustained. *Id.* at 75-76, 79.

There was no waiver, and plaintiffs can claim no prejudice given that they successfully kept out of evidence the Impax data summary that was prepared for use in the royalty discussions. Moreover, plaintiffs have not even identified what other documents they claim should be produced. They have the summary and the transmittal email and the underlying Impax reports that are the basis of the summary. They are entitled to no more.

Teva did not waive or abuse its privilege through the testimony of Staci Julie. Nothing Ms. Julie said revealed any privileged information, and no privileged documents were shown to the jury. Plaintiffs' desperate attempt to obtain Teva's core privileged documents—to which plaintiffs' are clearly not entitled—must be denied.

4

Dated: November 7, 2014                               Respectfully submitted,

 /s/ *Laurence A. Schoen*
Laurence A. Schoen, BBO # 633002
Adam L. Sisitsky, BBO # 637532
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
LASchoen@mintz.com
ALSisitsky@mintz.com

KIRKLAND & ELLIS LLP
Jay P. Lefkowitz, P.C. (*pro hac vice*)
Karen N. Walker, P.C. (*pro hac vice*)
Kevin T. Van Wart (*pro hac vice)*
Jonathan D. Janow (*pro hac vice*)
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C.  20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200
karen.walker@kirkland.com

*Attorneys for Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of November 2014, I filed and served the foregoing via the Court's CM/ECF system, which will serve notification of such filing by email to all counsel of record.

    /s/ Laurence A. Schoen
Laurence A. Schoen