1               UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3                           No. 12-md-02409-WGY

4

5

6   In Re:  NEXIUM (ESOMEPRAZOLE)
    ANTITRUST LITIGATION
7

8

9

10                      * * * * * * * * *

11

12
                   For Jury Trial Before:
13                 Judge William G. Young

14

15
                   United States District Court
16                 District of Massachusetts (Boston)
                   One Courthouse Way
17                 Boston, Massachusetts 02210
                   Monday, October 20, 2014
18

19                      * * * * * * * *

20

21
              REPORTER: RICHARD H. ROMANOW, RPR
22                 Official Court Reporter
                   United States District Court
23       One Courthouse Way, Room 5510, Boston, MA 02210
                   bulldog@richromanow.com
24

25

```
 1                    A P P E A R A N C E S

 2    THOMAS M. SOBOL, ESQ.
         Hagens Berman Sobol Shapiro, LLP
 3       55 Cambridge Parkway, Suite 301
         Cambridge, MA 02142
 4       Email: Tom@hbsslaw.com
      and
 5    STEVE D. SHADOWEN, ESQ.
         Hilliard & Shadowen, LLC
 6       39 West Main Street
         Mechanicsburg, PA 17055
 7       Email: Steve@hilliardshadowenlaw.com
      and
 8    RICHARD ARNOLD, ESQ.
         Kenny Nachwalter, P.A.
 9       201 South Biscayne Boulevard, Suite 1100
         Miami, FL 33131
10       For plaintiffs

11    LAURENCE A. SCHOEN, ESQ.
         Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
12       One Financial Center.
         Boston, MA 02111
13       Email: Laschoen@mintz.com
      and
14    KAREN N. WALKER, ESQ.
      KEVIN VAN WART, ESQ.
15       Kirkland & Ellis, LLP
         655 Fifteenth Street, N.W., Suite 1200
16       Washington, DC 20005
         Email: Kwalker@kirkland.com
17       For Teva defendants

18    JOHN E. SCHMIDTLEIN, ESQ.
      PAUL B. GAFFNEY, ESQ.
19    DANE H. BUTSWINKAS, ESQ.
         Williams & Connolly, LLP
20       725 Twelfth Street, N.W.
         Washington, DC 20005
21       Email: Jschmidtlein@wc.com
         For AstraZenca defendants
22
      JAMES D. BALDRIDGE, ESQ.
23       Venable, LLP
         575 7th Street, N.W.
24       Washington, DC 20004
         Email: Jdbaldridge@venable.com
25       For Ranbaxy defendants
```

1                         I N D E X

2

3       Jury Selection............................ 4

4

5                       E X H I B I T S

6

7                     (None marked.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              P R O C E E D I N G S
 2          (Begins, 9:00 a.m.)
 3          THE COURT:  Good morning.  Let me explain how
 4     we're going to proceed with the jury, because it's
 5     slightly changed.  Because there are so many parties,
 6     when I came to get set with my explanation, we devised,
 7     and you have all seen, a very simple one-page
 8     questionnaire.  If we're going to administer a
 9     questionnaire to the jury, the procedure is going to be
10     different, and here's what it's going to be.
11          As we meet here the questionnaire is now being
12     administered to the jury, at least those jurors not
13     being sent to Judge Zobel who is impaneling a criminal
14     case.  Once that questionnaire is filled out, copies
15     will be made and a copy -- now, if you want to give
16     Ms. Gaudet an e-mail list, she'll scan one and e-mail it
17     to you.  But there'll be one hardcopy for the
18     plaintiffs, one hardcopy for the defendants, and a
19     hardcopy for me.
20          I am going to excuse everyone who uses or has
21     used, during the relevant period, Nexium, and everyone,
22     obviously, who owns stock in any of the entities
23     identified involved in the case.  Other than that I will
24     use my discretion.  And I will give you one half hour to
25     go over the questionnaires and at the end of that half
```

hour Ms. Gaudet will inform me as to which jurors you

jointly agree may be excused.  I will excuse the jurors

you jointly agree may be excused.  Then I'll come out on

the bench and tell you if I would excuse any other

jurors and hear you very briefly with respect to that.

Once we have a pool that survives that procedure,

we'll bring the pool into the courtroom.  I will put

questions to that pool in this wise.  I will take the

full pool, put the questions to them, ask them to raise

their hands.  Various of you who have submitted proposed

questions, I'm not asking all those questions.  To the

extent I don't ask it, your rights are saved.

Then one by one I will bring the jurors up to the

far side of the bench in the random order that they have

been randomized, ask them if they've responded

affirmatively to any of my questions, go over the

questionnaire with them, and make my determination

whether they are indifferent or ought be excused.

When I've made my determination I will either send

them into the jury box or excuse them.  If you differ

with my determination, that's your chance to raise it

before the juror gets out of the courtroom.  I will

consider it, make my determination, and we'll have an

adequate record.

Once I have 12 jurors, then you'll exercise your

1    challenges.  We'll be all over at the sidebar and I will

2    give you -- each side has 6 challenges.  I will excuse

3    those jurors.  The plaintiff exercises first, then

4    defendant, the next round defendant first, then

5    plaintiff.  Let's say 5 are excused.  Then I will call

6    as many as I need to get 5 and we will continue that

7    procedure until the jury is selected.  Then it will be

8    time for a recess.  After that I will give my precharge

9    to the jury and the case will begin.

10           Now, I understand that there has been a partial

11   settlement and I'm grateful for that, but from the

12   Court's point of view it changes nothing.  There are

13   still claims against Dr. Reddy's by plaintiffs, so we

14   will go forward on those claims.  I will sort it out at

15   the appropriate time if I have to.

16           The only other thing --

17           MR. McDONALD:  Your Honor?

18           THE COURT:  Excuse me?

19           MR. McDONALD:  Kevin McDonald for Dr. Reddy's.

20           THE COURT:  Yes.

21           MR. McDONALD:  We have settlements with all of the

22   plaintiffs in this trial for all of the claims.

23           THE COURT:  I guess I'm more gratified than you

24   know to hear that.  And no one challenges that?  I hear

25   no challenge.  You are all excused.  You can -- we'll

```
 1    deal with the -- with my duties with respect to a class
 2    action settlement downstream, but for these purposes
 3    you're excused, and I will alter the verdict slip
 4    accordingly.
 5             MR. McDONALD:  Thank you, your Honor.
 6             THE COURT:  And I thank you very much.  I think
 7    that, on the part of all counsel, shows some very good
 8    lawyering.  Now -- yes?
 9             MR. BUTSWINKAS:  Judge, may I approach?
10             THE COURT:  Approach?
11             MR. BUTSWINKAS:  Yes.
12             THE COURT:  Why is it necessary?  The jury isn't
13    here.
14             MR. BUTSWINKAS:  I have a question with respect to
15    the dismissal of the Section 2 claims that arises in the
16    context of this resolution.  We were looking at the law
17    over the weekend and the law is unclear whether that
18    needs to also be dealt with under Rule 23.  And we just
19    wanted to alert the Court that perhaps those claims may
20    need to be assessed under our rule as well to get
21    appropriate dismissal with prejudice under Rule 15.
22             THE COURT:  Oh, they may downstream, and your
23    comment is very well taken, it's, just that we'll now
24    real-time, I've got jurors down there, and as a matter
25    of judicial administration the cleanest way to proceed
```

1    is to excuse them.  What I said is not a dismissal, I'm

2    simply thanking them for their settlement, which I've

3    said I'm going to have to review.  I will review it.

4    But you are excused now with my thanks.

5         MR. McDONALD:  Thank you, your Honor.

6         THE COURT:  All right.  I have this mound of

7    further filings.  There's only one thing that I can

8    address and I will address it, and then because I have

9    to change the verdict slip, I'm going to recess.

10        This business about what it is said, the Ranbaxy

11   CEO said.  I expressed myself, just having glanced at

12   the motions in limine, and having said, "While I'm not

13   going through these newspaper reports," I expected the

14   plaintiffs would actually be able to prove that in some

15   more acceptable version.  So then I get the next round

16   of briefing and I will tell you, based upon this, if

17   this is the best you can do, the defense's motion in

18   limine with respect to what Ranbaxy's CEO is said to

19   have said, that's allowed.  That's out.  We're trying

20   the case based upon the Federal Rules of Evidence and I

21   am going to follow them.  I'm not making up rules.  And

22   the fact that they've kept the document in their files

23   is not an adoptive admission, I'm not allowing it for

24   that reason, and I -- candidly I don't see how it's a

25   statement in furtherance of any conspiracy anyway,

1     though it's admissible if you could prove it up with

2     respect to Ranbaxy.

3          So let's be very clear.  Their motion in limine,

4     the defense's motion in limine as to those Ranbaxy

5     statements is allowed.  So no mention is to be made of

6     that in the opening.  And it's allowed without prejudice

7     to your proposing a way to prove it downstream.  But

8     we're not backing into it, because I don't think you're

9     close.  And therefore any expert's opinion that's based,

10    in whole or in part, on that statement, I'm not

11    receiving that opinion.  And it's got to be made clear

12    that the expert can render the opinion without, in any

13    reliance, on the basis of that statement by the Ranbaxy

14    CEO.

15         We'll stand in recess.  We'll get you the answers

16    to the questionnaires.  And a half an hour after that

17    we'll hope to commence.  We'll recess.

18         (Recess 9:25 a.m.)

19         (Resumed, 11:05 a.m.)

20    THE COURT:  Thank you very much, counsel.  I have

21    been given the list of jointly-excused and I said I

22    would excuse all those jurors.  While on my own motion,

23    looking at this, I would not have excused them all, I'm

24    sticking of course to what I have said to you.  So all

25    those jurors are excused and we'll make a record of it.

1          There are two additional jurors that I was of the
2     mind to excuse and they are Juror Number 23 and Juror
3     Number 57, both have hardship grounds for excusal and I
4     have thought that those grounds were meritorious.
5          Is there any objection if I exclude Jurors 23 and
6     57?  Yes?
7          MR. BUTSWINKAS:  No objection, your Honor.
8          MR. HILLIARD:  No objection, Judge.
9          THE COURT:  Very well.  And those jurors also are
10     excused.  We're now ready.  I'm going to recess.  But
11     the Clerk will -- and the Jury Commissioner will bring
12     those jurors up to the courtroom.
13          So we're going to need all this space.  Now, the
14     courtroom is a public courtroom, so I can't exclude you,
15     that would be unconstitutional, but I can deny you a
16     seat and I do so.  So you people are all going to have
17     to crowd in the doorway and let those jurors in.
18          Yes, Mr. Sobol?
19          MR. SOBOL:  Thank you, your Honor.
20          Although it wasn't marked on the sheets, I should
21     point out to the Court and to defense counsel that Juror
22     Number 19 appears to be an employee at Ahold, USA, which
23     is a holding company of one of the direct purchaser
24     class representatives.
25          THE COURT:  That's just something you know?

1           MR. SOBOL:  That's just something I know.

2           THE COURT:  Then -- and I much appreciate that.

3    She's not excludable because she is an employee, but I

4    will inquire.  We will recess.

5           (Recess, 11:10 a.m.)

6           (Jury venire present, 11:45 a.m.)

7           THE CLERK:  MDL matter 12-02049, In re Nexium.

8           THE COURT:  Well, good morning, again, ladies and

9    gentlemen.  Now you're called into a particular

10   courtroom for service on a particular case and let me

11   take just a moment and explain to you exactly how we're

12   going to proceed.

13          What's going to happen now is that -- the next

14   thing that will happen is that the Clerk will ask you

15   all to stand up and put you on oath to answer the

16   questions that I put to you now honestly.  And I know

17   you filled out a questionnaire already, but I have some

18   additional questions, not personal questions, but

19   questions designed to see whether it's appropriate that

20   you serve as a juror, in effect a judge of the facts, in

21   this specific case.

22          So as I ask the questions, if you think your

23   answer would be "yes," maybe it's "yes," perhaps it's

24   "yes," could be "yes," you're not sure but perhaps it's

25   "yes," please raise your hand.  Ms. Gaudet, the clerks

1    and I, are watching.  Then after I have asked the

2    questions, we will begin the interviews for service on

3    this particular jury one by one.  And they won't take

4    long, we'll just have you come up to this side of the

5    bench and I will say, "Well, you answered "yes" or

6    there's something on the questionnaire I want to ask

7    about, the lawyers will be here with me, and we will

8    decide whether you are eligible to serve on this

9    particular jury.

10        Now, if you're excused, please don't think there's

11   anything the matter with you.  There's nothing the

12   matter with you.  It's just for one or another

13   appropriate legal reason, um, this is not the case for

14   you.  And you're not going anywhere.  We'll send you

15   back downstairs.  We have other cases, as you know.  We

16   have plenty.

17        So as we interview people, some people will be

18   tentatively chosen and we'll ask you to sit over there

19   in the jury box, and when we fill the jury box up, the

20   lawyers and I will confer and at that time some more

21   people may be excused and then from the ones that are

22   left we'll fill in those remaining seats as we pick the

23   jury.

24        Now if you are excused after a little talky-talk

25   over there with the lawyers, again I don't want you --

1    and I don't want any of the jurors remaining thinking,

2    well, those lawyers don't like him or they don't like

3    her, why not?  That's not it.  What that shows is just

4    how meticulously careful we are in picking the judges

5    for this case because that's what we're doing, we're

6    picking the judges for this important case.

7         So let's start by swearing the venire.

8         THE CLERK:  Members of the potential jurors,

9    please stand, raise your right hand and repeat after me

10   saying your own name after the pronoun "I."

11        (Venire stands and oath is repeated.)

12        THE CLERK:  I do solemnly swear to answer

13   truthfully questions put to me concerning my

14   qualifications to sit as a juror in this case.

15        You can be seated.

16        (Venire is seated.)

17        THE COURT:  Let's start with me telling you just a

18   little bit about this case.  None of the things I'm

19   going to tell you are disputed, but this gives you some

20   framework for the questions that I will now ask you.

21        This case that the Clerk made mention of is a

22   so-called civil case.  That means it's a case among

23   private parties.  It doesn't involve the government, it

24   involves private parties.  And it's the type of case

25   that the lawyers and I call a "patent antitrust case."

1          Now, in this case the plaintiffs are members of

2     several classes.  Well, what does that mean?  It simply

3     means that certain representative parties have brought a

4     lawsuit on behalf of all the other people who are

5     similarly situated.  And so the plaintiff

6     representatives, most of them -- I think all of them,

7     are listed on that questionnaire as various companies,

8     various insurance benefit plans, union benefit plans,

9     and the like.  And the short of it is that these

10    plaintiffs have sued three pharmaceutical manufacturers

11    and what they say is that the antitrust laws were

12    violated and because of that violation the price of

13    Nexium -- that's why we asked, and if you took Nexium,

14    you shouldn't be here, at least in that period, and they

15    say the price of Nexium was too high, and they're suing

16    to get that overcharge, as it were, they're suing to get

17    that back.

18         Now, the pharmaceutical manufacturers, they deny

19    that, they say "That's not so, it's simply not so in any

20    respect," and that of course is what the trial is about.

21    Only jurors can decide that.

22         So the plaintiffs -- and I won't name all the

23    different entities, but the plaintiff classes are

24    wholesalers who bought Nexium from -- it's AstraZeneca,

25    Nexium is one of AstraZeneca's products.  So who bought

1   Nexium from AstraZeneca, the retailers that sold Nexium

2   or provided it to fill the prescriptions for Nexium, and

3   the other entities like the union benefits plans and

4   indeed people who took Nexium who the plaintiffs argue

5   were overcharged.

6        So while I'm not going to introduce them all or

7   any of them, just so you can scope out the courtroom,

8   we'll have the plaintiff lawyers who are here in the

9   courtroom now, we'll have them all stand up.

10        (Lawyers stand up.)

11        THE COURT:  So those are the tables.  And there's

12   some in the back.  We have a number of seats here.

13   Please be seated.  So -- and they will come in and out

14   as the trial goes on.  But that's how the courtroom is

15   laid out, the plaintiffs have those tables.

16        Now here's who they sue, they suit AstraZeneca.

17   Now, it's not disputed here that Nexium is a patented

18   product and the patents are held by AstraZeneca.  So

19   AstraZeneca's one of the parties that sued and we'll

20   have all the AstraZeneca lawyers, wherever they are,

21   stand up.

22        (Lawyers stand up.)

23        THE COURT:  Right, they've got this table here and

24   some of them are out there and they'll be others.  Now,

25   that's AstraZeneca.

1          But the plaintiffs also sue Teva Pharmaceuticals.

2     Now, Teva is a pharmaceutical manufacturer and it has

3     various products, but as respects this case Teva is sued

4     here with respect to a potential generic version of

5     Nexium.  All right?  So we'll have the Teva lawyers

6     stand up here.

7          (Lawyers stand.)

8          THE COURT:  There they are.  Thank you.

9          Now, then there's another, the third

10    pharmaceutical manufacturer, and that's Ranbaxy.  Now

11    Ranbaxy, like Teva, is -- it has pharmaceuticals that it

12    manufactures and sells, but for purposes of this suit

13    it's sued as a potential manufacturer of a generic

14    version of Nexium.  And so Ranbaxy lawyers, wherever

15    they are, they'll stand up, and there's some of them.

16         (Lawyers stand.)

17         THE COURT:  Thank you.

18         So those are the lawyers in the case and that's

19    what the case is about, generally.  I'll be explaining

20    some more things to the jurors we pick.

21         But with all that in mind and your questionnaires

22    in mind, let me ask as my first question whether you're

23    -- each of you individually, whether any of the answers

24    on your questionnaire, as you've now reflected on it,

25    would any of you like to change any of your answers on

1  the questionnaire?  If you would, please raise your

2  hand.

3        All right.  Thank you.

4        Now, before we go any further I should read to you

5  the witnesses who are going to be called in this case

6  and, um, I'm going to ask you, do you know any of these

7  people?  Are you related to any of these people or

8  acquainted with them so far as you know?  And I'm going

9  to start with some people who are employed by

10 AstraZeneca.

11       Now, AstraZeneca, its headquarters, is in 1800

12 Concord Pike, excuse me, in Wilmington, Delaware.  So

13 these are employees of AstraZeneca that we may hear from

14 as witnesses.  And when I go beyond AstraZeneca, I'll

15 tell you.

16       Richard Barker.  Terri Bowman.  Matt Diggons.

17 Linda Palczuk.  Jeffrey Pott.  Gary Rowles.  David Snow.

18       (Pause.)

19       THE COURT:  Well, I may come back to AstraZeneca.

20 But that's it, for the moment, for AstraZeneca

21 employees.

22       Then we're going to hear from a gentleman by the

23 name of Timothy Hester.  Mr. Hester is an attorney with

24 the law firm of Covington & Burling in Washington, D.C.

25       Now I'm going to employees of Ranbaxy.  Ranbaxy's

1    headquarters are at 600 College Road, East in Princeton,

2    New Jersey.  So these people are all employees of

3    Ranbaxy.

4         Ahmad Aboelez, and I'll spell it, A-B-O-E-L-E-Z.

5    J. Deshmukh.  Oh, Mr. Deshmukh, excuse me, he may have

6    something to do with Ranbaxy, but he's actually a lawyer

7    with the law firm of Knobbe, Martens, Olson & Bear in

8    Washington.  But here are Ranbaxy employees.

9         Venkatachalam Krishnan.  P.P. Nath.  Usha

10   Sankaran.

11        Now I'm done with Ranbaxy employees.

12        And here is Robert G. Sheperd, a lawyer with

13   Porzio, Bromberg & Newman in Princeton, New Jersey.

14   Joseph Todisco, an employee of Amneal Pharmaceuticals in

15   Bridgewater, New Jersey.  Patricia Jaworski, an employee

16   of an outfit called Alvogen in Pine Brook, New Jersey.

17        Then here are some Teva employees.  And Teva is

18   located at 1090 Horsham Road in North Wales,

19   Pennsylvania.  Stacie Julie.  Michael E. Patunas.

20        Then we may hear from some employees of a

21   pharmaceutical company that's not a party to the

22   lawsuit, but I should mention it, Dr. Reddy's

23   Laboratories.  Andrew Miller.  While Mr. Miller appears

24   to be a lawyer with a firm called Budd Larner of Short

25   Hills, New Jersey.

1      It looks like Dr. Reddy's Laboratories is located

2   at 200 Somerset Corporate Boulevard in Bridgewater, New

3   Jersey, and its employees are Lee Banks and Ajay Sing.

4      Then various people from various sources.

5   Lawrence F. Doud of Rochester Drug Co-Operative in

6   Rochester, New York.  Lissette Priegues-Granado, who

7   works for the Fraternal Order of Police, Miami Lodge 20,

8   in Miami, Florida.  Cheryl Blume, who works for PDG

9   Incorporated in Tampa, Florida.  David Kessler, who

10   lives in San Francisco.  Shannon McCool, who works for

11   the Fallon Group in Johnson City, Tennessee.  Thomas

12   McGuire, who's with the Department of Health Care Policy

13   at the Harvard Medical School in Boston.

14      James Morrison, who lives in Columbia, Maryland.

15   Meredith Rosenthal, who works for GMA in Cambridge,

16   Massachusetts.  Bruce Sunstein, an attorney with

17   Sunstein, Kann, Murphy & Timbers here in Boston.  Steve

18   Rothwein, he works for AstraZeneca there in Wilmington,

19   Delaware.  Lisa Jose Fales, an attorney with Venable in

20   Washington.  James Galbraith, a lawyer with Kenyon &

21   Kenyon in New York.  Jennifer King, who works for Teva

22   in North Wales, Pennsylvania.

23      Allan Pollack, who works for this firm Budd Larner

24   in Short Hills, New Jersey.  Srini Rao, who works for

25   Dr. Reddy's Laboratories in Bridgewater, New Jersey.

Jose Alcaine, who works for Safeway in Pleasanton,
California.  Robert Breetz who works for the Kroger
Company in Cincinnati, Ohio.  Gregory Carlson, who works
for Giant Eagle, Incorporated in Pittsburgh.  Gregory
Drew, who works for Value Drug in Altoona, Pennsylvania.
Margaret Glazier, who works for the Burlington Drug
Company in Milton, Vermont.  Laura Schneider James, who
works for American Sales Company in Landover, Maryland.

Scott Johnson, who apparently is an attorney for
an outfit called Albertson's in Phoenix, Arizona.  Chris
McHugh, who works for Walgreens located in Deerfield,
Illinois.  Owen McMahon, who works for Rite Aid located
in Camp Hill, Pennsylvania.  Leon Nevers, who works for
HEB Grocery Company in San Antonio, Texas.

Another Walgreen employee, Matthew Pike, from
Deerfield, Illinois.  Ellen Pickering, who lives in
Gainsville, Florida.  Edward Poon, who works for the New
York Hotel Trades Council and Hotel Association of New
York City Health Benefits.  His business address is in
Long Island City, New York.

Ernie Richardsen, who works for Rite Aid in Camp
Hill, Pennsylvania.  Jeffrey D. Romano, who works for
Meijer, Incorporated in Grand Rapids, Michigan.  Daniel
Ryan, who works for The United Food and Commercial
Workers Unions and Employers Midwest Health Benefits

1    Fund in Park Ridge, Illinois.  John Abramson, who lives

2    in Ipswich, Massachusetts.  Kevin Burgess, who is

3    apparently at Texas A & M University, College Station,

4    Texas.

5         John Caldwell, who lives in Buckinghamshire in the

6    United Kingdom.  Raymond Hartman works for Greylock

7    McKinnon Associates in Cambridge.  Aaron Kesselheim who

8    works -- it says here the Division of

9    Pharmacoepidemiology and Pharmacoeconomics in Boston.

10   Keith Leffler lives in Seattle, Washington.

11        Jerold Meinwald is in the Department of Chemistry

12   and Chemical Biology at Cornell, Ithica, New York.

13   Bernhardt Trout is at MIT here in Cambridge.  Shashank

14   Upadhye works for a law firm called Seyfarth Shaw in

15   Chicago.

16        Having read all that, I want to tell you, I'm not

17   at all clear all of these people are going to be called

18   as witnesses, and we've given you the schedule of this

19   trial and I want to assure you it's not going one day

20   longer than that schedule.  In a case like this I can

21   set the schedule.  I've talked it all through with the

22   lawyers.  That's the schedule.

23        But my question is, do any of you know any of

24   those people, think you know, might be acquainted with

25   any of those people?  Anyone?

```
 1            (Silence.)

 2            THE COURT:  All right.

 3            Now, here's the case, okay?  It's a patent

 4    antitrust case brought by these classes of individuals

 5    and companies against AstraZeneca, Teva, and Ranbaxy.

 6    Have you heard anything about this case, have you read,

 7    seen, or heard anything at all about this case?  That's

 8    my first question.  There's been a little bit in the

 9    trade press, but nothing in the mainstream media, and I

10    want to ask you if any of you, from any source, have

11    heard anything at all about this case before coming in

12    here?

13            (Silence.)

14            THE COURT:  Now, I know that earlier this morning

15    we passed out that questionnaire, but let me ask you

16    this.  Has anyone said anything to you about this case,

17    this specific case, before coming up here now this

18    morning, other than my own staff giving you the

19    questionnaire?  That would be more rare, but it happens,

20    and I need to ask.

21            Did anyone ask you anything?

22            (Silence.)

23            THE COURT:  All right.

24            Do any of you stand to gain or lose anything

25    depending upon how this case comes out?  And the
```

1    questionnaire, I tried to go over that.  I mean

2    apparently you're not people who have yourselves taken

3    Nexium, but do you own stock in any of those?  We asked

4    that question.  But now I want to ask it in open court,

5    do you own stock or do you have some sort of

6    indebtedness where the outcome of this case could

7    directly affect an interest of yours?  Anyone?

8         (Silence.)

9         THE COURT:  Well, let me ask you this.

10        Are any of you sensible of any bias or prejudice

11   with respect to the case about to be tried?  When I say

12   are you "sensible of it," I mean are you aware of

13   anything?

14        (Silence.)

15        THE COURT:  Thank you.

16        Let me ask this, and my questions are getting more

17   broad.

18        Do any of you know -- yes, thank you.  Thank you.

19   we'll make note of it.

20        Are any of you -- excuse me.  Do any of you know

21   any reason why you do not stand indifferent in this

22   case?  Now, what I mean by that is naturally we're

23   trying to seat a jury that's just as fair and impartial

24   as humanly we can do it.  That's what these plaintiffs,

25   that's what each of these companies sued, that's their

1    constitutional right.  So I'm trying to find out do you

2    have any feelings about this case, now that you've at

3    least been told a little bit about what it involves?

4         Do you have any feelings about these lawyers,

5    these types of lawyers?  Do you have any feelings about

6    pharmaceutical companies and the -- (People stand.)

7    Thank you.  Thank you.  The prices charged by

8    pharmaceutical companies?  (People stand.)  Thank you.

9    Do you have any feelings about attorneys who represent

10   the pharmaceutical companies?  (People stand.)  All

11   right.

12        How about -- this is a class action, which is the

13   type of action, and the law provides for it, where the

14   claims of many aggregate people are folded into one

15   larger case, and then the rules provide for that, but

16   there's commentary that questions that and raises issues

17   of unfair prejudice or, um, people making money on these

18   claims.  Do you have any feelings about class actions?

19        (Silence.)

20        THE COURT:  Do you have any feelings about our

21   civil justice system that I ought know about going in?

22   Any feelings about our -- that's what this is, this is a

23   civil case between private parties.

24        (Silence.)

25        THE COURT:  Feelings about lawyers in general and

1   how lawyers, um --

2          (Laughter.)

3          THE COURT:  Well, I'll tell you, I always ask that

4   question.

5          (Laughter.)

6          THE COURT:  But what I'm looking for is feelings

7   that I ought know about going in in this case.  I mean

8   most cases are tried with the aid of lawyers.  I'm a

9   lawyer.  And you're welcome to -- so I'll ask.  Any

10  feelings about judges who preside in our civil justice

11  system?  Things I ought to know about going in?

12         (Silence.)

13         THE COURT:  All right.  The last question and

14  we'll get going, at least with the individual

15  questioning.

16         Now, I've asked my questions and you've had a

17  chance to reflect upon them, I've made mention of the

18  time the case is going to try and you can be sure it

19  will be tried within that time, maybe faster, but in

20  answer to any of the questions I've asked now, do you

21  think you're -- other than people who have already

22  raised their hands, do you think your answer would be

23  "yes" or could be "yes"?

24         (Silence.)

25         THE COURT:  Very well.  I find this panel

```
 1    indifferent and we'll proceed.
 2          (Pause.)
 3          THE CLERK:  Calling the jurors, please come
 4    forward and line up right next to me.
 5          (Jurors are lined up.)
 6          THE COURT:  Counsel you're not all going to be
 7    able to come up here, but so the representatives of your
 8    various clients, why don't you come up.
 9          MR. BUTSWINKAS:  Judge, where do you want us?
10          THE COURT:  I want you somewhere where you can
11    hear and be heard and the juror can get here.
12          I forgot to bring your questionnaires out, and of
13    course the whole thing is about that.
14          (To audience.)  So just to fill in the time, just
15    while we have you in order, um, we'll have you come up
16    here individually and I'll -- once I get the answers to
17    the questionnaires.  So a little bit more about the
18    courtroom.
19          You see the lawyers get to sit on this side of the
20    bar.  You hear about lawyers being members of the bar.
21    There actually is a bar.
22          (Hands to judge.)
23          THE COURT:  Okay.  There it is.
24          So they get to sit up here and we have the carpet
25    in deeper blue in honor of our attorneys.
```

1          Now I am ready.

2          And, Mr. Pires, if you would come up here.

3

4          AT THE SIDEBAR

5          THE COURT:  And you're Susan Pires?

6          THE JUROR:  Pires.

7          THE COURT:  Pires.  And, ma'am, I see you were a

8     tech at CVS, but some years ago.

9          THE JUROR:  While I was in school.

10          THE COURT:  Yeah.  Does your former employment

11    with CVS -- yes, CVS is one of the plaintiffs because it

12    is a retailer of Nexium.

13          THE JUROR:  Right.

14          THE COURT:  Are you going to favor CVS or favor

15    the plaintiffs just because you worked at CVS?

16          THE JUROR:  No, it was so long ago.  It's history.

17          THE COURT:  Well, maybe it's history, but on the

18    other hand, are you hostile to them or skeptical?

19          THE JUROR:  No.

20          THE COURT:  Do you truly think you could be fair

21    in this case, fair to all of the outfits suing and fair

22    to the companies that have been sued?

23          THE JUROR:  Yes.

24          THE COURT:  Did you answer "yes" then in any other

25    question I asked?

1          THE JUROR:  Just that one.

2          THE COURT:  Okay.  Thank you.

3          And just so we can get to know you better, would

4     you tell us what you're doing now and if you're married

5     what your spouse does?

6          THE JUROR:  I worked at customer service and sales

7     for a wire company that we sell metal internationally,

8     and I'm single.

9          THE COURT:  Thank you.  Would you take a seat in

10    the jury box that the people will direct you to.

11          (Juror leaves.)

12          THE COURT:  All right.  Emily Murphy.

13          Hi, Ms. Murphy.

14          THE JUROR:  Hi.

15          THE COURT:  Let's see here.  You answered "no" to

16    the question -- did you answer "yes" to any of the

17    questions when I was asking the questions here in the

18    courtroom?

19          THE DEFENDANT:  No.

20          THE COURT:  Do you truly think you could be fair

21    in this case, fair to the various outfits and people?

22          THE JUROR:  I could try, your Honor, but I have

23    really no idea what you're talking about.

24          THE COURT:  And no one asks that you do.  One of

25    the roles of the lawyers is to teach you, through

evidence, what the case is about.  Part of the genius of
the jury system is that everyone gets a chance to sit.
Their job is to teach you.  My job is to teach you the
law.

Now, if I fail, you can ask me questions, just
say, "I don't understand that," and I will stop and I
will explain it.

But as you know what you know, do you think you
could be fair in this case?

THE JUROR:  Well, knowing that, yes.

THE COURT:  Okay.  Let me ask, just so we can get
to know you a little better, what do you do and if
you're married, what does you spouse do?

THE JUROR:  I'm a hair dresser and I'm single.

THE COURT:  Thank you.  I'll ask you to take a
seat in the jury box.

(Juror leaves.)

THE COURT:  Mr. Chan.

(Next juror.)

THE COURT:  Now, you're Adam Chan?

THE JUROR:  Yes.

THE COURT:  You've answered "no" to the various
questions.

Did you answer "yes" to any of the questions I was
asking?

```
1              THE JUROR:  No.

2              THE COURT:  Do you truly think you could be fair

3     in this case, fair to each of the entities and people

4     suing, but equally fair to each of the pharmaceutical

5     companies that are being sued?

6              THE JUROR:  Yes.

7              THE COURT:  All right.

8              So we get to know you a little better, what do you

9     do and if you're married what does your spouse do?

10             THE JUROR:  I work for State Street Corporation, a

11    mutual fund accountant.  I'm not married.

12             THE COURT:  Thank you.  Would you take a seat in

13    the jury box.

14             (Juror leaves.)

15             THE COURT:  And Ms. Given.

16             (Next juror.)

17             THE JUROR:  Hi.

18             THE COURT:  Hi.  You're Annette Given?

19             THE JUROR:  Yes, I am.

20             THE COURT:  Now, you've got a trip on the 2nd to

21    the 5th?

22             THE JUROR:  My 30th anniversary.

23             THE COURT:  Yeah.  Okay.  Well, we plan to sit on

24    those days.  So can that trip be moved?  Is that your

25    actual anniversary?
```

1          THE JUROR:  It's for my anniversary passed.  It

2     was a gift from my husband for my birthday.

3          THE COURT:  Fine.  I think you should go on it.

4     You're excused.  Go back downstairs.

5          THE JUROR:  Okay.  Thank you.

6          (Juror leaves.)

7          (Next juror.)

8          THE COURT:  Mr. Banassou.

9          THE JUROR:  Hello.

10          THE COURT:  Now, you're Khalid Banassou and you've

11     answered "no" to the questionnaire questions.

12          Did you answer "yes" to any of the questions that

13     I put here in court?

14          THE JUROR:  No.

15          THE COURT:  Do you truly think you could be fair,

16     fair to each of the companies and the union plans and

17     individuals suing and equally fair to each of the

18     pharmaceuticals?

19          THE JUROR:  The only question I have is, um, is

20     Teva -- what is the location of Teva, is it like an

21     American company?

22          THE COURT:  Teva has its headquarters in the

23     United States.

24          THE JUROR:  Is it an Israeli company?

25          THE COURT:  Actually it may be.  We'll tell you.

1  Yes, it is.  It's an Israeli company.

2       THE JUROR:  Well, I may not be partial to that

3  company.

4       THE COURT:  I see.  All right.  You did just right

5  to ask and to tell us.  You are excused from service on

6  this case.

7       (Juror leaves.)

8       (Next juror.)

9       THE COURT:  Ms. Cariani.  Karen Cariani.

10       THE JUROR:  Yes.

11       THE COURT:  All right.

12       You think this is going to cause you a hardship.

13  Tell me why.

14       THE JUROR:  I work in public television.  I have a

15  lot of projects going on and I have a staff of twelve.

16       THE COURT:  I'm going to give you -- I try so hard

17  to accommodate, and if you looked at that schedule,

18  believe me I'll have you out of here every day at 1:00.

19  That's my way of dealing with it.

20       THE JUROR:  Uh-huh.

21       THE COURT:  I truly need people from all walks of

22  life.  I think I would be proud to have you serve as a

23  juror, though I'm going to tell the jurors that they

24  can't say anything about the case.  You've told me.

25       But with all respect, I think they can get along

1    without you.

2           THE JUROR:  Uh-huh.

3           THE COURT:  I understand your basis for saying you

4    don't know, in the answers to the other questions, but

5    so far as you do know now, the answer would be "yes"?

6           THE JUROR:  Correct.

7           THE COURT:  All right.

8           Did you answer "yes" then to any other questions I

9    asked you?

10           THE JUROR:  Well, feelings about pharmaceuticals,

11    charging too much money.

12           THE COURT:  Yes.  All right.

13           Now, people are entitled to sit as jurors with a

14    variety of feelings.  We may be talking about some sums

15    of money in this case, we may be talking about big sums

16    of money, but I will instruct as to what you should have

17    made of that information because as between the jurors,

18    the judges of the facts, and me, the judge of the law,

19    you have to take the law from me.

20           Now, do you think you could set aside any

21    instinctive feelings you have, follow my instructions as

22    to the law, to do a fair and just verdict?

23           THE JUROR:  Yes.

24           THE COURT:  All right.  And I'm asking you, do you

25    really think you could be fair, fair to the companies,

1    to the individuals, the union plans, and be fair to the

2    three pharmaceutical companies that have been sued?

3           THE JUROR:  Probably.

4           THE COURT:  Well, do you think you can?

5           THE JUROR:  Yes.

6           THE COURT:  All right.  Would you take your seat

7    in the jury box.

8           (Juror leaves.)

9           (Next juror.)

10          THE COURT:  Mr. St. Amand.

11          Now, Mr. Amand, you answered "no" to the

12    questionnaire questions, but did you answer "yes" to any

13    of the questions I put here in court?

14          THE JUROR:  No.

15          THE COURT:  Do you truly think you can be fair,

16    fair to the people doing the suing, the companies, the

17    union plans, the retailers and wholesalers, and equally

18    fair to the pharmaceutical companies which are sued?

19          THE JUROR:  Yeah.

20          THE COURT:  You don't have any question about

21    that?

22          THE JUROR:  No.

23          THE COURT:  All right.  So we can get to know you

24    better, what do you do and if you're married, what does

25    your spouse do?

```
 1              THE JUROR:  I'm divorced.  I'm a custodian in the
 2       Town of Acton.
 3              THE COURT:  Thank you.  We'll ask you to take a
 4       seat in the jury box.
 5              (Juror leaves.)
 6              (Next juror.)
 7              THE COURT:  Mr. Barrett.
 8              THE JUROR:  Good morning, Judge.
 9              THE COURT:  Good morning.  You're Joseph P.
10       Barrett?
11              THE JUROR:  Yes, sir.
12              THE COURT:  You answered "no" to the questions
13       here.  Did you answer "yes" to any of the questions that
14       I put here in court?
15              THE JUROR:  No, I didn't.
16              THE COURT:  Do you truly think you can be fair,
17       fair to the companies, the wholesalers, the retailers,
18       the union benefit plans, the people, and equally fair to
19       the pharmaceutical companies being sued?
20              THE DEFENDANT:  Sure.
21              THE COURT:  So we can get to know you better, tell
22       us what you do, if you're married, what your spouse
23       does?
24              THE JUROR:  My wife is a school teacher.  I have
25       three daughters, 24, 22, and 18.  I just was laid off
```

```
 1    from my job at JP Morgan Chase where I worked for three

 2    years.  Prior to that I spent 28 years as an agent with

 3    the DEA, enough to appear before you several times.

 4            THE COURT:  And at JP Morgan, what did you do?

 5            THE JUROR:  I was an investigator, fraud, a fraud

 6    investigator in security.

 7            THE COURT:  Thank you.  We'll ask you to take a

 8    seat in the jury.  And I thank you.

 9            (Juror leaves.)

10            (Next juror.)

11            THE COURT:  Mr. Hannigan.  William P. Hannigan?

12            THE JUROR:  Yes.

13            THE COURT:  And, Mr. Hannigan, you answered "no"

14    to these questions on the questionnaire.  Did you answer

15    "yes" to any of the questions that I brought up in

16    court?

17            THE JUROR:  No.

18            THE COURT:  Do you truly think you can be fair,

19    fair to the wholesalers, the retailers, and insurance

20    benefit plans, and the people suing, and also to the

21    three pharmaceutical companies that are being sued?

22            THE JUROR:  Yes.

23            THE COURT:  So we can get to know you better,

24    would you tell us what you do and if you're married what

25    your spouse does.
```

1          THE JUROR:  I am an IT consultant.  I'm a single

2     provider.  I do IT services for my clients, basically

3     I'm their IT department.  So they call me when the

4     service is down, that kind of thing.  And I'm married.

5     No children.

6          THE COURT:  And your wife is at home?

7          THE JUROR:  She works, she's a manager at Boston

8     Senior Home Care.

9          THE COURT:  Thank you.  We'll ask you to take a

10     seat in the jury box.

11          (Juror leaves.)

12          (Next juror.)

13          THE COURT:  And Mr. Chiet.

14          THE JUROR:  Yes.

15          THE COURT:  You're Adam Chiet?

16          THE JUROR:  Yes.

17          THE COURT:  Excuse me.  Mr. Chiet.

18          THE JUROR:  Yes.

19          THE COURT:  You answered "no" to these questions,

20     but did you answer "yes" to any of the questions here in

21     open court?

22          THE JUROR:  I didn't.

23          THE COURT:  Do you truly think you can be fair,

24     fair to both the wholesalers and benefit plans, the

25     people suing, and fair to each of the pharmaceutical

```
 1    companies being sued?
 2          THE JUROR:  I do.
 3          THE COURT:  Could you tell us, so we can get to
 4    know you a little better, what you do and if you're
 5    married what your wife does.
 6          THE JUROR:  I'm single, I'm a graphic designer,
 7    and an image specialist for a large pet supply company.
 8          THE COURT:  What's an image specialist?
 9          THE JUROR:  Um, using Photoshop, adjusting
10    photographs and images.
11          THE COURT:  So you have the images and you get
12    them in?
13          THE JUROR:  Correct.
14          THE COURT:  Thank you.  We'll ask you to take a
15    seat in the jury box.
16          (Juror leaves.)
17          (Next juror.)
18          THE COURT:  Ms. Beaulieu.
19          Good morning.  You're Cynthia Beaulieu?
20          THE JUROR:  Yes.
21          THE COURT:  And you answered "no" to these
22    questions.  Did you answer "yes" to any of the questions
23    that I asked you here in court?
24          THE JUROR:  No.
25          THE COURT:  Do you truly think you can be fair,
```

1    fair to those wholesalers and retailers and union

2    benefit plans that are suing, but equally fair to the

3    pharmaceutical companies that are being sued?

4         THE JUROR:  Yes.

5         THE COURT:  So we can get to know you a little

6    better, can you tell us what you do and if you're

7    married, what your husband does?

8         THE JUROR:  I work for the Town of Dracut in the

9    school cafeteria.  I'm married with two kids.

10         THE COURT:  And your husband, what does he do?

11         THE JUROR:  He works for Cabot, he is a -- they

12    make ink cartridges.

13         THE COURT:  And what does he do there?  He works

14    on the production line?

15         THE JUROR:  Yes, he's a machinist.  I was trying

16    to think of it.

17         THE COURT:  Okay.  Thank you.  We'll ask you to

18    take a seat in the jury box.

19         (Juror leaves.)

20         (Next juror.)

21         THE COURT:  Mr. Bouchard.

22         And you're Robert Bouchard?

23         THE JUROR:  Correct.

24         THE COURT:  And you answered "no" to these

25    questions.  Did you answer "yes" to any of the questions

1    I put in court?

2          THE JUROR:  Yes, I did.

3          THE COURT:  And what question is that?

4          THE JUROR:  The one about the price of medication.

5    I think they are grossly overpriced.  They're grossly

6    overpaid.

7          THE COURT:  Uh-huh.

8          Now, in this case we're going to hear about money,

9    we're going to hear about the charges for different

10   things, and we may hear about big money.

11         As between the jury and the judge, the jury has

12   the last word on the facts, what the jury believes, but

13   you have to take the law from me.  So as to some things

14   of value, I will tell you what you can make of it and

15   other things don't count, and I will say that.

16         Do you think you can follow my instructions or are

17   you going in thinking the pharmaceutical companies are

18   really gouging the public?

19         THE JUROR:  I do believe they are gouging the

20   public.

21         THE COURT:  Fine.  That's why I'm asking.  You're

22   excused from service on this case.  We'll find you a

23   different case.  And thank you very much.

24         THE JUROR:  Thank you.

25         (Juror leaves.)

```
1            (Next juror.)
2            THE COURT:  Ms. Pacifico.
3            THE JUROR:  Yes.
4            THE COURT:  You're Cara Pacifico?
5            THE JUROR:  Yes.
6            THE COURT:  And I see here you have an aunt
7     formerly employed by CVS, but you've never been employed
8     by CVS?
9            THE JUROR:  No.
10           THE COURT:  Your ant's employment, does that lead
11    you to favor CVS in this case?
12           THE JUROR:  No.
13           THE COURT:  Does it make you hostile or skeptical
14    of CVS?
15           THE JUROR:  I don't think so, no.
16           THE COURT:  Well, let me ask you this.  In this
17    case do you truly think you can be fair, fair to the
18    wholesalers or retailers like CVS, the union benefit
19    plans, the people suing, but equally fair to the three
20    pharmaceutical companies sued, do you think you can be
21    fair?
22           THE JUROR:  Yes.
23           THE COURT:  Did you answer "yes" to any of the
24    questions that I put here in open court?
25           THE JUROR:  No.
```

```
1            THE COURT:  So we get to know you a little better,
2       could you tell us what you do and if you're married what
3       your spouse does.
4            THE JUROR:  I'm not married.  I may present a
5       hardship, I'm actually leaving my job on November 1st
6       and I'm supposed to train my successor, but I would
7       rather not.  But other than that I'm a freelance theatre
8       technician.
9            THE COURT:  What's that?
10           THE JUROR:  I do lighting and costumes for
11      theatrical events whether those be corporate events or
12      theatrical events for the American Repertory Theatre.
13           THE COURT:  Thank you.  We'll ask you to take a
14      seat in the box.
15           (Juror leaves.)
16           (Next juror.)
17           THE COURT:  Mr. Shih.  I'm sorry, Ms. Shih.
18           THE JUROR:  Yes.
19           THE COURT:  Forgive me, ma'am.  You're Juliann
20      Shih?
21           THE JUROR:  Yes.
22           THE COURT:  And you've answered "no" to these
23      questions.  Did you answer "yes" to any of the questions
24      I've put here in open court?
25           THE JUROR:  I did.
```

1          THE COURT:  And which ones?

2          THE JUROR:  So the one where I might have feelings

3     about --

4          THE COURT:  What feelings should I know about?

5          THE JUROR:  About pharmaceutical companies.  I'm

6     actually partially funded by a pharmaceutical company,

7     Breyer, um, and while that's not my -- you know, my

8     actual job description, um --

9          THE COURT:  What do you do, so we get to know you?

10         THE JUROR:  I'm a conservational biologist in

11    academia, but part of my funding comes from Breyer, so

12    that's --

13         THE COURT:  All right.  You did just right to tell

14    us that.

15         Now, in this case does that present any difficulty

16    to you in being a judge in this case, are you favorably

17    disposed to pharmaceutical companies because of course

18    they, and maybe the ones involved in this case, they do

19    support your search of all different --

20         THE JUROR:  Perhaps.

21         THE COURT:  You think you may be?

22         THE JUROR:  Perhaps.

23         THE COURT:  All right.  You did just right to tell

24    us.  You're excused in this case.  We'll find another

25    case for you.  Go back downstairs.  Thank you very much.

```
1              (Juror leaves.)

2              (Next juror.)

3         THE COURT:  And Mr. Sampson?

4         THE JUROR:  Hello.

5         THE COURT:  Hi.  You're Richard Sampson?

6         THE JUROR:  Yes.

7         THE COURT:  Well, let's go right to the issue

8    here.  You've got the schedule.  I need to start right

9    smack at 9:00 and I will get you out of here every day

10   at 1:00, except when the jury is deliberating.

11        Can you tell me what the job problem is?

12        THE JUROR:  I work second shift and my wife works

13   first shift, so it's hard for me to cover my -- I have

14   an 18-month old son.  So that's kind of hard for me.

15        THE COURT:  You did right to tell us.  You're

16   excused from service on this case.  We'll find something

17   else for you.  Thank you very much.

18             (Juror leaves.)

19             (Next juror.)

20        THE COURT:  Ms. Henderson.

21        THE JUROR:  Hi there.

22        THE COURT:  Hi.  You've answered "no" to these

23   questions.  Did you answer "yes" to -- first of all,

24   you're Paula Henderson and you've answered "no" to these

25   questions.  Did you answer "yes" to any of the questions
```

```
 1    that I put here in open court?
 2          THE JUROR:  No.
 3          THE COURT:  Do you truly think you can be fair,
 4    fair to both sides, the retailers, the union plans, the
 5    people suing, and equally fair to the three
 6    pharmaceutical companies that are being sued?
 7          THE JUROR:  Yes.
 8          THE COURT:  So we can get to know you a little
 9    better, could you tell us what you do and if you're
10    married what your spouse does?
11          THE JUROR:  I work for Stop & Shop headquarters.
12    I put the flier together.  And I work part time at
13    Kohls, on holidays.
14          THE COURT:  In retail?
15          THE JUROR:  Yes.
16          THE COURT:  And your husband?
17          THE JUROR:  No, I'm not married.  I'm a
18    grandmother of two.
19          MR. SOBOL:  Your Honor, if I may?
20          THE COURT:  You may ask me.
21          MR. SOBOL:  I am doing that exactly, your Honor.
22          Stop & Shop is a subsidiary of one of the
23    plaintiffs.
24          THE COURT:  Oh, that's fair.  And what's the name
25    of it?
```

1           MR. SOBOL:  Ahold.

2           THE JUROR:  Oh, I didn't Ahold on there.

3           THE COURT:  No, that's not your fault.  That's why

4    he jumped up.

5           THE JUROR:  Okay.

6           THE COURT:  So it's the holding company.  I

7    follow.  And forgive me, Mr. Sobol.

8           So Ahold owned Stop & Shop and you work for Stop &

9    Shop and Stop & Shop, therefore Ahold, are plaintiffs

10   here.

11          THE JUROR:  Okay.

12          THE COURT:  Now, the fact you work for them

13   doesn't prevent you from being a juror, but I need to

14   ask you, are you going to favor Stop & Shop in this

15   case?

16          THE JUROR:  No, I'll be fair.

17          THE COURT:  You're not going to be skeptical or

18   even hostile to them just because you worked for them?

19          THE JUROR:  Oh, no.

20          THE COURT:  All right.  We'll ask you to take a

21   seat in the jury box at this point.

22          (Juror leaves.)

23          THE COURT:  And thank you, Mr. Sobol, you flagged

24   it and I skipped it.

25          (Next juror.)

1           THE COURT:  Mr. Kreisel.

2           You're Anthony Kreisel?

3           THE JUROR:  Yes.

4           THE COURT:  And you've answered "no" to these

5     questions.  Did you answer "yes" to any of the questions

6     I put in open court?

7           THE JUROR:  I did.

8           THE COURT:  Which one or ones?

9           THE JUROR:  Well, you said bias.

10          THE COURT:  Yes, I want to hear it.

11          THE JUROR:  Okay.  I could possibly have a bias.

12    I was an investment professional for over 40 years, but

13    it was as a security analyst and a fund manager and I

14    followed the industry.  I have more than a layman's

15    working knowledge of the operational and financial

16    aspects in this industry.  So, you know, I don't really

17    recall the question, but I certainly --

18          THE COURT:  Well, you're doing just right to tell

19    us.

20          I guess the concern from my point of view is this.

21    That doesn't prevent you from serving as a juror.  I'm

22    the one who is charged with -- well, the jury decides

23    the facts, the judge teaches and explains the law.

24          Now, I will do the best I can to do that.  I feel

25    I am able to do that.  You may, as someone who practiced

1    in analyzing stocks and why people -- one of the things

2    we're going to get into is the settlement of cases and

3    why people settle and what value changes hands when

4    cases are settled, and those are things that you may

5    have looked at in figuring out the effect on market

6    prices.

7         THE JUROR:  Um-huh.

8         THE COURT:  You still may sit as a juror and you

9    may use any information that you know of, but my

10   question is going to follow that my instructions as to

11   the law -- or do you think you're going to have some

12   problem with that?

13        THE JUROR:  Um, no, I think I'm morally and

14   ethically --

15        THE COURT:  You're right.

16        THE JUROR:  Yes.

17        THE COURT:  For instance, I'm getting ahead of

18   myself.  But in this case, the plaintiffs' case goes

19   nowhere unless there's a large and unjustified payment

20   in the settlement of a patent case going from

21   AstraZeneca to Teva and then there's other things.  But

22   that's the first thing.

23        Now, we don't just use those words and say to the

24   twelve jurors, "Well, go out there and figure out

25   whether you think it was large and unjustified," instead

1    I will explain things that the courts have said about

2    what constitutes a "large" or what constitutes

3    "unjustified," and those things courts have said.

4         Can you follow my explanation?

5         THE JUROR:  Yes.

6         THE COURT:  Oh, I don't mean understand it, but

7    once you understand it, can you apply it?

8         THE JUROR:  Yes, it certainly seems so.

9         THE COURT:  Fine.

10        Well, we are getting to know you, why don't you

11   tell us what you do and if you're married what does your

12   spouse do?

13        THE JUROR:  Okay, I'm married.  I'm a clinical

14   psychologist.  I was an analyst for 20 years in

15   different firms in Boston.  I'm a CFA.  I managed the

16   Putnam Growth and Income Fund for many years, so I've

17   invested in pharmaceutical stocks.  Since retiring I was

18   chair of the investment committee and on the Board of

19   Trustees of my alma mater, but I still sit on the

20   advisory board for a management firm.

21        THE COURT:  Do you mind telling us what your alma

22   mater is?

23        THE JUROR:  Franklin Marshall College.

24        THE COURT:  Right.  To sum up, do you think --

25   having said you can follow my instructions, do you

```
 1    really think you can be fair in this case, fair to the
 2    various entities who say they paid more, but equally
 3    fair to the pharmaceutical companies?
 4            THE JUROR:  I can't answer "yes" or "no."  I'm not
 5    sure.
 6            THE COURT:  Well, you're answering.
 7            THE JUROR:  Because I --
 8            THE COURT:  No.  No.
 9            THE JUROR:  I don't how to say it.
10            THE COURT:  You're saying it just right.  There's
11    no right way to say it.  I think the better part of
12    valor is to excuse you, though I'd love to keep you.  So
13    we'll excuse you from service on this case.  And I thank
14    you for your participation in the process.  Thank you,
15    sir.
16            (Juror leaves.)
17            (New juror.)
18            THE COURT:  Mr. Shannon.  And you're William
19    Shannon?
20            THE JUROR:  Yes.
21            THE COURT:  And you've answered "no" to these
22    questions.  Did you answer "yes" to any of the questions
23    I put here in open court?
24            THE JUROR:  No.
25            THE COURT:  Do you truly think you can be fair,
```

```
 1    fair to the various entities suing, wholesalers,

 2    retailers, union benefit plans, individuals, but fair

 3    equally to the three pharmaceutical companies, do you

 4    think you can be fair?

 5            THE JUROR:  Yes.

 6            THE COURT:  So we can get to know you a little

 7    better, can you tell us what you do and if you're

 8    married what your spouse does?

 9            THE JUROR:  Sure.  I'm married with two young

10    children, my wife is currently staying home, and I work

11    as a real estate agent, and I'm a real estate investor.

12            THE COURT:  Thank you.  We'll ask you to take a

13    seat in the jury box.

14            (Juror leaves.)

15            THE COURT:  All right, that's 12.  Let me get my

16    notebook and we'll do the challenges.

17            (Pause.)

18            THE COURT:  Who speaks for the plaintiff?

19            MR. HILLIARD:  Rob Hilliard, Judge, for the

20    plaintiffs.

21            THE COURT:  All right.  I'll hear you.

22            MR. HILLIARD:  Number 3.

23            THE COURT:  Number 3.  And that's it?  You're

24    otherwise content?

25            MR. SOBOL:  Nope.
```

```
 1            MR. HILLIARD:  We don't do one at a time?
 2            THE COURT:  No, you do all of yours and they do
 3    all of theirs.
 4            MR. HILLIARD:  Oh, I apologize, Judge.  Then
 5    Number 24.
 6            MR. SOBOL:  Seat 12, your Honor.
 7            THE COURT:  Thank you.  Excused.
 8            Otherwise content?
 9            MR. HILLIARD:  Otherwise content.
10            THE COURT:  Thank you.
11            The defense?
12            (Pause.)
13            THE COURT:  Counsel?
14            MR. BUTSWINKAS:  1.
15            THE COURT:  You want Juror in Seat 1.  She's
16    excused.
17            You're going by seat number, correct?
18            MR. BUTSWINKAS:  No, we're going by juror number.
19            THE COURT:  Just so we're clear, so Number 1 is
20    the juror in Seat 1, she's excused.  Go ahead.
21            MR. BUTSWINKAS:  6.
22            THE COURT:  Juror 6 is in what seat?
23            MR. VAN WART:  In Seat 4.
24            THE COURT:  Fine.  She's excused.
25            MR. BUTSWINKAS:  Then 9.
```

```
1           THE COURT:  9 is in what seat?

2           MR. VAN WART:  Should be Seat 7.

3           THE COURT:  And the seat in the front row, first

4    seat to the right, you want him off?

5           MR. BUTSWINKAS:  Yes.

6           THE COURT:  Very well.  Those three jurors are

7    excused.  There are no back strikes.  We'll refill the

8    box.

9           (Pause.)

10          THE COURT:  Oh, what number?

11          MR. SOBOL:  What's the last one?

12          THE COURT:  Number 9 in Seat 7.

13

14          (In open court.)

15          THE CLERK:  Juror 1, Susan Pires.  Juror 3, Adam

16   Chan.  Juror Number 6, Karen Cariani.  Juror 9, William

17   Hannigan.  Juror Number 24, William Shannon.

18          (People leave box.)

19          THE COURT:  Wait a minute.  Wait a minute.

20          (Pause.)

21          THE COURT:  You want to excuse -- all right, they

22   may be excused.

23

24          AT THE SIDEBAR

25          THE COURT:  Who else?
```

1       MR. BALDRIDGE:  Juror 11.

2       THE COURT:  In what seat?  Cynthia Beaulieu?

3       MR. VAN WART:  Yeah, it's the woman in the purple,

4  second one in, next to the man.

5       THE COURT:  Well, I'm pointing out the lady next

6  to the man, is that right?

7       MR. VAN WART:  To the left.

8       THE COURT:  Please don't point.

9

10       (In open court.)

11       THE COURT:  Ms. Beaulieu is excused.  She's

12  excused.

13       THE CLERK:  Juror 11, Cynthia Beaulieu, is

14  excused.

15       (Juror leaves.)

16

17       AT THE SIDEBAR

18       THE COURT:  Mr. Stupakevich.

19       THE JUROR:  Stupakevich.

20       THE COURT:  Yes.  Forgive me, Mr. Stupakevich.

21  You're Jason Stupakevich and I'm very sensitive to how

22  you answered the first question, but I want to ask you

23  about that.  Tell us about that.  What's the problem?

24       THE JUROR:  I work for a small business on Cape

25  Cod and my boss just recently became a sole proprietor

1    and he relies on me a great deal.  I'm the product

2    manager.  I work with two printing presses.  We screen

3    print and with the busy season of the holidays coming up

4    and everything, I'm going to be very busy around the

5    shop.  And I just think that with the length of the

6    trial, me not being around the shop and available for

7    the business, the company will probably suffer.

8          THE COURT:  I'm going to accept that and I'm going

9    to excuse you from serving on this trial.  We'll give

10   you your card and you can go back downstairs.

11         THE JUROR:  Thank you.

12         (Juror leaves.)

13         (Next juror.)

14         THE COURT:  Now, Ms. Ambrose, PG Ambrose.  You're

15   Phyllis Gail Ambrose?

16         THE JUROR:  Yes.

17         THE COURT:  You were once employed by Giant Eagle

18   and you earlier have owned stock in AstraZeneca, but you

19   don't now?

20         THE JUROR:  That's correct.

21         THE COURT:  But let me ask about both of those

22   associations.

23         Giant Eagle is one of the outfits that's suing,

24   AstraZeneca is one of the pharmaceutical companies being

25   sued.  Obviously since you don't have stock it's not --

1    stockholders can't sit just like I can't be the judge if

2    I own stock in any of these outfits.  But your

3    association with AstraZeneca, will you favor them

4    because you once owned their stock?

5          THE JUROR:  I can't imagine so, no.

6          THE COURT:  Are you skeptical or hostile to them

7    just because you owned their stock?

8          THE JUROR:  Oh, I don't think so.  I'm not a

9    hostile person.

10          (Laughter.)

11          THE COURT:  But the same for Giant Eagle, that was

12    years ago?

13          THE JUROR:  It indeed was.

14          THE COURT:  A few years ago.  Excuse me.

15          Are you going to favor them because they gave you

16    this college-time job?

17          THE JUROR:  I don't believe so.

18          THE COURT:  Are you hostile or skeptical of them

19    because of whatever happened while you worked there?

20          THE JUROR:  No.

21          THE COURT:  Do you truly think you can be fair,

22    fair to all the wholesalers, retailers, like Giant

23    Eagle, the union benefit plans, the individuals, but

24    equally fair to the three pharmaceutical companies that

25    have been sued?

1          THE JUROR:  I think so.

2          THE COURT:  Did you answer "yes" to any of the

3     questions I put here in open court?

4          THE JUROR:  Um, no, I didn't.

5          THE COURT:  But you're thinking about it?

6          THE JUROR:  I think you asked some people about

7     the pharmaceutical companies.  I don't have a hostility,

8     as you put it, towards them, but I suspect they'll make

9     a healthy profit.  Which is the American way.  That's

10    fine.  But no other answers.

11         THE COURT:  Well, that's really what I'm probing

12    and you have every right to your views.

13         Now, we're going to learn in this case about

14    things like that.  As between the jury, who is the final

15    word on the facts, and the judge, you have to take the

16    law the way that I explain it to you, and I may, in an

17    explanation, say "Well, you can consider this, but you

18    can't consider that."

19         Do you think you can follow my instructions as to

20    the law?

21         THE JUROR:  Yes.

22         THE COURT:  Now, so we get to know you a little

23    better, would you tell us what you do and if you're

24    married what your spouse does?

25         THE JUROR:  I'm currently in transition.  I'm

1    looking for a job.  I have just kind of -- I've taken

2    time off caring for my mother who passed way.  So that's

3    what I'm doing.  Forgive me.

4         (Crying.)

5         THE COURT:  Please, I surely understand.  When

6    last you worked, ma'am, and take a moment, but when last

7    you worked, what did you do?

8         THE JUROR:  I worked in --

9         THE COURT:  It's quite all right.

10        THE JUROR:  In high tech, um, in marketing and

11   business development in telecommunications companies.

12        THE COURT:  And you're not married?

13        THE JUROR:  No, I am not.

14        THE COURT:  We'll I'll ask you to take a seat on

15   the jury.

16        (Juror leaves.)

17        (Next juror.)

18        THE COURT:  Mr. Appleton.  Ms. Appleton.  Excuse

19   me.  Forgive me, Ms. Appleton.

20        THE JUROR:  It's okay.

21        THE COURT:  You're Avery Appleton?

22        THE JUROR:  Yes.

23        THE COURT:  And we'll jump right to the first

24   question.

25        THE JUROR:  My husband and I own a couple of

1    restaurants in Cambridge.  We very much mom and pop the

2    whole thing.  And, um, the one person who is generally

3    pretty responsible, his father just passed away and he's

4    gone for about a week and a half.  I don't know if that

5    --

6         THE COURT:  Well, you did just right to tell us

7    and I need to take it into account.  Here's how I tried

8    to take it into account.

9         That schedule that we put on the questionnaire,

10   that's absolutely firm, we're going to have you out of

11   here every day at 1:00.  I mean I need you at 9:00 every

12   day, but at 1:00, we're done.  We're not sitting every

13   day.  I so much need people from different walks of

14   life.  So my inclination is to ask you to stay because I

15   -- it sounds to me like you can work it out and it will

16   get better after this immediate week and a half.

17        Am I missing something?

18        THE JUROR:  Well, we're open for lunch every day

19   and I'm generally the lunch person and I can't ask him

20   to open and close every day.

21        THE COURT:  All right.  Well, maybe you can work

22   it out with someone else, at least for the time you

23   would be sitting here.

24        THE JUROR:  It would be very difficult.  I'm not

25   sure how that would happen.

```
 1          THE COURT:  All right.  I'm going to excuse you
 2    from service on this case.
 3          THE JUROR:  Thank you, your Honor.  I appreciate
 4    it.
 5          THE COURT:  And go back downstairs.
 6          (Juror leaves.)
 7          (Next juror.)
 8          THE COURT:  Mr. Wolters.
 9          You're William Wolters?
10          THE JUROR:  Yes, I am.
11          THE COURT:  We have part of your address.  What
12    town do you live in?
13          THE JUROR:  Holiston.
14          THE COURT:  In Holiston.  Now, you answered "no"
15    to these questions.  Did you answer "yes" to any of the
16    questions I put in open court?
17          THE JUROR:  No, I did not answer your question
18    because, um, actually I have a -- because of my
19    background, I have somewhat of a bias against a certain
20    group in here.
21          THE COURT:  And what is your background and what
22    is your bias?
23          THE JUROR:  My background is I've been in the
24    insurance business for some 30-odd years, I just
25    retired, and I've been General Counsel, in-house
```

1  counsel, and in the last 20 years I've been working on

2  big projects for the company I work for.

3           THE COURT:  So what's the bias?

4           THE JUROR:  The bias is I don't like the

5  plaintiffs doing the --

6           THE COURT:  The class actions?

7           THE JUROR:  The class actions, yes.

8           THE COURT:  All right.

9           THE JUROR:  And the reason for it is because I

10  find, as a general rule, that the people that they're

11  supposed to be protecting get very little and the

12  attorneys get a lot more.  So that's been my bias.

13           THE COURT:  And you've done just right to tell us.

14           Now, let me say something to you very direct.

15  It's going to be up to the jury here whether the

16  plaintiffs get anything at all.  If it were to play out

17  that the plaintiffs got something, you have my word that

18  it is the people who were injured who are going to get

19  recovery far far more than any one of the lawyers.

20           THE JUROR:  With all due respect, I don't --

21           THE COURT:  You don't believe that?

22           THE JUROR:  No, I don't.  I'm a lawyer too, but,

23  you know, I understand the business, and I wanted you to

24  be aware of that.

25           THE COURT:  All right.  You've done just right.

1    I'm going to excuse you from service on this case.  I

2    commend to you a decision I wrote called In Re Relafen.

3    But you're excused and I thank you.

4          (Laughter.)

5          (Juror leaves.)

6          (Next juror.)

7          THE COURT:  Ms. Sahoo.

8          THE JUROR:  Yes.

9          THE COURT:  And you're Suchismita Sahoo?

10         THE JUROR:  Yes.

11         THE COURT:  And you've answered "no" to these

12   questions.  Did you answer "yes" to any question that I

13   put in open court?

14         THE JUROR:  Um, nope.

15         THE COURT:  Do you truly think you can be fair,

16   fair to the wholesalers and retailers and union benefit

17   plans and the individuals suing, but equally fair to the

18   three pharmaceutical companies that are being sued?

19         THE JUROR:  I think so.

20         THE COURT:  All right.  So we get to know you a

21   little better, would you tell us what you do and if

22   you're married what your spouse does.

23         THE JUROR:  I'm an electrical engineer and I work

24   in a health care company called Aetna Care.  My husband

25   is also a database engineer and he works with Oracle

```
 1   Corp.

 2          THE COURT:  He works with?

 3          THE JUROR:  Oracle Corporation.

 4          THE COURT:  With Oracle.

 5          What kind of an engineer are you?  I didn't catch

 6   that.

 7          THE JUROR:  I'm Quality Assurance.

 8          THE COURT:  Oh, Q-A.  Forgive me.  Thank you.

 9   We'll ask you to take your place in the jury box.

10          THE JUROR:  Okay.

11          (Juror leaves.)

12          (Next juror.)

13          THE COURT:  Mr. Mcafee.

14          THE JUROR:  Hello.

15          THE COURT:  You're Charles E. Mcafee?

16          THE JUROR:  That's correct.

17          THE COURT:  And, Mr. Mcafee, you answered "no" to

18   these questions.  Did you answer "yes" to any questions

19   that I put in open court?

20          THE JUROR:  Um, yes, I did.

21          THE COURT:  Tell us which ones.

22          THE JUROR:  Let's see.  Well, I'm retired after 40

23   years of being a principal in the city.  Unfortunately I

24   try to be as honest and fair as I can possibly be.

25   That's what I've done with children.  But to be honest,
```

```
1    I'm slightly -- actually very biased against drug

2    companies.  Um, 60 Minutes, the generic things.  The

3    fact is at my age I see more commercials on drugs than I

4    do with anything.  So to be clear, um, I don't think I

5    could do this fairly.  I'm biased.

6         THE COURT:  You've done just right.  I will do my

7    best to explain the law, but even though I explain to

8    you the law, you think you've got a bias?

9         THE JUROR:  Yeah, I've been a leader for 40 years

10   and I'd hate to be in a position where my position would

11   be --

12        THE COURT:  All right.  I'm going to excuse you on

13   this case and you go back downstairs and --

14        THE JUROR:  Sure.  It's very nice meeting you.

15        THE COURT:  It's nice to meet you, sir.

16        (Juror leaves.)

17        (Next juror.)

18        THE COURT:  Ms. Hogan.

19        And you're Elena Hogan?

20        THE JUROR:  Yes, I am.

21        THE COURT:  And you've answered -- you don't know

22   if you own any stock in any of these companies?

23        THE JUROR:  No, my husband does all our portfolio

24   managing.  I have no idea.

25        THE COURT:  Okay.  We'll just go ahead with that.
```

```
1              THE JUROR:  Fair enough.
2              THE COURT:  Did you answer "yes" to any of the
3     questions that I put before you today?
4              THE JUROR:  Yes.
5              THE COURT:  Which one?
6              THE JUROR:  The bias against a pharmaceutical
7     company.
8              THE COURT:  Tell me what it is.
9              THE JUROR:  I'm a stay-at-home mom with two
10    children, ages 14 and 16, and they were both medically
11    injured by vaccinations, and I've spent about 15 years
12    trying to heal the harm that's been done by those
13    vaccinations.
14             THE COURT:  You've done just right to tell us.
15    You're excused from this case.  And I thank you very
16    much.
17             THE JUROR:  Okay.  Thank you.
18             (Juror leaves.)
19             (Next juror.)
20             THE COURT:  And, Ms. Purks.  I probably
21    mispronounced your name.
22             THE JUROR:  It's fine.
23             THE COURT:  All right, it's fine.  So you are
24    Barbara A. Purks?
25             THE JUROR:  Yes.
```

1          THE COURT:  Let's go right to the issue here.

2     I've had this same problem and it's a terrible pain.  So

3     when did it happen?

4          THE JUROR:  Actually it was a while ago, but I

5     just got the check from the insurance company.  So just

6     --

7          THE COURT:  Now I tried --

8          THE JUROR:  I also had fire and water damage.

9          THE COURT:  I'm very sorry.

10         THE JUROR:  So I'm pretty wary.

11         THE COURT:  Well, I tried to deal with that, as

12    well as work-related issues.  That schedule we gave you,

13    that's for real.  We're not going to keep you here

14    beyond 1:00 in the afternoon any day until December when

15    the trial is over.  But it seems to me that you could

16    probably work this out since you know the schedule in

17    advance.

18         THE JUROR:  Well, I don't mean to interrupt.

19         THE COURT:  Go ahead.

20         THE JUROR:  The issue I have is that, um, you

21    know, I have most of the contractors and stuff coming

22    early in the morning and every time it rains, you know,

23    I have like a couple of tree limbs through the roof and

24    I've got about 50 holes and it's really --

25         THE COURT:  I'll excuse you from service in this

```
 1   case.

 2        THE JUROR:  Really.  I really appreciate it.  And

 3   just --

 4        THE COURT:  Well, that's fine.  You're excused.

 5        THE JUROR:  It was a really close call and I --

 6        THE COURT:  That's right.  She's excused.

 7        (Juror leaves.)

 8        (Next juror.)

 9        THE COURT:  Mr. Boisvert.

10        And you're David Boisvert?

11        THE JUROR:  I am.

12        THE COURT:  You answered "no" to these questions.

13        THE JUROR:  I did.

14        THE COURT:  And did you answer "yes" to any of the

15   questions I put here in open court?

16        THE JUROR:  Yes.

17        THE COURT:  And which ones?

18        THE JUROR:  I think it was with regards to the

19   pricing of the medications and whatnot.

20        THE COURT:  And how do you feel about that?

21        THE JUROR:  Well, I know my daughter gets an

22   infusion once a month and it costs thousands of dollars

23   just for the medicine.  No one can explain to me why it

24   cost that much for just the medicine, so I have a

25   slightly skewed outlook on the whole process.
```

1        THE COURT:  You did just right to tell us.  We'll

2    excuse you from service on this case and we'll find a

3    different case for you.  Thank you.

4        THE JUROR:  Thank you.

5        (Juror leaves.)

6        (Next juror.)

7        THE COURT:  Ms. Proctor.

8        You're Amanda Proctor?

9        THE JUROR:  Uh-huh.

10       THE COURT:  Looking at these answers, you're not

11   sure if you own any stock in these corporations?

12       THE JUROR:  Yeah, I have a big list and I didn't

13   want to say "No," but I have no idea.

14       THE COURT:  Well, we're going to go on the idea

15   that you don't.

16       THE JUROR:  Okay.

17       THE COURT:  Did you answer "yes" to any of the

18   questions that I put here in court?

19       THE JUROR:  Yes.

20       THE COURT:  Which ones?

21       THE JUROR:  Um, feeling strongly about

22   pharmaceutical companies.

23       THE COURT:  Tell us how you feel.

24       THE JUROR:  That they're ridiculously greedy.

25   I've already decided, you know, bad guy, good guy in

```
 1    this case, so I feel I'm not a good person to --
 2          THE COURT:  You did just right to tell us.  You're
 3    excused from service on this case.  Please go back
 4    downstairs.
 5          (Juror leaves.)
 6          (Next juror.)
 7          THE COURT:  Ms. Hamilton.
 8          Hi.  You're Melissa Hamilton?
 9          THE JUROR:  Hamilton, yes.
10          THE COURT:  You answered "no" to these questions,
11    but did you answer "yes" to any of the questions that I
12    put here in open court?
13          THE JUROR:  No, I did not.
14          THE COURT:  Do you truly think you can be fair,
15    fair to both the wholesalers, the retailers, the union
16    benefit plans, the people suing, but equally fair to the
17    three pharmaceutical companies being sued?
18          THE JUROR:  Yes.
19          THE COURT:  Okay.  So we get to know you better,
20    would you tell us what you do and if you're married what
21    your husband does.
22          THE JUROR:  I'm a data coach and I'm in a school
23    in Boston Public Schools and I'm a math specialist and I
24    work with small groups of students.  And my husband of
25    two months is an accountant, a property accountant.
```

```
 1            THE COURT:  Thank you.  I'll ask you to take a
 2     seat in the box.
 3            THE JUROR:  Thank you.
 4            (Juror leaves.)
 5            (Next juror.)
 6            THE COURT:  And Ms. Slater.
 7            Now, you're Suzannah Slater?
 8            THE JUROR:  Yes, that's right.
 9            THE COURT:  Let's jump right to this.  I'm so
10     sorry for the loss of your mother and that's truly on
11     behalf of all of us.  And you know that your job is
12     absolutely secure if you serve as a juror, that's the
13     federal law.
14            THE JUROR:  Right.
15            THE COURT:  You can't get laid off.  Your job is
16     secure.
17            THE JUROR:  Right, I know that.
18            THE COURT:  I do need people from all walks of
19     life, so you have told me, but since your job is secure,
20     don't you think you can work that out?
21            THE JUROR:  I can, but I'm not going to make it
22     alone.  I'm behind on medical bills, so I'm not going to
23     get my full pay, or amount of pay, and so if it's
24     prolonged --
25            THE COURT:  That's true, um, but that's an aspect
```

```
 1   of any case like this.  But on balance I'm going to
 2   excuse you from service on this jury.  You may go.
 3          THE JUROR:  Thank you.
 4          (Juror leaves.)
 5          (Next juror.)
 6          THE COURT:  Ms. Mancuso.
 7          You're Sarah Mancuso?
 8          THE JUROR:  Yes.
 9          THE COURT:  And you've answered "no" to these
10   questions, but did you answer "yes" to any of the
11   questions that I put in open court?
12          THE JUROR:  No.
13          THE COURT:  Do you truly think you can be fair,
14   fair to the wholesalers, the retailers, the unit benefit
15   plans, the people suing, but equally fair to the three
16   pharmaceutical companies that are being sued?
17          THE JUROR:  I think so.
18          THE COURT:  All right.  So we can get to know you
19   a little better, can you tell us what you do?
20          THE JUROR:  Sure.  I work at Mass. General, I'm a
21   Mass. psychomatrician, which is like a tech in
22   neuropsychology.
23          THE COURT:  Thank you.  And I don't mean to be
24   personal, but if you're married, can you tell us what
25   your husband does?
```

1        THE JUROR:  I'm not married.

2        THE COURT:  All right.  Thank you.  Would you take

3   a seat in the jury box.

4        (Juror leaves.)

5        (Next juror.)

6        THE COURT:  Ms. Hsieh.

7        I'm not sure I'm pronouncing this right.  Hsiao

8   Hsieh?

9        THE JUROR:  Yes.

10       THE COURT:  All right.  You've answered "no" to

11   these questions.  Did you answer "yes" to any of the

12   questions that I put here in the courtroom?

13       THE JUROR:  No.

14       THE COURT:  Do you truly think you could be fair,

15   fair to the wholesalers, the retailers, the union

16   benefit plans, the people suing, and equally fair to the

17   three pharmaceutical companies that are being sued?

18       THE JUROR:  I understand about them equally,

19   however English is not my first language.  I am afraid

20   that my English won't be -- I'm just afraid I'm not

21   competent enough for the complexity of this case,

22   whatever it is.

23       THE COURT:  You did just right to tell us.  You're

24   speaking superbly.

25       THE JUROR:  Don't get fooled by that.

1          (Laughter.)

2          THE COURT:  Part of the glory of the jury system

3     is everyone gets a chance to serve and I was taking --

4     we let the jurors ask questions.  If you don't

5     understand anything, you can just raise your hand and

6     I'll see that it's explained to you.

7          So we'll ask you to take a seat in the jury box.

8     Thank you.

9          (Juror leaves.)

10         (Next juror.)

11         THE COURT:  Ms. Gammons.

12         You're Meredith A. Gammons?

13         THE JUROR:  I am.

14         THE COURT:  And you answered "no" to these

15    questions, but did you answer "yes" to any of the

16    questions I put here in open court?

17         THE JUROR:  I think one.

18         THE COURT:  And what was that?

19         THE JUROR:  Um, I don't remember what that was.

20         THE COURT:  Well, let me just ask you the most

21    general question.  Can you think of anything I need to

22    know going in here about you?

23         THE JUROR:  Um, only that I have a medical

24    background.  I'm a nurse.

25         THE COURT:  Uh-huh.  Well, let me put the bottom

```
 1    line question.
 2         Do you really think, knowing what you know about
 3    in this case, that you can be fair, fair to the people
 4    suing, the wholesalers, the retailers, the union benefit
 5    plans, the people, and equally fair to the three
 6    pharmaceutical companies that are being sued?
 7         THE JUROR:  I hope so.
 8         THE COURT:  So you believe you can?  Do you?
 9         THE JUROR:  Yes.
10         THE COURT:  All right.  And you've told us you
11    were a nurse.  Would you tell us -- if you're married,
12    would you tell us what your husband does?
13         THE JUROR:  My husband is in the insurance
14    business, he's in executive insurance, um, and I worked
15    for Harvard Pilgrim Health Care and I've worked there --
16    I don't know how far back you want me to go?
17         THE COURT:  No, not all the places.  But are you
18    currently in nursing?
19         THE JUROR:  Well, off and on.  I mean I'm more
20    retired than not, but I'm still in it.
21         THE COURT:  All right.  And nurses today have
22    different specialties.  What was your background in
23    nursing?
24         THE JUROR:  Um, at the end it was pediatric case
25    management and adult OB high-risk obstetrics.
```

1         THE COURT:  All right.  I ask you to take a seat

2     in the jury box.

3         THE JUROR:  Can I ask you a question?

4         THE COURT:  Always.

5         THE JUROR:  Do you have a sound system in here?

6         THE COURT:  Um, we have microphones and we have no

7     problem, if you have a hearing issue, we will address

8     it.

9         THE JUROR:  Okay.

10        THE COURT:  I'll ask you to take a seat in the

11    jury box.

12        THE CLERK:  Okay, Judge.

13        THE COURT:  All right.

14        (Juror leaves.)

15        THE COURT:  The defense?

16        (Pause.)

17        MR. BUTSWINKAS:  Judge, Juror Number 44.

18        THE COURT:  In what seat?  Who is it?  I prefer

19    you not to point at him.

20        MR. SOBOL:  Oh.  12, your Honor.

21        THE COURT:  Seat Number 12, the juror.

22        MR. BUTSWINKAS:  Yes, of course.

23        THE COURT:  She's excused.

24        You have one challenge left.  Are you otherwise

25    content?

1          MR. VAN WART:  Yes.

2          THE COURT:  All right.

3          The plaintiffs?

4          MR. HILLIARD:  31, your Honor.  Otherwise content.

5          THE COURT:  In what seat?

6          MR. SOBOL:  3, your Honor.

7          MR. HILLIARD:  In the back row.

8          THE COURT:  Seat 3.  She's excused.  Those two

9    jurors are excused.

10

11         (In open court.)

12         THE CLERK:  Juror 31, Ms. Sahoo, and Juror Number

13   44, Ms. Gammons, you may leave the jury box.

14         (Jurors leave the box.)

15

16         AT THE SIDEBAR

17         THE COURT:  Wait a minute.  You've excused an

18   Indian American.  Why are you excusing her?

19         MR. HILLIARD:  It was for a race-neutral reason,

20   your Honor.

21         THE COURT:  Yeah, but what is it?  I want to know.

22         MR. HILLIARD:  Just give me -- just a second,

23   Judge.  I understand the question.

24         MR. MARTINEZ:  It was the info tech person that

25   worked for Aetna.

```
1              THE COURT:  Very well.  That challenge is
2    accepted.  She's excused.
3              (Pause.)
4              THE COURT:  Mr. Fubel.
5              You're Richard Fubel?
6              THE JUROR:  Fubel.  Yes.
7              THE COURT:  The first question is you don't know,
8    in the period, whether you've taken Nexium?
9              THE JUROR:  I don't take any prescriptions, but
10   you said my immediate family and my brother and father,
11   who I just lost to cancer, they've taken all kinds of
12   stuff.
13             THE COURT:  I see.  But you don't know if anyone
14   had taken --
15             THE JUROR:  No, I really don't know what they've
16   taken.  I don't know anything about that.
17             THE COURT:  All right.  And your other answers
18   were "no."  Did you answer "yes" to any of the questions
19   I put here in open court?
20             THE JUROR:  Um, no.  I have a friend who works in
21   clinical trials for drug testing, but other than that,
22   no.
23             THE COURT:  Does that cause you to lean one way or
24   the other?
25             THE JUROR:  No, not for that.
```

1        THE COURT:  All right.  Do you truly think you can

2    be fair, fair to the people suing, the wholesalers, the

3    union benefit plans, the people, but be equally fair to

4    the pharmaceutical companies that are being sued?

5        THE JUROR:  I could.  I just -- I just have a lot

6    of court fatigue.  I just finished a long legal process.

7    I lost my husband to drug addiction.  And even though we

8    were married, I had no rights at all to help him.  And

9    my last time in the courts is I spent a year going to

10   court and having him be removed from our home.  And I

11   thought I could do this, but I don't know if I could

12   come into the court.

13       THE COURT:  I'm going to ask you to stay.  I'm

14   very sensitive to what you just said.  I think you will

15   find this experience both to be quiet, challenging, and

16   respectful to everyone involved.  I'll ask you to take a

17   seat in the jury box.

18       (Juror leaves.)

19       (Next juror.)

20       THE COURT:  Mr. MacDonald.

21       You're Daniel J. MacDonald?

22       THE JUROR:  I am.

23       THE COURT:  You answered "no" to these questions.

24   Did you answer "yes" to any of the questions in open

25   court?

1                THE JUROR:  I did.

2                THE COURT:  And what was that?

3                THE JUROR:  We briefly discussed pricing and stuff

4       like that and having my mother for eight years with

5       kidney failure, and suffering through that, and then the

6       angst that she would have if the doctor was to change

7       medicines on her and the bills would come home and the

8       --

9                THE COURT:  We'll excuse you from serving on this

10      case and I thank you.

11               THE JUROR:  Thank you, sir.

12               THE COURT:  Um, wait one second, Mr. Fubel.

13          I neglected to ask you one question I've been

14      asking and it is this.  Do you mind telling us what you

15      do for work, sir, just to get to know you a little

16      better.

17               THE JUROR:  Um, over here?

18               THE COURT:  Over there is fine.

19               THE JUROR:  I'm a technical writer for policies

20      and procedures.

21               THE COURT:  Thank you.

22               (Juror leaves.)

23               (Next juror.)

24               THE COURT:  Mr. Sharkey.

25               You're William Sharkey?

1          THE JUROR:  Yes.

2          THE COURT:  You answered "no" to these questions.

3     Did you answer "yes" to any questions that I put in open

4     court?

5          THE JUROR:  No.

6          THE COURT:  Do you truly think you can be fair,

7     fair to the wholesalers, the retailers, the union

8     benefit plans, the people suing, and equally fair to the

9     three pharmaceutical companies being sued?

10         THE JUROR:  Yes.

11         THE COURT:  Just so we can get to know you better,

12    what do you do and if you're married, what does your

13    spouse do?

14         THE JUROR:  No, I'm single, and I'm a construction

15    project manager.

16         THE COURT:  Thank you.  We'll ask you to take a

17    seat in the jury box.

18         (Juror leaves.)

19         THE COURT:  Oh, Mr. Hilliard?

20         MR. HILLIARD:  10 seconds, your Honor?

21         (Pause.)

22         MR. HILLIARD:  We're content.

23         THE COURT:  The defense?

24         (Pause.)

25         THE COURT:  Very well.  That's a jury.

```
 1          MR. BUTSWINKAS:  No, your Honor, 45, please.

 2          THE COURT:  Which one is that?

 3          MR. BALDRIDGE:  Mr. Fubel.

 4          THE COURT:  Okay, he's excused.  And you're out of

 5     challenges.

 6

 7          (In open court.)

 8          THE CLERK:  Juror Number 45, Mr. Fubel, is

 9     excused.

10          (Leaves box.)

11

12          AT THE SIDEBAR

13          THE COURT:  Mr. Cloutman.

14          And you're Robert Cloutman?

15          THE JUROR:  Yes.

16          THE COURT:  And looking at these answers, you

17     don't take Nexium, do you?

18          THE JUROR:  No.

19          THE COURT:  And the question is broader than that.

20     You just don't know whether anyone in your family does?

21          THE JUROR:  That's right, I do not know.

22          THE COURT:  All right.  Do you know what Nexium's

23     for?  Well, it's sort of like an acid reflux pill.  Ring

24     any bells?

25          THE JUROR:  My brother had acid reflux issues, but
```

```
 1    I'm not sure if he took it or not.
 2         THE COURT:  But you don't know that he did?
 3         THE JUROR:  Um, no.
 4         THE COURT:  All right.  Let me ask you this.  Did
 5    you answer "yes" to any of the questions that I put here
 6    in open court?
 7         THE JUROR:  No.
 8         THE COURT:  Do you truly think you can be fair,
 9    fair to each of the entities suing, the wholesalers, the
10    retailers, the union benefit plans, the people suing,
11    equally fair to the three pharmaceutical companies being
12    sued?
13         THE JUROR:  I think I can.
14         THE COURT:  All right.  So we get to know you a
15    little better, can you tell us what you do and if you're
16    married what your spouse does?
17         THE JUROR:  Well, I'm single and I'm a design
18    drafter and a checker.
19         THE COURT:  A checker?
20         THE JUROR:  I do a lot of checking of prints.
21         THE COURT:  Of others?
22         THE JUROR:  Yes.
23         THE COURT:  Okay.  Thank you.  We'll ask you to
24    take your place on the jury.  Thank you.
25         (Juror leaves.)
```

```
 1          THE COURT:  The plaintiff?

 2          MR. HILLIARD:  We're going to exercise a strike on

 3     Number 48, Mr. Cloutman.

 4          THE COURT:  He's excused.  Mr. Cloutman.

 5

 6          (In open court.)

 7          THE CLERK:  Juror Number 48, Mr. Cloutman, you've

 8     been excused from the jury.

 9          (Juror leaves.)

10

11          AT THE SIDEBAR

12          THE COURT:  And you're Ann Quinn-Kenny?

13          THE JUROR:  Correct, Judge.

14          THE COURT:  Let's jump right to your concern here.

15          THE JUROR:  Okay.

16          THE COURT:  Tell us where you're employed?

17          THE JUROR:  I work for a home health agency and

18     I'm a nurse.

19          THE COURT:  Okay.  Now you know under the law your

20     job is absolutely secure, that no one can touch your job

21     while you're serving as a juror.  You know about that?

22          THE JUROR:  Okay.

23          THE COURT:  And I try to handle the

24     employment-related things.  That schedule we gave you

25     downstairs, I'm sticking to that, I'll have you out of
```

```
1    here every day at 1:00.
2         Now, I need people from all walks of life.  So can
3    you possibly swing that?
4         THE JUROR:  My shift is the morning shift.  I have
5    a spinal cord injury case and she's a total care and
6    they'll find it very difficult to find someone to take
7    my place because I'm a nurse and it's very difficult to
8    get a nurse who will --
9         THE COURT:  Okay, I'll excuse you from service.
10   Thank you very much.
11        (Juror leaves.)
12        (Next juror.)
13        THE COURT:  Ms. Malatzky.
14        And you're Robyn Malatzky?
15        THE JUROR:  Yes.
16        THE COURT:  And I see that years ago your husband
17   worked for CVS, but I should ask you, from that
18   experience you wouldn't favor CVS in here in any way?
19        THE JUROR:  Do I favor it?
20        THE COURT:  Just because he worked there.
21        THE JUROR:  Um, I mean I go to it all the time,
22   that's the one I go to, but, you know --
23        THE COURT:  Are you going to be hostile or
24   skeptical of them because your husband worked there?
25        THE JUROR:  No.
```

1          THE COURT:  All right.  Did you answer "yes" to

2     any of the questions I put here in open court?

3          THE JUROR:  Um, yes.

4          THE COURT:  Which ones?

5          THE JUROR:  Only one, I think, about that the

6     prices of drugs are very expensive.  I think generics

7     are much better.  I believe in that, so.

8          THE COURT:  All right.  Now this case is going to

9     involve the price of prescription drugs and the price of

10    generics.  We're going to hear a lot about that.

11         THE JUROR:  Right.

12         THE COURT:  I'm going to explain what you can

13    consider properly and what you can't consider.

14         Now, do you think you can follow what my

15    explanation of the law is even though you think the

16    prices generally are too high?

17         THE JUROR:  No, I can follow it.

18         THE COURT:  All right.  We'll ask you to take a

19    seat in the jury box.

20         (Juror leaves.)

21         THE COURT:  Mr. Hilliard?

22         MR. HILLIARD:  We're content.

23         THE COURT:  I'm not surprised.

24         (Laughter.)

25

1           (In open court.)

2           THE COURT:  Now, for those of you we didn't reach,

3      I thank you so much for your participation in this

4      process, and Ms. Gaudet will give one of you your cards

5      and you're all excused to go downstairs.

6           Now, we have the jury in this case.  And I don't

7      want to keep you here, but I do want to give you some

8      very important instructions.  And we will start tomorrow

9      at 9:00 a.m.  The normal court day is 9:00 till 1:00 and

10     I will stick to that each day.

11          Now, here are my instructions, instructions which

12     you must follow.  I don't mean to be too pompous, but

13     they are important and you have to follow them.

14          First, keep your mind suspended.  This trial is

15     going to take a while.  It's not going to take any

16     longer than we said on that schedule.  We're going to

17     stick to that schedule.  But it will take a while.  And

18     so you've got to keep from making your mind up until

19     you've heard all the witnesses.

20          The last witness is as important as the first.

21     The first witness is as important as the last.  We're

22     going to let you take notes as the trial goes on, but

23     you should keep your minds suspended.  Don't be making

24     your minds up while the trial is going on.  Keep your

25     minds suspended.

1          Second, you are not to talk to anyone about the

2     substance of this case.  Now, what do I mean by that?

3     As soon as I'm done talking here, you're going to be

4     free to go.  We actually have refreshments for you back

5     there and we're going to take you back to the jury room.

6     Feel free to take those refreshments with you.  Sit

7     there and enjoy them.  But you're free to go, when this

8     court session is over, until 9:00 tomorrow morning.

9          When I say you're not to talk to anyone, naturally

10    having been chosen as the jury, the judges of the facts

11    in this case, the only judges of the facts that this

12    case is ever going to have are you 12 men and women.  So

13    naturally while you're free to go, you can go about your

14    business, you can go home, you can go back to work, and

15    to anyone you're going to say, "Well, I went, yeah, they

16    kept me, and he says it's going to go six weeks, and

17    we've got a schedule."

18          Now, you have -- and we understand what this does

19    to your personal and professional life, we understand

20    that, and so you can explain the schedule, you can

21    explain what I've explained to you now.  But what's

22    going to happen is, whoever you go home to or whoever

23    you go back to work to, they're all going to say, "Well,

24    what kind of case is it?  What were you picked on?"

25    Because while jury service applies to us all, it's

1    relatively infrequent and people are going to want to

2    know what you're doing.

3         You have to tell them, "The judge told us we

4    couldn't say anything about the substance of the case."

5    Not that it's a civil case.  It is a civil case.  Not

6    anything about who the parties to our case are, because

7    just as sure as tonight follows today, if you do that

8    they're immediately going to tell you what they think

9    about it, and we're not interested what they think about

10   it.  They didn't go through this process.  They weren't

11   chosen to be the judges of the facts in this case.  They

12   are not the sworn judges of the facts.  They won't hear

13   any evidence.  They won't hear cross-examination, the

14   challenge to the evidence that you are going to hear.

15   So that's why you can't talk about it.

16        Now, when it's over, you can say anything to

17   anyone about anything.  But while it's going on, you're

18   not to talk to anyone about anything that goes on here

19   in this room.  Not that it's secret, it's not secret,

20   every single word is taken down by our Court Reporter.

21   It's all a matter of record.  The courtroom must be open

22   so people can come in and see that justice is done.  But

23   you occupy a special position, you are a constitutional

24   actor in this process.  So you don't talk to anyone.

25        Now, by "talk," in today's modern world, don't you

1    go twitting or tweeting or e-mailing or the like about

2    "Guess what, I'm on a jury."  Nothing about that.

3    That's "talking" about the case.  Equally don't you

4    launch off on the internet and start looking us all up,

5    not the companies, not the names of the lawyers as you

6    learn their names, not my name.  Don't you go do any

7    research about this case.  And here's why.  Everything

8    that's legally significant in this case is going to be

9    laid out to you by the lawyers.  They're very good

10   lawyers.  They know what they're doing.  They will

11   explain, through witnesses, through exhibits, what the

12   issues are, and there are very real issues, there are

13   disputes here that you have to resolve.  But the only

14   fair way, the only fair way is if we do it all together

15   in this room while everyone can hear what the other one

16   is saying and can ask questions about it.  Don't you go

17   launch off and do your own investigation.

18        And lastly this.  We'll start right promptly at

19   9:00 a.m. tomorrow, so I need you all back there in that

20   jury room tomorrow, ready to go, to launch off at

21   9:00 a.m., and some of you may get here early and some

22   of you may stay and have lunch on us today, that's all

23   up to you.  But don't you talk about the case among

24   yourselves while it's going on.  And you may ask "That's

25   a little counterintuitive," you say, "Why not, we're the

```
 1    judges, of course we can talk about it."  No, I will
 2    tell you tomorrow, actually I'll say it now and I'll
 3    repeat it, the verdict in this case has to be unanimous,
 4    all 12 of you agreeing about the specific issues we're
 5    going to ask you.  You have to agree whether the answer
 6    to certain questions is "yes" or "no," you all have to
 7    agree.  So jury deliberations are the deliberations of
 8    all 12 of you, not the five that stay and have the lunch
 9    today while the rest are gone and not the first three in
10    tomorrow morning.  It's all 12 of you.  And if you start
11    talking about it, then you're sort of running up to the
12    first thing I've said, your mind isn't suspended,
13    because you can't talk about these things without taking
14    a slant on it.
15         So I'm not saying don't talk.  Once -- at exactly
16    this point in the case, tomorrow morning Ms. Gaudet came
17    into the jury room, there are the 12 jurors, all ready
18    to go, all utterly silent.  That's not what we're
19    talking about.  This is a communitarian effort.  You are
20    the jury in this case.  There are no alternates on this
21    jury.  All of you together will decide how this case
22    comes out.  So get to know each other.  You're going to
23    be working together on this case.  Just don't talk about
24    what goes on in this room.  And I mean anything in this
25    room.  Not how many lawyers there are for this one or
```

1  that one or how they're dressed or why I wear a robe, or

2  anything that goes on in this room.  You can talk about

3  anything else, but not that.

4       I didn't say about the press because I don't know

5  if there's going to be any mention made in the press,

6  but you've got to use your good common sense.  If people

7  start talking about a Nexium case or are talking about

8  any of these entities that I've mentioned, that's our

9  case, um, here in Boston, so you've got to turn that

10 page of the paper, change the channel, you get all your

11 information about this case, while you're here, in open

12 court.

13      Now, the tradition in this court is that once we

14 have a jury, we'll all stand up for you as you go in and

15 out, and I'm not going to go over all these instructions

16 every day and beat a dead horse, because I know you'll

17 follow them.  But to remind us, because this is so

18 important, every time we recess I will say, "Keep your

19 minds suspended, do not discuss the case either among

20 yourselves nor with anyone else."

21      Now, I'd like you to go with Ms. Gaudet because

22 she needs to show you the jury room.  There really are

23 refreshments back there.  We will start tomorrow at

24 9:00.  You may stand in recess till 9:00 tomorrow

25 morning.  I'll remain on the bench.

1          (Jury leaves, 1:25 p.m.)

2          THE COURT:  Please be seated.

3          Out of the 15 days allotted to each side, the

4    plaintiffs have used up 1 hour and 45 minutes, the

5    defense has used up 1 hour and 45 minutes.  We'll stand

6    in recess until 9:00 a.m. tomorrow morning.  We're in

7    recess.

8          (Adjourned, 1:30 p.m.)

9

10         C E R T I F I C A T E

11

12         I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

13    do hereby certify that the foregoing record is a true

14    and accurate transcription of my stenographic notes

15    before Judge William G. Young, on Monday, October 20,

16    2014, to the best of my skill and ability.

17

18

19

20

21    /s/ Richard H. Romanow 10-28-14
      _____
22    RICHARD H. ROMANOW Date

23

24

25